UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**MEMORANDUM IN SUPPORT OF DEFENDANT PETER DAVIS'S
<u>MOTION TO COMPEL COMPLIANCE WITH RULE 16</u>**

Pursuant to Fed. R. Crim. P. 7(f) and Local Rule 116.3, defendant Peter Davis submits this memorandum in support of his motion to compel compliance with Rule 16.

The bulk of the crimes and racketeering predicates in this sprawling, 148-page Indictment are based on the core allegation that things of value were given to Springfield Housing Authority ("SHA") officials in exchange for "rewards" and other "preferential treatment" in connection with the officials' awarding of contracts and other benefits. Although the government has pursued a so-called "open file" discovery policy in the case — making available to defendants the approximately 750,000 pages of documents it has obtained during the course of its lengthy investigation — the volume of materials is overwhelming. Accordingly, Mr. Davis seeks an order requiring the government to comply with Fed. R. Crim. P. 16 by making meaningful disclosure, as the Rule requires, of documents it intends to use in its case-in-chief at trial and documents that are material to the defense. Fed. R. Crim. P. 16(a)(1)(E)(ii), (iii). *See, e.g.*, *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (open file discovery does not eliminate the need for Rule 16 compliance).

## BACKGROUND

The 148-page Indictment in this matter charges thirteen different defendants with substantive violations of nine different criminal statutes, as well as conspiracy to commit violations of four of those statutes. The charges include an alleged racketeering enterprise (the SHA) and conspiracy that lasted over fifteen years and involved 248 predicate racketeering acts, thirteen defendants, twenty-nine unindicted co-conspirators, and dozens (if not more) of separate, document-intensive commercial transactions. Indictment ¶¶ 21-35. At the heart of the Indictment is the allegation that defendants Raymond Asselin, Sr. and Arthur G. Sotirion operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to award contracts, steer sub-contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶ 23.

Defendant Peter Davis is a 71-year-old retired contractor. His last dealings with the SHA were in 1997 or 1998. Most of his business records were irretrievably damaged in connection with a 1998 move from the Springfield area to Eastern Massachusetts. He is one of the defendants alleged to have been rewarded "with contracts, sub-contracts, change orders, purchase orders, preferential treatment, and other SHA resources," in exchange for "the payment of bribes, kickbacks, gratuities, and other things of value," based on checks written in 1996 and 1997. Indictment at ¶¶ 29, 40. Mr. Davis is charged in only four of the Indictment's 122 counts: racketeering in violation of 18 U.S.C. § 1962(c) (Count 1); racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to violate the bribery/gratuity statute, 18 U.S.C.

§ 201 (Count 3); and obstruction of justice in violation of 18 U.S.C. § 1503 (Count 107). Although all of the charges against him are rooted in allegations that he received "rewards" from the SHA, the Indictment does not state what rewards he received or what SHA contracts he bid on.

The government has attempted to discharge its discovery obligations under Fed. R. Crim. P. 16 and Local Rule 116.1 by what it describes as "open file discovery" — that is, by making available the entirety of the voluminous files of its investigation, irrespective of their materiality to the defense or intended use by the government in its case in chief.  Its files include approximately — if not more than — 250 boxes, bags and even a basket of documents; approximately fifteen large filing cabinet drawers filled with documents; and over twenty tapes of hard drives and twenty-five computers containing an unknown amount of information and/or documents.  Although some portion of the materials have been indexed, the indices are so general as to be wholly unhelpful.  In addition, the government has made available two CDs containing board minutes and accounts payable information from the Springfield Housing Authority ("SHA"), as well as selected grand jury transcripts and exhibits.  While such an "open file" discovery policy may be laudable in other contexts, here it makes it virtually impossible for Mr. Davis to engage in any meaningful evaluation of the government's case against him.[1]

Accordingly, on January 5, 2005 and again on June 1, 2005, counsel for Mr. Davis made written requests of the government for discovery pursuant to Local Rule 116.3(A).[2]  The letter

---

[1] Although the government describes its discovery policy as "open file," the term is technically inaccurate, inasmuch as the government has not made all witness interview memoranda and grand jury transcripts available.

[2] On January 5, 2005, counsel for Mr. Davis sent the government a letter requesting that it identify certain of the discovery that is relevant to Mr. Davis and the charges against him.  See 1/5/2005 Letter from Mr. Rehnquist to Mr. Welch (attached to Declaration of James C. Rehnquist as Exhibit 1).  Because of the superseding Indictment filed on January 11, 2005, the government did not respond to the January 5, 2005 letter.  On June 1, 2005, counsel for Mr. Davis sent a second letter to the government requesting additional narrowing of the

3

requests were fruitless, and Mr. Davis then on June 30, 2005 filed a motion with Magistrate Judge Neiman, seeking 1) a bill of particulars identifying (a) all contracts and/or subcontracts for which a bid was submitted by or on behalf of Mr. Davis to the SHA; and (b) all actions allegedly taken by the SHA as a result of Mr. Davis's allegedly giving, offering, and/or promising something of value; and 2) an order requiring the government to comply with Fed. R. Crim. P. 16(a)(1)(E), which requires the disclosure of documents or things "within the government's possession, custody, or control" that are either "material to preparing the defense" or which "the government intends to use [] in its case-in-chief at trial." Defendant Peter Davis's Motion for a Bill of Particulars and to Compel Discovery ("Discovery Motion") at 1 (filed June 30, 2005). The government opposed the motion in its entirety. As to the Rule 16 portion of the motion, the government stated that the Court had "no authority" to order the government to provide any additional discovery, and that defendants were entitled to nothing other than an exhibit list one week before trial as provided by Local Rule 117.1(A)(8). Government's Response to Defendant Davis' Motion for a Bill of Particulars and to Compel Discovery ("Gov. Discovery Opp.") at 10, 15 (filed July 15, 2005).

As to the Rule 16 motion, Judge Neiman denied it as premature, without prejudice to its renewal before this court. Judge Neiman granted the motion for a bill of particulars, stating:

> The particulars Defendant seeks – i.e., identification of contracts he had or benefits he received – are integral to the case against him. Although the indictment alleges that Defendant induced co-defendants . . . to 'fraudulently generate bid proposals, award

---

discovery. *See* 6/1/2005 Letter from Mr. Rehnquist to Mr. Welch (attached to Declaration of James C. Rehnquist as Exhibit 2). The government responded on June 15, 2005 (by letter received by Mr. Davis's counsel on June 17, 2005), referring defendant Davis to the "open file" discovery generally, and for the relevant bidding and contract information, to approximately 100 of those boxes. *See* 6/15/2005 Letter from Mr. Welch to Mr. Rehnquist ("Generally, any and all contracts and/or subcontracts that P.J. Richfield and/or Peter Davis received are located in the boxes labeled SHA contracts, the boxes seized from Sotirion's office, and the boxes of documents subpoenaed from P.J. Richfield, Inc., Manny's Plumbing & Heating, and G&R Associates.") (attached to Declaration of James C. Rehnquist as Exhibit 3).

> contracts, steer sub-contracts and otherwise provide preferential treatment during terms of contracts to [Defendants], d/b/a P.J. Richfield, Inc.,' it nowhere identifies what contracts Defendant bid, tainted or otherwise, or any 'preferential treatment' or 'awards' he received." (citation omitted).

Memorandum and Order with Regard to Defendant Peter Davis's Motion for a Bill of Particulars and to Compel Discovery ("Sept. 9 Order") at 3 (entered Sept. 9, 2005). Judge Neiman went on to say that while

> the Government asserted at oral argument that all contracts on which defendant bid or in which he participated were tainted . . . that representation appears to the court to be much too general in the context of this case, particularly in light of the fact that the specific allegations of bribery are limited to 1996 and 1997, thereby predating other events of the alleged criminal enterprise from 1998 through April of 2003.

Id. at 3-4. Judge Neiman thus ordered the government to produce "a bill of particulars identifying (a) all contracts and subcontracts for which a bid was submitted to SHA by or on behalf of Defendant and (b) all actions allegedly taken by SHA as a result of Defendant's having given, offered, and/or provided something of value." Id. at 4.

In response to Judge Neiman's order, the government supplied a list of bids made by Mr. Davis to the SHA, from 1990 to 1998, which appears to be simply a list of all contracts Mr. Davis bid on, consistent with the government's representation in Court that "all contracts on which defendant bid or in which he participated were tainted." *See* Defendant Peter Davis's Motion to Compel Compliance with the Court's Order that the Government Provide a Bill of Particulars ("Motion to Compel"), Attachment 2 (filed Oct. 13, 2005). As to the "benefits" given to defendant by SHA, the government simply wrote:

> Regarding actions taken by SHA as a result of the defendant having given, offered, and/or provided something of value, those actions consisted of steering contracts to P.J. Richfield, Inc.; directing general contractors to use P.J. Richfield, Inc. as a sub-

5

> contractor; permitting the continued use of P.J. Richfield, Inc. as a contractor despite sub-standard work; directing SHA employees to finish work for P.J. Richfield, Inc.; permitting the use of SHA supplies by P.J. Richfield, Inc.; certifying the completion of work that had not been completed; and causing more lenient enforcement of site inspections and wage compliance for P.J. Richfield, Inc.

Id. Contrary to the clear terms of Judge Neiman's order, the government provided no particularity with respect to these alleged favors, and indeed its list is scarcely more specific than the general allegations laid out in the Indictment. *See* Indictment, ¶ 23. Accordingly, on October 13, 2005 Mr. Davis filed a motion to compel compliance with the court's order requiring the government to provide a bill of particulars, arguing that the government's response "does not satisfy the Court's order that the government identify 'all actions allegedly taken by SHA as a result of Defendant's having given, offered, and/or provided something of value.'" Motion to Compel at ¶ 5. Judge Neiman denied the motion without prejudice, stating:

> If, after reviewing the voluminous automatic discovery produced by the Government . . . Defendant cannot readily identify particular actions in his favor taken by the Springfield Housing Authority as a result of his having allegedly given something of value, e.g., permitting ongoing contracts despite substandard work or certifying the completion of uncompleted work, Defendant may refile his motion by December 30, 2005.

Electronic Order Denying Without Prejudice Motion to Compel as to Defendant Peter Davis (entered Nov. 4, 2005).

Although the particulars supplied so far by the government have clarified the nature of the government's allegations against Mr. Davis, they have not eliminated his need for Rule 16 compliance. Paradoxically, they have made his need even more acute, as the government now seeks to convict him based on conduct going all the way back to 1990, conduct that is not described whatsoever in the Indictment. Accordingly, Mr. Davis files this motion, seeking an order requiring the government to comply with Fed. R. Crim. P. 16(a)(1)(E), which requires the

6

disclosure of documents or things "within the government's possession, custody, or control" that are either "material to preparing the defense" or which "the government intends to use [] in its case-in-chief at trial."

## ARGUMENT

I. THE GOVERNMENT SHOULD BE ORDERED TO COMPLY WITH RULE 16.

    A. **Rule 16 Requires the Government to Make Meaningful Pretrial Disclosure of Documents It Intends to Use at Trial and Any Other Material Documents.**

Rule 16(a)(1)(E) provides in relevant part, "the government must permit the defendant to inspect and to copy…items…within the government's possession, custody, or control," where "(i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial." The government here has attempted to comply with Rule 16 simply by providing defendants with the modified "open file discovery" discussed above. More is required under Rule 16. As the First Circuit has stated,

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995). In no way are these purposes served by the government's "kitchen sink" approach here, which is simply to point the defendant to every single document it has amassed in the investigation of this case, without regard to whether those documents are i) material to preparing the defense; or ii) intended for use by the government in its case in chief at trial. In order for Rule 16's discovery requirement to be in any way meaningful, the rule must at a minimum require the government to identify which among

7

the sea of documents are actually Rule 16 discovery documents.³ It is neither fair nor efficient for the government to fail to make timely and reasonable disclosure of the evidence it plans to use at trial and information that may be material to the defense. It is not fair to require a defendant to exhaust his limited resources attempting to digest the entirety of the government's files, simply because the government wishes to defer making the effort to identify the tiny percentage of that material that is material to the defense or that it actually intends to use at trial.

Although there is no authority on point in the First Circuit, several district courts have held that "open file" discovery does not necessarily satisfy the requirements of Rule 16. *See, e.g.*, *United States v. Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) (citing cases holding that, "based on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government to identify the documents it intends to rely on in its case in chief"); *Upton*, 856 F. Supp. at 747-49 (government must "provide defendants with adequate notice of the allegedly falsified documents upon which it plans to rely at trial in order to allow them to adequately prepare their defense"); *United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (Rule 16 requires the government to do "more than [] identify several thousand pages, any of which it 'may' rely on at trial"; such a "broad brush approach" is insufficient); *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (ordering government to identify within fourteen days which of the 25,000 documents it planned to use in its case-in-chief, rather than allowing government to "bury[] the defendant in paper" with open file discovery). Each of these courts has held, moreover, that Rule 16 requires the government to

---

3   To be clear, the defendant is not asking that the government identify specifically which documents fall under which categories, or present the defendant with a precise and final list of documents it intends to use in its case-in-chief at trial. *See, e.g.*, *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y 2000). Rather, the defendant simply requests that the government identify what among the universe of documents it has in its possession fall under either of the categories. Even at this point in time, the government has to have a clear

disclose not only those documents it intends to offer in evidence but also all documents on which a witness will rely or to which he will refer. *Giffen*, 379 F. Supp. 2d at 344; *Upton*, 856 F. Supp. at 747 (citing *United States v. Countryside Farms, Inc.*, 428 F. Supp. 1150, 1154 (D. Utah 1977); *Poindexter*, 727 F. Supp. at 1484 (same); *Turkish*, 458 F. Supp. at 882 (same).[4]

*Upton* is especially on point. The indictment in *Upton* alleged a large-scale conspiracy to falsify airline records. 856 F. Supp. at 733. There, as here, the government produced thousands of documents in a similar "open file" format, prompting defendants to file a Rule 16 motion claiming that the government failed to "isolate[] the documents that are relevant and may be offered at trial which would spare the defendants the task of examining all the documents." *Id.* at 746. The court noted that, among the thousands of documents produced by the government, the superseding indictment put the defendants on notice of only a handful of documents the government contended were fraudulent. *Id.* The court then stated that it would deny the motion if the government intended to restrict its proof to only those documents. *Id.* The court noted, however, that the government's contention that it intended to provide a specific exhibit list prior to trial demonstrated the possibility that the government would offer other documents as fraudulent in addition to those specified in the superseding indictment. *Id.* at 748. The court then held:

> If that is the case, the reasoning of *Turkish, Poindexter,* and *Bortnovsky,* and the language and policy concerns of Rule 16, require that the government provide defendants with adequate notice of the allegedly falsified documents upon which it plans to rely at trial in order to allow them to adequately prepare their

---

idea of the subset of its "open file" universe that contains the documents it will use at trial or that, insofar as they concern the allegations it seeks to prove, are "material to the defense."

[4] This court's denial of a discovery motion purportedly based on Rule 16 in *United States v. Labovitz*, CR No. 95-30011-MAP, 1997 U.S. Dist. LEXIS 7541 (D. Mass. May 30, 1997), is not inconsistent with these cases. Among other distinguishing features, much of the discovery sought in *Labovitz* was not in the possession of the government. *Id.* at *6-7.

>       defense.  This analysis applies with equal force to defendants'
>       request that the government provide a list of all documents to be
>       referred to or relied upon by government witnesses.

*Id.*

The *Upton* court's reasoning applies with equal force here.  While the Indictment references thirteen specific payments allegedly made by Mr. Davis to other members of the conspiracy in the Fall of 1996 and late 1997, the Indictment makes no mention of any specific benefits received by Mr. Davis in return.  In response to the granted motion for a bill of particulars, the government simply provided a list of bids made by Mr. Davis to the SHA, from 1990 to 1998, and indicated without any specificity several other types of benefits it may seek to prove Mr. Davis received.  As in *Upton*, the government here has brushed off the defendant's requests for particularity, simply stating that it would provide an exhibit list one week before trial as required by Local Rule 117.1(A)(8).  The defendant is left completely in the dark as to which among the sea of documents the government has produced are either i) relevant to the preparation of the defense, or ii) intended for use by the government in its case-in-chief at trial.  As a result, the essential purposes of Rule 16 are completely frustrated, and the defendant's rights, including the ability to make an informed plea and litigation strategy and to be free from surprise at trial, are seriously threatened.

Here, the case for ordering compliance with Rule 16 is even stronger than in *Upton*, *Poindexter*, and *Turkish*.  First, the volume of open file discovery here is significantly larger than in those cases.[5]  Second, because of the breadth and age of the alleged conspiracy here, and the defendant's comparatively minor involvement therein — the racketeering acts Mr. Davis is

---

[5] A standard "banker's box" of documents holds approximately 2,500 pages.  Thus, the government here has likely made available at least 750,000 pages of documents, not to mention untold volumes of information in electronic form.  By comparison, in *Poindexter*, the government produced approximately 300,000 pages of

charged with in the Indictment all took place in 1996 or 1997, for example — Mr. Davis is more dependent than defendants in other contexts on the government's faithful discharge of its Rule 16 obligations.

### B. This Court Has Discretion to Order the Discovery Defendant Seeks Here.

Even if Rule 16 did not <u>require</u> the government to separate the documents that actually fall under the Rule 16 discovery categories from those that do not, there is certainly nothing in the language of Rule 16 (or any other statute or rule) that <u>prevents</u> the court from requiring the government to be more forthcoming in its pre-trial discovery. The Advisory Committee made it clear when it amended Rule 16 to add the broader discovery at issue here that the district court retains its inherent power to order discovery not expressly authorized by the Rule itself. *See* Fed. R. Crim. P. 16, advisory committee notes ("[Rule 16] is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery."). *See also* 2A Wright and Miller, *Federal Practice and Procedure* § 254, pp. 117-118 (citing to the Advisory Committee notes and listing cases holding that district courts retain discretion to order broader discovery than required by the Rules). It is settled law in the First Circuit that the district court retains wide discretion to order pre-trial discovery even in the absence of a statute or Rule requiring the requested disclosure. *See United States v. Sclamo*, 578 F. 2d 888, 890 & n.1 (1st Cir. 1978) (noting that while Congress failed to adopt a Proposed Rule which would have made pretrial disclosure of government's witness list mandatory, it is within the court's discretion to order such disclosure). That discretion is preserved under the Local Rules, which authorize the court to deviate from the presumptive deadlines set forth therein. *See, e.g.*, Local Rule 117.1(A)(8).

---

documents, *see* 727 F. Supp. at 1472, and in *Turkish*, 25,000 documents, *see* 458 F. Supp. at 882. The *Upton* court referred merely to "thousands of pieces of paper." 856 F. Supp. at 747.

In its response to defendant's earlier Rule 16 motion filed before Magistrate Judge Neiman, the government claimed that the court lacked authority to order the government to comply with Mr. Davis's discovery request. Gov. Discovery Opp. at 10. In doing so, the government relied principally on *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y 2000).[6] Putting aside the fact that *Nachamie* is an outlier in the Southern District of New York, *see Giffen*, 379 F. Supp. 2d at 344; *Upton*, 856 F. Supp. at 747; *Turkish*, 458 F. Supp. at 882, the case itself is distinguishable. *Nachamie* involved a Rule 16 motion by all four defendant co-conspirators, who <u>conceded</u> that the documents made available by the government were all "material to the preparation of the defense," but argued that Rule 16 required the government to designate which files fell into which of the three Rule 16 subcategories (*i.e.*, which were material to the defense, which were to be used in the case and chief at trial, and which were the property of the defendants). *Nachamie*, 91 F. Supp. 2d at 568. In contrast, Mr. Davis is requesting simply that the government present for discovery only those documents falling under the Rule 16 categories, rather than burying those documents in hundreds of thousands of others that do not fall under <u>any</u> of the Rule 16 categories.

*Nachamie* is also unpersuasive, resting on a crabbed reading of the government's obligations under Rule 16. Under *Nachamie*'s reading of Rule 16, the government can satisfy its obligations to "permit the defendant to inspect and copy" Rule 16 materials simply by producing its voluminous investigative files *en masse*, without making any effort at all to determine which documents in its possession are chaff and which are wheat. Although such a mode of discharging discovery obligations has an analogue under the civil discovery rules, which

---

6   The government also cited to *United States v. Causey*, 356 F. Supp. 2d 681 (S.D. Tex. 2005), although the court there did not hold that it lacked the authority to order more specific Rule 16 discovery. Rather, it denied the defendants' Rule 16 motion in light of the government's effort of winnowing down its files into a set of

explicitly authorize a party making documents available for the adversary "to inspect and copy" to produce the documents not category-by-category but rather as they are "kept in the usual course of business," *see* Fed. R. Civ. P. 34(b), it has no place under Rule 16.  Unlike Civil Rule 34, Rule 16 does not by its terms authorize such a response, which is to be expected inasmuch as documents in the government's possession are not the government's own documents, and are not maintained in any rational order.

Further, the most recent Southern District case speaking to this issue, *United States v. Giffen*, 379 F. Supp. 2d 337 (S.D.N.Y. 2004) demonstrates why *Nachamie*'s holding that Rule 16 does not require more specific disclosure by the government (irrespective of the correctness of that holding), does not in fact mean that the district court lacks the power to order more specific disclosure.  In *Giffen*, the government produced more than one million pages of discovery, and the defendant moved under Rule 16, requesting the court to order the government to produce an exhibit list two months in advance of trial. *Id.* at 344.  Relying on *Nachamie*, the government countered that the court lacked the authority to issue such an order. *Id.*  The court began by noting that *Nachamie* was in conflict with other decisions in the district, which "have held that based on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government to identify the documents it intends to rely on in its case in chief." *Id.*  The court further noted that such authority exists even outside of Rule 16, noting that "the Second Circuit has recognized a district court's inherent authority to regulate the nature and timing of discovery." *Id.* (citing *United States v. Cannone*, 528 F.2d 296, 298 (2d Cir. 1975) (holding that the district court has the authority, irrespective of express authorization by statute or rule, to order the government to turn over a witness list in advance of trial)).

---

"hot documents" it believed were central to the case and disclosing these to the defendants, as well as its agreement to provide an exhibit list in advance of trial. *Id.* at 687.

In sum, even if this Court is not inclined to order discovery based explicitly on Rule 16, it has ample discretion to order the discovery defendant seeks. And this is a strong case for exercising that discretion. The charges are complex and sprawling, as the alleged conspiracy dates back as far as 1990. Much of the conduct at issue is not identified in the Indictment. The government's "open file" discovery policy, while laudable in theory, has not enabled the defendants to assess adequately the government's case against them, develop an informed plea and trial strategy, or prepare their trial defense. The heavy artillery of RICO that the government deploys here affords it considerable prosecutorial advantages, not the least of which are a generous statute of limitations and an abundance of predicate crimes to charge. But these advantages should heighten, not diminish, the government's responsibility to discharge its discovery obligations.

**CONCLUSION**

For the foregoing reasons the defendant respectfully requests that the Court order the government to comply with Fed. R. Crim. P. 16. as requested above.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
Elizabeth K. Train (BBO # 650682)
William J. Trach (BBO #661401)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: November 14, 2005

**LOCAL RULES CERTIFICATION**

I, James C. Rehnquist, hereby certify that, pursuant to Local Rules 7.1 and 116.3, counsel for defendant Peter Davis conferred with counsel for the United States in a good-faith attempt to resolve or narrow the issues presented by this motion.

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)

**CERTIFICATE OF SERVICE**

I, James C. Rehnquist, counsel for defendant, hereby certify that a copy of the foregoing document has been served on counsel of record by first class mail, postage prepaid, on this 14th day of October, 2005.

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)

LIBA/1643927.1