FILED
...

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS    $2005 DEC -2 P 3: 21$

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-N-04-30033-MAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER DAVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S RESPONSE TO
## DEFENDANT DAVIS' MOTION TO COMPEL COMPLIANCE WITH RULE 16

The United States of America, by and through Michael J.
Sullivan, United States Attorney for the District of
Massachusetts, and William M. Welch II, Assistant United States
Attorney, hereby files this response to defendant Davis' Motion to
Compel Compliance with Rule 16.

The defendant's Motion to Compel Compliance with Rule 16
should be denied because there is no authority for the defendant's
request.  Rule 16 does not require the Government either to
categorize or characterize documents in its possession, custody
and control under Rule 16(a)(1)(E).

## I.    Background

Peter Davis formerly owned and operated P.J. Richfield, Inc.,
a company that did business with the Springfield Housing Authority
(hereainafter "SHA").  At the time the defendant began doing
business with SHA, the defendant was a spry fifty-six year old

1

individual who had virtually no significant public contract
construction experience, but nonetheless eventually received
approximately $3.1 million in direct payments from SHA from
approximately 1990 through May, 1998.  The defendant received
those contracts due to a "pay to play" bid system that existed at
SHA.   Co-defendants Raymond Asselin, Sr., SHA's former Executive
Director, and Arthur Sotirion, its former Assistant Executive
Director, expected some contractors to provide things of value in
order to obtain contracts through a rigged bidding process.
However, for every contract or sub-contract steered to a
contractor like the defendant, defendants Asselin, Sr. and
Sotirion expected the contractor to submit a losing bid on other
occasions as a way of maintaining and perpetuating the success of
their fraudulent contracting scheme.

In July, 2004, the grand jury returned an indictment that
charged the defendant with RICO, Consparacy to Commit RICO,
Conspiracy to Commit Bribery, and Obstruction of Justice for
criminal conduct that began by 1992 and continued through April,
2003.  In January, 2005, the grand jury returned a superseding
indictment that re-alleged the same crimes against the defendant,
but expanded the time frame of the criminal conduct to 1988. See
Indictment, ¶ 36.

Both indictment were very specific and detailed.  For
example, the Superseding Indictment contained the following

2

caption and language:

### Objectives of the Racketeering Activity

It was an objective of the defendants to reward those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by defendants ASSELIN, SR. and SOTIRION using their positions within SHA to award contracts, steer sub-contracts, purchases goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses.

Superseding Indictment, ¶ 23.  The superseding indictment also contained the following caption and language:

### Manner and Means of the Racketeering Enterprise

Defendants ASSELIN, SR. and SOTIRION and their associates conducted and participated in the conduct of the affairs of the Enterprise by then rewarding . . . P.J. Richfield, Inc. . . . with contracts, sub-contracts, change orders, purchase orders, preferential treatment, and other SHA resources through their corrupt influence on the contract and purchase order bid process and otherwise directing general contractors to award sub-contracts to said individuals and businesses.

Id. at ¶ 29.  The Superseding Indictment also specifically alleges the times, dates, amounts and descriptions of certain things of value provided by the defendant to members of the RICO enterprises.  Id. at ¶ 40.[1]

---

[1] The defendant implies that the defendant received contracts and other rewards solely "based on checks written in 1996 and 1997." See Motion, p. 2.  As counsel knows, an indictment need not allege every predicate act of a RICO or overt act of a conspiracy

Thereafter, pursuant to the Local Rules, the Government made available for inspection and copying all Rule 16 materials within its possession, custody and control. These materials have been available to the defendant since July, 2004. The documents are contained in numerous boxes located on shelves or in file folders located in file cabinets. The boxes or the shelving on which the boxes are located are labeled in some fashion to identify their contents. For example, there are approximately fifteen boxes labeled "SHA contracts," which contain file folders labeled with the name of the winning bidder and most of which have been arranged alphabetically. There are approximately fifteen boxes labeled "SHA Accounts Payable," the contents of which have been identified chronologically by month and year. The boxes subpoenaed from SHA contractors, such as Manny's Plumbing & Heating, and the shelves on which those boxes have been stored have been labeled, for example, "Manny's Plumbing & Heating."[2]

---

in order to be admissible. Counsel for the defendant has been on notice for some time that the Government intends to offer evidence of other pre-1996 things of value that the defendant provided to defendants Asselin and Sotirion. For example, Exhibit 1 is a sheet of the defendant's handwritten notes, dated December 23,1994, stating "Pete [defendant Davis] pays Ray [defendant Raymond Asselin, Sr.] for ADA 504 site." The ADA 504 site was a $600,000.00 SHA contract awarded to the defendant. The Government sent this note and other documents to the defendant's counsel on May 23, 2003 during the course of pre-indictment plea/immunity discussions.

[2] The defendant claims that the Government's discovery policy has prevented "any meaningful evaluation of the government's case against him," Motion, p. 3, and complains that its discovery

4

Finally, the boxes seized from the various search locations have been labeled by the site of the search location, e.g. Raymond Asselin, Sr.'s residence.

The Government provided two CDs containing SHA board minutes and accounts payable information. The SHA board minutes contain information regarding bids submitted to and contracts awarded by SHA. The account payable information lists all payments made by SHA, including all payments made under contracts awarded by SHA. Both databases are easily searchable. For example, by searching under the name "P.J. Richfield" on the CD containing the accounts payable information, one can produce all payments made by SHA to P.J. Richfield from 1990 through 1997.

The Superseding Indictment identified un-indicted co-conspirators. Consistent with the Local Rules, the Government also identified unindicted co-conspirators involved in the case. The Government did this by letter on July 28, 2004 and February 2, 2005.

_____

letters have been fruitless. Id. at 3-4. As evidence of this futility, the defendant cites a June 15, 2005 letter from the Government to defense counsel referring the defendant to "approximately 100 of those boxes." Id. at 4 n.2. Not only is the representation of a hundred boxes an exaggeration, but even assuming it to be true, the boxes containing the alphabetically filed SHA contracts could have been quickly winnowed down to approximately three boxes containing files for P.J. Richfield, G & R Associates, and Manny's Plumbing & Heating. The other boxes of documents referenced in the letter collectively amount to approximately a dozen more boxes.

In addition to making available all Rule 16 materials, the
Government produced the grand jury testimony of approximately a
half dozen witnesses.  At least two of those witnesses were SHA
contractors who described the bribery scheme at SHA.  These
witnesses described how they, along with other SHA contractors,
had to pay bribes to co-defendants Asselin, Sr. and Sotirion in
order to do business at SHA.  In addition, these witnesses
described how co-defendants Asselin, Sr. and Sotirion required
them and other contractors to collude in submitting artificially
inflated, losing bids on some contracts in order to win contracts
on other occasions.

II.  **Defendant Davis' Motion to Compel Discovery Should Be Denied
Because The Court Has No Authority to Order The Government To
Segregate And Then Produce Those Documents That It Intends To
Use In Its Case-in-Chief From All Of the Discovery.**

Rule 16(a)(1)(E) states in pertinent part that

> [u]pon a defendant's request, the government
> must permit the defendant to <u>inspect and copy</u>
> . . . documents  . . . which are within the
> possession, custody or control of the
> government, and:
>
> (i) the item is material to preparing the
> defense;
> (ii) the government intends to use the item in its
> case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the
> defendant.

<u>See</u> Fed.R.Crim.P. 16(a)(1)(E)(i)-(iii)(emphasis added).

On its face, the plain language of Rule 16(a)(1)(E) only
obligates the Government to "permit the defendant to inspect and

6

copy", and nothing more.  Rule 16's plain language, therefore,
ends the matter. <u>See</u> <u>e.g.</u> <u>United States v. Burns</u>, 15 F.3d 211, 215
(1st Cir. 1994)(plain language of Rule 16(a)(1)(A) limits
disclosure of defendant's statements to a known government agent);
<u>United States v. Smith</u>, 101 F.3d 201, 209-210 (1st Cir. 1996)
(plain language of former Rule 16(a)(1)(D) disposes of argument
that expert's unrecorded personal observations must be disclosed
under Rule 16).

    Despite that plain language, the defendant nonetheless claims
that Rule 16(a)(1)(E) compels more.  In effect, the defendant
seems to argue that the Government must take its "sea of
documents", <u>Motion</u>, p. 8 and organize them into four categories:
Rule 16(a)(1)(E)(i) documents, or items material to preparing the
defense; Rule 16(a)(1)(E)(ii) documents, or case-in-chief
documents; Rule 16(a)(1)(E)(iii) documents, or items from the
defendant; and finally, none of the above.

    The reasoning behind the defendant's argument does not
distinguish between the three separate categories of Rule
16(a)(1)(E) documents.  According to the defendant, this
obligation flows solely from Rule 16(a)(1)(E) -- presumably
implicitly since the plain language of Rule 16(a)(1)(E) does not
compel such a conclusion -- and applies with equal force to each
of the three separate categories of Rule 16(a)(1)(E) discovery.
Therefore, there can be no distinction in how the defendant's

argument applies to the three separate categories of Rule 16(a)(1)(E) discovery in order for the defendant's argument to survive.

Regarding the first category of Rule 16(a)(1)(E) documents, the circuit courts universally have held that the Government has no obligation to pinpoint <u>Brady</u> materials within its discovery, the very argument that the defendant advances today under the auspices of Rule 16. <u>See</u> <u>United States v. Pelullo</u>, 399 F.3d 197, 202, 205, 212 (3rd Cir. 2005)(holding that <u>Brady</u> "impose[d] no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from" 160 boxes and 36 file cabinets of warehouse records initially made available for inspection and copying under Rule 16(a)(1)(E)). <u>See</u> <u>also</u> <u>United States v. Mmahat</u>, 106 F.3d 89, 94 (5th Cir. 1997)(holding that no obligation arose under <u>Brady</u> to "point the defense to specific documents within a larger mass of material that it has already turned over" where Government gave defense access to 500,000 pages of documents); <u>United States v. Parks</u>, 100 F.3d 1300, 1307 (7th Cir. 1996)(holding that "<u>Brady</u> [does not] require[ ] the Government to carry the burden of transcribing [65 hours of intercepted conversations]" because the defendants "had been given the same opportunity as the government to discover the identified documents" and "information the defendants seek is available to them through the exercise of reasonable diligence") (internal

quotations and citation omitted). The Government remains hard-
pressed to figure out how the language of Rule 16(a)(1)(E) imposes
an additional duty upon the Government beyond that required by
Brady.

Even more problemmatic for the defendant's argument is the
idea that the Government somehow must know what is "material to
preparing the defense" in a vacuum. The defendant has not shared
with the Government what his defenses are. None of his co-
defendants have informed the Government of the various individual
or joint defenses that they may assert at trial. The defendant's
interpretation puts the Government in the untenable position of
being forced to categorize a set of documents as Rule
16(a)(1)(E)(i) in the dark, but then having to defend itself
against possible discovery sanctions for not having properly
categorized a document whose materiality the Government never
knew. See e.g. United States v. Ferrer-Cruz, 899 F.2d 135, 140
(1st Cir. 1990)(holding that "`[t]he Government is not obligated
by Rule 16(a) to anticipate every possible defense, assume what
the defendant's trial testimony (if he decides to testify) will
be, and then furnish him with otherwise irrelevant material that
might conflict with his testimony.'")(citations omitted).

Finally, the argument that the Government must designate a
set of documents as Rule 16(a)(1)(E)(i) in a vacuum flies in the
face of settled First Circuit caselaw. See United States v.

Carrasquillo-Plaza, 873 F.2d 10, 12 (1st Cir. 1989) (holding that
"[d]efendant's pretrial, blanket demand for `all books, paper,
documents and tangible objects' material to his defense was too
general to satisfy the requirement of a request and of a showing
of materiality" under the formerly enumerated Rule 16(a)(1)(C)).
Nonetheless, despite this requirement of a defendant's showing of
materiality under Rule 16(a)(1)(E), the defendant somehow believes
himself relieved of this obligation in his interpretation of Rule
16(a)(1)(E).

    Regarding the second category of Rule 16(a)(1)(E) documents,
in United States v. Causey, 356 F.Supp.2d 681, 667 (S.D. Texas
2005), the defendants made a request similar to the motion made by
the defendant.  The defendants argued that Rule 16 required the
Government to identify from its discovery documents "material to
the defense" and documents "it intends to use in its case-in-
chief." Id.

    The district court denied the request, stating that "[t]he
plain language of Rule 16 does not require the government to
specify from among the universe of discovery" documents intended
for use at trial. Id. at 686-687.  The district also noted that
the defendants "have cited no case in which the government has
been ordered to do so." Id. at 687.

    Similarly, in United States v. Nachamie, 91 F.Supp.2d 565,
569 (S.D.N.Y. 2000), the defendants filed a motion under Rule

16(a)(1)(E)'s predecessor, Rule 16(a)(1)(C), that demanded that the Government "identify which documents fall into each of the categories outlined above," i.e. documents material to the defense and intended for use at trial. Id. The defendants complained that "because of the enormity of the production, they cannot determine which documents are simply material to the preparation of their defense and which documents the Government intends to use at trial." Id.

The district court rejected the argument, stating that "[t]he clear language of Rule 16(a)(1), however, does not require the Government to identify which documents fall in each category -- it only requires the production of documents responsive to any category." Id. The court reasoned that "a court has no license to rewrite the Federal Rules of Criminal Procedure, and stated that "[i]n the absence of any controlling authority interpreting the Rule as requiring this action," it could not order the Government to designate those documents that it intended to offer in its case-in-chief. Id. at 570.

Like defendant Davis, the defendants in Nachamie cited Upton, Poindexter, and Turkish, the same cases cited by defendant Davis in his motion, in support of their request for discovery. Id. at 569. The Nachamie court found that "none of those decisions are supported by the language of Rule 16(a)(1) or prior case law." Id.

11

Analyzing each case one at a time, the <u>Nachamie</u> court started with the <u>Turkish</u> decision and stated that

> <u>Turkish</u>, 458 F.Supp. 874, 882 (S.D.N.Y. 1978),
> simply stated that it was improper for the
> Government to "bury the defendant in paper" by
> making all documents generally available.   The
> *Turkish* court cited no authority for its
> conclusion that the Government had an
> obligation to *identify* the documents it
> intended to use in its case-in-chief, and it
> mistakenly relied on another district court
> case, <u>United States v. Countryside Farms</u>,
> Inc., 428 F.Supp. 1150, 1154 (D.Utah 1977),
> which merely held that the Government had a
> duty to *produce* such documents.

<u>Id</u>.   The <u>Nachamie</u> court then discussed the <u>Poindexter</u> case,

stating that "<u>Poindexter</u> court, which relied only on <u>Turkish</u> and

<u>Countryside Farms</u> for its holding, simply compounded the error

made in <u>Turkish</u>.   <u>Id</u>.

The <u>Nachamie</u> finally discussed the <u>Upton</u> case.   Noting that

<u>Upton</u> also relied on <u>Turkish</u> and <u>Poindexter</u>, the court stated that

> <u>Upton</u> also fails to ground its conclusion in
> the language of Rule 16(a)(1) or binding case
> law.   As noted above, neither <u>Turkish</u> nor
> <u>Poindexter</u> provide adequate support for their
> holdings.   In <u>Bortnovsky</u>, the third case cited
> by the <u>Upton</u> court, the Second Circuit
> determined that the trial court had committed
> reversible error by failing to require the
> Government to respond to the defendants'
> demand for a bill of particulars. The court
> never referred to Rule 16(a)(1)(C), which as
> noted earlier governs the parties' respective
> discovery obligations, but relied solely on
> Fed. R. Cr. P. 7(f), which permits a defendant
> to seek a bill of particulars in order to
> identify with particularity the nature of the
> charge in order to prepare for trial, avoid
> surprise, and avoid double jeopardy.

12

> Bortnovsky, 820 F.2d at 574 (citing Wong Tai
> v. United States 273 U.S. 77, 82, 47 S.Ct.
> 300, 71 L.Ed. 545 (1927)). Thus, Bortnovsky
> fails to support the Upton court's conclusion
> that the Government must identify the
> documents it intends to offer at trial.

Id.

The logic and reasoning of Causey and Nachamie apply with
equal force to this case.  First, the plain language of Rule
16(a)(1)(E) does not support the defendant's interpretation.  It
simply imposes an obligation upon the Government to produce
documents for inspection and copying, and nothing more.  In fact,
the defendant cannot even identify what specific language in Rule
16(a)(1)(E) forms the basis for his request.

Finally, Local Rule 117.1(A)(8) dispenses with the need for
the early designation of evidence requested by the defendant.  The
drafters of the Local Rules -- a committee of judges, prosecutors
and defense attorneys -- clearly had the opportunity to impose the
type if discovery obligation now requested by the defendant, but
did not.  Instead, the committee enacted Local Rule 117.1(A)(8),
which requires the Government to produce an exhibit list one week
before trial.  The Government presently plans on following this
Rule.  At oral argument before Magistrate Judge Neiman, the
Government indicated a willingness to produce an exhibit list
several weeks in advance of trial, and continues to do so, as long
as the court imposes a reciprocal obligation upon all of the
defendants.

The defendant attempts to skirt around the plain language of Rule 16(a)(1)(E) by arguing that even if Rule 16(a)(1)(E) does not require the Government "to separate the documents that actually fall under the Rule 16 discovery categories from those that do not," Motion, p. 11, the court has the discretion to order the Government to do so. However, whether or not the court has the discretion to issue such an order does not address the practical problems inherent in the exercise of that discretion.

Even if the court finds it has discretion and issues an order consistent with the request of the defendant, the Government still must designate a set of documents as Rule 16(a)(1)(E)(i) discovery in a vacuum. Without any knowledge of what is material to the defendants' defenses, the Government faces the exact same problem: it simply has no idea what to segregate as Rule 16(a)(1)(E)(i) in a vacuum. Congress never could have envisioned such a result even in the exercise of the court's discretion. Legislative enactments "`should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.'" Burns, 15 F.3d at 215 (quoting American Tobacco Co. v. Patterson, 456 U.S. 63, 71 (1982)).

The defendant's request that the court exercise its discretion in their favor also does not advance the policy considerations -- the fair and efficient administration of justice -- propounded by the defendant. As the Government learns in the

14

middle of trial what the defendants' various defenses are, the
Government will be forced to produce boxes of documents or perhaps
search for documents that now qualify as Rule 16(a)(1)(E)(i)
discovery, resulting in a halting, disjointed trial that may be to
the defendant's benefit, but to the Government, the court, and the
jury's detriment.   The fair and efficient administration of
justice is not a single lane road on which only the defendant
travels.

The volume of evidence is no reason to force the Government
to categorize the documents under Rule 16(a)(1)(E).   The
defendants have had access to the documents since July, 2004, and
it is precisely because of the volume of evidence that the court
set a trial date of September 11, 2006, giving the defendants more
than ample time to review all of the discovery. <u>See</u> <u>United States</u>
<u>v. Jordan</u>, 316 F.3d 1215, 1253 (11th Cir. 2003)(stating that
defendants "could hardly complain about" being given access to
"far more information and materials than the law required" to
prepare for trial, and proper remedy would have been a request
more time.).

Even if the court orders the Government to designate a set of
documents as Rule 16(a)(1)(E)(i) discovery, the Government will be
forced to make available all of its discovery in the same fashion
that it has done so today to avoid any claims of Rule 16 discovery
or <u>Brady</u> violations.   Since the defendant is in the best position

15

to know what is material to his defense, making all of its
discovery available for inspection by the defendant insures an
efficient and orderly jury trial.

Lastly, implicit in the defendant's position is the assertion
that the Government must correctly label each document it produces
in discovery, noting whether or not the Government believes the
document to be Rule 16(a)(1)(E)(i) discovery, or material to the
defense, or Rule 16(a)(1)(E)(ii) discovery, or case in chief
documents.  The defendant's insistence that the Government
separate and identify the Rule 16 discovery becomes meaningless
unless the defendant also insists that the Government's
segregation of Rule 16 discovery be accurate.  That insistence, of
course, has no force if there are no consequences for inaccuracy,
intentional or not.  A trial in this case will collapse under the
weight of the innumerable claims of Rule 16 discovery violations
alleged by the defendant for the Government's failure to
categorize its discovery properly as the various permutations of
the defendants' defenses evolve at trial.

Rule 16 is a discovery rule that requires the Government to
make certain categories of documents available to the defense.
Rule 16 does not require the Government to identify its trial
strategy and give the defendant a roadmap of its strategy.
Forcing the Government to categorize documents under Rule 16
necessarily reveals the Government's strategic view of the

16

significance of each document.  While Rule 16 requires an exchange of information, Rule 16 is not and should not be a discovery tool to glean the Government's strategy.

### III. Conclusion

For the foregoing reasons, the Government respectfully asks that the court deny defendant Davis' Motion to Compel Compliance with Rule 16.

Filed this 7th day of December, 2005.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

WILLIAM M. WELCH II
Assistant United States Attorney

17

CERTIFICATE OF SERVICE

Hampden,  ss.                          Springfield, Massachusetts
                                       December 2, 2005


     I, William M. Welch, Assistant U.S. Attorney, do hereby
certify that I have served a copy of the foregoing by mailing said
motion to:

All counsel of record


                              _____
                              WILLIAM M. WELCH II
                              Assistant United States Attorney

18