UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

RAYMOND ASSELIN, SR., et al.

Defendants.

Criminal No. 04-30033-MAP

## MEMORANDUM IN SUPPORT OF DEFENDANT PETER DAVIS'S MOTION FOR SEVERANCE

Pursuant to Fed. R. Crim. P. 14, defendant Peter Davis submits this memorandum in support of his motion to sever his trial from that of co-defendants Raymond Asselin, Sr., Arthur Sotirion, Janet Asselin, James Asselin, Raymond Asselin, Jr., Joseph Asselin, Melinda Asselin, Maria Serrazina, Christopher Asselin, and Merylina Asselin ("the Asselin-Sotirion defendants"), and to try his case separately with the remaining charged contractor co-defendants, John Spano and Paul Bannick.

Although the multitude of charges, defendants, and conspiracies appears at first blush to be properly joined in the Superseding Indictment by the "glue" of RICO, further inspection reveals a much more discordant set of allegations. In particular, the contractor defendants — Peter Davis, John Spano, and Paul Bannick — are named in only a small subset of charges revolving around alleged bid-rigging and are alleged to have committed a correspondingly small subset (34 out of 248) of the predicate racketeering acts. The contractor defendants, moreover, are not named at all in the Superseding Indictment's numerous charges against all other defendants that focus on the theft of government property, defrauding of local voters, and the like. Further, the evidence relating to the

charges against the contractors would appear to be a small fraction of the evidence relating to the other defendants, which include the remaining RICO predicates, and over 100 allegations of theft of SHA resources and transactions relating to the defrauding of Hampden District voters. Accordingly, this court should exercise its discretion to sever the contractor defendants for a separate trial, which would be substantially shorter and simpler than the trial against the Asselin-Sotirion defendants.

## Background

### A. The 148-Page Indictment Alleges Two Complex, Factually Distinct Patterns of Criminal Activity.

On January 11, 2005, the grand jury returned this sprawling 122-count Superseding Indictment, charging thirteen different defendants with substantive violations of ten different criminal statutes. *See* Indictment, pp. 1-2 (18 U.S.C. § 1962(c) (Racketeering); 18 U.S.C. § 201 (Federal Bribery); 18 U.S.C. §§ 1341 and 1346 (Mail Fraud); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 1951 (Extortion); 18 U.S.C. § 1957 (Money Laundering); 18 U.S.C. § 1512 (Witness Tampering); 18 U.S.C. § 1503 (Obstruction of Justice); 26 U.S.C. § 7206(1) (Filing False Income Tax Returns)). In addition, the Indictment alleges separate conspiracies to commit five different substantive crimes. *Id.* (18 U.S.C. § 1962(d) (Conspiracy to Commit Racketeering; 18 U.S.C. §§ 201 and 371 (Conspiracy to Commit Bribery); 18 U.S.C. §§ 371 and 641 (Conspiracy to Commit Theft Against the Government); 18 U.S.C. §§ 371, 1341, 1343, 1346 (Conspiracy to Commit Mail and Wire Fraud); 18 U.S.C. §§ 371 and 1341 (Conspiracy to Commit Mail Fraud)).

The Indictment's racketeering and racketeering conspiracy counts allege two distinct patterns of criminal activity. On the one hand, the Indictment alleges that

2

defendants Asselin and Sotirion used their positions in the Springfield Housing Authority ("SHAA") to rig the bidding process for SHA construction contracts, such that those contractors who wanted to do business with the SHA would have to pay money or other things of value to defendants Asselin and Sotirion in exchange for receiving SHA contracts. *See* Indictment ¶¶ 22-23. This alleged conduct is part of the racketeering and conspiracy to commit racketeering charges. *See* Indictment ¶¶ 36, 56 (Counts 1 and 2)). Only Asselin, Sotirion, and the three contractors are named in these charges.

Second, the Indictment alleges that Raymond Asselin, Sr. and Arthur Sotirion ("defendants Asselin and Sotirion") "convert[ed] SHA resources to the personal, pecuniary, and political benefit of members employed by and persons associated with the Enterprise." *See* Indictment ¶ 24. This part of the Indictment alleges that defendants Asselin and Sotirion directly took SHA money and resources and used them, among other things, to provide home improvements to themselves and the remainder of the Asselin family; support Christopher Asselin's political campaign; and unlawfully direct public housing assistance to those who also provided benefits to defendants Asselin, Sotirion, and other members of the Asselin family. *See* Indictment ¶¶ 24-25. This alleged conduct is included in the RICO charges but also in several additional counts against the Asselin-Sotirion defendants, including the conspiracy to commit theft against the government. *See* Indictment ¶ 65 (Count 85). The Indictment alleges almost one-hundred individual acts of theft on the part of the Asselin and Sotirion defendants. *See* Indictment ¶ 68 (incorporating predicate racketeering acts alleged solely against Asselin and Sotirion defendants); *id.* ¶¶ 69-87 (alleging further acts of theft against same). Also arising out of this portion of the Indictment is a conspiracy and substantive counts of mail and wire

fraud against most of the Asselin and Sotirion defendants, based on an alleged scheme to defraud voters of the 12th Hampden District through the failure to disclose that significant expenditures for defendant Christopher Asselin's campaigns for State Representative were financed by resources unlawfully appropriated from the SHA. *See* Indictment ¶¶ 89-114 (Counts 86-89). This includes allegations of more than twenty individual acts of fraud. The Indictment also alleges a conspiracy and substantive counts mail fraud by defendants Sotirion and Joseph Asselin relating to an alleged scheme to defraud a local insurance company. *See* Indictment ¶¶ 115-26 (Counts 90-94).

None of the three contractors named in the Indictment are alleged to have been involved with any of this conduct, nor are they charged in any of these counts. *Compare* Indictment ¶¶ 22-23 (describing alleged bid rigging process between SHA and "individuals and businesses that had, or were seeking, business in or with SHA"), with Indictment ¶¶ 23-25 (describing remainder of alleged illegal activities, in which those "individuals and businesses" are never mentioned).[1]

### B. Mr. Davis and the Other Contractor Defendants' Alleged Roles in the Charged Activity Are Comparatively Minor.

By any measure, Mr. Davis has a minor role in the offenses alleged in the Indictment. He is charged in only four of the 122 substantive counts.[2] Of the 248 predicate racketeering acts charged in Count I, Mr. Davis is named in only fourteen,

---

[1]    In fact, the only count in which all thirteen defendants are named is Count 3, the conspiracy to commit federal bribery. Indictment ¶ 58. The remainder of the Asselin family are named in this count apparently because the Indictment alleges that they were occasionally the recipients of some of the "things of value" demanded by Asselin and Sotirion from contractors in exchange for SHA contracts.

[2]    Mr. Davis is named in Counts 1-3, (Racketeering, Conspiracy to Commit Racketeering, and Conspiracy to Commit Bribery), as well as one count of obstruction of justice based on his alleged false statement to government investigators that he had not made payments for home improvements for members of the Asselin family. *See* Indictment ¶¶ 36, 56, 58, 134.

4

based largely on checks written over the course of a few months in late 1996 and 1997.

*See* Indictment ¶ 40(d).  The vast majority of the substantive counts and predicate acts

charged in the Indictment relate to events taking place from 1998 to 2003, most occurring

long after Mr. Davis's last contacts with the SHA.  Similarly, defendants Bannick and

Spano are also charged in only a handful of predicate racketeering acts, twelve and eight

respectively.  *See* Indictment ¶¶ 41(d), 42(d).[3]  In addition, Mr. Davis is not charged in

any of the 81 substantive counts of federal bribery, while defendant Spano is charged in

only five, and defendant Bannick only four of those counts.  *See* Indictment ¶ 63.

Moreover, a significant portion of the illegal activity charged in the Indictment, namely

that alleging the appropriation of SHA resources to the benefit of defendants Asselin,

Sotirion, and the Asselin family, as well as the related voter fraud and insurance fraud

claims, is unrelated to the substantive charges against Mr. Davis and the other contractor

defendants.

## Argument

### A.  The District Court Has Wide Discretion to Order Severance Upon a Showing of Prejudice to the Defendant from Joint Trial.

Fed. R. Crim. P. 14 gives the district court authority to sever the trial of a

defendant "[i]f joinder of counts or defendants in an indictment . . . appears to prejudice

the defendant or the government . . . ."  The First Circuit has repeatedly stated that district

courts have "considerable latitude" in deciding severance motions, as they are uniquely

situated to measure the benefits and burdens of severance.  *United States v. O'Bryant*,

998 F.2d 21, 25-26 (1st Cir. 1993).

---

[3]    Defendant Bannick is also charged in five counts of filing false income tax returns.  *See* Indictment
¶¶ 139-40.

**B. Mr. Davis's Trial Should Be Severed from That of the Majority of His Co-Defendants in Order to Avoid Substantial Prejudice to His Right to Have an Impartial Determination of His Guilt or Innocence.**

While a joint trial always results in some degree of spillover prejudice, the Supreme Court has stated that the risk of such prejudice is heightened, and therefore severance becomes more appropriate, in instances such as here where "many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). This case is extremely complex, charging multiple conspiracies, more than 100 substantive counts, and alleging a wide range of illegal activity. Further, the differences in alleged culpability are vast: while defendants Asselin and Sotirion are charged with the great majority of substantive counts, Mr. Davis and the other contractor defendants are named in only a handful of the 122 counts in this Indictment. Moreover, the contractor defendants are not alleged to have anything to do with a significant portion of the criminal activity alleged in the Indictment, namely the alleged misappropriation of SHA resources by defendants Asselin and Sotirion to the benefit of themselves and the Asselin family, as well as the related voter and insurance fraud counts. The complex nature of this case, coupled with Mr. Davis's and the other contractors' relatively minor roles in it, will ensure substantial spillover prejudice and presents a serious risk that the jury will not "make a reliable judgment about guilt or innocence." *Id.*; *see also United States v. Gallo*, 668 F. Supp. 738, 751-52 (E.D.N.Y. 1987).

*Zafiro* also counsels that the risk of prejudice is greater "when evidence that the jury should not consider against a defendant and that would not be admissible if a

6

defendant were tried alone is admitted against a codefendant." *Id.*  Such prejudice is particularly problematic as to Mr. Davis, as it is likely that a substantial amount of evidence that would be admissible against several co-defendants would not be admissible against him.  All of the evidence relating to the alleged misappropriation of SHA resources by defendants Asselin and Sotirion is unrelated to the substantive charges against Mr. Davis and the other contractor defendants, and thus would be inadmissible against them were they tried alone.  *See Gallo*, 668 F. Supp. at 753.  This will likely amount to a substantial portion of evidence in this case.  Furthermore, a vast majority of the predicate racketeering acts alleged in the Indictment that relate to the two conspiracies with which Mr. Davis is charged occurred from 1999 to 2003.  The only predicate acts alleged in the Indictment involving Mr. Davis, however, occurred over a few months in late 1996 and 1997.  The government has conceded during pre-trial discovery that, at the latest, Mr. Davis's last contacts with the SHA were in June 1998.  *See* Defendant Peter Davis's Motion to Compel Compliance with the Court's Order that the Government Provide a Bill of Particulars, Attachment 2 (filed Oct. 13, 2005).  It is thus highly questionable whether any evidence of racketeering activity that occurred after Mr. Davis had ceased contact with the SHA would be admissible against him if tried alone.  Once again, this would likely amount to a substantial portion of evidence introduced at trial.[4]  The likelihood that a jury will be able to ignore this evidence as to Mr. Davis is slight to say the least.  The difficulties of a joint trial in such cases were noted in *Gallo*: "There are 'manifest' difficulties in cases such as this of

---

[4]    The government has acknowledged that the last bid Mr. Davis made on any SHA contracts was June 8, 1998.  More than two-thirds of the predicate racketeering violations charged in the Indictment occurred after this date.  *See* Indictment ¶¶ 38-54.

compartmentalizing all of the independent evidence and of focusing the jury's attention on only the non-hearsay, non-excluded evidence as to each defendant and each charge." 668 F. Supp. at 753 (internal citation omitted). Here, as in *Gallo*, Mr. Davis would be substantially prejudiced by a joint trial with all other co-defendants.

### C. Any Benefits of Trying All Defendants Jointly Are Far Outweighed By the Likelihood of Prejudice to Mr. Davis and the Other Burdens that Joint Trial Would Present.

In deciding severance motions, district courts typically weigh the benefits — traditionally in the form of conservation of judicial and prosecutorial resources — from joint trial, against the harm from failure to sever, principally in the form of prejudice to the defendant's rights. *See id.* As courts have increasingly recognized, the benefits of joint trial are greatly diminished, and the harms increased, when the indictment charges a large number of defendants in a complex case involving many counts and multiple conspiracies, as is the case here. *See, e.g.*, *United States v. Casamento*, 887 F.2d 1141, 1151-53 (2d cir. 1989) (counseling district courts to require the government to justify joint trial in "mega-trials" where government's case likely to last four months or more, and requiring "compelling justification for joint trial" when more than ten defendants involved); *United States v. Shea*, 750 F. Supp. 46, 48-50 (D. Mass. 1990) (citing *Casamento* in support of grant of motion to sever trial involving 23 defendants, 57 counts, and 99 overt acts); *Gallo*, 668 F. Supp. at 754-58. Balancing the benefits and burdens of a joint trial in the instant case counsel strongly in favor of severance.

1) <u>Prosecutorial resources will not necessarily be conserved by joint trial.</u>

While conventional wisdom has held that severance created significant burdens on the government, which would be required to present the same evidence at multiple trials, in cases like this where multiple defendants are charged with many different

criminal acts (thus requiring different evidence to prove their guilt), the presumption of prosecutorial prejudice from multiple trials is diminished. *See Gallo*, 668 F. Supp. at 756-57. This is particularly the case here where, even as described in the Indictment, the alleged illegal "Enterprise" actually involves two fairly distinct alleged patterns of criminal activity. *Id.* at 758. Severance can be granted in a way that minimizes the necessity for the government to introduce evidence more than once, and thus minimizes any burden on the government of more than one trial. Furthermore, trying all defendants together in a complex case such as this will likely result in a large number of trial disputes relating to, among other things, the admissibility of evidence against the various defendants, which will add length and complexity to the trial. Such disputes can largely be avoided by a well-crafted severance order, with the result that two trials may not greatly exceed in length one "mega-trial," and could possibly result in less trial time. *See id.* at 755.

2)  The likely burden on judicial resources and substantial related costs of joint trial counsel in favor of severance.

Similarly, while with simpler cases involving multiple defendants the presumption was that judicial resources were conserved by joint trial, courts have increasingly found that in these large "mega-trial" RICO cases, judicial resources are often unduly burdened by joint trial. First, given the large number of defendants and defense counsel, and the likelihood of substantial evidentiary disputes and consequent need for extensive limiting instructions, the task of trial management becomes exceedingly difficult. *See Casamento*, 887 F.2d at 1153; *Gallo*, 668 F. Supp. at 755; *United States v. Andrews*, 754 F. Supp. 1161, 1173 (N.D. Ill. 1990). Further, the monopolization of the court's time that one complex, months-long trial will necessarily

9

entail creates difficulties for the court in managing its docket. *See Andrews*, 754 F. Supp. at 1173 n.12 (detailing the strain on performance of judicial duties resulting from lengthy complex trials and concluding that "the impact of a mega-trial on judicial routine can be disastrous"). This is not only problematic for the court, but courts have also noted the substantial burden that such a trial places on the other litigants with cases pending before the court, whose right to the fair and efficient administration of justice may be hampered. *United States v. Shea*, 750 F. Supp. 46 (D. Mass. 1990); *Andrews*, 754 F. Supp. at 1173. Courts have also cited as an additional ground for severance the substantial adverse impact that such a lengthy and complex trial may have on jurors. *See Casamento*, 887 F.2d at 1153; *Shea*, 750 F. Supp. at 50.

In sum, given the substantial amount of prejudice Mr. Davis will likely suffer from joint trial, coupled with the other substantial burdens of joint trial and relatively minor benefits, Mr. Davis's case should be severed from that of several of the co-defendants.

**CONCLUSION**

For the foregoing reasons the defendant respectfully requests that the Court grants Mr. Davis's motion to sever as requested above. In order to minimize the potential prejudice both to Mr. Davis and the government, Mr. Davis requests that his trial be severed from that of defendants Asselin, Sotirion, and the remainder of the Asselin family, and that he be tried along with the two other charged contractors, defendants Spano and Bannick.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
Elizabeth K. Train (BBO # 650682)
William J. Trach (BBO #661401)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: December 19, 2005

LIBA/1655700.1

11