UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**DEFENDANT PETER DAVIS'S REPLY MEMORANDUM IN SUPPORT OF HIS RENEWED MOTION FOR A BILL OF PARTICULARS**

Defendant Peter Davis hereby submits this Reply Memorandum in Support of His Renewed Motion for a Bill of Particulars.

### INTRODUCTION

This is a dispute about whether the government has satisfied its obligation to particularize its charges against defendant Peter Davis, charges that the Court has already found were insufficiently specific. As explained below, the government has not done so, and further particulars should be ordered. The government's suggestion that the specific information Mr. Davis seeks is "readily identifiable" in the voluminous automatic discovery it has made available is inaccurate. Indeed the information the government claims "should have been plainly obvious" to counsel relates to events in 1994, even though the focus of Mr. Davis's motion is on alleged benefits Mr. Davis received <u>as a result of</u> actions he allegedly took in 1996 and 1997.

Strangely, the government has used this dispute as an opportunity for an ad hominem attack on Mr. Davis's counsel, leveling accusations that counsel is, among other things, "deliberately obtuse," "going through the motions," and "inexperienced." The government's remarks are not only unprofessional, they are preposterous. Confronted with a 148-page

Superseding Indictment containing charges the government will not specify, and automatic discovery in the form of hundreds of boxes of documents the government has not organized, counsel is merely doing its best to defend Mr. Davis.  No matter how much the government resents the efforts by Mr. Davis's counsel to defend its client, the government should refrain from such unprofessional comments.

## ARGUMENT

**I.    THE INFORMATION WHICH MR. DAVIS SEEKS IS NOT "READILY IDENTIFIABLE" IN THE MATERIALS MADE AVAILABLE BY THE GOVERNMENT.**

**A.    Background.**

On June 30, 2005, Mr. Davis filed a Motion for a Bill of Particulars and to Compel Discovery, seeking, *inter alia*, a bill of particulars that identifies the contracts he bid on and any benefits he received from Springfield Housing Authority ("SHA") officials.  After a hearing on August 25, the Court (M.J. Neiman) on September 9, 2005 ordered the government to "provide Defendant [Davis] with a bill of particulars identifying (a) all contracts and subcontracts for which a bid was submitted to SHA by or on behalf of Defendant, and (b) all actions allegedly taken by SHA <u>as a result of</u> Defendant's having given, offered, and/or provided something of value."  *See* September 9, 2005 Order (emphasis added).

In response to the Court's Order, the government provided a purported bill of particulars on September 19, 2005.  With respect to any alleged benefits provided to Mr. Davis as a result of Mr. Davis having allegedly given something of value, the government stated as follows:

> Regarding actions taken by SHA <u>as a result of</u> the defendant having given, offered, and/or provided something of value, those actions consisted of steering contracts to P.J. Richfield, Inc.; directing general contractors to use P.J. Richfield, Inc. as a sub-contractor; permitting the continued use of P.J. Richfield, Inc. as a contractor despite sub-standard work; directing SHA employees to finish work for P.J. Richfield, Inc.; permitting the use of SHA supplies by P.J. Richfield, Inc.;

2

certifying the completion of work that had not been completed; and causing more lenient enforcement of site inspections and wage compliance for P.J. Richfield, Inc.

See September 19, 2005 Letter from William M. Welch II to James C. Rehnquist (attached as Exhibit 2 to the Declaration of James C. Rehnquist, filed with the Court on January 10, 2006) (emphasis added).

On October 13, 2005, Mr. Davis filed a Motion to Compel Compliance with the Court's Order that the Government Provide a Bill of Particulars. Specifically, Mr. Davis argued that the government's generalized description of alleged SHA benefits provided no particulars as to the government's charges beyond the same sort of general, categorical allegations contained in the Superseding Indictment, which were the object of Mr. Davis's motion. On November 4, 2005, Magistrate Judge Neiman denied Mr. Davis's motion to compel without prejudice, noting:

> If, after reviewing the voluminous automatic discovery produced by the Government (see footnote 1 to Defendant's motion), Defendant cannot <u>readily identify</u> particular actions in his favor taken by the Springfield Housing Authority <u>as a result of</u> his having allegedly given something of value, e.g., permitting ongoing contracts despite substandard work or certifying the completion of uncompleted work, Defendant may refile his motion by December 30, 2005, to which the Government shall respond by January 13, 2006.

November 4, 2005 Order (emphasis added).

**B.     Mr. Davis's Renewed Motion for Particulars.**

Mr. Davis renewed his motion, arguing that the particulars he seeks were not "readily identifiable" in the government's documents. In response, the government has cherry-picked five documents from the 72 boxes of documents it identified, and contends that their significance "should have been plainly obvious to [Davis's counsel]." *See* Government's Opposition, at 4. The government asserts that these five documents, on their face, obviously demonstrate alleged "benefits" Mr. Davis received as a result of alleged payments made by Mr. Davis. *See id.* at 4-6.

3

A review of these documents makes clear, however, that <u>none</u> of these documents, on their face, necessarily demonstrates benefits received by Mr. Davis as a result of making alleged payments.

First, according to the government, the five documents identified all relate to benefits Mr. Davis allegedly received in 1994 <u>as a result of</u> his work on an SHA project. *See* Government Opposition, at 4-6. According to the Superseding Indictment, however, the alleged payments made by Mr. Davis were made at least two years after that – in 1996 and 1997. *See* Superseding Indictment, ¶ 40(d). Because <u>all</u> of the payments alleged to constitute predicate acts occurred in 1996 and 1997, any alleged "benefits" received by Mr. Davis as a result of making these payments would necessarily have to have occurred <u>after 1996 or 1997</u>. Thus, the government's suggestion that it "should have been plainly obvious" to Mr. Davis's counsel that these five documents fleshed out the government's general allegations – even though these documents allegedly reflect benefits to Mr. Davis in 1994, at least two years before any payments were made – is without merit.

Second, even apart from the timing issue above, the significance of these documents is not "plainly obvious." Indeed, the documents identified by the government are by no means self-explanatory on their face as reflecting alleged "benefits" provided to Mr. Davis as a result of any payments made. Specifically:

- *Exhibit 1*: According to the government, Exhibit 1 is a certification of completion for a 1994 project on which Mr. Davis worked. This document, in and of itself, does not reflect any "benefits" allegedly given to Mr. Davis as a result of payments made. Moreover, according to the government, the documents contained in this exhibit were located in two separate boxes, *see* Government Opposition, at 4-5; it is not clear from the government's statement whether the entire exhibit appeared in two separate boxes, or whether portions of the exhibit were taken from two separate boxes. Either way, the document itself does not reflect any "benefit" conferred on Mr. Davis as a result of any thing of value provided by Mr. Davis.

4

- *Exhibit 2*: According to the government, Exhibit 2 is a letter, dated after the certification of completion, which concerns the drafting of a punch list. There is no project or contract number contained on this document; accordingly, it is not clear on its face that this document specifically relates to the same project referenced in the certification of completion in Exhibit 1.

- *Exhibit 3*: According to the government, Exhibit 3 is a "self-explanatory letter," which estimates "how much work remains to be completed at several of the developments required to be completed by October 17, 1994." *See* Government Opposition, at 5. As with Exhibit 2, there is no project or contract number contained on this document; accordingly, it is not clear on its face that this document specifically relates to the same project referenced in the certification of completion in Exhibit 1.

- *Exhibit 4*: According to the government, Exhibit 4 is a punch list which "shifts some of Davis's contractual responsibilities to SHA employees." *See* Government Opposition, at 5. Nowhere in this document, however, is the shifting of Mr. Davis's responsibilities discussed. The document is an undated document titled, "Punch List Riverview Apartments." The document contains no project or contract number, and thus no indication that it relates to the same contract referenced in the certification of completion in Exhibit 1. There is no indication that Mr. Davis ever reviewed, received a copy of, or acquiesced to this document in any way. Moreover, the document contains unidentified handwritten notes, with a circle next to the letters "SHA"; certain entries on the punch list are circled. From this alone, the government asserts that it is somehow "plainly obvious" that this document shifted some of Mr. Davis's contractual responsibilities to SHA employees. Obviously, counsel for Mr. Davis could not have been expected to attach any significance to this document, let alone assume that this document acted to shift Mr. Davis's contractual responsibilities.

- *Exhibit 5*: According to the government, Exhibit 5 is a "handwritten request from defendant Davis to co-defendant Sotirion in which defendant asks co-defendant Sotirion to have SHA painters complete some of defendant Davis's contractual obligations." *See* Government Opposition, at 5. The document is unsigned, and has no reference to any particular project name or contract number; accordingly, counsel for Mr. Davis would have no reason to believe that this document was somehow related to the other exhibits submitted by the government.[1]

---

[1] Notably, Special Agent Hedges has represented to counsel for defendant that, while executing search warrants at the Springfield Housing Authority and other locations, the FBI simply dumped documents into boxes (or other containers available such as baskets or bags). *See* Declaration of Kathleen Luz, dated February 3, 2006 ("Luz Decl."), at ¶ 5. Thus, because of the haphazard manner in which the documents were collected, counsel for Mr. Davis cannot be sure that this document relates to any of the documents contained in the same box – especially since this document has no reference to a particular project name or contract number.

Finally, the government ignores the fact that that Mr. Davis, unlike the government, does not have the benefit of a four year investigation (and the benefit of insider witness testimony) to provide context for the issues in question.  Mr. Davis and his counsel reviewed the hundreds of thousands of pages identified by the government as potentially containing this information armed only with the generalized descriptions of such benefits contained in the Superseding Indictment and the government's purported bill of particulars.  As noted above, the government's purported bill of particulars contains generalized, categorical allegations of purported benefits, *see* September 19, 2005 letter; the Superseding Indictment (the object of Mr. Davis's original motion) contains similar categorical allegations.  *See* Superseding Indictment, ¶ 40 (alleging, *inter alia*, that defendants Asselin and Sotirion "steer[ed] sub-contracts" to Mr. Davis).  Armed only with these empty generalities, it is inconceivable that Mr. Davis could immediately have attached significance to these documents.

Had the government made a good faith effort to provide the particulars ordered by the Court, perhaps Mr. Davis and his counsel could have "readily identified" these types of documents.  For example, the government could easily have stated in its bill of particulars something like, "SHA issued a certificate of completion on the 1994 504/ADA project even though the work was not completed."  This information hardly amounts to the "detailed disclosure of the government's evidence at trial" that the government has consistently enlisted as its basis for refusing to particularize its charges.  *See* Government's Opposition, at 2 (citing *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993)).  It would not have burdened the government in any way to provide such additional information, yet the government refused to do so, choosing instead to provide Mr. Davis with empty generalities and sent Mr. Davis and his counsel to search for a needle in a hay stack.

6

**C.     The Government's Assertion That Mr. Davis's Counsel Did Not Act Diligently In Reviewing The Documents Is Baseless.**

The government's assertion that counsel for Mr. Davis is being "deliberately obtuse," is not "diligent," or that counsel simply lacks the "experience" necessary to identify such documents is likewise without merit. At the risk of dignifying such ridiculous assertions with a response, Mr. Davis believes it necessary to respond to a few points.

Special Agent Clifford Hedges, in his affidavit, asserts that counsel for Mr. Davis told him (on more than one occasion) that "they ha[d] no idea what they are looking for." *See* Affidavit of Clifford W. Hedges, at ¶ 3. Counsel for Mr. Davis concedes that they truthfully made such statements. In fact, it was reasonable for counsel to do so; counsel for Mr. Davis did not want to share its defense strategy or work product with the government by identifying the materials counsel believed to be relevant to the defense. *See* Luz Decl., at ¶ 3. Moreover, more recently when counsel was searching for any documents reflecting alleged "benefits" given to Mr. Davis as a result of alleged payments made, counsel certainly did not know precisely which documents it was looking for. Luz Decl., at ¶ 4. Indeed, this was the whole point of Mr. Davis's motion; Mr. Davis sought assistance from the government in identifying such documents and the government refused to provide such assistance. Accordingly, counsel for Mr. Davis was forced to review thousands of pages looking for such documents, without knowing precisely which documents contained this information.

Moreover, the government asserts that 50 of the 72 boxes of documents contained SHA contracts which were organized alphabetically; accordingly, the government surmises that it would have been easy for Mr. Davis's counsel to identify any documents reflecting benefits provided to Mr. Davis as a result of any alleged payments made by Mr. Davis. *See* Government's Opposition, at 6 n.1. The government is simply wrong. Contrary to the

7

government's assertion, not all of the P.J. Richfield contracts could be found in one box; indeed, through the extensive searches conducted, counsel for Mr. Davis found P.J. Richfield contract and related documents located in numerous boxes, and certainly not organized alphabetically in one location as suggested by the government. *See* Luz Decl., at ¶ 6. In addition, Special Agent Hedges has represented to counsel for Mr. Davis that, while the FBI was executing search warrants on the Springfield Housing Authority, the FBI simply dumped the SHA's files into boxes or any other container available to hold such documents. *See* Luz Decl., at ¶ 5. Accordingly, because the documents were haphazardly collected by the FBI, counsel for Mr. Davis <u>necessarily</u> had to review each and every box to determine whether such documents were contained in <u>any</u> of the boxes identified by the government.[2] *Id.* Finally, the government does not explain why, if only a few of these 50 boxes contained the information Mr. Davis seeks, the government did not simply identify those few boxes rather than telling counsel for the defendant that such information could be found in any one of those boxes.

In sum, the government has not – and cannot – demonstrate that these documents were "readily identifiable," or that Mr. Davis's counsel did not make a good-faith effort to review these documents. In fact, it is clear that, armed only with the generalized description of alleged "benefits" provided in the Superseding Indictment and the government's purported bill of particulars, it would have been virtually impossible for Mr. Davis to locate such information. Moreover, it is obvious from the government's opposition that the government could easily have identified this information, but instead chose to sit back and watch as counsel for the defendant reviewed hundreds of thousands of pages of documents. Accordingly, Mr. Davis's motion should be granted.

---

[2] Had counsel for Mr. Davis <u>not</u> reviewed each and every box of documents, the government would have accused them of not being diligent. The government cannot have it both ways.

8

## CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests that this Court order the government to file a bill of particulars that complies with the Court's order by specifically identifying all actions allegedly taken by SHA as a result of Defendant's having given, offered, and/or provided something of value.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
Elizabeth K. Train (BBO # 650682)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: February 3, 2006

## CERTIFICATE OF SERVICE

I, James C. Rehnquist, counsel for defendant, hereby certify that a copy of the foregoing document and the accompanying Declaration of Kathleen Luz has been served on counsel of record electronically, and has been served on the following individuals by first-class mail, postage pre-paid, on this 3rd day of February, 2006:

Roy H. Anderson
935 Main Street
Springfield, MA 01103

 /s/ James C. Rehnquist
James C. Rehnquist

LIBA/1672236.2

9