UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-N-04-30033-MAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RAYMOND ASSELIN, SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S RESPONSE TO
DEFENDANT DAVIS' MOTION FOR SEVERANCE

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files this response to defendant Davis' Motion for Severance under Rule 14.

Defendant Davis' motion should be denied because he has not show that "actual prejudice" will result from a joint trial. In addition, judicial economy will be served best by trying all of the defendants together.

I.  The Court Should Not Sever Defendant Davis' Trial Because He Has Not Shown That He Will Suffer Actual Prejudice From Joinder Of His Trial With His Co-Defendants Or That The Need For Severance Outweighs Judicial Ecomony Concerns.

The First Circuit's "rule is that those 'who are indicted together should be tried together.'" United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 2001)(quoting United States v. O'Bryant,

1

998 F.2d 21, 25 (1st Cir. 1993)). See also United States v. Capleton, 350 F.3d 231, 239 (1st Cir. 2004)(reaffirming general rule that "`defendants charged in the same indictment should be tried together.'")(quoting United States v. Houle, 237 F.3d 71, 76 (1st Cir. 2001)); United States v. Sotomayor-Vazquez, 249 F.3d 1, 16-17 (1st Cir. 2001)(stating that "[t]here is a strong preference in the federal system for jointly trying defendants involved in related crimes."). "The federal courts have long recognized that consolidated trials tend to promote judicial economy, conserve prosecutorial resources, and foster the consistent resolution of factual disputes common to properly joined defendants.'" United States v. DeLuca, 137 F.3d 24, 36 (1st Cir. 1999)(quoting United States v. Josleyn, 99 F.3d 1182, 1188 (1st Cir. 1996).

To prevail upon a severance motion based upon a claim of prejudicial spillover, "a defendant must show that the joinder of offenses here resulted in `actual prejudice,' which we define as the `substantial and injurious effect or influence in determining the jury's verdict.'" United States v. Melendez, 301 F.3d 27, 36 (1st Cir. 2003)(quoting United States v. Edgar, 82 F.3d 499, 508 (1st Cir. 1996)). To overcome the district court's presumption in favor of joinder, the prejudice must be "so pervasive that it would be likely to effect a miscarriage of justice." DeLeon, 187 F.3d at 63 (citing United States v. Pierro, 32 F.3d 611, 615 (1st

Cir. 1994)). In other works, there must be a "`a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence.'" Sotomayor-Vazquez, 249 F.3d at 16-17 (quoting Zafiro, 506 U.S. at 539).

"This requirement means more than establishing that the defendant might have had a better chance of acquittal in a separate trial." DeLeon, 187 F.3d at 63 (citing Zafiro, 506 U.S. at 540). A defendant "is not entitled to severance merely because he may have a better chance of acquittal if tried separately." United States v. Rogers, 121 F.3d 12, 16 (1st Cir. 1997)(citing Zafiro v. United States, 506 U.S. 534, 540 (1993)).

The burden of showing actual prejudice also means establishing a level of prejudice greater than that inherent in trying multiple counts and multiple defendants together in any joint trial. DeLuca, 137 F.3d at 36; Rose, 104 F.3d at 1415; United States v. Yefsky, 994 F.2d 885, 896 (1st Cir. 1993). The fact that a co-defendant may have engaged in other bad acts does not suffice to establish "actual prejudice." DeLeon, 187 F.3d at 63 (holding that repeated inquiries about third-party fear based on co-defendant's violent nature and co-defendant's prior drug conviction did not warrant severance); DeLuca, 137 F.3d at 37 (evidence of violent assault by co-defendant not warrant severance for defendant). The relative disparity between the

weight of the evidence between defendants also does not warrant severance. Id. (citing United States v. Rawwad, 807 F.2d 294, 295 (1st Cir. 1986)(stating that "[t]he difficulty with this argument lies in the case law holding to the contrary.")).

The First Circuit reverses "a decision to deny a motion for severance only upon a showing of strong prejudice, demonstrating a manifest abuse of discretion that deprived the defendant of a fair trial." United States v. Nason, 9 F.3d 155, 158 (1st Cir. 1993).

In this case, defendant Davis makes precisely the same arguments that the First Circuit routinely has rejected in these types of severance claims. Defendant Davis' argument of prejudicial spillover hinges on the following core claims: first, the complexity and breadth of the case; second, the disparity in culpability; third, a substantial amount of evidence admissible at a joint trial would be inadmissible in a severed trial; and fourth, litigation economy favors severance. None of these claims, viewed separately or together, support severance.

Defendant Davis overstates the complexity of the case. The case is not complex. Boiled down to its essence, the case is about graft and theft. There is nothing conceptually difficult or factually complex about the payment of bribes and kickbacks or billing personal expenses to the Springfield Housing Authority. What makes the case more unique than most is simply that there

was a lot of graft and theft, and that this conduct occurred over an extended period of time.

Contrary to defendant Davis' argument, see Motion for Severance (hereinafter "Motion"), pgs. 2-3, the evidence of bribery and theft of SHA resources in fact overlaps and applies to SHA contractors such as defendant Davis. As an initial matter, defendant Davis incorrectly asserts that Paragraph 24 of the Indictment "alleges that Raymond Asselin, Sr. and Arthur Sotirion . . . `convert[ed] SHA resources . . ." Id. at 3. Paragraph 24 actually reads as follows:

> 24. It was an objective of the defendants to convert SHA resources to the personal, pecuniary, and political benefit of members employed by and persons associated with the Enterprise by using SHA funds, materials, personnel, and resources to, among other things, perform home maintenance and make home improvements at personal residences owned by members employed by and persons associated with the Enterprise, support political campaigns and candidates endorsed by members employed by and persons associated with the Enterprise, and direct public housing assistance to members employed by and persons associated, either directly or indirectly, with the Enterprise.

The term "defendants" includes defendant Davis, not just defendants Asselin, Sr. and Sotirion. The phrase "the personal, pecuniary, and political benefit of members employed by and persons associated with the Enterprise" encompasses defendant Davis because he is a member of the RICO enterprise. See United

5

States v. Shifman, 124 F.3d 31, 36 (1st Cir. 1997)(RICO liability extends to those "plainly integral to carrying out" the enterprise's activities). Therefor, it is inaccurate to say that he has not been charged with the conversation of SHA resources.

The Government will introduce evidence that members of the Enterprise, such as defendant Davis, benefitted from the theft of SHA resources. The Government will admit both documents and witness testimony that SHA employees performed some of defendant Davis' contractual obligations on SHA time. For example, Exhibit A is a copy of defendant Davis' handwritten notes in which he requested defendant Sotirion to have SHA painters complete some of defendant Davis' contractual work. The net effect of having SHA painters complete defendant Davis' contractual work on SHA time is that defendant Davis' costs were lower, thus increasing his profits.

Exhibit A is not the only instance of defendant Davis or an SHA contractor receiving the benefit of "converted" SHA resources. Defendant Davis and other contractors, such as defendant Spano, received goods and materials, which previously had been purchased by SHA, from SHA's purchasing agent either for free or at a substantially discounted rate in cash and then installed those goods and materials at various job sites. Once again, this practice financially benefitted defendant Davis and other contractors because the use of stolen SHA materials lowered

their overall costs, thus increasing their profits.

Defendant Davis also inaccurately states that other charges alleged in the indictment have no connection to defendant Davis or the other contractors named in the indictment. Counts 87 through 89 charge various defendants with mail fraud and wire fraud based upon former State Representative Christopher Asselin's false campaign finance reports submitted to the Commonwealth of Massachusetts. Exhibit B, for example, describes how defendant Bannick, one of the three contractors who defendant Davis argued had no involvement in this charges, see Motion, pg. 4, fraudulently inflated an invoice in order to pay for prizes at defendant Christopher Asselin's golf fundraiser. The Indictment specifically alleges this theft as Racketeering Act 133a-d.

Defendant Davis certainly cannot claim any lack of association with defendant Christopher Asselin's political campaigns. Defendant Davis in fact was involved in his campaigns, and as late as May, 1999, defendant Davis had contributed to his state representative campaigns. See Exhibit C. One reason SHA vendors made such contributions was to secure both present business as well as any future business with SHA. Defendant Davis was no exception.

It is correct that, unlike the thefts benefitting the members of the Asselin and Sotirion family, the Government has not alleged in the Indictment discrete instances of SHA thievery

that benefitted defendant Davis or the other contractors who were members of the RICO enterprise. The reason for that, however, is because SHA's payment of personal expenditures for members of the Asselin and Sotirion families was much easier to identify than, for example, the specific day of the week that a SHA painter completed defendant Davis' contract work on SHA time. As the court knows, the Government does not have to allege every RICO predicate act or overt act of a conspiracy in order for the evidence supporting the act to be admissible. See United States v. Anguilo, 847 F.2d 956, 964 (1st Cir. 1988)(holding that the commission of "overt acts" not required for a RICO conspiracy). See also United States v. Bryan, 122 F.3d 90, 93 (2d Cir. 1997) (conspiracy conviction may rest upon unalleged overt act). Therefore, the mere fact that the Government has not charged as an overt act every theft of SHA resources that benefitted defendant Davis does not bar the admission of that evidence or negate the overlap between the bribery evidence and theft evidence.

Defendant Davis' argument is nothing more than standard fare, non-prejudicial spillover that does not warrant a severance. "`[A] measure of evidentiary spillover is a foreseeable concomitant of virtually every joint trial, yet seldom indicates undue prejudice.'" DeLuca, 137 F.3d at 36 (quoting Yefsky, 994 F.2d at 896). The fact that members of the

Asselin and Sotirion families may have stolen more from SHA than defendant Davis does not amount to undue prejudice. Motions for severance have been denied in other cases involving more lurid crimes, such as murder, which have been admitted against one defendant, but not against other defendants. See e.g. United States v. Delpit, 94 F.3d 1134, 1143-44 (8th Cir. 1996)(murder for hire); United States v. Anderson, 89 F.3d 1306, 1312 (6th Cir. 1996)(murder and attempted murder); United States v. DeVillio, 983 F.2d 1185, 1192 (2nd Cir. 1993)(attempted murder); United States v. Alvarez, 755 F.2d 830, 858 (11th Cir. 1985) (murder of federal agent).

Finally, jury instructions can guard against the possibility of prejudicial spillover. Melendez, 301 F.3d at 36. The First Circuit repeatedly has upheld denials of severance motions where "the district court took appropriate measures to safeguard against potential spillover prejudice by instructing the jury to consider separately the charges and the evidence as to each defendant." DeLeon, 187 F.3d at 63 (citations omitted).

Contrary to defendant Davis' second argument, defendant Davis' culpability and role actually is much greater than he suggests. While defendant Davis' mathematical formulation of his culpability and role seems facially appealing at first blush, see Motion, pg. 4-5 ("charged in only four of the 122 substantive counts", "named in only fourteen" RICO acts), in actuality

9

defendant Davis' culpability and role is much greater.[1]

First, as the Government has informed defendant Davis on several prior occasions through pleadings and during discovery sessions before the magistrate judge, defendant Davis committed a number of racketeering acts prior to 1996. The Government elected to allege as racketeering acts only those things of value paid in the form of check. The Government, however, intends to introduce evidence of things of value given by defendant Davis to defendants Asselin, Sr. and Sotirion prior to 1996 as racketeering acts. For example, Exhibit D is a copy of defendant Davis' handwritten notes. As the highlighted portion shows, defendant Davis calculated his net profit from a $621,737.00 contract with SHA as $55,612. Defendant Davis then divided that net profit by three, arriving at a figure of $18,537, next to which defendant Davis wrote, "Owed to Art & Ray by Pete."

In fact, the length of time over which defendant Davis committed racketeering acts equaled or exceeded some of the other defendants. As early as 1990 when P.J. Richfield began receiving contracts from SHA, defendant Davis had undisclosed business

---

[1] As a matter of law, the fact that defendant Davis only has been named in fourteen of the 248 racketeering acts does not support a severance. United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995)(fact that defendant "named in less than ten percent of all the overt acts charged in the indictment and that his alleged role in the conspiracy was significantly less than that of his codefendants" did not warrant severance.).

interests with defendants Asselin, Sr. and his son, Joseph Asselin. See Exhibit E (letter evidencing defendant Joseph Asselin's interest in P.J. Richfield, but mailed to defendant Asselin, Sr.'s personal residence at 115 Mayfair). The reason that defendant Asselin, Sr. initially steered contracts to defendant Davis was to reduce joint debts that they had incurred from real estate deals that had gone south in the late 1980s.

Second, many of the racketeering acts alleged to have been committed by G & R Associates, Manny's Plumbing & Heating and others are attributable to defendant Davis. The Government's proof will show that defendants Asselin, Sr. and Sotirion rigged the bidding process in order to steer contracts to contractors who paid bribes. The evidence will show that defendants Asselin, Sr. and Sotirion required defendant Davis and other contractors to collude in submitting artificially inflated, losing bids on some contracts in order to win contracts on other occasions. The losing bidders, however, often were rewarded by becoming sub-contractors for the winning bidders.

For example, when defendant Davis won a contract, defendant Davis instructed his company, P.J. Richfield, to use G & R Associates as a sub-contractor. As early as 1993, defendant Sotirion created invoices under the letterhead of G & R Associates, Inc. and submitted the invoices on behalf of G & R Associates for re-imbursement. See Exhibit F. By agreeing to use

G & R Associates, Inc. as a sub-contractor, defendant Davis essentially funded the payment of things of value from G & R Associates and other contractors to defendants Asselin, Sr. and Sotirion. See Exhibit G.

Defendant is incorrect in stating that much of the evidence admitted at a joint trial would not be admissible during a severed trial. For example, the racketeering acts committed by other members of the racketeering enterprise from 1999 through 2003 would be admissible against defendant Davis in a severed trial. The Government must prove as an essential element of the RICO charges "a pattern of racketeering activity." To be part of the same pattern, the racketeering acts must be "related" and must "amount to or pose a threat of continued activity." Sedima, S.P.R.L. v. Imrex Co. Inc., 473 U.S. 479, 496 n.14 (1985); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 238, 240 (1989). Racketeering acts committed between 1999 through 2003 conclusively establish "continued activity" and prove an essential element of the charged crimes. Moreover, defendant Davis aided the perpetuity of the racketeering activity by lying to federal investigators about not having paid for home improvements at the personal residence of members of the Asselin family in April, 2003. See Count 107.

Finally, a severed trial will be a heavy drain on judicial and prosecutorial resources. The Government essentially would

put on the same evidence and call the same number of witnesses at both trials. The Government will have to call the same SHA contractors to testify that defendants Asselin, Sr. and/or Sotirion solicited bribes for the enrichment of themselves personally or their family members; the same third party witnesses to trace the expenditure of the bribes on goods and materials for home improvements at the personal residences of members of the Asselin and Sotirion families; the same SHA employees to describe the work that they did on SHA time at the various Asselin and Sotirion personal residences or for defendant Davis and other contractors; and other cooperating witnesses to establish the various defendants' knowledge and intent. Therefore, a severed trial would not be in the interest of judicial economy.

II. Conclusion

Based upon the foregoing, the Government respectfully requests that the court deny defendant Davis' Motion for Severance.

Filed this 10th day of February, 2006.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

_____
WILLIAM M. WELCH II
Assistant United States Attorney

13

CERTIFICATE OF SERVICE

Hampden, ss.                                Springfield, Massachusetts
                                            February 10, 2006


   I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mailing said motion to:

all defense counsel of record

_____
WILLIAM M. WELCH II
Assistant United States Attorney