UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-N-04-30033-MAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER DAVIS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S APPEAL OF ORDER GRANTING
DEFENDANT DAVIS' RENEWED MOTION FOR A BILL OF PARTICULARS**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files this appeal to Magistrate Judge Neiman's order granting defendant Davis' Renewed Motion for a Bill of Particulars.

The order should be reversed because the defendant's motion is not a bill of particulars, but rather an attempt to glean more evidentiary detail about the Government's case and force the Government to disclose its theory of prosecution. The caselaw specifically disapproves of the use of a bill of particulars as a discovery tool for such information. Finally, the court's order requiring the Government to produce a preliminary exhibit list on July 24, 2006 renders the defendant's need for a bill of particulars moot.

I. **Background**

Peter Davis formerly owned and operated P.J. Richfield, Inc., a company that did business with the Springfield Housing Authority. On July, 2004, the grand jury returned an indictment against, among others, defendant Davis, charging him with RICO, Conspiracy to Commit RICO, Conspiracy to Commit Bribery, and Obstruction of Justice for criminal conduct that began by at least 1992 and continued through April, 2003. In January, 2005, the grand jury returned a Superseding Indictment that re-alleged the same crimes against defendant Davis.

Both indictments were very specific and detailed. For example, the Superseding Indictment contained the following caption and language:

**Objectives of the Racketeering Activity**

> It was an objective of the defendants to reward those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by defendants ASSELIN, SR. and SOTIRION using their positions within SHA to award contracts, steer sub-contracts, purchases goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses.

Superseding Indictment, ¶ 23. The Superseding Indictment also contained the following caption and language:

**Manner and Means of the Racketeering Enterprise**

> Defendants ASSELIN, SR. and SOTIRION and their associates conducted and participated in the conduct of the affairs of the Enterprise by then rewarding . . . P.J. Richfield, Inc. . . . with contracts, sub-contracts, change orders, purchase orders, preferential treatment, and other SHA resources through their corrupt influence on the contract and purchase order bid process and otherwise directing general contractors to award sub-contracts to said individuals and businesses.

Id. at ¶ 29. The Superseding Indictment also specifically alleges the times, dates, amounts and descriptions of the things of value provided by the defendant to members of the RICO enterprises. Id. at ¶ 40.[1]

Thereafter, pursuant to the Local Rules, the Government made available for inspection and copying all Rule 16 materials within its possession, custody and control. These materials, albeit voluminous, have been available to defendant Davis since July, 2004. These documents include all bids and all contracts in the Government's possession, custody and control. Recognizing the volume of the materials, the Government directed defendant Davis

---

[1] The Government only alleged as predicate acts things of value provided by defendant Davis in the form of checks written in 1996 and 1997. The Government could not obtain bank records prior to 1996. As the court knows, the Government does not have to allege every RICO predicate act or overt act of a conspiracy in order for the evidence supporting the act to be admissible. See United States v. Anguilo, 847 F.2d 956, 964 (1st Cir. 1988)(holding that the commission of "overt acts" not required for a RICO conspiracy). See also United States v. Bryan, 122 F.3d 90, 93 (2d Cir. 1997)(unalleged overt act may serve as basis for conspiracy conviction).

and his counsel to review certain boxes as early as June 15, 2005. See Exhibit 1.

The Government provided two CDs containing SHA board minutes and accounts payable information. The SHA board minutes contained information regarding bids submitted to and contracts awarded by SHA. The account payable information listed all payments made by SHA, including all payments made under contracts awarded by SHA. Both databases are easily searchable. For example, by searching under the name "P.J. Richfield", one can produce all payments made by SHA to P.J. Richfield from 1990 through 1998.

The Superseding Indictment identified un-indicted co-conspirators. Consistent with the Local Rules, the Government also identified other un-indicted co-conspirators involved in the case. The Government did this by letter on July 28, 2004 and February 2, 2005.

In addition to making available all Rule 16 materials, the Government produced the grand jury testimony of approximately a half dozen witnesses. At least two of those witnesses were SHA vendors who described the bribery scheme at SHA. These witnesses described how they, along with other SHA vendors, had to pay bribes to defendants Asselin, Sr. and Sotirion in order to do business at SHA. In addition, these witnesses described how defendants Asselin, Sr. and Sotirion required them and other contractors to collude in submitting artificially inflated, losing

bids on some contracts in order to win contracts on other occasions.

On or about June 30, 2005, defendant Davis filed a Motion for a Bill of Particulars. See Dkt. 93, 94; Exhibit 2.  The gist of the motion was that the Indictment did not sufficiently identify what "preferential treatment" or rewards defendant Davis received from SHA in exchange for the things of value that he provided; that the identification of said rewards was integral to his defense; and that the discovery was simply too voluminous for defendant Davis and his counsel to find documentary evidence of those rewards.  To put it more succinctly, in the words of defendant Davis and his counsel, "Mr. Davis should not have to waste precious time and resources guessing which bids and contracts and related actions he must defend against, and wading through hundreds of thousands of pages of documents." Id. at 8.

After the Government filed its response and oral argument, Magistrate Judge Neiman issued an order on September 9, 2005 instructing the Government to identify "all contracts and subcontracts for which a bid was submitted to SHA by or on behalf of SHA" and "all actions allegedly taken by SHA as a result of Defendant's having given, offered and/or provided something of value." See Dkt. 105; Exhibit 3, pg. 6.  The Government complied with that order on September 19, 2005. See Exhibit 4.

Dissatisfied with the Government's response, defendant Davis moved to compel the Government's compliance with the Magistrate Judge's September 9th order. See Dkt. 107. After the Government filed its response, the Magistrate Judge denied the motion, ruling that

> [i]f, after reviewing the voluminous automatic discovery produced by the Government (see footnote 1 to Defendant's motion), Defendant cannot readily identify particular actions in his favor taken by the Springfield Housing Authority as a result of his having allegedly given something of value, e.g., permitting ongoing contracts despite substandard work or certifying the completion of uncompleted work, Defendant may refile his motion by December 30, 2005, to which the Government shall respond by January 13, 2006. So ordered.

The Magistrate Judge entered the order on November 4, 2005.

On January 10, 2006, defendant Davis renewed his motion for a bill of particulars. See Dkt. 137. In substance, defendant Davis and counsel claimed that they re-reviewed the Government's discovery "extensively" and "in good faith" and could not "readily identify" any documents evidencing actions taken by the SHA as a result of things of value provided by defendant Davis. See e.g. Dkt. 137 (despite engaging in extensive review of the documents, "counsel for Mr. Davis have not been able to 'readily identify particular actions taken in [Mr. Davis's] favor'", See Declaration of Attorney Rehnquist at ¶ 8; counsel for defendant "made a good faith effort to comply with the Court's November 4, 2005 order." See Motion at ¶ 8).

6

The Government filed its response, and defendant Davis in turn filed a rely memorandum. Based upon these filings, the Magistrate Judge granted defendant Davis' renewed motion for a bill of particulars. See Exhibit 5. The Government now appeals from that order.

**II. Defendant Davis' Motion for a Bill of Particulars Should Be Denied Because It Seeks Evidentiary Details To Which He Is Not Entitled.**

"The function of a bill of particulars is to provide the defendant with necessary details of the charges against him to enable him to prepare his defense, to avoid surprise against trial, and to protect against double jeopardy." United States v. Nelson-Rodriguez, 319 F.3d 12, 30 (1st Cir. 2003)(citing United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989)). However, where an indictment is sufficiently specific, and a defendant has enough information to understand the nature of the charges alleged in the indictment, the Government should not be required to prepare a bill of particulars. Nelson-Rodriguez, 319 F.3d at 30; United States v. Sepulveda, 15 F.3d 1161, 1192-93 (1st Cir. 1993); United States v. Paiva, 892 F.2d 148 (1st Cir. 1989). See also United States v. Hallock, 941 F.23d 36, 40 n.2 (1st Cir. 1991) (stating that "there is no need to grant a bill of particulars when the indictment is sufficiently specific.").

"A bill of particulars, however, is not a proper tool for discovery." United States v. Wessels, 12 F.3d 746, 750 (8th Cir.

1993). See also United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988). A bill of particulars "is not to be used to provide detailed disclosure of the government's evidence at trial." Wessels, 12 F.3d at 750. See also United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. Smith, 776 F.2d 1104, 1111 (3rd Cir. 1985); United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 405 (4th Cir. 1985); United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978).

The denial of a motion for a bill of particulars rests within the sound discretion of the district court. Nelson-Rodriguez, 319 F.3d at 30. A district court's decision to deny a motion for a bill of particulars will "only be reversed upon a defendant's showing of a clear abuse of discretion that resulted in "actual surprise at trial or actual prejudice to his substantial rights." Id.

The court should reverse the Magistrate Judge's Order because defendant Davis' renewed motion for a bill of particulars is nothing more than a discovery tool. It is an effort by defendant Davis to cause the Government to disclose the documentary details of its case, force the Government to essentially connect the evidentiary dots for defendant Davis, and compel the Government to disclose its theory of the case. Defendant Davis' motion, and the order emanating from that motion, are unwarranted as a matter of law.

Curiously, defendant Davis now claims that the focus of his motion is "on alleged benefits Mr. Davis received <u>as a result of</u> actions taken he allegedly took in 1996 and 1997." See Dkt. 145, Defendant Davis' Reply Memorandum, p. 1 (emphasis in original). Nowhere in defendant Davis' original motion did he confine his motion to the temporal period of 1996 and 1997. See Exhibit 1. Magistrate Judge Neiman certainly was not under the impression that defendant Davis had so limited his motion when he issued his orders on September 9, 2005, November 4, 2005, or February 6, 2006. Had that been defendant Davis' initial request, then Magistrate Judge Neiman would have so limited his order. Indeed, at oral argument on the initial motion, defendant Davis argued for a bill of particulars describing any and all benefits received from SHA.

Now, for whatever reason, defendant Davis has decided to change his position in mid-stream. Defendant Davis appears to have shifted course based upon the idea that "[b]ecause <u>all</u> of the payments alleged to constitute predicate acts occurred in 1996 and 1997, any alleged `benefits' received by Mr. Davis as a result of making these payments would necessarily have to have occurred after 1996 and 1997." See Dkt. 145, p. 4. Not only is this an incorrect legal argument under the caselaw analyzing the federal bribery statute, but it also makes absolutely no sense. There is nothing that requires the payment of a bribe first before the

9

payor of the bribe receives the agreed-upon benefit. If that were the case, then every recipient and payor of a bribe could evade the federal bribery statute simply by structuring the illegal agreement to require the benefit first and the payment of the bribe second.

Moreover, regarding the documents recently identified by the Government that "relate to benefits Mr. Davis allegedly received in 1994 as a result of his work on an SHA project," see Dkt. 145, p. 4, the Government will repeat what it has said *ad nauseum* at oral argument before Magistrate Judge Neiman and in several pleadings: the Government need not allege every RICO predicate act or overt act of a conspiracy in order for the evidence supporting the act to be admissible. See Anguilo, 847 F.2d at 964; Bryan, 122 F.3d at 93.

Of course, defendant Davis' sudden change in position now makes apparent what should have been transparent before. Defendant Davis wants to know how the Government intends to link payments in 1996 and 1997 to earlier work by defendant Davis at SHA. Despite the fact that the Government already has been forced to tip its hand to some degree, the Government refuses to disclose its theory of prosecution any more because the law affords the Government that right.

The bill of particulars provided by the Government on September 19, 2005 more than suffices. The bill of particulars

10

listed all of the bids, successful or not, submitted by defendant Davis to SHA from 1990 through 1998. Defendant Davis can use that list to review the discovery in light of the allegations of things of value listed in the Superseding Indictment and look for documents that either prove or disprove those allegations.

The bill of particulars also categorized the actions taken by SHA as a result of things of value given, offered and/or provided by defendant Davis. Those actions included, for example, "certifying the completion of work that had not been completed." The Government remains hardpressed to understand how that disclosure did not enable defendant Davis and his counsel to review the discovery as extensively and diligently as they did and, with that particular disclosure in mind, not find evidence of "certifying the completion of work that had not been completed." See Dkt. 145, pg. 5 (referring to Exhibits 2 and 3 as not clear on their face).

The ostensible explanation advanced by defendant Davis was that these two exhibits (attached herein as Exhibits 6 and 7) had no identifying information on them that linked those documents to any particular project and/or certification of completion, which was dated October 17, 1994. Left unsaid by defendant Davis and his counsel, however, was the fact that these documents came out of a box, which previously had been inspected by defendant Davis' counsel, labeled with large letters in magic marker as follows:

11

"P.J. Richfield 504/ADA Site Work", the very project to which all of these documents referred. Hence the Government's contention that defendant Davis' renewed motion for a bill of particulars is an attempt to force the Government to disclose its evidentiary details and connect its case dot by dot by dot for defendant Davis.

Defendant Davis further attempts to buttress his need for a bill of particulars by claiming that the discovery at the FBI is so voluminous and so disorganized that his counsel simply cannot find any documentary evidence of preferential treatment or rewards received from SHA by defendant Davis as a result of things of value provided by defendant Davis. First, the Government obviously disputes that contention and has never had a problem finding any documents. Second, Exhibit 8, the affidavit of SHA counsel, largely undermines defendant Davis' assertion.

Defendant Davis and his counsel attempt to blunt their failure to find seemingly identifiable documents by criticizing the Government for its references to defendant Davis' counsel as "deliberately obtuse", "going through the motions", and "inexperienced." See Dkt. 145, pg. 1. However, there really is no other explanation. As early as May 22, 2003, the Government had put defendant Davis' predecessor counsel at Goodwin Proctor on notice of the Government's perceived significance of SHA's "504/ADA" project, see Exhibit 9, but that letter apparently did

not resonate enough for defendant Davis and his counsel to attach much importance to the box containing those materials during their "extensive" review in 2005 and 2006. See Dkt. 145, pg. 5. The Government's remarks are supported by the Affidavit of Special Agent Hedges. See Exhibit 10. The Government's comments even find support in the Affidavit of SHA counsel. See Exhibit 8, ¶ 9. Finally, even Magistrate Judge Neiman suggested to defendant Davis and his counsel in his order of February 6, 2006 that "Defendant himself, perhaps, needs to assist his attorneys in reviewing documents so that they might not be quite so perplexed." See Exhibit 5, pg. 2.[2] Therefore, in the end, if the discovery is reasonably well-organized, then the Government knows of no other explanation other than deliberately manipulative conduct or simple inexperience.

Finally, on today's date, the court ordered the Government to provide a preliminary exhibit list by July 24, 2006. Therefore,

---

[2] Defendant Davis argues that fairness also dictates a motion for a bill of particulars because "Mr. Davis, unlike the Government, does not have the benefit of a four year investigation (and the benefit of insider witness testimony) to provide context for the issues in question." See Dkt. 145 at 6. This argument is utterly meritless for three reasons. First, defendant Davis is an insider and should know these records better than anyone else. Second, the Government's investigation took four years because of the lack of any insiders initially and obstructive conduct committed by individuals such as defendant Davis, who has been charged in the Superseding Indictment with obstruction of justice. Finally, as previously mentioned, the Government provided the grand jury testimony of several of its cooperating contractors. Therefore, defendant Davis does have insider witness testimony to provide context.

in effect, the court has afforded defendant Davis more information than Magistrate Judge Neiman's order ever would have provided him. As a result, a need no longer exists for a further bill of particulars in this case.

III. **Conclusion**

For the foregoing reasons, the Government respectfully asks that the court reverse the magistrate judge's order of February 6, 2006 and deny defendant Davis' Renewed Motion for a Bill of Particulars.

Filed this ____th day of February, 2006.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

_____
WILLIAM M. WELCH II
Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                              Springfield, Massachusetts
                                          February 16, 2006

    I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mailing said motion to:

All counsel of record

                                          _____
                                          WILLIAM M. WELCH II
                                          Assistant United States Attorney