UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**MEMORANDUM IN SUPPORT OF DEFENDANT PETER DAVIS'S
MOTION FOR A BILL OF PARTICULARS AND TO COMPEL DISCOVERY**

Pursuant to Fed. R. Crim. P. 7(f) and Local Rule 116.3, defendant Peter Davis submits

this memorandum in support of his motion for a bill of particulars and to compel discovery.

The bulk of the crimes and racketeering predicates in this Indictment are based on the

core allegation that things of value were given to Springfield Housing Authority ("SHA")

officials in exchange for "rewards" and other "preferential treatment" in connection with the

officials' awarding of contracts and other benefits.  By this motion, Mr. Davis seeks two

categories of discovery:  First, he seeks a bill of particulars that identifies the contracts he bid on

and any benefits he received from SHA officials.  *See, e.g., United States v. Espy*, 998 F. Supp.

17, 34 (D.D.C. 1997) (ordering government to provide particulars regarding "the basis of the

government's allegations that the defendant solicited and received things of value for and

because of official acts performed and to be performed by defendant Espy").  Second, he seeks

an order requiring the government to comply with Fed. R. Crim. P. 16 by making meaningful

disclosure, as the Rule requires, of materials it intends to use in its case-in-chief at trial and that

are material to the defense.  *See, e.g., United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y.

1978) (open file discovery does not eliminate the need for Rule 16 compliance).



GOVERNMENT
EXHIBIT
2

## BACKGROUND

The 148-page Indictment in this matter charges thirteen different defendants with substantive violations of nine different criminal statutes, as well as conspiracy to commit violations of four of those statutes. The charges include an alleged racketeering enterprise (the SHA) and conspiracy that lasted over fifteen years and involved 248 predicate racketeering acts, thirteen defendants, twenty-nine unindicted co-conspirators, and dozens (if not more) of separate, document-intensive commercial transactions. Indictment ¶¶ 21-35. At the heart of the Indictment is the allegation that defendants Raymond Asselin, Sr. and Arthur G. Sotirion operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to award contracts, steer sub-contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶ 23.

Defendant Peter Davis is a 71-year-old retired contractor. His last dealings with the SHA were in 1997. Most of his business records were irretrievably damaged in connection with a 1998 move from the Springfield area to Eastern Massachusetts. He is one of the defendants alleged to have been rewarded "with contracts, sub-contracts, change orders, purchase orders, preferential treatment, and other SHA resources," in exchange for "the payment of bribes, kickbacks, gratuities, and other things of value," based on checks written in 1996 and 1997. Indictment at ¶¶ 29, 40. Mr. Davis is charged in four of the Indictment's 122 counts: racketeering in violation of 18 U.S.C. § 1962(c) (Count 1); racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to violate the bribery/gratuity statute, 18 U.S.C. § 201 (Count 3); and obstruction of justice in violation of 18 U.S.C. § 1503 (Count 107).

2

Although all of the charges against him are rooted in allegations that he received "rewards" from the SHA, the Indictment does not state what rewards he received or what SHA contracts he bid on.

The government has attempted to discharge its discovery obligations under Fed. R. Crim. P. 16 and Local Rule 116.1 by what it describes as "open file discovery" — that is, by making available the voluminous files of its investigation. Its files include approximately—if not more than—250 boxes, bags and even a basket of documents; approximately fifteen large filing cabinet drawers filled with documents; and over twenty tapes of hard drives and twenty-five computers containing an unknown amount of information and/or documents. Although some portion of the materials have been indexed, the indices are so general as to be wholly unhelpful. In addition, the government has made available two CDs containing board minutes and accounts payable information from the Springfield Housing Authority ("SHA"), as well as selected grand jury transcripts and exhibits. While such an "open file" discovery policy may be laudable in other contexts, here it makes it virtually impossible for Mr. Davis to engage in any meaningful evaluation of the government's case against him.[1]

Accordingly, on January 5, 2005 and again on June 1, 2005, counsel for Mr. Davis made written requests of the government for discovery pursuant to Local Rule 116.3(A).[2] The letter

---

[1]  Although the government describes its discovery policy as "open file," the term is technically inaccurate, inasmuch as the government has not made all witness interview memoranda and grand jury transcripts available.

[2]  On January 5, 2005, counsel for Mr. Davis sent the government a letter requesting that it identify certain of the discovery that is relevant to Mr. Davis and the charges against him. *See* 1/5/2005 Letter from Mr. Rehnquist to Mr. Welch (attached to Declaration of James C. Rehnquist as Exhibit 1). Because of the superseding Indictment filed on January 11, 2005, the government did not respond to the January 5, 2005 letter. On June 1, 2005, counsel for Mr. Davis sent a second letter to the government requesting additional narrowing of the discovery. *See* 6/1/2005 Letter from Mr. Rehnquist to Mr. Welch (attached to Declaration of James C. Rehnquist as Exhibit 2). The government responded on June 15, 2005 (by letter received by Mr. Davis's counsel on June 17, 2005), referring defendant Davis to the "open file" discovery generally, and for the relevant bidding and contract information, to approximately 100 of those boxes. *See* 6/15/2005 Letter from Mr. Welch to Mr. Rehnquist ("Generally, any and all contracts and/or subcontracts that P.J. Richfield and/or

requests were fruitless, and Mr. Davis therefore files this motion, seeking two forms of relief.

First, Mr. Davis seeks a bill of particulars identifying (a) all contracts and/or subcontracts for

which a bid was submitted by or on behalf of Mr. Davis to the SHA; and (b) all actions allegedly

taken by the SHA as a result of Mr. Davis's allegedly giving, offering, and/or promising

something of value. Second, Mr. Davis seeks an order requiring the government to comply with

Fed. R. Crim. P. 16(a)(1)(E), which requires the disclosure of documents or things "within the

government's possession, custody, or control" that are either "material to preparing the defense"

or which "the government intends to use [] in its case-in-chief at trial."

## ARGUMENT

### I.    THE GOVERNMENT SHOULD BE ORDERED TO FILE A BILL OF PARTICULARS.

The purpose of a bill of particulars is to provide a criminal defendant with information

necessary to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy.

*United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir. 1992). Trial courts enjoy broad discretion

under Fed. R. Crim. P. 7(f) in ruling upon requests for bills of particulars, *Will v. United States*,

389 U.S. 90, 98-99 (1967), although "where an indictment fails to set forth specific facts in

support of requisite elements of the charged offense, and the information is essential to the

defense, failure to grant a request for a bill of particulars may constitute reversible error," *United

States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985) (internal citations omitted). Protecting a

defendant from undue labor in preparing his defense is a well-recognized basis for a bill of

particulars. *See, e.g., United States v. Pack*, 20 F.R.D. 209, 212 (D. Del. 1957) ("The purpose of

bills of particulars is to prevent surprise and to save the defendant from undue labor in the

---

Peter Davis received are located in the boxes labeled SHA contracts, the boxes seized from Sotirion's office, and the boxes of documents subpoenaed from P.J. Richfield, Inc., Manny's Plumbing & Heating, and G&R Associates.") (attached to Declaration of James C. Rehnquist as Exhibit 3).

preparation of his case.").[3] Rule 7(f) was amended in 1966 to "encourage a more liberal attitude by the courts toward bills of particulars." Fed. R. Crim. P. Rule 7 advisory committee's notes.

The particulars Mr. Davis seeks here relate directly to the requisite elements of the charges against Mr. Davis. The elements of 18 U.S.C. § 201, which forms the basis for the substantive charges (including RICO predicate acts), are as follows: "a showing that something of value was corruptly given, offered, or promised to a public official (as to the giver) or corruptly demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient) with intent, *inter alia*, to influence any official act (giver) or in return for being influenced in the performance of any official act (recipient)." *United States v. Sun-Diamond Growers*, 526 U.S. 398, 404 (1999) (internal citations omitted). The particulars Mr. Davis seeks—identification of contracts he bid on and benefits he received—could not be more integral to the charges against him, and the Indictment is wholly silent on the subject. Although the Indictment alleges that Mr. Davis induced defendants Sotirion and Raymond Asselin, Sr. to "fraudulently generate bid proposals, collude in the preparation of bid proposals, award contracts, steer sub-contracts and otherwise provide preferential treatment during the terms of contracts to Peter Davis, d/b/a P.J. Richfield, Inc.," Indictment ¶ 40, it nowhere identifies what contracts Mr. Davis bid on (tainted or otherwise) or any "preferential treatment" or "rewards" he received.

---

[3]    As another federal court has explained: "Indeed, in my view, the function of [a bill of particulars] is even broader: *I think it may be invoked to save a defendant wholly needless labor in preparing his defense.* Thus, if the case is such that the government relies for its proof of fraud solely upon one or more specific entries in the defendant's returns, it may properly be required to identify those entries so that the defendant in his preparation for trial may be in readiness to submit all possible evidence which he thinks will negate a showing of fraud founded on those entries, without expending the labor which would be necessary to present evidence as to entries which the government will not challenge." *United States v. Dolan*, 113 F. Supp. 757, 759 (D. Conn. 1953) (emphasis added).

As several courts have recognized in analogous contexts, such information is essential to the preparation of a defense. *See, e.g., United States v. Johnson*, 21 F. Supp. 2d 329, 340 (S.D.N.Y. 1998) (stating that "the defendants are entitled to know the names of the individual corporations that were the alleged victims of the extortions, and the construction sites or projects related to the alleged extortions. The government is ordered to provide a bill of particulars regarding these two issues."); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (granting in part a motion for a bill of particulars, "as it relates to the defendant's request for the basis of the government's allegations that the defendant solicited and received things of value for and because of *official acts* performed and to be performed by defendant Espy.") (emphasis in original) (internal citations omitted); *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (in case charging crimes under Federal Election Campaign Act, although indictment alleged generally that the defendant had received benefits from the Democratic National Committee as a result of his fraudulent contributions, it was only fair that the government more specifically lay out exactly what benefits ran to the defendant as a result of his alleged activity);[4] *United States v. Aliperti*, 867 F. Supp. 142, 149 (E.D.N.Y. 1994) (in prosecution under 18 U.S.C. § 1951 for

---

[4]     The *Trie* court stated that, even though the indictment specified some of the benefits defendant received, such as:

> special seating at DNC functions, complimentary tickets to DNC events, membership in DNC committees and related entities…, invitations to meetings and other events where White House personnel [] were in attendance, and administrative support of DNC employees…, [p]rosecution of the scheme logically requires demonstrating that the property allegedly obtained by [defendant] was provided in return for the fraudulent contributions that he allegedly made to the DNC. A potential avenue of defense therefore would be to show that some or all of the property that was allegedly fraudulently obtained by [defendant] was in fact legitimately obtained. Preparation of such a defense requires that [defendant] know sufficiently specific information concerning the property allegedly obtained to adequately identify it, so that he can demonstrate either that he never obtained it or that he obtained it legitimately and not as a result of fraudulent contributions.

*Id.* at 22.

extortion "under color of official right," government required to specify actual favors granted by public officials, so that defendant can "adequately prepare a defense and [] avoid unfair surprise at trial"). The Indictment is silent as to this critical information, and the government should be ordered to provide particulars.

The government resists any particularization of its charges by hoisting the flag of "open file discovery." *See* 6/15/2005 Letter from Mr. Welch to Mr. Rehnquist (attached to Declaration of James C. Rehnquist as Exhibit 3). But the cases the government cites to support its stance do not stand for the proposition that "open file" discovery obviates any need for a bill of particulars. The government relies on *United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993), a drug case that presumably did not contain the sort of voluminous discovery at issue here, which holds only that a bill of particulars should be granted in certain circumstances (*e.g.*, if without it the defendant will be "disabled from preparing a defense"), *even when open-file discovery is provided. Id.* at 1192-93. The *Sepulveda* court merely found a request for a bill of particulars regarding the date, time, and place of defendant's criminal activity unwarranted in the particular case before it. *Id.*

In contrast, many courts have explicitly held that "open file" or otherwise voluminous discovery disclosures do <u>not</u> eliminate a defendant's need for a particularization of the indictment's charges. *See United States v. Bortnovsky*, 820 F.2d 572, 573-75 (2d Cir. 1987) (finding abuse of discretion and reversing conviction where district court denied bill of particulars' request to identify allegedly fraudulent documents, and stating: "The Government did not fulfill its obligation merely by providing *mountains of documents* to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.") (emphasis added); *United States v. Upton*, 856

7

F. Supp. 727, 753 (E.D.N.Y. 1994) (holding that government must *specifically* identify allegedly false documents "buried in thousands of documents already produced"). Indeed, some of the courts have held that "the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Lino*, No. 00 CR 532, 2001 WL 8356, at *4 (S.D.N.Y. Dec. 29, 2000) (internal citations omitted). *See also Trie*, 21 F. Supp. 2d at 21 n.12 ("open file discovery...is no substitute for adequate specification of the crimes with which he is charged."); *United States v. Biaggi*, 675 F. Supp. 790, 809 (S.D.N.Y. 1987) ("the Government may not simply deluge defendants with thousands of documents when more specific guidance is necessary to their understanding of the charges and preparation for trial"); *id.* at 810 ("defendants may not be compelled to wade through thousands of documents in an effort to locate materials essential to their defense"). In fact, the *Lino* court even noted that this is "particularly true in cases charging criminal offenses under RICO, where 'with the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope.'" *Lino*, 2001 WL 8356, at *4 (citation omitted).

Like the defendants in these cases, Mr. Davis should not have to waste precious time and resources guessing which bids and contracts and related actions he must defend against, and wading through hundreds of thousands of pages of documents. This Court should order the government to file a bill of particulars that precisely identifies its allegations as to the contracts he bid on and the benefits he received.

## II.    THE GOVERNMENT SHOULD BE ORDERED TO COMPLY WITH RULE 16.

Rule 16(a)(1)(E) provides in relevant part, "the government must permit the defendant to inspect and to copy...items...within the government's possession, custody, or control," where