UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

### DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF ALLEGEDLY "SUBSTANDARD" OR INCOMPLETE WORK ON SHA CONTRACTS BY PETER DAVIS AND/OR P.J. RICHFIELD

Defendant Peter Davis hereby moves *in limine* to preclude the government from introducing evidence that work completed by Mr. Davis and/or P.J. Richfield, Inc. (Mr. Davis's company) on Springfield Housing Authority ("SHA") projects was substandard and/or incomplete. As explained more fully below, this type of evidence is, at most, only marginally relevant to the charges against Mr. Davis, and any relevance would be substantially outweighed by the unfair prejudice, confusion, and waste of time that would result from the admission of such evidence, and should be excluded. *See* Fed. R. Evid. 403. This Court should not allow this case to devolve into a trial about Mr. Davis's competence as a contractor, and attendant serial mini-trials about cost overruns, construction standards, punch lists, change orders, and architectural drawings on the ten SHA contracts on which Mr. Davis worked.

### ARGUMENT

At the heart of the Indictment is the allegation that defendants Raymond Asselin, Sr. and Arthur G. Sotirion operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to

award contracts, steer sub-contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶¶ 29, 40. Mr. Davis is one of the defendants alleged to have been rewarded with contracts and other benefits in exchange for the payment of "bribes, kickbacks, gratuities, and other things of value." *Id.*

The crux of the Indictment's charges against Mr. Davis are thirteen payments, totaling approximately $60,000, that he allegedly made for improvements to the homes of co-defendants Christopher Asselin and Joseph Asselin, Jr., between September 1996 and December 1997. Indictment ¶¶ 40. Allegedly, these payments were made in order to receive benefits from the Springfield Housing Authority. *Id.* The Indictment charges these thirteen payments as the alleged "racketeering acts" committed by Mr. Davis, *id.* (racketeering acts 101-113), and these allegations are incorporated into the two conspiracy charges (to violate RICO and 18 U.S.C. § 201 as well).

The Indictment says nothing whatsoever about substandard or incomplete work on SHA contracts by Mr. Davis or P.J. Richfield. The government has nonetheless indicated that it intends to introduce evidence that Mr. Davis's work on SHA projects for the SHA was either substandard and/or incomplete. In the letter it sent in response to Judge Neiman's Order to supply a bill of particulars, the government stated:

> Regarding actions taken by SHA as a result of the defendant having given, offered, and/or provided something of value, those actions consisted of steering contracts to P.J. Richfield, Inc.; directing general contractors to use P.J. Richfield, Inc. as a sub-contractor; permitting the continued use of P.J. Richfield, Inc. as a contractor despite sub-standard work; directing SHA employees to finish work for P.J. Richfield, Inc.; permitting the use of SHA supplies by P.J. Richfield, Inc.; certifying the completion of work that had not been completed; and causing more lenient

2

enforcement of site inspections and wage compliance for P.J. Richfield, Inc.

Letter from AUSA Welch to James C. Rehnquist (Sept. 19, 2005) at 2.

The government's exhibit list confirms that it intends for this uncharged conduct to be a focus of the trial. Several exhibits demonstrate this intention:

> **Chris Court Parking and Storage Garage.** Several government exhibits relate to this contract, the work for which was performed by P.J. Richfield (Davis's company) in 1993. Exhibit 53[1] is a "Field Observation Report" by an architect dated December 16, 1993, that notes various issues on the project regarding the grade slope in front of the building, the stability of the frame, incomplete bridging, and an issue regarding whether a staircase was up to code. Exhibits 60 and 126-129 are 20-30 pages of correspondence between and among an architect, SHA representatives, and AUSA Welch, all in the post-Indictment time frame (December 2005 – March 2006). It appears that sometime in 2005 SHA developed a remediation plan to address mold in the Chris Court Garage and that, twelve years after the fact, the SHA and its architects are pointing the finger at Mr. Davis's 1993 work and encouraging the government to do the same. The architect refers darkly, in a December 2005 letter, to "the reputation of the contractor involved in this building and some of the past practices that have recently come to light."[2]
>
> **504/ADA Project.** Approximately twelve exhibits (Nos. 63-74), many of which contain multiple documents, relate to alleged performance issues at this 1993-1994 project, which involved construction/renovations in compliance with the Americans with Disabilities Act (ADA). The exhibits reflect issues regarding a "conflict" between the requirements of the ADA, on the one hand, and the Massachusetts State Building Code, on the other hand, regarding whether ramp handrails should be extended beyond the ramp (Exhibit 63); an issue over whether the handrails should be galvanized pursuant to a "cold galvanizing system" or a "hot dip

---

[1] Exhibit numbers refer to the numbered exhibits made available by the government for copying, as contemplated by the Court's August 3, 2006 order. These exhibit numbers do not appear to correspond with the Exhibit List provided by the government, dated July 30, 2006.

[2] Exhibit 60, discussing the Christopher Court storage garage, states that the "roof sheathing appears to be only ½ inch instead of ¾ inch called for by code." To the extent that the government intends to introduce evidence that Mr. Davis used improper or substandard materials on these projects, Mr. Davis moves to exclude such evidence as part of this motion.

3

> galvanizing process" *(id.)*; whether handrails should be bolted or welded to posts *(id.)*; whether "solid steel" or "tubular" bars should be used for the handrails (Ex. 64); a possible or actual "change order" on the project (Exhs. 65, 71); and numerous documents relating to the development and completion of "punch lists" for the project. (Exhs. 66, 73-75).[3]

The government may contend that the type of evidence reflected in these exhibits is probative of the charges in the Indictment because it demonstrates the "preferential treatment" Mr. Davis received, and the "use of SHA resources" he was permitted, in exchange for "things of value" he supplied to SHA officials. Indictment ¶ 40. Any evidence relating to Mr. Davis's alleged substandard performance on SHA projects, however, would appear to have little probative value as to these issues. First, it appears that the bulk, if not the entirety, of the government's performance-related allegations are based on conduct occurring in the 1993-1995 time frame, years before Mr. Davis is alleged to have provided any "thing of value" to any SHA employee. As noted above, the first racketeering act alleged of Mr. Davis is a payment dated September 30, 1996. In short, any special treatment Mr. Davis received in 1993-95 could not have been provided "as a result of" his provision of a thing of value to SHA officials.

Even if such "performance" evidence post-dated the charged payments, and was thus arguably probative of whether Mr. Davis was given "preferential treatment" or impermissible "use of SHA resources" <u>in exchange for</u> providing "things of value," it could be presented without relying on evidence of Mr. Davis's competence as a contractor. There is no need to confuse or prejudice the jury by casting aspersions on Mr. Davis's professionalism, when such

---

[3] The relevant trial exhibits are not attached to this motion but will be made available at the August 31 hearing if the Court wishes to review them. Some of the government's performance-related exhibits are handwritten, are not clearly dated, and are not clearly identified with any particular project. This summary of the exhibits relating to the Storage Garage and 504/ADA projects may understate the extent to which the government intends to rely on such evidence.

4

evidence is only marginally relevant, if at all, to whether he received benefits that other contractors did not because he was paying bribes or other things of value.

Second, the marginal value of this "performance" evidence is outweighed "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The First Circuit has consistently upheld the decision of a district court to exclude evidence under Rule 403 that would result in an additional "mini-trial" within the trial, causing unnecessary confusion of the jury and a waste of time and resources. *See*, *e.g.*, *Larch v. Mansfield Municipal Electric Dep't*, 272 F.3d 63, 73 (1st Cir. 2001); *Ostler v. Codman Research Group, Inc.*, 241 F.3d 91, 96 (1st Cir. 2001); *United States v. Gilbert*, 229 F.3d 15, 24 (1st Cir. 2000). Should Mr. Davis be forced to defend the quality of his work on the ten SHA projects he oversaw from 1990-1997, scarce time and resources would be spent litigating Mr. Davis's performance on these jobs and/or apportioning blame among the various subcontractors who worked for Mr. Davis. Expert testimony might well be required to determine whether Mr. Davis's performance (and that of his subcontractors) on each project fell below the standard of care common within the profession, including whether any allegedly shortfall in performance was the result of ambiguities or inadequacies in project drawings or specifications (*i.e.*, the responsibility of SHA or the architects it hired). In short, the trial might well devolve into a series of mini-trials, each resembling a piece of civil construction litigation, with disputes about punch lists, change orders, architectural specifications, and the like. Consideration of this evidence by the jury would be unfair to Mr. Davis, would most certainly confuse and distract the jury, and significantly add to the length and complexity of the trial. Accordingly, such evidence should be excluded pursuant to Federal Rule of Evidence 403.

**CONCLUSION**

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Motion *in Limine* to Exclude Evidence of Alleged Substandard Performance by Peter Davis and/or P.J. Richfield.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such argument to the Court.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: August 16, 2006

**CERTIFICATE OF SERVICE**

I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on August 16, 2006.

 /s/ James C. Rehnquist
James C. Rehnquist

LIBA/1717506.1