UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EXPERT TESTIMONY OF SUBSTANDARD OR INCOMPLETE PERFORMANCE**

Pursuant to Local Rule 116.1, Federal Rule of Evidence 702, and Federal Rule of Criminal Procedure 16, defendant Peter Davis hereby moves *in limine* to exclude any expert testimony concerning the quality or completeness of his work on SHA contracts.

The government's exhibit list indicates that the government intends to introduce a substantial amount of evidence that Mr. Davis's performance—especially on two contracts in the 1993-94 time frame—was substandard or incomplete (at certain times or in certain respects). Mr. Davis has filed a motion in limine to preclude this evidence pursuant to Fed. R. Evid. 403. Even if admissible, however, these issues are necessarily the subject of "expert" testimony under Fed. R. Evid. 702. But the government has never made any disclosure of this (or any other) expert testimony under Fed. R. Crim. P. 16, and it is far too late in the day to do so. Accordingly, Mr. Davis moves in limine to preclude any expert testimony.[1]

---

[1] The government has not yet disclosed its witness list or witness statements. To the extent the government's disclosure of its witness list reveals other subjects or testimony covered by Rule 702, Mr. Davis reserves the right to seek to preclude that testimony as well.

**PRELIMINARY STATEMENT**

At the heart of the Indictment is the allegation that defendants Raymond Asselin, Sr. and Arthur G. Sotirion operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to award contracts, steer sub-contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶¶ 29, 40. Mr. Davis is one of the defendants alleged to have been rewarded with contracts and other benefits in exchange for the payment of "bribes, kickbacks, gratuities, and other things of value." *Id.*

The crux of the Indictment's charges against Mr. Davis are thirteen payments, totaling approximately $60,000, that he allegedly made for improvements to the homes of co-defendants Christopher Asselin and Joseph Asselin, Jr., between September 1996 and December 1997. Indictment ¶¶ 40. Allegedly, these payments were made in order to receive benefits from the Springfield Housing Authority. *Id.* The Indictment charges these thirteen payments as the alleged "racketeering acts" committed by Mr. Davis, *id.* (racketeering acts 101-113), and these allegations are incorporated into the two conspiracy charges (to violate RICO and 18 U.S.C. § 201 as well).

The Indictment says nothing whatsoever about substandard or incomplete work on SHA contracts by Mr. Davis or P.J. Richfield. The government has nonetheless indicated that it intends to introduce evidence that Mr. Davis's work on SHA projects for

2

the SHA was either substandard and/or incomplete. In the letter it sent in response to Judge Neiman's Order to supply a bill of particulars, the government stated:

> Regarding actions taken by SHA as a result of the defendant having given, offered, and/or provided something of value, those actions consisted of steering contracts to P.J. Richfield, Inc.; directing general contractors to use P.J. Richfield, Inc. as a sub-contractor; permitting the continued use of P.J. Richfield, Inc. as a contractor despite sub-standard work; directing SHA employees to finish work for P.J. Richfield, Inc.; permitting the use of SHA supplies by P.J. Richfield, Inc.; certifying the completion of work that had not been completed; and causing more lenient enforcement of site inspections and wage compliance for P.J. Richfield, Inc.

Exhibit A, Letter from AUSA Welch to James C. Rehnquist, dated Sept. 19, 2005, at 2.

Although the government has not disclosed a witness list or statements that explicitly present the likelihood of testimony covered by Fed. R. Evid. 702, the government's exhibit list confirms that it intends for this uncharged conduct to be a focus of the trial. Several exhibits demonstrate this intention:

> **Chris Court Parking and Storage Garage.** Exhibits 43-58 relate to this contract, the work for which was performed by P.J. Richfield (Davis's company) in 1993. Exhibit 54[2] is a "Field Observation Report" by an architect dated December 16, 1993, that notes various issues on the project regarding the grade slope in front of the building, the stability of the frame, incomplete bridging, and an issue regarding whether a staircase was up to code. Exhibits 44-53 are various documents requesting payment for P.J. Richfield, which the government is presumably offering in an attempt to demonstrate the inaccuracy of the documents' representations about the completeness and/or performance of project tasks. Exhibit 55 is an architectural "blueprint" for the construction of the garage. Exhibit 58 is an internal SHA memorandum from 2005. From this and other

---

[2] The exhibit numbers referenced here are taken from the government's August 16 exhibit list, the third version of its exhibit list. The exhibit numbers in previous motions in limine may differ, as they were based on the numbered exhibits made available by the government for copying, as contemplated by the Court's August 3, 2006 order, which was, in turn, based on a prior version of the exhibit list.

3

documents, it appears that sometime in 2005 SHA developed a remediation plan to address mold in the Chris Court Garage and that, twelve years after the fact, the SHA and its architects are pointing the finger at Mr. Davis's 1993 work and encouraging the government to do the same. The architect refers darkly, in a December 2005 letter, to "the reputation of the contractor involved in this building and some of the past practices that have recently come to light."

**504/ADA Project.** Approximately twelve exhibits (Nos. 59-71), many of which contain multiple documents, relate to alleged performance issues at this 1993-1994 project, which involved construction/renovations in compliance with the Americans with Disabilities Act (ADA). The exhibits reflect issues regarding a "conflict" between the requirements of the ADA, on the one hand, and the Massachusetts State Building Code, on the other hand, regarding whether ramp handrails should be extended beyond the ramp (Exh. 60); an issue over whether the handrails should be galvanized pursuant to a "cold galvanizing system" or a "hot dip galvanizing process" (*id.*); whether handrails should be bolted or welded to posts (*id.*); whether "solid steel" or "tubular" bars should be used for the handrails (*id.*); a possible or actual "change order" on the project (Exh. 61); and numerous documents relating to the development and completion of "punch lists" for the project (Exhs. 62-65).

## ARGUMENT

I. **TESTIMONY CONCERNING MR. DAVIS'S WORK IS EXPERT TESTIMONY UNDER RULE 702**

Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Testimony concerning whether Mr. Davis's work was "substandard" as the government has alleged—*e.g.*, that the work was not consistent with industry standards—is classic expert testimony based on "technical, or other specialized knowledge" to which Rule 702 applies. In fact, for many civil causes of action involving allegations that a defendants' performance fell below industry standards, a plaintiff cannot even sustain a cause of action without presenting expert testimony about the quality of the work performed. *See, e.g.*, *Primus v. Galgano*, 329 F.3d 236, 241 (1st Cir. 2003) (expert testimony on industry standard and how defendants' performance fell below that standard required in medical malpractice context). To the extent that such testimony will involve opinions about the customs and practices in the industry generally or the SHA specifically with respect to the completion and certification of jobs, courts have consistently treated such industry custom or practice testimony as expert testimony. *See, e.g.*, *Levin v. Dalva Bros., Inc.*, -- F.3d --, 2006 WL 2348537, at *9 (1st Cir. Aug. 15, 2006) (approving of expert testimony on industry custom and usage); *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) (same). Given this, any testimony concerning the quality of Mr. Davis's work, and particularly whether it was consistent with industry standards, would be subject to Rule 702 and Fed. R. Crim. P. 16's reporting requirements.

Similarly, any testimony about whether any job performance was "complete" at any particular time or in compliance with the contract or other requirements, is also covered by Rule 702. Any and all certifications and/or representations about a job's completeness in this case is provided in the context of the requirements of the architectural drawings, plans, and specifications for the contract. For example, Exhibit

52 is a so-called "Request for Partial Payment" on the Chris Court Garage project, in which the contractor certifies that "all work has been performed and material supplied in full accordance with the terms and conditions of the contract . . . and duly authorized deviations, substitutions, alterations, and additions." Similarly, Exhibit 51, a draft Certificate of Completion on the same project, includes the contractor's certification that the contract was performed, "in accordance with the requirements of the Specifications and Drawings and [the] Contract." Accordingly, whether performance was complete or partially complete at a particular point, or in time, necessarily requires an interpretation of these technical architectural materials as well as an understanding of terms of art in the particular industry, classic subjects of expert testimony. *See* Fed. R. Evid. 702 (defining expert testimony as that based on "scientific, *technical, or other specialized knowledge* (emphasis added)).

It is immaterial, moreover, whether this sort of testimony, also plainly based on "specialized knowledge" and/or "experience," will come from a witness who has some relevant fact testimony to provide. In 2000 Rule 702 was amended to make clear that <u>any</u> testimony, regardless of the witness's status, that is based on scientific, technical, or other specialized knowledge must be treated as expert testimony.[3] *See, e.g.*, *Bank of China,*

---

[3] The Advisory Committee stated:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson.

6

*New York Branch v. NBM LLC*, 359 F.3d 171, 180-82 (2d Cir. 2004) (reversing decision allowing a bank employee who investigated certain transactions to testify as a lay witness under Rule 701 as to investigative conclusions, banking custom and practice, and banking terminology, because such testimony based on employee's specialized knowledge).  Rule 702 expressly prohibits the government from eliciting expert testimony from, for instance, an SHA employee, simply by cloaking that witness "in the guise of a layperson."

## II. THE COURT SHOULD EXCLUDE EXPERT TESTIMONY OF MR. DAVIS'S WORK PERFORMANCE.

The expert disclosure requirement, added to Rule 16 in 1993, is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  Fed. R. Crim. P. 16 Advisory Committee Notes to the 1993 Amendment.  These expert disclosures are also necessary in order for the court to properly exercise its "gatekeeping" function under Fed. R. Evid. 702.  *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

To date, the government has provided no disclosure of any expert testimony it intends to use, as Rule 16 requires.  Rule 16 authorizes a court to preclude a witness from offering expert testimony where the proponent of the witness fails to comply with Rule 16's disclosure requirements.  *See* Fed. R. Crim. P. 16(d)(2)(C); *see also United States v. Barile*, 286 F.3d 749, 758-59 (4th Cir. 2002) (affirming as appropriate remedy under Rule 16 district court's exclusion of expert testimony for failure to give a proper

---

Fed. R. Evid. 701, Advisory Committee notes (citations omitted).

summary of expert opinion, inclusive of bases and reasons for opinion). Exclusion of any expert testimony concerning Mr. Davis's work performance is required here.

## CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Motion *In Limine* No. 5 to Exclude Expert Testimony of Substandard or Incomplete Performance.

Respectfully submitted,

PETER DAVIS

By his attorneys,

**/s/ James C. Rehnquist**
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: August 24, 2006

## CERTIFICATE OF SERVICE

I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on August 24, 2006.

**/s/ James C. Rehnquist**
James C. Rehnquist

LIBA/1724262.1