UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

### DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 7 RE: EVIDENCE OF "WAGE COMPLIANCE"

Defendant Peter Davis hereby moves *in limine* to preclude the government from introducing evidence that P.J. Richfield, Inc. ("PJR," Mr. Davis's company) or its subcontractors did not comply with wage requirements or did not pay the "prevailing wage" to workers on Springfield Housing Authority ("SHA") projects. The Court should exclude this type of evidence because it is tangential to the charges against Mr. Davis, and any relevance is more than countervailed by the unfair prejudice, confusion, and waste of time that would result from its admission. *See* Fed. R. Evid. 403. Otherwise, this already complex RICO and bribery case is destined to devolve into a series of mini-trials about such collateral matters as PJR's or its subcontractors' compliance with federal and state labor laws.

### ARGUMENT

As Mr. Davis has explained in his other motions *in limine*, this case chiefly concerns the allegation that Raymond Asselin, Sr. and Arthur Sotirion, Mr. Davis's co-defendants, operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to award contracts, steer sub-

1

contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶¶ 29, 40. Mr. Davis is one of the defendants alleged to have been rewarded with contracts and other benefits in exchange for the payment of "bribes, kickbacks, gratuities, and other things of value." *Id.*

The Indictment's charges against Mr. Davis principally concern thirteen payments, totaling approximately $60,000, that he allegedly made for improvements to the homes of co-defendants Christopher Asselin and Joseph Asselin between September 1996 and December 1997. Indictment ¶¶ 40. Allegedly, these payments were made in order to receive benefits from the Springfield Housing Authority. *Id.* The Indictment charges these thirteen payments as the alleged "racketeering acts" committed by Mr. Davis, *id.* (racketeering acts 101-113), and these allegations are incorporated into the two conspiracy charges (to violate RICO and 18 U.S.C. § 201 as well).

Although the Indictment is silent concerning wage issues, the government has indicated in the letter it sent in response to Judge Neiman's Order to supply a bill of particulars that it intends to introduce evidence that SHA rewarded Mr. Davis's "bribes" by, among other things, "causing more lenient enforcement of … wage compliance for P.J. Richfield, Inc." Letter from AUSA Welch to James C. Rehnquist (Sept. 19, 2005) at 2. Although it is not entirely clear, it appears the government may intend to show that PJR (or its subcontractors) failed scrupulously to submit paperwork certifying compliance with the prevailing-wage requirements of federal law (e.g., the Davis-Bacon Act, 40 U.S.C. § 276a, and related acts) and/or Mass. Gen. Laws ch. 149, §§ 26-27D. Generally speaking, these statutes are labor-protection provisions: they require contractors and subcontractors on public projects to pay workers not less than the prevailing-

wage rates for corresponding classes of workers employed on similar projects in a particular geographic area.

The government may contend that evidence of failure to comply with prevailing-wage requirements is probative of the charges in the Indictment because it demonstrates the "preferential treatment" Mr. Davis received in exchange for "things of value" he supplied to SHA officials. Indictment ¶ 40. Any evidence relating to wage compliance by PJR or its subcontractors, however, would appear to have little probative value as to these issues. PJR itself never had any hourly workers to which it owed a prevailing wage, and it would be quite a stretch to infer that Mr. Davis received a benefit from PJR's subcontractors' failure to comply with the recordkeeping or wage requirements.

Even if the Court were to conclude that wage-compliance evidence is relevant to whether Mr. Davis was given "preferential treatment" by the SHA, the Court still should exclude this evidence because its probative value is substantially outweighed by the risk of prejudice and juror confusion inherent in its presentation. *See* Fed. R. Evid. 403. There is no need to poison the jury by painting Mr. Davis as an unethical employer—the "kind of person" who exploits workers by evading laws designed for their protection—when such evidence is only tangentially relevant, if at all, to whether he received benefits that other contractors did not because he was paying bribes or other things of value.

Further, as Mr. Davis also argued in his Motion *in Limine* No. 4 with respect to evidence of allegedly substandard performance, the negligible value of this wage-compliance evidence is outweighed "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. This Court may exercise its discretion to exclude evidence under Rule 403 that would result in an additional "mini-trial" within the trial, causing

3

unwarranted juror confusion and a waste of time and resources.  *See*, *e.g.*, *Larch v. Mansfield Mun. Elec. Dep't*, 272 F.3d 63, 73 (1st Cir. 2001); *Ostler v. Codman Research Group, Inc.*, 241 F.3d 91, 96 (1st Cir. 2001); *United States v. Gilbert*, 229 F.3d 15, 24 (1st Cir. 2000).  Were Mr. Davis required to defend PJR's recordkeeping practices or the wage-compliance practices of its subcontractors on the ten SHA projects Mr. Davis oversaw from 1990-1997, scarce time and resources would be spent litigating Mr. Davis's practices on those jobs and/or apportioning blame between PJR and its various subcontractors.  Testimony concerning the federal and/or Massachusetts prevailing-wage schemes might well be necessary to determine whether Mr. Davis's practices (and those of his subcontractors) on each project complied with the applicable requirements.  In short, the trial might well devolve into a series of mini-trials, each resembling an administrative enforcement action, with disputes about recordkeeping, required wage and payroll forms, allocation of responsibility between PJR and its subcontractors, whether other contractors were treated with less "leniency," and so forth.  Consideration of this evidence by the jury would be unfair to Mr. Davis, would most certainly confuse and distract the jury, and significantly add to the length and complexity of the trial.  Accordingly, such evidence should be excluded pursuant to Federal Rule of Evidence 403.

## **CONCLUSION**

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Motion *in Limine* No. 7 Re:  Evidence of "Wage Compliance."

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such argument to the Court.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: August 25, 2006

## CERTIFICATE OF SERVICE

I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on August 25, 2006.

 /s/ James C. Rehnquist
James C. Rehnquist

LIBA/1724593.1