UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 8 RE: GOVERNMENT'S USE OF THE TERMS "RICO" AND "RACKETEERING" AND REFERENCE TO THE GREEK-AMERICAN ETHNICITY OF ANY DEFENDANTS, ALLEGED CO-CONSPIRATORS, OR WITNESSES**

Defendant Peter Davis hereby moves *in limine* for an order precluding the government from using the unnecessary and loaded terms "RICO" and "racketeering" during its opening statement. In addition, and relatedly, the government should be precluded from commenting on the Greek-American ethnicity of any defendants, co-conspirators, and witnesses in its opening statement, closing argument, or examination of witnesses. Both of these precautions are necessary to ensure that the jury determines Mr. Davis's guilt or innocence based on the evidence presented at trial, rather than on pre-existing stereotypes and misconceptions about the nature of RICO prosecutions.

**ARGUMENT**

As Mr. Davis has explained in his other motions *in limine*, this case primarily concerns the allegation that Raymond Asselin, Sr. and Arthur Sotirion, Mr. Davis's co-defendants, operated the SHA as a racketeering enterprise, "rewarding those individuals and businesses that paid bribes, kickbacks, gratuities and other things of value to members employed by and persons associated with the Enterprise by using their positions within SHA to award contracts, steer sub-

1

contracts, purchase[] goods and services, provide preferential treatment, and otherwise direct SHA resources to said individuals and businesses for the benefit of said individuals and businesses." Indictment ¶¶ 29, 40. Mr. Davis is one of the defendants alleged to have been rewarded with contracts and other benefits in exchange for the payment of "bribes, kickbacks, gratuities, and other things of value." *Id.* He is charged in the Indictment with violating § 1962(c) of the RICO statute (Count One) and with conspiring to violate that section (Count Two).

Although arguably relevant to the crimes charged, the words "RICO" and "racketeering" are noxious terms that, if introduced by the government in its opening statement, will distract the jury from the evidence and thereby impair Mr. Davis's ability to receive a fair trial. Sensitive to the inflammatory nature of the term "racketeering," the Tenth Circuit has prepared a pattern jury instruction for use in all RICO cases in an attempt to ameliorate the prejudice that may result from the term's employ:

> The word "racketeering" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proved. The term is only a term used by Congress to describe the statute.

Tenth Circuit Criminal Pattern Jury Instruction 2.74.1. In the Comment, the committee explains:

> Because of the pervasive use of the word "racketeering" in both the statute and in charging a RICO jury, this instruction is recommended in order to minimize the potential prejudice from the sinister implications of the word. It is especially important in contexts where the defendant has no obvious connection with what the public would conceive to be organized crime or organized crime activity.

For the same reasons that animate the Tenth Circuit's cautionary jury instruction, this Court should keep the terms "RICO" and "racketeering" from the jury's ears during the government's opening statement. As the Tenth Circuit recognizes, "[t]he word 'racketeering'

2

has certain implications in our society." In fact, both "RICO" and "racketeering" are laden with ethnic stereotypes. Indeed, it has been widely speculated that even the title of the RICO statute derived from an Italian-American, Al Capone-based film character named "Rico." *See, e.g., Parnes v. Heinold Commodities, Inc.*, 548 F. Supp. 20, 21 n.1 (N.D. Ill. 1982). Furthermore, as the Tenth Circuit explains, the implications of the word "racketeering" are "sinister." Both "RICO" and "racketeering" suggest to a layperson brutal, Mafia-style organized crime. This is especially true in light of the plot lines of movies and television programs like The Sopranos, which present fictional accounts of the racketeering investigations and RICO prosecutions of their characters.

In contrast to the images the terms "RICO" and "racketeering" will evoke in the minds of the jury, the Indictment here does not even hint at violent activity or organized crime in the popular sense. Even the enterprise charged in the Indictment, the Springfield Housing Authority, is a legal entity. Were the government permitted to refer to "RICO" and "racketeering" in its opening statement, however, the jury might be misled into believing that this case, which at its heart concerns allegations of bribery and kickbacks, is more akin to the RICO racketeering cases of popular understanding. That is why, according to the Tenth Circuit, it is "especially important" to stave off the sinister implications "in contexts where the defendant has no obvious connection with what the public would conceive to be organized crime or organized crime activity." This danger is magnified here, where many of the defendants, alleged co-conspirators, and witnesses coincidentally are the same ethnicity, Greek-American, and the jury might wrongly infer that they, like the Mafia, are organized along ethnic lines.

Finally, there is no good reason why this Court should not proactively prevent the prejudice and confusion the terms "RICO" and "racketeering" may cause by precluding the

3

government from using these words in its opening statement, rather than try to treat this prejudice with an instruction. The government has no real need to use these terms in its opening; it can refer to "unlawfully conducting the affairs of an enterprise" without losing the meaning of the charged crime or context for its projected evidence. On the other hand, if the government uses "RICO" and "racketeering" in its opening, the jury may receive the evidence through a warped lens, making it impossible for Mr. Davis to overcome the prejudice caused by the government's use of the loaded terms.

## CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Motion *in Limine* No. 8 Re: Government's Use of the Terms "RICO" and "Racketeering" and Reference to the Greek-American Ethnicity of any Defendants, Alleged Co-Conspirators, or Witnesses.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such

argument to the Court.

                Respectfully submitted,

                PETER DAVIS

                By his attorneys,

                 **/s/ James C. Rehnquist**
                James C. Rehnquist (BBO # 552602)
                Kathleen Luz (BBO # 643278)
                GOODWIN PROCTER LLP
                Exchange Place
                Boston, MA 02109-2881
Dated: August 25, 2006      (617) 570-1000

## CERTIFICATE OF SERVICE

     I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on August 25, 2006.

                 **/s/ James C. Rehnquist**
                James C. Rehnquist

LIBA/1724933.1