UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 9 RE:  EVIDENCE REGARDING P.J. RICHFIELD CONTRACT PERFORMANCE PRIOR TO 1995**

Defendant Peter Davis hereby moves *in limine* to preclude the government from introducing evidence of SHA contractual work performed by Mr. Davis prior to 1995.[1]

The crux of the government's case against Mr. Davis, at least according to the Indictment, is 13 checks Mr. Davis's company, P.J. Richfield, allegedly wrote in 1996 and 1997 to pay for work done on the homes of Joseph and Christopher Asselin, sons of former SHA Executive Director Raymond Asselin, Sr.  Indictment ¶40.  Those payments, alleged to violate 18 U.S.C. §201(b) and Mass. Gen. Laws ch. 268(A), § 2, are the basis for 13 of the 14[2] predicate racketeering acts in the Indictment, and are incorporated into the two conspiracy charges as well. Exhibits 99-139 on the government's exhibit list appear to relate to those checks and work done by the payees on the checks.

---

[1] This motion *in limine* overlaps to a certain extent with two of Mr. Davis's other motions *in limine*—Defendant Peter Davis's Motion *in Limine* No. 4 to Exclude Evidence of Allegedly "Substandard or Incomplete Work on SHA Contracts by Peter Davis and/or P.J. Richfield and Defendant Peter Davis's Motion *in Limine* No. 5 to Exclude Expert Testimony of Substandard or Incomplete Performance—although this one is broader in scope but narrower in time.

[2] The fourteenth predicate act is an alleged violation of 18 U.S.C. §1503 (obstruction of justice) in April 2003. Indictment ¶ 54.

1

Yet an even larger number of government exhibits—approximately 70—appear to relate only to the 1992-1994 time frame, years before the date of any allegation in the Indictment that any "thing of value" was offered, promised, or paid by Mr. Davis to or for the benefit of any SHA representative or his family members. This evidence should be excluded for multiple reasons.

First, given that the Indictment's earliest allegation of a bribe by Mr. Davis is September 30, 1996, it is difficult to see how evidence from a period ending almost two years earlier is relevant. Nothing on the government's exhibit list indicates that the government intends, or is able, to prove that any improper payment was made by Mr. Davis prior to September 30, 1996. It is difficult to imagine, therefore, that this September 1996 payment has any relationship whatever to contract work done in 1994. In other words, it seems unlikely, if not implausible, that the 1996 payment could have been made with a corrupt intent to influence an official action taken years beforehand. *See* 18 U.S.C. § 201(b) (making it a crime to "corruptly give[ ], offer[ ], or promise[ ] anything of value to any public official" with the intent to influence official action); Mass. Gen. Laws ch. 268A, § 2 (same); *see also United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 414 (1999) (holding that under § 201 the government must prove a link between the thing of value given and an official act); *Scaccia v. State Ethics Comm'n*, 431 Mass. 351, 355 (2000) (same with respect to Mass. Gen. Laws ch. 268A, § 2). Although the government has alleged that Mr. Davis received various forms of "preferential treatment" from the SHA as part of a "pay to play" system, and some of the evidence from the 1992-1994 period may be intended to demonstrate such treatment, such

evidence is irrelevant to proof of the charged crimes, including the charged conspiracies,[3] absent an illicit payment or offer/promise of payment from that period.

Second, especially given the passage of time, it would be fundamentally unfair to require defendant Davis to rebut whatever unsavory inferences the government intends to draw from the documentation that exists for the contracts performed by P.J. Richfield in the 1992-1994 time frame. The documents relating to these contracts are confusing, grossly incomplete, and completely untrustworthy given the manner in which they were generated and kept. The bulk of Exhibits 42-83, which relate to P.J. Richfield's performance on four contracts from 1992-1994, are documents that were "seized from the office of Arthur Sotirion," according to the Government's Exhibit List. In short, the government appears to be relying on selected excerpts from what appear to be random assortments of documents, many handwritten, that appear to have been stored haphazardly by co-defendant Arthur Sotirion in his SHA office and piled into boxes by the FBI in its 2002 execution of a search warrant. These are not SHA "business records" in any sense of the term, and there will be numerous disputes about the admissibility, authenticity, and reliability of this evidence.

The government is expected to attach special significance to Exhibit 82, attached hereto as Exhibit 1, a cluster of documents allegedly related to one of the two 504/ADA projects P.J. Richfield undertook for the SHA in 1993-94. This document includes handwritten notes that the government has described earlier in the case as "evidence of things of value given by defendant Davis to defendants Asselin, Sr. and Sotirion prior to 1996." Government's Response to Defendant Davis's Motion for Severance at 10. One page of this exhibit, which bears the date

---

[3]   The mere fact that the RICO and bribery conspiracies are alleged to have begun in 1993 does not make this evidence admissible, as the lack of any payment makes the evidence non-probative of these charges as well, given that both conspiracies center on alleged agreements to commit bribery.

3

12/23/94, contains handwritten calculations, alleged by the government to be in Mr. Davis's handwriting, referencing an alleged three-way division of Davis's profit on the 504/ADA contract next to the phrase "Owed to Art & Ray by Pete." *Id.*

But even under the government's sinister interpretation of it, this document should not be admissible. There is no indication that the government intends, or is able, to prove that Mr. Davis, or anyone else, for that matter, actually made the payments to "Art & Ray" that may be implied by this document. Without evidence of payment, the document loses its probative value: it does not tend to show the payment of a thing of value, and it is far too cryptic and confusing[4] to support an inference of an "offer or promise" to provide a thing of value. Admission of this exhibit into evidence without proof that any payment was made, moreover, would be unfairly prejudicial. The jury might well attach undue significance to this evidence, given its superficial resemblance to the charged misconduct, and might even unfairly presume that the reason the government cannot prove that payment was made is because the relevant records have been destroyed or are unavailable. In sum, because the probative value of these old, confusing documents is slight—while the potential prejudice confusion they may cause and the time that may be wasted in explaining them is great—they are appropriately excluded under Fed. R. Evid. 403.

---

[4] Exhibit 82 is described by the government on its August 16, 2006 exhibit as "File Folder Captioned 'New Bills', dated 12/23/94, with Enclosures Containing Calculations for ADA/504 Contracts Seized from Office of Arthur Sotirion." It is a package of four, separately clipped groups of documents totaling twelve pages. The first group of documents is six pages that have no obvious relation to one another—including handwritten notes dated 12/28/94; a copy of a file folder labeled "Wk Ending June 1-4, 1982"; a copy of a file folder labeled "General"; two pages of typed and handwritten notes dated 12/23/94; and a portion of what appears to be a typed letter dated February 1, 1994, with undated handwritten notes on the back. The second group of documents includes a register tape from an adding machine. The third group of documents consists of what appears to be a January 7, 1994 invoice from an entity called "Early Enterprises" to G&R Construction concerning "demolition and clean up of debris" at Riverview Rehabilitations, along with a copy of an envelope addressed to G&R Construction from Early Enterprises. The fourth group of documents is two pages of undated, handwritten notes. Obviously, the circumstances under which these diverse documents were generated is far from self-evident and will requite significant trial time to explain.

If the Court is inclined to admit some or all of the 1992-1994 contract performance evidence, defendant Davis asks that the Court at least order the government to refrain from discussing this evidence in its opening, especially Exhibit 82.

## CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Motion *in Limine* No. 9 Re: Evidence of P.J. Richfield Contract Performance Prior to 1995.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such

argument to the Court.

>                    Respectfully submitted,
>
>                    PETER DAVIS
>
>                    By his attorneys,
>
>                    /s/ James C. Rehnquist
>                    James C. Rehnquist (BBO # 552602)
>                    Kathleen Luz (BBO # 643278)
>                    GOODWIN PROCTER LLP
>                    Exchange Place
>                    Boston, MA 02109-2881
>                    (617) 570-1000

Dated: August 25, 2006

## CERTIFICATE OF SERVICE

    I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on August 25, 2006.

>                    /s/ James C. Rehnquist
>                    James C. Rehnquist

LIBA/1724718.2