```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,       )   CR-N-04-30033-MAP
                                )
                  Plaintiff,    )
                                )
       vs.                      )
                                )
PETER DAVIS,                    )
                                )
                  Defendant.    )
```

**GOVERNMENT'S RESPONSE TO DEFENDANT DAVIS'S MOTION IN LIMINE NO. 4**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, William M. Welch II, Assistant United States Attorney, and Steven H. Breslow, Assistant United States Attorney, hereby files this response to defendant Davis's Motion in Limine No. 4 to Exclude Evidence of Allegedly "Substandard" or Incomplete Work on SHA Contracts by Peter Davis and/or P.J. Richfield. This motion in limine should be denied because the contested evidence proves an essential element of the charged crimes.

This is a bribery case. The Government has charged defendant Davis in Count 1 with RICO, in Count 2 with RICO Conspiracy, and in Count 3 with Conspiracy to Commit Federal Bribery.[1]  Count 1

---

[1] The defendant also has been charged with Obstruction of Justice in Count 107, in which the defendant falsely denied some of his bribery conduct.

1

alleges that defendant Davis committed numerous predicate acts of federal bribery in violation of Title 18, United States Code, Section 201 in furtherance of the RICO enterprise. Count 3 alleges that defendant Davis conspired with others to violate Section 201.

The essential elements of Section 201 require the United States to prove, among other things, that:

>  . . .
>
>  (2) the defendant did directly and indirectly give, offer, and promise anything of value to a public official; and,
>
>  (3) the defendant did so with the corrupt intent to influence the public official in the performance of an official act or to commit a fraud on the United States or to perform acts in violation of his lawful duty.

Sands, Modern Federal Jury Instructions, ¶ 16-10.

The "corrupt" intent necessary to a bribery conviction is in the nature of a *quid pro quo* requirement." United States v. Sun-Diamond, 526 U.S. 398, 404 (1999). There must be "a specific intent to give ... something of value *in exchange* for an official act." Id. See also United States v. Alfisi, 308 F.3d at 149 (2nd Cir. 2002); United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir. 1993). Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official. Alfisi, 308 F.3d at 149.

Even though this is a bribery case, defendant Davis now seeks to bar the United States from introducing evidence that proves one

of the essential elements of the bribery statute:  the official acts performed for defendant Davis in exchange for the payment of bribes.  Not only are defendant Davis's factual arguments misleading and distorted, but his legal arguments cannot withstand Rule 403 scrutiny.

Contrary to defendant Davis's assertion in his motion, the "crux of the Indictment's charges" is not thirteen payments made by defendant Davis in 1996 and 1997, but rather a pattern of bribery between defendant Davis, Asselin, Sr. and Sotirion that extended back as early as 1990.  See Motion, pg. 2.  As described more fully in the Government's Motion in Limine to Admit Certain Evidence, dkt. 203, in approximately 1990, defendant Davis agreed to assume the fifty percent share of a bank loan owed jointly by Asselin, Sr.'s son, Joseph Asselin, and defendant Davis, the principals in P[Peter]. J[Joseph]. Richfield, Inc.  Asselin, Sr. also had a $20,000.00 investment in P.J. Richfield, Inc. at that time.  By October, 1990, defendant Davis began obtaining contracts at SHA despite Asselin, Sr.'s clear conflicts of interest.

The illicit relationship between Asselin, Sr. and defendant Davis continued into 1993 and 1994.  During those years, Asselin, Sr. and Sotirion steered to defendant Davis an approximately $69,000.00 contract to defendant Davis for the Christopher Court garage and an approximately $630,000.00 contract to make handicap-accessible renovations at various housing projects ("the ADA/504

contract"). During this time frame, Asselin, Sr. and Sotirion also steered to defendant Davis an approximately $200,000.00 subcontract and approximately $40,000.00 in "supervision" payments under a parallel $650,000.00 contract awarded to another racketeering enterprise member for the same handicap modernization project.

The corrupt relationship between Asselin, Sr., Sotirion, and defendant Davis continued into 1996, 1997, and 1998. During those years, Asselin, Sr. and Sotirion steered a $1.2 million contract, among other contracts, to defendant Davis. Defendant Davis made on behalf of Asselin, Sr. and Sotirion, among other payments, thirteen payments for home improvement projects at the residences of Christopher Asselin and Joseph Asselin.

As evidence of the *quid pro quo* between Asselin, Sr., Sotirion and defendant Davis, the Government will introduce evidence that Asselin, Sr. and Sotirion gave defendant Davis preferential treatment, among other things, in exchange for bribes and kickbacks. This preferential treatment as it related to job performance fell into three categories: (1) defendant Davis's failure to complete his SHA contracts per specifications; (2) use of SHA personnel while on SHA time and SHA materials to complete defendant Davis's contracts; and (3) final payment by SHA to defendant Davis before defendant Davis completed his contracts. For example, for the 1993 and 1994 contracts, the Government will

introduce evidence that Asselin, Sr. and Sotirion paid defendant Davis months before he finished the work on his $630,000.00 contract. Asselin, Sr. and Sotirion then subsequently caused SHA to pay for some of defendant Davis's materials and instructed SHA workers to perform work for defendant Davis on SHA time in order to complete defendant Davis's contracts with SHA. Asselin, Sr. and Sotirion did so even though the SHA contracts required defendant Davis to pay for his materials and pay his own labor. The net effect of such "preferential treatment", of course, was that defendant Davis's costs decreased, thus increasing his profits and making it worthwhile for defendant Davis to pay illegal bribes and kickbacks to Asselin, Sr. and Sotirion.

As additional evidence of the *quid pro quo* for the 1993 and 1994 contracts, the Government will introduce evidence that Asselin, Sr. and Sotirion permitted defendant Davis not to complete certain aspects of these contracts according to contract specifications, thereby substantially reducing defendant Davis's costs. Once again, the net effect of such "preferential treatment" was that defendant Davis's costs decreased, thus increasing his profits and making it worthwhile for defendant Davis to pay illegal bribes and kickbacks to Asselin, Sr. and Sotirion.

Asselin, Sr. and Sotirion afforded defendant Davis such valuable preferential treatment for a reason: the defendant had

conspired with them to share his ADA/504 profit equally.  Thus, the more money that Asselin, Sr. and Sotirion could save the defendant on this job, the more profit they stood to share. Similarly, the quicker Asselin, Sr. and Sotirion could enable the defendant to be paid, the faster they would receive their share in kickbacks.

Therefore, defendant Davis's assertion that this evidence has "little probative value as to these issues" is just plain wrong. See Motion, pg. 4.  This evidence directly proves an essential element of the charged crimes.  While this conduct may not have been specified in the Superseding Indictment, the 1993 and 1994 racketeering conduct has been charged.  Counts 1 and 2 allege a substantive RICO violation and a RICO conspiracy that spanned from 1988 through April, 2003, clearly capturing all of defendant Davis's racketeering conduct. See Superseding Indictment, ¶¶ 36, 56.  Count 3 alleges a bribery conspiracy that spanned from 1993 through April, 2003, again charging all of defendant Davis's conduct. Id. at 58.

Of course, the mere fact that the Government did not specify this earlier conduct does not bar its admission. See United States v. Connolly, 341 F.3d 16, 26-27 (1st Cir. 2003)(unspecified racketeering acts sufficient to find that Government proved essential elements of a RICO charge); United States v. Anguilo, 847 F.2d 956, 964 (1st Cir. 1988)(commission of overt acts is not

required for a RICO conspiracy conviction); United States v. Napolitano, 340 F.2d 313, 314 (1st Cir. 1965)(stating in a conspiracy case, "the failure to specify any particular piece of conduct as an overt act does not prevent proof thereof"). The Government certainly has a right to rely upon established First Circuit law in drafting its indictments.

Defendant Davis's supposition that this evidence of "preferential treatment" somehow relates to the 1996 and 1997 payments is nonsensical and designed solely to mislead the court. The evidence of preferential treatment in 1993 and 1994 is direct evidence of the existence of the bribery scheme between defendant Davis, Asselin, Sr. and Sotirion in 1993 and 1994. Since the evidence relates to a central issue in this case, the evidence of "preferential treatment" is not prejudicial.

When balancing the probative value and need for evidence versus its possible prejudicial effect under Rule 403, the question is always "one of `unfair' prejudice - not of prejudice." United States v. Moreno Morales, 815 F.2d 725, 740 (1st Cir. 1987). "By design, all evidence is meant to be prejudicial; it is only unfair prejudice that must be avoided." United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989). See also United States v. Lachman, 48 F.3d 586, 592 (1st Cir. 1995).

"When proffered evidence relates to the central issue in a case, it is a difficult matter indeed to show that the prejudicial

effect of that evidence substantially outweighs its highly probative nature, as Rule 403 requires." Rubert Torres v. Hospital San Pablo, Inc., 205 F.3d 472, 479 (1st Cir. 2000). "[T]he more essential the evidence, the greater its probative value, and the less likely a trial court should order the evidence excluded." United States v. King, 713 F.2d 627, 631 (11th Cir. 1983). See also United States v. Cruz-Kuilan, 75 F.3d 59, 61 (1st Cir. 1996)(stating that "it would be surpassingly difficult to justify a finding of unfair prejudice" stemming from the introduction of evidence "so tightly linked to guilt as defined by" the offense's elements.). Since this evidence of "preferential treatment" proves an essential element of the charged crimes, the evidence by definition is not unfairly prejudicial.

The Government intends to introduce the same type of evidence of "preferential treatment" to establish the *quid pro quo* between the 1996 and 1997 payments and the Christopher Court contract, which was a $1.2 million contract, received by defendant Davis in 1996, 1997 and 1998. The Government will introduce evidence that defendant Davis did not complete his contract with SHA. In turn, Asselin, Sr. and Sotirion caused SHA to pay for some of defendant Davis's materials and instructed SHA workers to perform work for defendant Davis on SHA time in order to complete defendant Davis's contract with SHA. As stated earlier, the net effect of such "preferential treatment" was again to decrease defendant Davis's

costs and increase his profits, thus affording defendant Davis the ability to pay illegal bribes and kickbacks to Asselin, Sr. and Sotirion.

Defendant Davis claims that evidence of his competence as a contractor is marginally relevant. However, the evidence presented by the Government will not involve whether or not defendant Davis was a competent or incompetent contractor. Instead, the Government's evidence will focus on the fact that defendant Davis simply did not complete his contracts with SHA. Defendant Davis could have been a competent contractor, but the Government's evidence will show that he did not complete his contracts with SHA because Asselin, Sr. and Sotirion did not require him to do so.

Moreover, defendant Davis's failure to complete his contracts in 1993 and 1994, for example, should have made it more unlikely that SHA would have used defendant Davis again. The fact that Asselin, Sr. and Sotirion caused SHA to use defendant Davis as a contractor in 1996 and 1997 is further evidence that the thirteen payments made by defendant Davis were in fact bribes paid to secure business with SHA.

Defendant Davis claims that introduction of this evidence will cause "undue delay, waste of time, or needless presentation of cumulative evidence." See Motion, pg. 5. As an initial matter, this argument is nothing more than a shameless red herring

designed to create undue concern in the court's mind that this trial will extend beyond the previously estimated schedule. As defendant Davis concedes, he has known since September, 2005 that the Government intended to introduce this type of evidence. See Motion, pg. 3. Despite this fact, and with trial only three weeks away, defendant Davis has made no Rule 16 disclosures regarding expert witnesses. If in fact he intends to call experts and introduce expert opinion, then defendant Davis is in serious violation of the Local Rules and Rule 16.

Notwithstanding the above, defendant Davis's argument that this evidence will cause undue delay is not factually accurate. The Government's evidence is quite focused. It entails proof that defendant Davis did not do the work that he was contractually obligated to perform, but was nonetheless paid with SHA by Asselin, Sr. and Sotirion. In other words, the issue before the jury will simply be whether the defendant completed the job or not. That kind of question will not require expert testimony. The Government's evidence against defendant Davis's job performance will not be a general attack upon his competence. Instead, the evidence will highlight several discrete instances of non-performance that resulted in substantial cost savings to him.

For the foregoing reasons, the Government respectfully asks that the court deny defendant Davis's Motion in Limine No. 4.

Filed this 30th day of August, 2006.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney


                                          /s/ William M. Welch II
                                          WILLIAM M. WELCH II
                                          Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

Hampden, ss.                              Springfield, Massachusetts
                                          August 30, 2006

    I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mailing said motion to:

James C. Rehnquist, Esq.
Goodwin Proctor & Hoar
Exchange Place
Boston, MA 02109


                                                /s/ William M. Welch II
                                                WILLIAM M. WELCH II
                                                Assistant United States Attorney