UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR-N-04-30033-MAP |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PETER DAVIS, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT DAVIS'S BRADY MOTION**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, William M. Welch II, Assistant United States Attorney, and Steven H. Breslow, Assistant United States Attorney, hereby files this response to defendant Davis's Motion to Compel Government to Disclose Brady Material.  This motion in limine should be denied because the requested evidence is either not Brady, is already in the defendant's possession, or has been made available to the defendant through automatic discovery.

**A.   Scope of Disclosure under Brady**

"There is no constitutional right to discovery in a criminal case, and Brady did not create one." Weathersford v. Bursey, 429 U.S. 545, 559 (1977).  The Government's Brady obligation does not afford the defendant "the unsupervised authority to search through the [Government]'s files." Pennsylvania v. Ritchie, 480 U.S. 39,

1

59 (1986)(citing United States v. Bagley, 473 U.S. 667, 675 (1985)).  Moreover, the Government's duty to disclose exculpatory evidence "does not establish a duty to provide defense counsel with unlimited discovery of everything known by the prosecutor." Id. at 106.

The Government "decides which information must be disclosed" when a defendant makes a request for exculpatory material under Brady. Ritchie, 480 U.S. at 59.  While the Brady doctrine leaves the Government "with a degree of discretion, it must also be understood as imposing a corresponding burden." Kyles v. Whitley, 115 S.Ct. 1555, 1567 (1995).  The Government must "gauge the likely net effect of all such [Brady] evidence and make disclosure when the point of `reasonable probability is reached." Id.

Under the Brady doctrine, the Government must produce evidence favorable to the accused "`where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" Kyles, 115 S.Ct. at 1565 (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)).  The test for materiality is "`if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles, 115 S.Ct. at 1565 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  A reasonable probability of a different result means a "trial resulting in a verdict worthy of confidence." Kyles, 115 S.Ct. at

1566.  The definition of materiality does not consist of an item-by-item review of the evidence.  <u>Kyles</u>, 115 S.Ct. at 1567.  Rather, its definition includes a review of the "suppressed evidence considered collectively."  <u>Id</u>.

The <u>Brady</u> doctrine does not reach many forms of evidence.  <u>Brady</u> and its progeny do not require discovery of inadmissible evidence, which "by definition [is] not material, because it never would have reached the jury and therefore could not have affected the outcome of the trial."  <u>United States v. Ranney</u>, 719 F.2d 1183, 1190 (1st Cir. 1983).  The <u>Brady</u> doctrine also does not compel the Government to produce information already known to the defendant, information that the defendant can obtain himself "`with any reasonable diligence,'" or duplicative information.  <u>United States v. Pandozzi</u>, 878 F.2d 1526, 1529, 1532 (1st Cir. 1989)(citations omitted); <u>United States v. DeLeo</u>, 422 F.2d 487, 498-99 (1st Cir. 1970)(if non-disclosure of material information, no prejudice results where defense counsel already possessed the information).  <u>See</u> <u>also</u> <u>United States v. Rodriguez</u>, 162 F.3d 135, 147 (1st Cir. 1998)(holding that "[t]he government has no Brady burden when the necessary facts . . . are readily available to a diligent defender.").

A central argument in defendant Davis's motion is that the Government has an obligation to go through all of the automatic discovery in this case, identify, copy and then produce to

defendant Davis any and all <u>Brady</u> materials.  Defendant Davis's argument is unique, to the say the least, for several reasons.  First, there is no obligation that the Government engage in such a search for <u>Brady</u> materials. <u>See</u> <u>United States v. Mmahat</u>, 106 F.3d 89, 94 (5th Cir. 1997)(overruled on other grounds by <u>United States v. Estate of Parsons</u>, 367 F.3d 409 (5th Cir. 2004))(holding in case involving 500,000 documents that "there is no authority for the proposition that the government's <u>Brady</u> obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over."); <u>United States v. Eisenberg</u>, 773 F.Supp. 662, 687-88 (D.N.J. 1991)(holding that "<u>Brady</u> is "designed to 'assure that the defendant will not be denied *access* to exculpatory evidence *only known to the Government*.'" (citations omitted)); <u>United States v. Bloom</u>, 78 F.R.D. 591, 617 (E.D.Pa. 1977).

    Second, defendant Davis has never formally identified what his defenses are.  Therefore, without the benefit of defendant Davis actually telling the Government how he precisely intends to defend against the charges, the Government's <u>Brady</u> search will be an exercise in futility.  Instead, defendant Davis is in the best position to search for materials deemed helpful to his defense.

Finally, defendant Davis has inspected and copied most, if not all, of the automatic discovery.[1]  Defendant Davis, therefore, has had access to, and copies of, all of the same materials to which the Government has had access.  Since defendant Davis has not been inclined to share the details of his defense with the Government, he and his counsel are in the best position to search through the "haystack" for those documents that only he knows are relevant and helpful to his case.

    C.    Requests Relating to the Obstruction of Justice Charge

First, there is no evidence that the grand jury was not actually investigating the subject matter of the FBI interview.  Second, there is no information that the purpose of the FBI interview of defendant Davis was something other than to gather information for, and on behalf of, the grand jury.  Since the decision to make false statements to the FBI special agents was entirely within the control of defendant Davis, it would have been impossible for the interview to have been an attempt to elicit false statements from defendant Davis.  The presumption is that

---

[1] On June 1, 2005, defendant Davis requested to review any and all materials generated by outside counsel's internal investigation of SHA.  On June 15, 2005, the Government responded that these materials could be reviewed at the U.S. Attorneys' Office.  To date, defendant Davis has not attempted to review these materials.

individuals will tell the truth when interviewed by federal law enforcement agents.[2]

  C.  Requests Relating to the Alleged Pay to Play System

In United States v. Hicks, 848 F.2d 1, 3 (1st Cir. 1988), the First Circuit considered for the first time "the question of whether and under what circumstances the grand jury testimony of a non-witness (that is, a potential witness who is not called to testify by the government) should be available to a defendant" under Brady.  The Hicks court, adopting the Second Circuit's ruling on this issue, held that

> [t]he statement of the potential witness *not* called by the government is in no meaningful sense "suppressed."  The defense has access to interview the witness to discover exculpatory information.  Indeed, the fact that the government is not calling the witness will often be a tip-off that the witness' testimony is potentially helpful to the defendant.  By knowing who the witness is, the defendant is "on notice of the essential facts required to enable him to take advantage of [the] exculpatory testimony . . . Ruggiero, 472 F.2d at 604.  Most significantly, in the absence of the declarant, the contested grand jury testimony is inadmissible as hearsay as long as the witness *can* be subpoenaed to testify. Id. at 604-05.  If the defendant for whatever reason cannot gain access to interview or subpoena the witness, then the witness' grand jury testimony becomes subject to *Brady* rules.

---

[2] Defendant Davis states that "[t]he exculpatory nature of this information could hardly be more obvious, given the "nexus" requirement articulated in Aguilar." See Motion, pg. 4 fn.2.  As described more fully in the Government's Response to Defendant Davis's Motion to Dismiss, defendant Davis is wrong both in his accusation and his interpretation of Aguilar.

6

Hicks, 848 F.2d at 4.

In the present case, the grand jury returned an exceedingly detailed indictment in July, 2004 that identified a number of SHA contractors who the Government alleged had paid bribes to secure business. In January, 2005, the grand jury returned a Superseding Indictment that identified several more SHA contractors who the Government alleged had paid bribes to secure business. Consistent with the Local Rules, the Government also identified unindicted co-conspirators involved in the case. The Government did this by letter on July 28, 2004 and February 2, 2005. Therefore, for almost a year and a half now, defendant Davis has known the "universe" of corrupt contractors involved in the bribery scheme.

On March 28, 2005, the Government produced two CDs, captioned "Vendor Payments" and "SHA Minutes," which contain accounts payable information and SHA board minutes. The SHA board minutes identify the contractors who submitted bids and the contractor to whom SHA awarded the contract. The account payable information lists all payments made by SHA, including all payments made under contracts awarded by SHA. Both databases are easily searchable. For example, by searching under the name "P.J. Richfield" or any other contractor name, one can produce all payments made by SHA to P.J. Richfield or any contractor from 1988 through 2003.

Therefore, for almost a year and a half now, defendant Davis has been able to deduce who was a corrupt contractor and who was a

legitimate contractor. Defendant Davis simply had to review the SHA minutes and accounts payable information and interview every contractor not identified in the Superseding Indictment or automatic discovery letters. Under Hicks, this request does not constitute Brady because all of the non-corrupt contractors have been identified and are accessible to defendant Davis for interview.

Moreover, the Government disputes that this information is Brady. The mere fact that legitimate contractors exist does not exculpate defendant Davis. The fact that defendant Davis can call five contractors who will say that they did not pay bribes and did not have contracts steered to them does not exculpate defendant Davis, particularly when defendant Davis intends to concede that he in fact paid for the home improvements on the personal residences of co-defendants Christopher Asselin and Joseph Asselin.

The Government's theory had never been that there are no legitimate contractors, or that all contractors were part of a corrupt bid-rigging system. Quite to the contrary, the Government's theory will be that Asselin, Sr. and Sotirion could not control, nor did they want to control, the entire bid system all of the time. Otherwise, the bid-rigging would have been much more transparent and would have been discovered many years ago.

None of this means, however, that defendant Davis did not participate in a tainted bid-rigging system.

    D.   <u>Requests Relating to Motivation to Steering Contracts</u>

This request does not fall under the definition of <u>Brady</u>. In approximately 1990, defendant Davis agreed to assume the fifty percent share of a bank loan owed jointly by Asselin, Sr.'s son, Joseph Asselin, and defendant Davis, the principals in P[Peter]. J[Joseph]. Richfield, Inc. Asselin, Sr. also had a $20,000.00 investment in P.J. Richfield, Inc. at that time.

Therefore, the "thing of value" is defendant Davis's agreement to take over Asselin, Sr.'s son's debt in a company in which Asselin, Sr. had a $20,000.00 investment. The Government contends that defendant Davis began obtaining contracts at SHA because of his agreement to assume that debt.

In any event, defendant Davis already has copies of the requested documents known to the Government. The Government has marked most, if not all, of the pertinent documents as exhibits, and defendant Davis has copies of those documents.

    D.   <u>Requests Re: Minority Subcontractors and Filed Sub Bids</u>

This request does not fall under the definition of <u>Brady</u>. As a public entity, SHA must adhere to Commonwealth of Massachusetts procurement procedures and HUD regulations. Commonwealth of Massachusetts procurement procedures are codified principally in Chapter 30B of the Massachusetts General Laws; HUD regulations can

be found in the Code of Federal Register. Indeed, defendant Davis has conceded that "there are certain legal requirements as to use of minority subcontractors for state-granted contracts." Motion, pg. 10.

It is clear, therefore, that defendant Davis knows that he can satisfy his requests by obtaining copies of those legal requirements. Since this information has been equally available to defendant Davis for at least two years, this information is not Brady by definition. Rodriquez, 162 F.3d at 147; Pandozzi, 878 F.2d at 1529, 1532.

F.   Requests Re: Knowledge of Co-Conspirators [sic] Actions

The Government disputes that lack of knowledge of co-conspirator actions is Brady. First Circuit law clearly holds that a conspirator need not know the actions of all of his conspirators.

In any event, by August 31, 2006, defendant Davis will have received copies of all of the witness statements of his relevant co-conspirators. The Government notes that defendant Davis has had copies of the grand jury testimony of co-conspirators Gary Baribeau and Nicholas Katsounakis for at least a year.

F.   Requests Re: Substandard Performance Allegations

This information has been made available through automatic discovery and presumably copied by defendant Davis. Since defendant Davis has access to this information, it is not Brady by

10

definition. <u>Rodriguez</u>, 162 F.3d at 147; <u>Pandozzi</u>, 878 F.2d at 1529, 1532. Moreover, the Government has no obligation to ferret this information out and produce it for defendant Davis.

For the foregoing reasons, the Government respectfully asks that the court deny defendant Davis's Motion to Compel <u>Brady</u> Material.

Filed this 30th day of August, 2006.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>
> /s/ William M. Welch II
>WILLIAM M. WELCH II
>Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

Hampden, ss.                           Springfield, Massachusetts
                                       August 30, 2006

    I, William M. Welch, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mailing said motion to:

James C. Rehnquist, Esq.
Goodwin Proctor & Hoar
Exchange Place
Boston, MA 02109


        <u>/s/ William M. Welch II</u>
        WILLIAM M. WELCH II
        Assistant United States Attorney