UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

### DEFENDANT PETER DAVIS'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Peter Davis hereby submits this reply memorandum in further support of his motion to dismiss Counts 1 and 107 of the Indictment. This short brief responds to the arguments in the government's opposition brief.

**I.     The Government Misreads *Aguilar*.**

The government's opposition is predicated on a misreading of *United States v. Aguilar*, 515 U.S. 593 (1995). The government mistakenly claims that *Aguilar* sets up a disjunctive, either/or test for establishing the nexus requirement when a § 1503 claim is predicated on false statements to an investigating agent, namely that the government must demonstrate either that the agent was under subpoena to testify before the grand jury *or* that the investigating agent was acting as the arm of the grand jury. Government's Response to Defendant's Motion to Dismiss at 2. But this is not what *Aguilar* says. The passage from *Aguilar* quoted by the government actually states: "The Government did not show here that the agents acted as an arm of the grand jury, ***or indeed that the grand jury had even summoned*** the testimony of these particular agents." *Id.* at 601 (emphasis added). Thus, in the referenced passage, the *Aguilar* Court stated that the grand jury

summoning the testimony of these particular agents was a <u>minimum</u> requirement for an agent to be "acting as an arm of the grand jury." To the extent that *Aguilar* sets up a disjunctive test for satisfying the nexus requirement, that test would be found in the actual holding of the opinion, when the Court states: "But what use will be made of false testimony given to an investigating agent ***who has not been subpoenaed or otherwise directed to appear before the grand jury*** is far more speculative. We think it cannot be said to have the "natural and probable effect" of interfering with the due administration of justice." *Id.* at 601 (emphasis added). Thus, under a plain reading of *Aguilar*, a § 1503 prosecution predicated on false statements made to an investigating agent is insufficient as a matter of law unless the particular agent to whom those false statements were made had been "subpoenaed or otherwise directed to appear before the grand jury." Because the government has stipulated that the agents who interviewed Mr. Davis on April 10, 2003 had not been "subpoenaed or otherwise directed to appear before the grand jury," *Aguilar* requires dismissal of Count 107 of the Superseding Indictment.

Even if under some reading of *Aguilar* the government could satisfy the nexus requirement by showing that the lied-to investigating agent, though not under subpoena to testify to the grand jury, was somehow still acting as an "arm of the grand jury," the facts proffered by the government are plainly insufficient to do so. This is principally because the government simply ignores the fact that the "nexus" test, at least when the alleged § 1503 violation involves false statements to an investigating agent, is ***agent-specific***. *See id.* at 600 ("The Government did not show here that ***the agents*** acted as an arm of the grand jury, or indeed that the grand jury had even summoned the testimony of ***these particular agents***." (emphasis added)). The government does not contend that the

2

agents who interviewed Mr. Davis in his Newburyport home, over 100 miles from Springfield, on April 10, 2003 were otherwise involved in the grand jury investigation. There is no indication that either of these agents ever testified before the grand jury at all, nevertheless about the findings of their interview with Mr. Davis.  Indeed, all the government's proffer does is contend that the FBI investigation generally was intertwined with the grand jury investigation; it says nothing about the relationship of the particular interviewing agents to the grand jury investigation.  Furthermore, even as to the FBI investigation generally, the only "proof" offered by the government that the FBI was acting as the arm of the grand jury is that FBI agents had been serving subpoenas issued by the grand jury.  But no reading of *Aguilar* could possibly lead to the conclusion that serving a subpoena issued by the grand jury renders one an "arm of the grand jury," such that making false statements to a subpoena server satisfies the "nexus" requirement. Indeed, under Fed. R. Crim. P. 17(d), anyone 18 years of age or older may serve a subpoena.

If more were needed to show that the government's reading of *Aguilar* is incorrect, simply comparing the facts of *Aguilar* with those proffered by the government here demonstrates that there was far more of a "nexus" in *Aguilar*, and yet those facts were found insufficient as a matter of law.  In *Aguilar*, the grand jury began hearing evidence on April 26, 1988. *United States v. Aguilar*, 994 F.2d 609, 613 (9th Cir. 1993) (panel opinion).  On May 26, 1988, Aguilar spoke with a friend involved in the case, who had already begun cooperating with the FBI, and discussed how this friend should lie to the grand jury. *Id.*  When, on June 22, 1988, the two FBI agents came to interview Aguilar, he asked if he was a target of the investigation, and was told that he was. *Id.*

3

Aguilar then proceeded to give false statements to the FBI agents. *Id.* Further, Aguilar testified at trial that by the time the interview was complete, he had concluded that his statements would be presented to the grand jury. *Id.* There is no indication that the FBI investigation generally was somehow separate from the grand jury investigation, and, more importantly, Aguilar himself knew this.

Here, there is even less of a connection between the allegedly false statements made by Mr. Davis and the grand jury than existed in Aguilar. First, as in Aguilar, the interviewing agents were not under subpoena to testify before the grand jury. Second, unlike Aguilar, there is no indication that Mr. Davis even knew of the existence of the grand jury investigation, nevertheless that his statements were likely to be presented to the grand jury. The government states that "during his interview, defendant Davis repeatedly told the FBI agents that he was aware of the investigation," but this statement is misleading. Mr. Davis never stated that he was aware of any "grand jury investigation," rather he simply stated that he had learned of an "investigation" generally. Awareness of a government investigation into certain matters is plainly insufficient to bring one's false statements under the § 1503 umbrella. *United States v. Frankhauser*, 80 F.3d 641, 650-51 (1st Cir. 1996). The government also attempts to highlight the fact that the interviewing agents served a grand jury subpoena for P.J. Richfield documents on Mr. Davis. But the government conveniently leaves out the fact that the subpoena was not served until *after* the interview had been completed and the allegedly false statements were made. The circumstances surrounding Mr. Davis's allegedly false statements stand in stark contrast to those surrounding Aguilar, who i) knew that a grand jury investigation was underway; ii) knew he was a target of the investigation; and iii) believed that his

false statements would be presented to the grand jury, and yet still this was insufficient as a matter of law to amount to a § 1503 violation. As a result, the "nexus" between Mr. Davis's allegedly obstructive conduct and the grand jury is far more tenuous than existed in *Aguilar*.

## II.     The "Practicalities" of Grand Jury Investigations Are Not Relevant

The government's reliance on the "practicalities" of the way in which grand jury and FBI investigations operate, far from supporting its interpretation of *Aguilar*, actually undermines it. As the passage quoted by the government indicates, grand jury investigations are almost always done in tandem with and even directed by the United States Attorney's office and/or the FBI (or some other investigative branch). The Supreme Court was clearly aware of this reality when it decided *Aguilar*, but found that making false statements to an investigating agent was insufficient to form the basis of a § 1503 violation. Indeed, the lone dissenter on the 9th Circuit panel relied upon the realities of grand jury investigations, and Aguilar's acknowledged awareness of these realities, in stating that she would affirm the § 1503 conviction:

> I would also hold there was sufficient evidence for a rational jury to find Aguilar knew that FBI agent Carlon was expected to be a witness in front of the grand jury. Judge Aguilar clearly knew that a grand jury was meeting, he repeatedly questioned the agents about whether he was a target, and ***he testified about how grand jury investigations operate, which demonstrated to the jury his ability to correctly determine both his own status and the purpose of the interview***. A reasonable jury could have found that a federal judge, sophisticated on the subject of grand jury investigations, who knew that a grand jury was in session and who "was aware of a high probability" that he was a target of its investigation, also knew that Agent Carlon would be expected to testify before the grand jury about Aguilar's statements to him.

5

*Aguilar*, 994 F.2d 622-23 (Hall, J., dissenting) (emphasis added).  Thus, even though Aguilar knew that the "purpose of the interview" was to collect information for the grand jury, and that the investigating agent was "expected to testify before the grand jury about Aguilar's statements to him," the Court still found that such statements, which consisted of lies to an investigating agent not under subpoena or otherwise directed to testify before the grand jury, were insufficient to amount to a violation of § 1503.  In short, the fact that in the vast majority of situations (including that in *Aguilar*) the FBI investigation and the grand jury investigation are intertwined demonstrates that the government's proffer that in Mr. Davis's case the FBI investigation and grand jury investigation were intertwined is not sufficient to distinguish this case from *Aguilar*.  To hold that the government's proffer satisfies the *Aguilar* nexus requirement is not only impossible to square with the facts and holding of *Aguilar*, but it would impermissibly blur the line between the violation of § 1503, which only criminalizes corruptly obstructing a judicial proceeding, and other statutes that criminalize false statements to investigating agents, such as 18 U.S.C. § 1001 (false statements), or 18 U.S.C. § 1510 (obstruction of criminal investigation).

**III.     The Seventh Circuit Cases the Government Relies on Are Inapposite**

The government points to three Seventh Circuit cases in an effort to support its claim that its proffer is sufficient to satisfy *Aguilar*'s nexus requirement.  To the extent these cases purport to relax the rigorous nexus requirement of *Aguilar*, they must be disregarded.  But these cases are also inapposite, both factually and legally, to this case.  They are inapposite legally because, contrary to the government's contention, the Seventh Circuit has not used its unique "arm of the grand jury" analysis to determine

whether the government satisfied the "nexus" requirement. Rather it has used that analysis to determine whether the government satisfied the first element of a § 1503 claim, the existence of a "pending judicial proceeding." *United States v. Macari*, 453 U.S. 926 (7th Cir. 2006), relied upon so heavily by the government, demonstrates this distinction. The defendant attacked his § 1503 conviction on two grounds, first objecting that the government failed to prove the existence of a pending judicial proceeding. In response to that argument, the court stated: "In order to establish that an FBI investigation constituted a 'judicial proceeding' for purposes of § 1503, the government must establish that the FBI, at the time in question, was acting as an aid to and as an 'arm of the grand jury' when it conducted its investigation." *Id.* at 936. The court then went through the analysis described by the government in its brief, including pointing to the connection between the FBI investigation and the grand jury investigation, and ultimately concluded that "we reject [defendant]'s contention that the government failed to present sufficient evidence that a 'pending judicial proceeding' existed on October 22, 2001." *Id.* at 939. The court then separately addressed defendant's second objection, which was that the government failed to demonstrate the "nexus" between his obstructive conduct and the grand jury proceeding. *Id.* In this portion of the opinion, the "arm of the grand jury" analysis is nowhere to be found. Rather, the court easily distinguished *Aguilar* and found the nexus requirement adequately met, as the defendant's obstructive conduct consisted of counseling a witness to lie to the grand jury. *Id.* at 940.

     While the legal significance of the "arm of the grand jury" analysis is not as clear in the earlier Seventh Circuit cases, those cases are factually inapposite because (like *Macari*) neither involved merely making false statements to an investigating agent not

under subpoena by the grand jury. Rather, they involved large scale cover up efforts by defendants who were aware that the grand jury was investigating their illegal activity and who were aware that the investigating agents were working together with the grand jury, such that the court was able to find sufficient evidence that the grand jury, and not merely the government investigation, was the target of the obstructive conduct. *See United States v. Fassnacht*, 332 F.3d 440, 449-51 (7th Cir. 2003); *United States v. Furkin*, 119 F.3d 1276 (7th Cir. 1997).

In short, to the extent the Seventh Circuit line of cases relied on by the government can be harmonized with *Aguilar*, those cases do not alter the conclusion that the allegations in the government's proffer are insufficient to satisfy the nexus element of § 1503.

## Conclusion

For the reasons stated above, as well as those in Mr. Davis's Memorandum in Support of Defendant Peter Davis's Motion to Dismiss Counts 1 and 107 of the Indictment, Counts 1 and 107 of the Indictment should be dismissed.

Dated: September 5, 2006

Respectfully submitted,

PETER DAVIS

By his attorneys,

**/s/ James C. Rehnquist**
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
William J. Trach (BBO #661401)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

8

## **CERTIFICATE OF SERVICE**

    I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on September 5, 2006.

                                         **/s/ James C. Rehnquist**
                                          James C. Rehnquist

LIBA/1727244.1