UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 11 RE:
EVIDENCE OF ALLEGEDLY FALSE STATEMENT TO THE FBI**

Mr. Davis submits this motion *in limine* to preclude the government from offering evidence that Mr. Davis made a false statement to the FBI.

The government indicated in Court on Monday that, notwithstanding the dismissal of the obstruction of justice charge, it intended to offer evidence that Mr. Davis made a false statement to the FBI agents who interviewed him in April 2003.[1] The government presumably intends to offer evidence that Mr. Davis falsely denied that he had paid for work done on the homes of Asselin family members, the basis of its obstruction charge.

The First Circuit addressed the subject of false exculpatory statements in *United States v. Littlefield*, 840 F.2d 143 (1st Cir. 1988). In ruling that an instruction on consciousness of guilt was improper, the Court more broadly addressed the topic:

> For an allegedly false exculpatory statement to have <u>any value</u> to the fact finder's deliberations, we think it either must involve a matter collateral to the facts establishing guilt, or should be so incredible that its very implausibility suggests that it was created to conceal guilt.

---

[1] The government disclosed on the same day, for the first time, its witness list, which identifies one of the FBI agents who interviewed Mr. Davis, Michael Moorhead, as a government witness.

*Id.* at 148 (emphasis added). The allegedly false exculpatory statement at issue here falls into neither of these two camps. It is hardly "collateral," as the statement relates directly to the 13 payments alleged in the Indictment as the backbone of the government's case. Nor is it so inherently incredible that its very implausibility suggests it was intended to conceal guilt. *See, e.g., United States v. Smith*, 680 F.2d 255, 260 (1st Cir. 1982) (defendant's claim that he was an uninvolved "hitchhiker" on a marijuana-laden vessel seized on the high seas so implausible that if jurors disbelieved it they could infer consciousness of guilt).

But even if Mr. Davis's allegedly false statements are marginally relevant in that they tend to show "consciousness of guilt," they should nonetheless be excluded under Fed. R. Evid. 403. Courts, including the Supreme Court and the First Circuit, have routinely held that even <u>direct</u> consciousness of guilt evidence, such as flight from a crime scene or creation of a false alibi, is at best "marginally probative" of guilt or innocence. *United States v. Hernandez-Bermudez*, 857 F.2d 50, 52-54 (1st Cir. 1988); *see also Wong Sun v. United States*, 371 U.S. 471, 483-84 n.10 (noting that the Court has "consistently doubted the probative value in a criminal trial" of flight from a crime scene, and citing with approval *Cooper v. United States*, 218 F.2d 39, 41 (D.D.C. 1954) (evidence that defendant created false alibi not sufficiently probative to sustain conviction)). The First Circuit has held that such "consciousness of guilt" evidence "is a species of evidence that should be viewed with caution; it should not be admitted mechanically, but rather district courts should always determine whether it serves a genuinely probative purpose that outweighs any tendency towards unfair prejudice." *Hernandez-Bermudez*, 857 F.2d at 54.

Here, the evidence of Mr. Davis's allegedly false statement serves little if any "genuinely probative purpose," and is far outweighed by the prejudice to Mr. Davis such evidence would

cause. First, given that Mr. Davis's statement was made 5-6 years after the allegedly unlawful conduct, unlike flight from a crime scene or falsely creating an alibi upon arrest, Mr. Davis's statement is far more tenuously probative of "consciousness of guilt" than evidence that has been properly admitted by courts in the past. Second, Mr. Davis's allegedly false statement was not a direct denial of guilt or possible involvement in the crimes for which he has been charged. Mr. Davis was not asked whether he had received contracts from the SHA, or whether he had bribed any SHA employees in exchange for favorable treatment from the SHA. He thus did not deny that he had committed conspiracy to commit racketeering or bribery, nor did he create a false alibi that would exculpate him of such crimes. He simply stated, 5-6 years after the fact, that he had not made payments for repairs done on the homes of the Asselin children.

  Finally, courts have routinely held that where the proffered "consciousness of guilt" evidence could as readily reflect consciousness of guilt of another crime, rather than the charged crime, its probative value is lower and thus its admissibility less likely to be proper. *See, e.g.*, *Hernandez-Bermudez*, 857 F.2d at 53. Here, the evidence at trial will indicate that Mr. Davis's allegedly false statement was not an attempt to exculpate himself from future bribery or racketeering charges, but rather was based on a fear of the tax consequences of the alleged payments for the home repairs done on the homes of the Asselin children. The anticipated testimony of the government's own cooperating witness, Joseph Asselin, suggests that the reason Mr. Davis wanted to repay his debt to Raymond Asselin, Sr. through home repairs was that Mr. Davis could therefore write off the payments as business expenses through P.J. Richfield, rather than paying Asselin, Sr. directly and thus having to pay taxes on the payments. *See* 302 Interview Memorandum of Joseph Asselin, at 6 (Attached as Exhibit A). Further, Asselin's expected testimony also suggests that when this investigation began, at least one alleged co-

3

conspirator was not concerned with Mr. Davis being investigated, because the IRS only audits tax returns for a certain number of years in the past, and Mr. Davis's payments for home repairs were remote in time. *Id.* at 7. This information, coupled with the fact that Mr. Davis was not on notice that he was under investigation for racketeering or bribery and was not asked directly about his involvement in such possible activities, strongly suggests that Mr. Davis's allegedly false statement was made out of fear of the tax consequences of these payments. As such, there is almost no probative value of this evidence as to "consciousness of guilt" of the crimes with which he was ultimately charged.

Of course, as with evidence of other bad acts, evidence that Mr. Davis made a false statement to federal agents has great potential for prejudice, as it tends to suggest that Mr. Davis has a bad character or is untrustworthy generally. Given that <u>direct</u> "consciousness of guilt" evidence is only "marginally probative," and that Mr. Davis's allegedly false statement is only tenuously related to any "consciousness of guilt" of the crimes <u>actually charged</u>, the probative value of the evidence is far outweighed by its potential for prejudice, and should not be admitted.

In any event, given that the Court's Rule 403 determination may be affected by the evidence admitted at trial, should the Court provisionally deny the motion to exclude this evidence, Mr. Davis asks that the Court order the government not to mention this false statement in its opening argument.

## **CONCLUSION**

For the foregoing reasons, defendant's Motion *in Limine* No. 11 Re: Allegedly False Statement to the FBI should be allowed.

        Respectfully submitted,

        PETER DAVIS

        By his attorneys,

        **/s/ James C. Rehnquist**
        James C. Rehnquist (BBO # 552602)
        Kathleen Luz (BBO # 643278)
        William J. Trach (BBO #661401)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109-2881
        (617) 570-1000

Dated: September 14, 2006

## CERTIFICATE OF SERVICE

    I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on September 14, 2006.

        **/s/ James C. Rehnquist**
        James C. Rehnquist

LIBA/1729629.1