```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,     )  CR-N-04-30033-MAP
                              )
              Plaintiff,      )
                              )
      vs.                     )
                              )
PETER DAVIS,                  )
                              )
              Defendant.      )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE NO. 11**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, Steven H. Breslow, Assistant United States Attorney, and Kevin O'Regan, Assistant United States Attorney, hereby files this Opposition to Defendant Peter Davis's Motion in Limine No. 11 (the "Motion").

Because the defendant's patently false statements are highly probative of his consciousness of guilt and not unfairly prejudicial, they should be admitted.

I.  The Defendant's False Denials Are Highly Probative
    Of His Consciousness of Guilt

   A.  The Defendant's Extensive Lies

The defense wrongly asserts that when the defendant was interviewed by FBI agents on April 2003, he only told them one lie: that he had not paid for work on the homes of Asselin family

1

members. In fact, the defendant told the agents a series of lies, including the one false denial isolated by the defense.

In addition to the single lie discussed in the Motion, the defendant falsely told the agents: (1) he was the sole employee of P.J. Richfield; (2) the only professional relationship that he had with an Asselin family member concerned Joseph Asselin's encouragement that the defendant bid on a home that had been foreclosed by a Connecticut bank that employed Joseph Asselin; (3) when P.J. Richfield developed property in South Hadley and Wilbraham, his partner was Walter Kelly; and (4) he knew Raymond Asselin, Sr. mostly through his work at the Springfield Housing Authority ("SHA").

As even the defendant appears not to dispute now, all these statements were lies. First, the defendant and Joseph Asselin formed P.J. Richfield together, even basing the company's name on their initials: "P" for Peter and "J" for Joseph. Second, the defendant had an extensive professional relationship with Joseph Asselin through P.J. Richfield, including the developments of property in Granby, South Hadley, and Wilbraham.

Indeed, when P.J. Richfield defaulted on a significant loan from the Bank of Boston, both the defendant and Joseph Asselin were sued together, by 1992 owing the bank approximately $77,000 in a default judgment. This joint debt remained until approximately May 1993, when the Bank of Boston forgave approximately $45,000 of the

debt and the defendant paid the remainder on behalf of Joseph Asselin and himself.

Critically, the defendant's charged bribery conduct involves this debt, which accrued from the business relationship that the defendant falsely denied on April 11, 2003. This debt is highlighted in the defendant's own handwritten notes, which were annotated by Arthur Sotirion on or about December 23, 1994.[1] In these notes, the defendant plainly calculates the division of his ADA-504 profit and G&R's ADA-504 profit, with one-third of each distributed to himself, Sotirion, and Asselin, Sr. The defendant's notes further calculate the amount "due from Ray" or "owed to Pete by Ray" based on the defendant's payment of the Bank of Boston debt, even figuring out the amount "due from Ray" based upon the income tax the defendant had to pay on the bank's partial debt forgiveness. Thus, as late as December 1994, the defendant indeed had a business relationship with both Asselin, Sr. and Joseph Asselin, which the defendant sought to settle in part through kicking back shares of the P.J. and G&R ADA-504 profits. By falsely denying this relationship to the agents in April 2003, the defendant sought to obscure a direct nexus with his bribery scheme.

Lastly, the defendant lied to the agents by casting his relationship with Asselin, Sr. as more professional than social,

---

[1] See GX 82, attached as Exhibit Q to the Government's Opposition to the Defendant's Motions in Limine Nos. 7, 9, and 10.

since numerous witnesses will testify that the defendant socialized intimately with Asselin, Sr., long before P.J. Richfield ever began to bid for SHA contracts.

> B. The Defendant's Lies Are Admissible As <u>Evidence of Consciousness of Guilt</u>

It is well settled that false exculpatory statements are admissible as evidence of consciousness of guilt. As the First Circuit stated in <u>United States v. Littlefield</u>, consciousness of guilt instructions are "appropriate when the evidence shows an action on the part of the defendant that normally could be viewed as an awareness of guilt, such as . . . a false statement." 840 F.2d 143, 148 (1st Cir. 1988). The Court further noted:

> When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt. Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

<u>Id.</u> (quotation omitted). See also <u>United States v. Passos-Paternina</u>, 918 F.2d 979, 985 (1st Cir. 1990) (stating that "[a] jury's skepticism of the [defendant's] story could contribute to its determination of the [defendant's] guilt."); <u>United States v. Smith</u>, 680 F.2d 255, 260 (1st Cir. 1982) (stating that "if [defendant's] story were disbelieved by the jury, the jury could conclude that a knowingly false statement is demonstrative of consciousness of

guilt"); <u>United States v. Boyle</u>, 675 F.2d 430, 432 (1st Cir. 1982) (stating that the use of a false name after the commission of a crime is commonly accepted as being relevant on the issue of consciousness of guilt).

Here, the defendant's lies are a hallmark case of admissible consciousness of guilt evidence. If the jury were to conclude that the defendant lied, <u>inter alia</u>, about paying for Joseph Asselin's home improvements and about forming P.J. Richfield with Joseph Asselin, it could reasonably infer that the defendant told these lies to distance himself from the agent's focus: the bribery scheme emanating out of SHA.

The defendant's reliance on <u>Littlefield</u> is misplaced. In <u>Littlefield</u>, the First Circuit explained that "the jury could find the exculpatory statement at issue to be false only if it already believed evidence directly establishing the defendant's guilt." 840 F.2d at 149. Thus, the First Circuit explained, "the jurors were told that once they found guilt, they could find consciousness of guilt, which in turn is probative of guilt." <u>Id.</u> Here, by contrast, the false statements are either "collateral to the facts establishing guilt" or entirely implausible. <u>Id.</u>

For example, the defendant's denial of Joseph Asselin's partnership in P.J. Richfield is collateral, since it "simply point[s] to a consciousness of guilt which, taken together with other evidence, could lead to a guilty verdict." <u>Id.</u> Here, a jury

5

could infer, by reference to the defendant's handwritten notes concerning the debt forgiveness and other evidence, that the defendant lied about his partnership with Joseph Asselin because he wanted to conceal his bribery scheme. Similarly, a jury could infer that the defendant lied about his longstanding friendship with Raymond Asselin, Sr. because he wanted the agents to overlook any preferential treatment Asselin, Sr. provided him.

The defendant's false denial of the home improvement payments, on the other hand, is "so incredible that its very implausibility suggests that it was created to conceal guilt." Id. Acknowledging the utter implausibility of this denial, even the defense now concedes that these payments were made.

The defense seeks to weaken the probative value of this particular false statement by contending that it was made in 2003, approximately five years after the actual payments. But the defense ignores critical aspects of the interview that bring the defendant's consciousness of guilt into sharp relief: namely, that the defendant already knew about the SHA investigation and only one year earlier, even directly discussed the investigation with Asselin, Sr., who told the defendant he was being investigated. Thus, a jury could infer that the defendant lied about the home improvement payments because he wanted to deflect the criminal investigation away from his kickbacks.

The defense also argues, by selective use of Joseph Asselin's expected testimony, that the defendant's lie "was based on a fear of the tax consequences of the alleged payments for the home repairs." Motion, at 3. However, Joseph Asselin is expected to testify that the underlying purpose for the home improvements payments was the return of kickbacks owed to his father for SHA business awarded to P.J. Richfield. Moreover, this argument should be aimed at the jury in summation, rather than at the Court in a motion in limine to exclude the evidence. After all, it is the role of the jury, and not the courts, to choose among competing inferences. See United States v. Olbres, 61 F.3d 967, 972 (1st Cir. 1995) (stating that "[t]he jury had the perfect right to reject the defendant's counter-argument and draw the inference urged by the government.").

II. The False Statements Are Not Unfairly Prejudicial

The defense devotes exactly one sentence to its unfair prejudice argument, simply stating that, "as with evidence of other bad acts," the evidence tends to suggest that the defendant "has a bad character or is untrustworthy generally." Motion at 4. First, this evidence is direct evidence of both the bribery and racketeering conspiracies.[2] Second, when balancing the probative value and need for evidence versus its possible prejudicial effect

---

[2] Indeed, among its objectives, the racketeering enterprise had an objective to conceal the participation in and enrichment of its members and persons associated with the Enterprise." Superseding Indictment, ¶ 26.

7

under Rule 403, the question is always "one of 'unfair' prejudice - not of prejudice." United States v. Moreno Morales, 815 F.2d 725, 740 (1st Cir. 1987). "By design, all evidence is meant to be prejudicial; it is only unfair prejudice that must be avoided." United States v. Rodriquez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989). Lastly, the government respectfully suggests that the Court can cure any potential for unfair prejudice by instructing an appropriate limiting instruction to the jury.

III. Conclusion

For the foregoing reasons, the Government respectfully asks that the Court deny the defendant's Motion in Limine No 11 and permit the government.

Filed this 15th day of September, 2006.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                              /s/ Steven H. Breslow
                              STEVEN H. BRESLOW
                              Assistant United States Attorney


                              /s/ Kevin O'Regan
                              KEVIN O'REGAN
                              Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                                Springfield, Massachusetts
                                            September 15, 2006


    I, Steven H. Breslow, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by filing said motion by ECF to:

James C. Rehnquist, Esq.
Goodwin Proctor & Hoar
Exchange Place
Boston, MA 02109


                                          /s/ Steven H. Breslow
                                        STEVEN H. BRESLOW
                                        Assistant United States Attorney