UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**DEFENDANT'S MEMORANDUM REGARDING THE INAPPLICABILITY OF FED. R. EVID. 803(6) TO CERTAIN EXHIBITS CLAIMED BY THE <u>GOVERNMENT TO BE "BUSINESS RECORDS"</u>**

Defendant Peter Davis submits this memorandum to assist the Court in determining the applicability—inapplicability, he argues—of Fed. R. Evid. 803(6) to certain exhibits the government seeks to self-authenticate through a business-records certification given by Deborah Barton, a government witness. Ms. Barton, who apparently is the current CFO of the Springfield Housing Authority (although she did not serve in that capacity during the period covered by the Indictment) purports to certify pursuant to Fed. R. Evid. 902(11) that 118 of the government's exhibits were "made at or near the time of the occurrence of the matters set forth, … kept in the course of the [SHA's] regularly conducted activity, … [and] made by or retained by the regularly conducted activity of [the SHA] as a regular business practice." Mr. Davis disputes the admissibility of 44 of these exhibits.

The exhibits to which Mr. Davis objects[1] simply do not qualify for admission pursuant to Fed. R. Evid. 803(6) and 902(11). At the outset, it seems improbable that Deborah Barton—a member of SHA's finance/accounting department—has any knowledge of the manner in which

---

[1] Mr. Davis objects to the following Government Exhibits: Exhibits 44, 46-48, 50, 52, 54-58, 60-63, 65-75, 82-83, 89, 91-93, 162, 226-227, 256-257, 259, 298, 298A, 298B, 302-303, 305.

many of these exhibits were generated and maintained. Furthermore, it is far from clear from the face of these exhibits that they were kept in the course of regularly conducted business activity or otherwise carry the circumstantial indicia of trustworthiness that would justify—and indeed permit—their admission under the rule. *See* Fed. R. Evid. 803(6).

The 44 government exhibits that Mr. Davis maintains are not business records can be roughly grouped into three categories for ease of analysis. The first group contains documents that appear to be forms of the type submitted to SHA but that are incomplete, undated, unsigned, or otherwise suggest that they are draft or incomplete, as opposed to final, documents. For example, Exhibit 46 is a handwritten requisition that is unsigned and replete with deletions. The second group includes correspondence from other businesses sent to SHA that, by virtue of the fact that they were apparently obtained from SHA, are claimed to have become SHA business records. For example, Exhibit 54 is an architect's Field Observation Report. Finally, the third group contains documents that are simply cryptic in nature—many handwritten—and that do not bear any of the hallmarks of reliability that the law requires for a document to be considered a business record. For example, Exhibit 56 is a series of handwritten notes, authorship unclear, interspersed with invoices from C&A Construction.

      **1.**      **Deborah Barton is not a qualified witness with respect to these exhibits.**

There is a serious question whether Ms. Barton is qualified to testify as to the proper foundation for many of the documents the government wishes to admit. As the First Circuit has held, in order to be such a "qualified witness," one must be able to "explain and be cross-examined concerning the manner in which the records are made and kept." *Wallace Motor Sales Inc. v. American Motor Sales Corp.*, 780 F.2d 1049, 1060 (1st Cir. 1985). Given that many of the documents for which the government seeks to have Ms. Barton provide foundation appear

not even to have been generated by SHA, it is difficult to see how Ms. Barton could testify as to "the manner in which the records are made." *See Collins v. Hibort*, 143 F.3d 331, 338 (7th Cir. 1998) ("While Rule 803(6) does not require that the qualified witness be the person who prepared the record or that the witness have personal knowledge of the entries in the records, the *business records exception does require that the witness have knowledge of the procedure under which the records were created*." (emphasis added) (citations omitted)). What's more, all[2] or virtually all of the documents that the government seeks to certify through Ms. Barton were seized from the files and boxes located in or near Arthur Sotirion's office at 117 Sanderson Street, several blocks from the SHA's administrative headquarters at 25 Saab Court, where Ms. Barton's office is presumably located. Because Ms. Barton did not work for or directly with Mr. Sotirion, or even in the same building, it is at the very least unclear as to whether she will be able to adequately testify as to the manner in which Mr. Sotirion kept these records.

### 2.    The exhibits to which Mr. Davis objects are not business records under Fed. R. Evid. 803(6).

The government seems to suggest that any document obtained from SHA that pertains in any way to the business activities of SHA is a "business record" within the meaning of the Federal Rules of Evidence. This position is belied by the language of the rule and the case law interpreting it. Judge Young has held that under such an expansive view of Rule 803(6) "virtually any document found in the files of a business which pertained in any way to the functioning of that business would be admitted willy-nilly as a business record. This is not the

---

[2] Today, September 20, the government served upon Defendant a second "business records certification" from the SHA's Deborah Barton. This certification applies to new exhibits that the government added to its exhibit list yesterday, September 19—Government Exhibits 308-319. The government has represented that it had received these documents from the SHA within the past day or two. Defendant objects to the admission of these documents for reasons unrelated to Rule 803(6); not only have the documents been untimely added to the government's list, but all relate to contracts other than the three the government has put at issue (ADA/504, Chris Court Renovations, and Chris Court Garage). Defendant has not had an opportunity to thoroughly review these documents but notes that many of them bear the same problems as discussed herein.

3

law." *United States v. Ferber*, 966 F. Supp. 90, 99 (D. Mass. 1997); *see also* Robert S. Hunter, *Federal Trial Handbook: Criminal* § 69.2 (4th ed. 2005) ("Miscellaneous jottings should not be admitted under Fed. R. Evid. 803(6) just because they have some connection with a regular business. The idea behind Fed. R. Evid. 803(6) is that, when a record is kept *with sufficient regularity*, the existence of an entry … is good evidence that the thing in question took place….") (emphasis added).

Rather than simply show that these documents pertain to SHA business in some sense, or even that they were created by an SHA employee, the government must show that the 44 contested exhibits comport with the requirements of Fed. R. Evid. 803(6). That rule provides in relevant part that the following statements are admissible despite being hearsay:

> **Records of Regularly Conducted Activity.**—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6). To have been prepared in the normal course of business, the document must have been made in the regular course of business of a regularly conducted business activity, and it must have been the regular practice of that business to have made that document. *Weinstein's Federal Evidence* §803.08; *see also Hiram Ricker & Sons v. Students Internat'l Meditation Soc.*, 501 F.2d 550, 554 (1st Cir. 1974) (stating with respect to 28 U.S.C. § 1732, the statutory predecessor to Rule 803(6): "A crucial aspect of the business-records exception is that

entries be prepared as a regular part of the business…. Otherwise, there is no basis for the presumption of reliability which is at the heart of the exception.").

Here, it is highly unlikely that the government will be able to show through the testimony of Deborah Barton or otherwise that the contested exhibits were prepared and maintained as a regular part of SHA business. Indeed, the testimony of Agent Kossler indicates that the government will be unable to do so. All of the documents composing the contested exhibits were seized from the offices of Arthur Sotirion. On cross-examination, Agent Kossler explained that the documents seized from Sotirion were kept in a variety of rooms at 117 Sanderson Street, the SHA Maintenance Office, as opposed to the SHA administrative offices at Saab Court. Some were found in file cabinets (which the agents emptied into evidence boxes); others were found in boxes in Sotirion's office; others were found in a storage room in the basement. Agent Kossler admitted that she cannot identify which exhibits came from which location. She also testified that the FBI also seized other plainly non-business items from Sotirion, including nine bottles of liquor and a thirty-pack container of Budweiser beer. Such haphazard and apparently random storage of documents is completely inconsistent with the regular, systematic maintenance of documents that satisfies Rule 803(6).

    **3.**    **Particular Categories of Documents**

        **(a)**    **Incomplete or Draft Documents**

Many of the documents here appear to be incomplete or draft versions of forms that might regularly be submitted to SHA. To be admissible, the government will have to establish that SHA prepared and maintained such draft, incomplete documents in the ordinary course of its business. For example, the government may suggest that certain periodic requests for partial payment were actually drafted by Sotirion. For these to be admissible as SHA business records, the government will have to show (counterintuitively) that it was the part of the regular business

5

of SHA to generate and maintain such documents. *See Hiram Ricker*, 501 F.2d at 554 ("The entry offered must of course be a part of a series of entries or reports, not a casual or isolated one. Otherwise, there is no basis for the presumption of reliability which is at the heart of the exception.") (citation omitted).

Moreover, even if these draft documents were maintained in the ordinary course of business (which they were not), these documents are completely lacking the indicia of trustworthiness that characterize business records under the rule. From their face, these documents appear to be drafts: they are incomplete in many respects, some undated, some unsigned, some both of those things. Although they relate to P.J. Richfield, and were found somewhere in the vicinity of 117 Sanderson, it is not even clear who drafted or generated them. Under the circumstances, the rule plainly permits the Court to exclude them. *See* Fed. R. Evid. 803(6) (authorizing a court to exclude documents that might otherwise qualify as business records because "the source of information or the method or circumstances of preparation indicate lack of trustworthiness.").

### (b) Documents from Other Businesses

The government also seems to suggest that documents generated by another business, transmitted to and retained by SHA, are SHA business records. The First Circuit confronted a similar, although not identical, problem in *United States v. Doe*, 960 F.2d 221 (1st Cir. 1992). In that case, the defendant, who was accused of being a felon in possession of a firearm, challenged the government's proof of the interstate-commerce requirement. *Id.* at 222. The government offered as a business record of the sports shop from which the defendant bought the weapon an invoice from a firm to the sports shop. *Id.* The First Circuit agreed that the invoice was admissible as a business record of the sports shop: "The fact that the invoice was a piece of

6

paper which … had earlier been the record of a different business … is irrelevant. Because it was relied on by the sports shop owner, the [other business's] record was integrated into the records of the sports shop." *Id.* at 223. Here, by contrast, it is highly unlikely that the government will be able to prove either that these records were relied upon or integrated into the SHA's records. Without such evidence of reliance by SHA or integration into the files of SHA (beyond mere storage there), *Doe* suggests, at least by negative implication, that these third-party documents are not SHA business records. *See id.*

### (c)    Handwritten or Otherwise Cryptic Documents

Finally, a number of the contested exhibits are collections of handwritten or otherwise cryptic documents. For example, Exhibit 82 is a hodgepodge of four, separately clipped groups of apparently random documents totaling twelve pages. The first group of documents is six pages that have no obvious relation to one another—including handwritten notes apparently dated 12/28/94; a copy of a file folder labeled "Wk Ending June 1-4, 1982"; a copy of a file folder labeled "General"; two pages of typed and handwritten notes dated 12/23/94; and a portion of what appears to be a typed letter dated February 1, 1994, with undated handwritten notes on the back. The second group of documents includes a register tape from an adding machine. The third group of documents consists of what appears to be a January 7, 1994 invoice from an entity called "Early Enterprises" to G&R Construction concerning "demolition and clean up of debris" at Riverview Rehabilitations, along with a copy of an envelope addressed to G&R Construction from Early Enterprises. The fourth group of documents is two pages of undated, handwritten notes that the government claims is direct evidence of the kickback scheme between Mr. Davis, Arthur Sotirion, and Ray Asselin. Government's Opening Statement, Trial Transcript 9/18/06 at 65, ln. 23 (describing Exhibit 82 as a "virtual blueprint of the conspiracy").

7

Defendant is unaware of any First Circuit authority discussing the applicability of Rule 803(6) to random collections of handwritten notes such as these. The Sixth Circuit, however, has concluded that a similar grouping of documents was not a business record. In *United States v. Mahar*, 801 F.2d 1477 (6th Cir. 1986), the government sought to admit 12 pages of undated, unsigned, handwritten notes that were found along with certain miscellaneous business records. *Id.* at 1490. The government characterized these notes as "a game plan" for the defendants' crime. *Id.* at 1491. Although the trial court originally admitted the exhibit under Rule 803(6), the appellate court disagreed that it was a business record. *Id.* at 1492-93. The only evidence about the document was that the notes were found among miscellaneous business records and that employees of the business authored certain pages of the document. *Id.* at 1493. The court held that this was insufficient to establish that the documents was a business record because there was no evidence in the record as to whether the notes were kept in the course of a regularly conducted business activity or whether it was the regular practice of the business activity to make the notes. *Id.*

Exhibit 82, and other handwritten documents at issue here, are similar to the notes in *Mahar*. The cryptic, handwritten documents that are part of the contested government exhibits must be shown to have been made and kept in the course of regularly conducted business

activity. It is highly unlikely that the government will be able to make that showing.

        Respectfully submitted,

        PETER DAVIS

        By his attorneys,

        **/s/ James C. Rehnquist**
        James C. Rehnquist (BBO # 552602)
        Kathleen Luz (BBO # 643278)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109-2881
        (617) 570-1000

Dated: September 20, 2006

## CERTIFICATE OF SERVICE

     I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on September 20, 2006.

        **/s/ James C. Rehnquist**
        James C. Rehnquist

LIBA/1731235.1