UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-N-04-30033-MAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S BUSINESS RECORDS MEMORANDUM**

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Steven H. Breslow and Kevin O'Regan, Assistant United States Attorneys, submits this memorandum in response to Defendant's Memorandum Regarding the Inapplicability of Fed. R. Evid. 803(6) to Certain Exhibits Claimed by the Government to be "Business Records" (the "Memo").

I.    Deborah Barton Is a Qualified Records Custodian

The documents contested by the defendant all have been certified as business records by Deborah Barton, the current Chief Financial Officer of the Springfield Housing Authority (the "SHA"). Ms. Barton has worked at SHA for nearly twenty-one years and is eminently qualified to serve as a custodian of records for SHA.

From 1987 to 2006, Ms. Barton served as the Manager of SHA's Accounting Department. In this capacity, she reported directly to the Assistant Executive Director of Finance, who reported directly

to Raymond Asselin, Sr., the Executive Director.  During her 18-year
tenure as Accounting Department Manager, she worked extensively and
directly with Arthur Sotirion, SHA's Assistant Executive Director
for Operations, and one of the defendant's co-conspirators.

As Accounting Department Manager, Ms. Barton served as the
accountant for SHA's capital fund and played a crucial role in the
processing of Periodical Estimates for Partial Payment, the
contractors' bills commonly known as "requisitions."[1]  Indeed,
during the time of the charged conspiracy, Ms. Barton reviewed and
processed nearly every requisition submitted to the SHA for all
contractors.  As a result, she became familiar with most of SHA's
contractors and capital projects, including the contracts at issue
in this case.

As a result of Ms. Barton's work experience and
responsibilities at SHA, she is similarly familiar with SHA's
record-keeping practices.  She is familiar with the broad range of
documents created or kept by SHA in the course of its regular
business, including: architects' specifications and drawings,
contractors' bids, bid selection documents, inter-office memos, SHA
board minutes, notices to proceed, change orders, contractors'
requisitions, field observation reports, punch lists, and other
routine documents.  She will testify that the challenged exhibits

---

[1]  Many of the challenged exhibits are requisitions, either
fully executed or drafted in Sotirion's handwriting.

were created or kept in the course of SHA's regularly conducted activity and that they were made by or retained by SHA as a regular business practice.

Ms. Barton will testify that both she and Sotirion regularly maintained files for each contract issued by SHA. Ms. Barton's file typically contained the contract, notice to proceed, SHA board minutes, and all requisitions for each project, all of which she received from Sotirion. She will further describe Sotirion's office as well organized, and containing file cabinets with files and folders that appeared to be themselves well organized. Indeed, she will testify that if she happened to misplace a document, she readily obtained a copy from Sotirion, who maintained a broader range of documents in his file. Ms. Barton will also identify Mr. Sotirion's handwriting, which she saw on a weekly basis for 18 years.

II. The Exhibits Are Admissible Business Records

The trial evidence has established that all of the challenged exhibits came from SHA's business files. Examination of the documents themselves will demonstrate that they relate to SHA's business of awarding and executing contracts for public housing construction projects at SHA's facilities. The First Circuit has explained that the foundation for a business record under Fed. R. Evid. 803(6) requires "the testimony of a qualified witness and a showing that the declarant was a person with knowledge acting in the

3

course of a regularly conducted business activity." United States v. Kayne, 90 F.3d 7, 12 (1st Cir. 1996). Moreover, "the qualifying witness need not have actually prepared the record, but 'is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept.'" Id. (citing Wallace Motor Sales v. American Motor Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985)). "If there is 'evidence sufficient to support a finding' that the evidence is what the proponent claims it to be, the preliminary threshold of authentication has been satisfied and the jury should then be permitted to consider its weight or credibility." United States v. Arboleda, 929 F.2d 858, 869 (1st Cir. 1991) (citation omitted). However, if the "source of information or the method or circumstances of preparation indicate lack of trustworthiness," the evidence should be excluded. Fed. R. Evid. 803(6).

The defendant advances a cramped view of Fed. R. Evid. 803(6), which the First Circuit emphasized applies broadly to "record[s] ... in any form." United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (quoting Rule 803(6)) (emphasis in original)). Thus, it matters not that some documents are handwritten, or are undated, or appear to be preliminary drafts, so long as the requirements of Rule 803(6) are satisfied.

Similarly, the mere fact that a record was created outside the SHA does not bar its admission as an SHA business record, if the SHA

4

integrated those records into its own business and relied upon them.
Id. Thus, challenged exhibits like correspondence or memos sent
from one of SHA's project architects to the SHA are admissible.

As Ms. Barton's testimony will establish, the government's
exhibits are not so "cryptic that pure guesswork and speculation
[is] required to divine the source of the challenged information."
Petrocelli v. Gallison, 679 F.2d 286, 290 (1st Cir. 1982).  To the
contrary, nearly all of these records are straightforward and
plainly formulaic documents, such as the payment requisitions that
defendant seeks to exclude.  Notably, the defendant's blunderbuss
approach targets even Government Exhibit 66, a series of standard
HUD and SHA documents not only fully executed by the defendant,
Sotirion, and Asselin, but even stamped with a raised seal of
certification.

Even those few documents that do not bear the outright
hallmarks of routinized business practice, like SHA letterhead or
received stamps, are admissible as business records when viewed in
the context of the other evidence in the case.  See United States v.
Cincotta, 689 F.2d 238, 243 (1st Cir. 1982) (approving admission of
notebook that district court found "untrustworthy standing alone"
but "sufficiently reliable to put in evidence" because it was
corroborated by other evidence).

So long as the threshold requirements of trustworthiness and
reliability are met, this Court should permit the evidence to be

5

introduced into evidence, where the defense will surely subject it to rigorous cross examination before the jury. <u>See</u> <u>United States v. Kayne</u>, 90 F.3d at 13 (noting that "it was not for the trial judge, but for the jury, to determine whether the opinions in the certificates reliably assigned values to the coins"); <u>Wallace Motor Sales</u>, 780 F.2d at 1061 (stating that "the tapes left something to be desired as far as pinpoint accuracy was concerned but AMC took full advantage of every opportunity to expose the weaknesses of the tapes as evidence").

This Court should disregard the defendant's attempt to tar the government's proffered business records by noting the manner in which the records were found. <u>See</u> Memo at 5 (noting that the records were found in various locations and some records were found with "other non-business items from Sotirion, including nine bottles of liquor and a thirty-pack container of Budweiser beer."). In <u>United States v. Patterson</u>, 644 F.2d 890, 901 (1st Cir. 1981), the defendants sought to exclude proffered business records because the government failed to show that the items, as introduced in into evidence, were in the form in which they were regularly kept. The defendants also argued that the "circumstances of the handling of the [items] indicate untrustworthiness." <u>Id.</u> The First Circuit affirmed the admission of the evidence, explaining that "[t]he fact that a regular business practice is occasionally broken is not enough to avoid application of the business records rule; otherwise,

6

the rule would be swallowed up by an exception for less-than-perfect business practice." Id..

Similarly, the fact that some of the records are incomplete or unsigned or undated does not bar their admission pursuant to Rule 803(6). See United States v. McGill, 953 F.2d 10, 15 (1st Cir. 1992) (noting that the "mere fact that errors or deviations have occurred from time to time does not destroy the inference of underlying trustworthiness which a judge may choose to draw from proof of a general practice.").

III. Conclusion

The testimony of Ms. Barton, a qualified custodian of SHA's records, will establish the inherent reliability and trustworthiness of the challenged exhibits.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


 /s/ Steven H. Breslow
STEVEN H. BRESLOW
Assistant United States Attorney



 /s/ Kevin O'Regan
KEVIN O'REGAN
Assistant United States Attorney

Dated:  September 20, 2006

7

<u>CERTIFICATE OF SERVICE</u>

I, certify that I have served a copy of the foregoing by electronic filing on:

James C. Rehnquist, Esq.
Goodwin Procter
Exchange Place
Boston, MA 02109


<u>/s/ Steven H. Breslow        </u>
STEVEN H. BRESLOW
Assistant United States Attorney