UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 04-30033-MAP |
| | ) | |
| vs. | ) | |
| | ) | |
| RAYMOND ASSELIN, SR., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### GOVERNMENT'S MOTION IN LIMINE TO ADMIT CERTAIN EVIDENCE

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and Steven H. Breslow and Kevin O'Regan, Assistant United States Attorneys, hereby files the instant Motion in Limine to Admit Certain Evidence.

The government respectfully submits that the Court admit the following evidence at trial as properly authenticated non-hearsay pursuant to Fed. R. Evid. 901, 801(d)(2)(A), and 801(d)(2)(E): (1) four pages of the defendant's handwritten notes depicting his agreement to share equally his ADA-504 profits with Raymond Asselin, Sr. and Arthur Sotirion, contained within Government Exhibit ("GX") 82; (2) the defendant's handwritten P.J. Richfield invoices to G&R Associates for work claimed to have been performed on ADA-504 and approved as paid by Sotirion, contained within GX 79; (3) the defendant's handwritten note to "Art" requesting that "your painters" perform certain work, GX 63; (4) the defendant's

handwritten note captioned "ADA Project Changes P.J. Richfield," which discusses a reduction of the handicap ramps' foundation walls, GX 61; (5) a typed memo listing credits and debits for SHA and Peter Davis, including the elimination of the ramps' foundation wall, which was annotated by Sotirion, GX 67; (6) the defendant's handwritten reply letter to James Bright, dated December 6, 1994, GX 69; and (7) two pages of the defendant's handwritten notes concerning the Christopher Court project, contained within GX 84.

1.   <u>Principles of Law</u>

    a.   <u>Standards of Authentication</u>

    Federal Rule of Evidence 901(a) provides:

> The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Fed. R. Evid. 901(a).

    Thus, "[i]f the trial court determines that there is sufficient evidence to allow a reasonable person to believe that the evidence is what it purports to be, the evidence may be admitted subject to the factfinder's assessing what weight will be given to the evidence." <u>United States v. Garcia</u>, 452 F.3d 36, 40 (1st Cir. 2006) (citing <u>United States v. Alicea-Cardoza</u>, 132 F.3d 1, 4 (1st Cir. 1997)); <u>see also United States v. Holmquist</u>, 36 F.3d 154, 167 (1st Cir. 1994); <u>United States v. Maldonado-Rivera</u>, 922 F.2d 934, 957 (2d Cir. 1990) (holding that "[w]ith respect to a

document attributed to the defendant, the prosecution need only
provide a rational basis from which the jury could infer that the
document did, in fact, belong to him.").

The "burden of authentication does not require the proponent
of the evidence to rule out all possibilities inconsistent with
authenticity, or to prove beyond any doubt that the evidence is
what it purports to be. Rather, the standard for authentication,
and hence for admissibility, is one of reasonable likelihood."
United States v. Holmquist, 36 F.3d at 168 (citing United States v.
McGlory, 968 F.2d 309, 328-29 (3rd Cir. 1992); United States v.
Collado, 957 F.2d 38, 39 (1st Cir. 1992)); see also 5 J. Weinstein
& M. Berger, *Weinstein's Evidence* § 901.02[03] at 901-16 (2006)
(explaining that "the proponent of a proffered exhibit needs only
to make a prima facie showing that the exhibit is what the
proponent claims it to be").

Rule 901 authenticity determinations are governed by Rule
104(b). Fed. R. Evid., Advisory Committee Notes, Note to
Subdivision (a). Rule 104(b) provides: "When the relevance of
evidence depends upon the fulfillment of a condition of fact, the
court shall admit it upon, or subject to, the introduction of
evidence sufficient to support a finding of the fulfillment of the
condition." Fed. R. Evid. 104(b). See also John Beaudette, Inc.
v. Sentry Insurance A Mutual Company, 94 F. Supp. 2d 77, 89, n.4
(D. Mass. 1999) (noting, *inter alia*, that although the court's

preliminary finding permits admission of the evidence, the jury is entitled to disregard the evidence if they are not satisfied that the evidence is genuine).

"Once the proponent has made the requisite showing, the trial court should admit the exhibit, assuming that it meets the other requirements of admissibility, such as relevance and compliance with the hearsay rule, in spite of any issues the opponent has raised about flaws in the authentication. Such flaws go to the weight of the evidence instead of its admissibility." *Weinstein's Evidence* § at 901-17 (citing United States v. Abreu, 952 F.2d 1458, 1467 (1st Cir. 1992)). "A defendant can attempt to cast doubt on an exhibit's authenticity. Such an issue, however, is to be resolved by the jury, and not the judge." United States v. Scharon, 187 F.3d 17, 22 (1st Cir. 1999); see also United States v. McMahon, 938 F.2d 1501, 1509 (1st Cir. 1991) (noting that "[w]hile the jury was entitled to disbelieve the authorship or existence of the document, the note clearly was sufficiently authenticated to be admissible by the district court.").

Because authentication rulings are "necessarily fact specific," the First Circuit will reverse this Court's decision "only for mistake of law or abuse of discretion." United States v. Alicea-Cardoza, 132 F.3d at 3.

At least one Circuit Court has recognized that an *in camera* hearing to assess the authenticity of evidence may be appropriate.

4

"This procedure insures that the jury will not be tainted by hearing prejudicial evidence - or learning of its existence - until the proponent has demonstrated that it will be able to provide an adequate foundation for admission."  United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992).  However, "[a]n *in camera* hearing does not replace the presentation of authenticating evidence before the jury; the district court must revisit this issue at trial." Id.[1]

> b.    Handwritten Documents Are Properly Authenticated
>       Even Without Handwriting Evidence

Rule 901(b) lists ten examples of ways to prove the authenticity of a proffered exhibit, but this list is simply illustrative and not intended to constrain the authentication of a document.  Fed. R. Evid. 901(b); United States v. McMahon, 938 F.2d at 1509 (1st Cir. 1991).

It is well settled in the First Circuit that writing may be

---

[1]    The government respectfully requests an *in camera* hearing so that the Court may hear testimony from the following witnesses concerning GX 82, the defendant's handwritten notes evincing his profit-sharing arrangement with Asselin and Sotirion: (1) Phillip Lee; (2) William Needleman; (3) a records custodian from Mallows, Corbin & Tapases ("MCT"), the defendant's accounting firm; and (4) Special Agent Michael Brin.
     As set forth below, Lee and Needleman will testify that in 1993, they performed work on Arthur Sotirion's Maine summer home, for which they were paid by the defendant in 1994.  The MCT records custodian will authenticate two pages of P.J. Richfield's check disbursement ledger, showing entries for the checks written to Lee and Needleman as well as to other entities specified in GX 82.  Special Agent Brin will testify about the specific financial calculations detailed in GX 82 and their specific ties to the admitted evidence.

authenticated without the direct testimony of a custodian or percipient witness to identify that writing. As the First Circuit recently explained:

> There is no single way, moreover, to authenticate evidence. As this court has recognized on more than one occasion: [T]he direct testimony of a custodian or a percipient witness is not a *sine qua non* to the authentication of a writing. Thus, a document's appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with other circumstances, can, in cumulation, even without direct testimony, provide sufficient indicia of reliability to permit a finding that it is authentic.

United States v. Garcia, 452 F.3d at 40 (citing United States v. Holmquist, 36 F.3d at 167; United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994)).

Thus, "[a] document need not be signed or proven to be in the defendant's handwriting to be authenticated." United States v. Thompson, 449 F.3d 267, 274 (1st Cir. 2006). "Anonymous correspondence may be sufficiently distinctive in its 'appearance, contents, substance, internal patterns, or other distinctive characteristics,' within the meaning of Fed. R. Evid. 901(b)(4) to meet the authentication requirement." United States v. Bello-Perez, 977 F.2d 664, 671 (1st Cir. 1992); see also United States v. McMahon, 938 F.2d at 1508-09 (unsigned note may be authenticated based on circumstantial indicia of authorship); United States v. Helmel, 769 F.2d 1306, 1311 (8th Cir. 1985) (stating "It is well

6

settled that genuineness of a writing can be established by circumstantial proof without resort to the handwriting or typewriting.").

As the Fifth Circuit explained:

> Conclusive proof of authenticity is not required. "Use of circumstantial evidence alone to authenticate a document does not constitute error. . . . Fed. R. Evid. 901(a) requires <u>only some competent evidence</u> in the record to support authentication." The government can also rely on the contents of the letter to establish the identity of the declarant. And, "the fact that no handwriting analysis was done is not a bar to . . . admission."

<u>United States v. Scurlock</u>, 52 F.3d 531, 538 (5th Cir. 1995) (approving admission of letters that were sent between various co-conspirators that detailed elements of a fraud scheme, based upon their content and the manner in which the documents were seized or delivered) (citations omitted) (emphasis added).

    c.    <u>The Court May Authenticate An Exhibit Even Without Determining The Specific Identity of the Author</u>

The Court may authenticate an exhibit even without establishing that it was written by a particular person. "If the contents of the document reveal that the author was knowledgeable about the affairs of a criminal conspiracy, for example, or about the details of a transaction, the fact that the contents of the document connect the document to the conspiracy or transaction is sufficient to authenticate the document. *Weinstein's Evidence* § 901.04[3][a] at 901-48 (citing <u>United States v. Sliker</u>, 751 F.2d

477, 488 (2d Cir. 1984) (documents authenticated by their contents even though prosecution could not identify author); United States v. Smith, 223 F.3d 554, 570 (7th Cir. 2000) (document describing gang organization was properly authenticated by evidence that it contained information known only to gang members or someone intimately familiar with gang's business); United States v. Helmel, 769 F.2d at 1306 (documents authenticated when they reveal that they could have been authored only by someone with knowledge of transaction they describe, even though specific author is unknown); United States v. Wilson, 532 F.2d 641, 644 (8th Cir. 1976) (when document shows that author knew conspiracy's activities and thus must have been member of conspiracy, document is authenticated as to all members of conspiracy).

In United States v. Calbas, 821 F.2d 887 (2d Cir. 1987), the Second Circuit held that pages from a spiral notebook found in a co-conspirator's hotel room were admissible as drug records even though there was no testimony that the notebook was a drug record, there was no proof that the co-conspirator could speak the language in which the pages were written, and there was no proof that the co-conspirator was the author of the notebook.  The defendant contested the admission of the notebook based in part upon an insufficient basis to establish the notebook's ownership.  The Second Circuit disagreed, finding that the notebook was found with a kilo of cocaine in a room recently vacated by the co-conspirator

and the notebook contained references to the defendant's alias.

As the Eighth Circuit explained, "we do not believe that positive proof of the declarant's identity, through handwriting analysis or otherwise, is necessarily essential to the invocation of the co-conspirator rule. What is essential is that the government show that the unknown declarant was more likely than not a conspirator." United States v. Helmel, 769 F.2d at 1313 (noting at 1311 that "only someone intimately acquainted with the organization could have written the entries."); see United States v. Smith, 223 F.3d 554, 570 (7th Cir. 2000) (stating that "[t]he defendants are wrong to suggest that it is necessary to know the precise identity of a co-conspirator before statements can be admitted under 801(d)(2)(E).")

2.   The Government's Exhibits Are Admissible Non-Hearsay

Rule 801(d)(2)(A) provides in pertinent part: "A statement is not hearsay if . . . [t]he statement is offered against a party and is (A) the party's own statement. . . ." Fed. R. Evid. 801(d)(2)(A). As set forth below, the subject matter of the government's exhibits, the circumstances surrounding their creation, the manner in which they were seized or obtained, and their physical characteristics, all compel the same reasonable conclusion: the government's exhibits are all non-hearsay statements of the defendant.

a.    <u>P.J. Richfield</u>

The evidence at trial will establish that by the time of the defendant's ADA-504 contract, the defendant was the sole operator of P.J. Richfield ("P.J."). For example, several witnesses who had to deal with P.J. dealt only with the defendant or Sotirion. Moreover, all of the SHA documents requiring a signature or a personal contact, such as P.J.'s bid paperwork and payment requisitions, bear the defendant's name. Further, according to the defendant's corporate statement, GX 255-0002, the defendant was the President, Treasurer, Clerk, and sole Director of P.J. Finally, the defendant told the FBI in his April 10, 2003 interview that he was the sole employee of P.J.

b.    <u>Government Exhibit 82</u>

The government will offer four pages of the defendant's handwritten notes contained within GX 82, a file folder entitled "New Bills" that was seized from the SHA building that housed Sotirion's office and storeroom. The handwritten notes should be authenticated as the defendant's statement based upon their appearance, contents, substance, internal patterns, or other distinctive characteristics.

First, like virtually all of the handwritten documents submitted by the defendant on behalf of P.J., including the bid paperwork that is already in evidence as GX 43 and 59, the notes are all written in the same highly distinctive block capital style.

10

In this style, all letters are capitalized and many letters and numbers are written in a unique manner.    Notably, witnesses familiar with the handwriting of Arthur Sotirion and Raymond Asselin, Sr. have testified that this handwriting is not Sotirion's or Asselin's.

Second, the notes were seized from the Sanderson Street building that housed Sotirion's office.    See United States v. Paulino, 13 F.3d at 24 (noting that "[t]he physical setting in which the document surfaced is equally telling.").    Moreover, each page of notes is a photocopy which Arthur Sotirion annotated in ink.    Indeed, GX 82-0004 is dated by Sotirion: "12/23/94."    Thus, the defendant's co-conspirator Sotirion possessed these notes, and wrote on them, after they were created, on or about December 23, 1994.[2]    Although the defendant was fully paid by Asselin and Sotirion on October 17, 1994, the project architect wrote a series of letters from November 1994 through January 1995 complaining that the defendant had not nearly completed his contracted work. Consequently, Sotirion's possession of the notes not only follows soon after the defendant's final payment but is contemporaneous with the architect's complaints about the defendant's work.

Third, GX 82-0004 refers to "FINAL ACCT'G 504 SITE" and lists

---

[2]    Notably, GX82-0006 also bears a handwritten date of 12/23/94, albeit not in Sotirion's handwriting.    The government proposes that this date, like the rest of the writing that was not done by Sotirion or Asselin, was written by the defendant.

a "contract amount" of $621,737 – the precise amount of the total SHA payment to P.J. approved by Sotirion and Asselin. Moreover, GX 82-0004 and GX 82-0017 detail expenses for this contract, totalling approximately $560,000. The detailed expanses include $143 to Atlantic Fastener, $101 to Costigan, and $280 to Hartline – all payments that are listed in P.J.'s cash disbursement ledgers for 1994.[3] As the President, Treasurer, Clerk, sole Director of P.J. and sole employee, only the defendant would presumably know both the project's expenses and final payment, as well as the precise details of several P.J. checks written for the project. See United States v. Thompson, 449 F.3d at 275 (noting that anonymous letter's content precisely fits defendant's circumstances); United States v. Newton, 891 F.2d 944, 947 (1st Cir. 1989) (noting that one of the names and numbers of a Swiss bank account on the disputed document was identical to a number on a piece of paper found in a search of the defendant's house); Fed. R. Evid. 901, Advisory Committee Note, Example (4) (noting that a document "may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him").

Fourth, the handwritten calculations on GX 82-0004 then subtract the project's expenses from the final SHA payment,

---

[3]    The government expects to offer two pages of P.J.'s ledger into evidence. One page of the ledger lists the checks for Atlantic Fastener, Costigan Paints, and Hartline as $141.45, $101.05 and $280.00, respectively.

yielding a total profit of $55,612, which is then divided by 3, yielding an amount of $18,537, which is noted as "OWED TO ART & RAY BY PETE." Particularly since this handwriting is not Sotirion's or Asselin's, it is a logical and reasonable inference that the defendant himself is assessing his profit and then indicating that he ("PETE") owes one third each of the P.J. profit to "ART" Sotirion and "RAY" Asselin. As the First Circuit has recognized, "the content of a disputed document may itself furnish indicia of authenticity." United States v. Paulino, 13 F.3d at 24 (noting that rent receipt bore defendant's name, listed his apartment number correctly, and referred to a relevant time frame); see also United States v. Bello-Perez, 977 F.2d at 671-72 (authenticating letter that was not written in defendant's handwriting as nonetheless originating with defendant, where addressor's name appeared "similar" to defendant's first name, return address was a post office box related to defendant, and letter included statements about family problems known to defendant).

Fifth, GX 82-0004 lists two "CHECKS IN 1994 TO ART" - $1,945 and $1,434. These check figures are attributed to "ART" again on GX 82-0017. These amounts correspond precisely to the check

13

following entries in P.J.'s cash disbursement ledgers for 1994:

| Number | Payee | Amount | Date |
|--------|-------|--------|------|
| 324 | Phillip Lee | 1,945 | 01/13/94 |
| 325 | William Needleman | 1,434 | 01/13/94 |

The government recently interviewed both Phillip Lee and William Needleman, and intends to offer their testimony. Lee and Needleman are two contractors working in the area around Portland, Maine. Each will testify that they worked together on the Sotirion summer home on Little Diamond Island, Maine. On or about November 24, 2003, Lee and Needleman submitted separate bills to Sotirion's parents in the amounts of $1,945 and $1,434, respectively.

However, their bills were not paid timely, prompting Lee to write to Sotirion's parents on December 28, 1993. Ultimately, Sotirion mailed Lee a letter dated January 13, 1994 (the same date as the P.J. checks to Needleman and Lee) stating in pertinent part: "Sorry for the delay. Any problems call me." Both Lee and Needleman recall that they ultimately received checks written by a third party that they did not know. According to Lee, Sotirion told him that the person who sent the check owed Sotirion money, and directed Lee to cash the check. According to Needleman, the check was issued by a business that was called "P. and something" or "P and J."

To corroborate the testimony of Lee and Needleman, the government intends to introduce the following documents into

14

evidence: (1) one page of P.J.'s ledger listing the checks to Lee and Needleman; (2) Lee's one-page bill; (3) Needleman's one-page bill; (4) Sotirion's one-page letter to Lee; and (4) one page listing P.J.'s Form 1099s for the 1994 payments to Lee and Needleman.[4]

Sixth, GX 82-0004 includes a typed balance sheet listing an $85,000 debt owed to the Bank of Boston, of which $40,000 was listed as "loan paid" and $45,000 was "forgiveness." The balance sheet further calculates a "Tax on Forgiveness" at a 28% tax rate, which is a personal income tax rate. These notes are corroborated by the December 31, 1993 Financial Statement of P.J., contained within GX 255, which states: "During fiscal 1993, the Company negotiated with the bank to forgive $45,000 of principal on an $85,000 demand note for the cash payment of $40,000." It is a logical and reasonable inference that the defendant alone, or very few others, would have possessed this information. "There are statements in [GX 82] from which it could be inferred that [the defendant] authored the document." United States v. Newton, 891 F.2d at 947 (authenticating unsigned document based on internal references to defendant's girlfriend, wife, lawyer and aliases).

Seventh, the balance sheet on GX 82-0004 divides by two both the $40,000 loan paid (to yield $20,000) and the $45,000 amount

---

[4]    P.J.'s 1099 forms list the following amounts for Lee and Needleman: $1,995 and $1,439, respecively.

forgiven (to yield $22,500) - indicating that the loan was to be divided between two individuals. The balance sheet then applies the 28% tax rate to half of the amount forgiven ($22,500), yielding $6,300. The balance sheet then adds the $6,300 to the $20,000 for a "total due" of $26,300, which the handwriting notes "IF P.J. PAYS ADD'L TAX DUE FROM RAY."

Eighth, the handwriting on GX 82-0004 states "G&R JOB NET APPROX. $28,000," divides that figure by 3 to yield $9,333, which is noted is "OWED TO PETE, RAY, ART BY G&R." The evidence at trial has already established that Sotirion drafted G&R's ADA-504 bid paperwork, steered a lucrative sub-contract through G&R to the defendant, and controlled G&R's ADA-504 finances. Thus, it is a logical and reasonable inference that Sotirion knew and communicated to the defendant the approximate profit earned by G&R on the ADA-504 job, which the defendant then agreed to share with Sotirion and Asselin.

Lastly, GX 82-0006 is a handwritten series of four columns labeled "PETE," "RAY," "ART," and "G&R." Below these columns are figures allocating debts owed among the four, including the one-third shares of the G&R and P.J. profits set forth on GX 82-0004. Below these columns are additional figures, including a figure described in handwriting as "NET TO PETE AFTER PETE PAYS RAY FOR ADA 504 SITE." Again, it is a logical and reasonable inference that it is the defendant allocating the G&R and P.J. profits among

16

himself, Asselin, and Sotirion - particularly since the handwriting does not belong to Asselin or Sotirion.

The "burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity." United States v. Holmquist, 36 F.3d at 168.  Here, all of "the circumstantial evidence of authorship" points to only one author of the handwritten notes in GX 82: the defendant. United States v. Newton, 891 F.2d at 947.

Few if any people other than the defendant would: (a) know P.J.'s expenses and receipts on the ADA-504 project; (b) possess information detailing P.J.'s Bank of Boston loan and forgiveness; (c) and be able to list checks in 1994, *as payable to Art Sotirion*, that correspond precisely to checks written to two Portland contractors who did work on Sotirion's Maine summer home. Moreover, no one but the defendant, Sotirion and Asselin would be capable of allocating both P.J. and G&R profit among themselves, and the handwriting plainly does not belong to Sotirion (who separately annotated each page) or Asselin.  As the First Circuit observed in authenticating evidence as co-conspirator statements:

> The source of the [documents], the circumstances surrounding their seizure, the fact that the information corresponded to other evidence of the participants in the conspiracy, and the extreme unlikelihood that such a list would be prepared by one not privy to the operation of the conspiracy provide a sufficient basis to infer that the writings pertained to the conspiracy alleged and were made in furtherance of that conspiracy.

United States v. Drougas, 748 F.2d 8, 26 (1st Cir. 1984).

At the very least, "there is sufficient evidence to allow a reasonable person to believe that the evidence is what it purports to be" - a handwritten statement of the defendant. <u>United States v. Garcia</u>, 452 F.3d at 40.  The defense is "free to challenge the reliability of the note, to minimize its importance, and to offer alternative understandings of its meaning; but these and other challenges go to the weight to be given to the [evidence] by the jury, not to [its] admissibility." <u>SCS Communications, Inc. v. Herrick Co., Inc.</u>, 360 F.3d 329, 345 (2d Cir. 2004) (quotation omitted); <u>see</u> <u>also</u> <u>United States v. McMahon</u>, 938 F.2d at 1509.

c.  <u>Government Exhibit 79</u>

GX 79 is a folder labeled "P.J." that was seized from the SHA building housing Sotirion's office.  It consists of a series of packets of invoices relating to ADA-504 interior work at Riverview, which had been contracted by SHA to G&R.  Each packet generally contains the following: (a) underlying invoices from third parties, most of which are addressed to P.J., "Pete," or "Peter David [sic];" (b) P.J. invoices, which include amounts for the underlying invoices; (c) adding machine tape totaling the amounts on the P.J. invoices, which bear notations by Sotirion that the invoices have been paid by certain checks on certain dates.  The handwritten notations are already in evidence, as is the testimony of Gary Baribeau and Deborah Barton that the notations correspond to entries for payment to P.J. in Sotirion's handwritten ledgers for G&R.  George Williamson has already testified that he submitted

many of the underlying invoices to either the defendant or Sotirion, and that he was paid by the defendant. Lastly, Kevin Maroney will testify that he, too, provided the defendant with some of the underlying invoices to P.J.

The subject matter, physical characteristics, and surrounding circumstances of the P.J. invoices all warrant their authentication as statements of the defendant. First, the invoices are all written in the same distinctive, all capital style. Second, the invoices all bear the P.J. letterhead. Third, virtually all of the invoices are captioned with reference to "Riverview ADA Interior." Fourth, all appear to concern either work or supervision fees performed on the ADA-504 interior project. Fifth, P.J. was solely operated by the defendant. Sixth, many of the underlying invoices are issued to "Pete" or "Peter David [sic]" or were provided to the defendant. The totality of the circumstances demonstrates sufficient evidence to allow a reasonable person to believe that the defendant prepared the P.J. invoices.

d. <u>Government Exhibit 63</u>

GX 63 is a single page handwritten note addressed to "ART" and listing five items. It was seized from the SHA building that housed Sotirion's office, and bears annotations by Sotirion. The document's physical characteristics, subject matter, and surrounding circumstances all support the reasonable finding that it was authored by the defendant.

First, it is dated September 30, 1994, during the course of

19

the defendant's exterior site-work on ADA-504.  Second, it is written in the same, distinctive all-capital style as the other documents submitted by the defendant on behalf of P.J.  Third, it expressly concerns the work contracted to the defendant for ADA-504, which included galvanizing rails and work on apartments at Clyde Street.  One item states: "IT WOULD BE VERY TIMELY IF YOUR PAINTERS CAN GALVANIZE RAILS ON SAT."  Another item states: "IT WOULD ALSO HELP OUR OCT. 15 DEADLINE IF YOUR PAINTERS CAN DO 123 CLYDE STREET (1ST FLOOR) (2 DAYS WORK TO PAINT).  Notably, the defendant's final payment was certified and authorized on October 17, 1994 - just two days after the "deadline" in GX 61.  Lastly, the note appears to be signed "PSD" - the intitials of the defendant, Peter S. Davis.[5]  The totality of the circumstances demonstrates sufficient evidence to allow a reasonable person to believe that the defendant drafted this note.

    e.   <u>Government Exhibit 69</u>

On October 12, 1994, ADA-504 project architect James Bright wrote the defendant a letter requesting a "status report" on the defendant's exterior site work.  GX 64.  On November 3, 1994, Bright wrote Raymond Asselin a letter stating that "there is enough work which is not completed to make it impossible for me to prepare a punch list. . . . I wrote P.J. Richfield a letter several weeks

---

    [5]    The Court has observed that the signature does not appear to contain these initials.

ago requesting a report on what work was outstanding, and have not received a response."  GX 68.

GX 69 is a handwritten letter on P.J. stationery that is addressed to Bright at his architectural firm; the letter states "Per our phone conversation 12/6/94 please be advised punch list items have been completed, for ADA/504 site improvements."  The letter is signed by "Peter Davis" and was seized from the Sanderson Street building that housed Arthur Sotirion's office.

It is well-settled that "a letter can be authenticated by testimony or other proof that it was sent in reply to a duly authenticated letter.  A reply letter often needs no further authentication because it would be unlikely for anyone other than the purported writer to know and respond to the contents of an earlier letter addressed to him." *Weinstein's Evidence* § 901(b)(4)[05] at 901-76 (2005). See, e.g., United States v. Henry, 164 F.3d 1304, 1309 (10th Cir. 1999) (forms "carried a strong indicia of reliability" because they replied to an original mailing); United States v. Reilly, 33 F.3d 1396, 1407 (3d Cir. 1994) (noting that the reply doctrine provides that once a letter, telegram, or telephone call is shown to have been sent, another letter, telegram, or telephone call shown by its contents to be in reply is authenticated without more); see also Van Riper v. United States, 13 F.2d 961, 968 (2d Cir. 1926) (same).

Here, GX 69 is written on P.J. stationery, bears the same

distinctive all-capital style, is signed by "Peter Davis," and was written after Bright sent the defendant a letter requesting a status report on the ADA-504 project.[6]  In these circumstances, that "there is sufficient evidence to allow a reasonable person to believe that the evidence is what it purports to be" – a letter by the defendant responding to Bright.  United States v. Garcia, 452 F.3d at 40.  Indeed, based upon the evidence in the case, no other logical possibility exists.

     f.   Government Exhibit 61

GX 61 is a single page handwritten note entitled "ADA Project - Changes P.J. Richfield" and dated November 30, 1993.  It was seized from the SHA building that housed Sotirion's office, and bears annotations by Sotirion.  The document lists "credits" and "debits" to P.J.

The document's physical characteristics, subject matter, and surrounding circumstances all support the reasonable finding that it was written by the defendant.  First, its caption explicitly refers to contemplated "changes" to the defendant's ADA-504 project.  Second, it is dated November 30, 1993, during the course of the defendant's project.  Third, it specifically refers to work within the scope of the defendant's project, such as the installation of ramps, sidewalks, and galvanizing rails.  Fourth,

_____

     [6]    The letter also refers to a telephone conversation with Bright, which Bright testified did not occur.

it lists the following "credit" to P.J.: "REDUCE FOOTING DEPTH TO 12"-18". In the margin next to this credit, Sotirion's penciled note reads: Spec. Footing 4" - a clear reference to the four-foot foundation wall specified in the ADA-504 blueprints. Since it is a contemporaneous note written in the same distinctive style concerning changes to the defendant's project, sufficient evidence exists to allow a reasonable person to believe that the defendant drafted this note.

    g. <u>Government Exhibit 67</u>

GX 67 is a typed page, dated 10/22 by Sotirion, with a paragraph of Sotirion's handwriting at the bottom. It lists two sets of items, entitled "SHA (Advantage / In Favor For") and "Peter Davis (Advantage / In Favor For)." The document refers to the defendant's ADA-504 site work project, and particularly includes references to specific housing projects and ramps, railings, and sidewalks. It is stapled to two pages of drawings from the defendant's project. One item listed as "advantage / in favor for" the defendant is: "No 4' foundation wall on ramps at Riverview / substitute dowels instead." Thus, the document plainly contemplates the elimination of the costly foundation wall specified in the blueprints - a change that clearly would "favor" the defendant's profit margin, which he could then share with Sotirion, who annotated the document. In fact, the trial has established that no foundation walls were found underneath any of

the ramps that SHA has recently replaced.  Moreover, the defendant

was the sole representative of P.J. at any job meeting in which

ramps were discussed.  Given the totality of the circumstances, it

is a reasonable likelihood that either the defendant or Sotirion

caused the document to be created.  Even if Sotirion did not

actually type the document, he certainly adopted it, as evidenced

by his writing at the bottom.  As the Eighth Circuit has

recognized, "What is essential is that the government show that the

unknown declarant was more likely than not a conspirator." United

States v. Helmel, 769 F.2d at 1313.

h.  Government Exhibit 84

GX 84 consists of a folder, entitled "C.C. RECEIPTS, COST

EST., PROPOSALS, PAYMENTS" that was obtained from P.J. pursuant to

a grand jury subpoena.  The folder contains SHA documents, such as

payment requisitions, that are either signed by or expressly

prepared by the defendant on behalf of P.J. for an SHA contract at

Christopher Court.  The government seeks to offer only one page of

handwritten notes from this folder as the defendant's written

statement.  GX 84-0007.  This page contains cost estimates for

various aspects of the Christopher Court renovation project.

The notes' physical characteristics, subject matter, and

surrounding circumstances all support the reasonable finding that

it was written by the defendant.  First, they are written in the

same distinctive all-capital style as the other documents written

by the defendant on behalf of P.J.  Notably, another page of notes bearing what appears to be the same handwriting, GX 84-0049, is already in evidence as GX 292, as an attachment to a contract the defendant executed with Frank Ware.  Second, the notes were produced by P.J. in response to a subpoena, and it is undisputed that the defendant operated P.J. by himself.  Third, the notes clearly pertain to the defendant's Christopher Court project; indeed, one page of the notes is captioned "Chris Court - Paint - Unit Breakdown."  Finally, the notes are contained within a folder containing other documents relating to Christopher Court, many of which are signed by the defendant.

IV.  <u>Conclusion</u>

For the preceding reasons, the government respectfully submits that the Court grant the instant Motion in Limine to Admit Certain Evidence.

Filed this 6th day of October, 2006.

                        Respectfully submitted,
                        MICHAEL J. SULLIVAN
                        United States Attorney


                        _____/s/ Steven H. Breslow_____
                        STEVEN H. BRESLOW
                        Assistant United States Attorney


                        _____/s/ Kevin O'Regan_____
                        KEVIN O'REGAN
                        Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

Hampden, ss.                          Springfield, Massachusetts
                                      October 6, 2006


     I, Steven H. Breslow, Assistant U.S. Attorney, do hereby
certify that I have served a copy of the foregoing via ECF upon the
following:

James C. Rehnquist, Esq.
Goodwin Proctor LLP
Exchange Place
Boston, MA 02109
Counsel for Defendant Peter Davis


                              ____/s/ Steven H. Breslow_____
                              STEVEN H. BRESLOW
                              Assistant United States Attorney