# INSTRUCTION NO. 3.6

*Intent to Commit Bribery - Part I*

## INSTRUCTION NO. 3.6
### *Intent to Commit Bribery*

I instructed you that in order to find Mr. Davis guilty of conspiracy to commit bribery of a public official, the government must prove beyond a reasonable doubt that Mr. Davis had both the intent to agree to join the conspiracy and the intent that the underlying crime of bribery of a public official be committed.

You have heard the term "kickback" used during this trial. The government has referred to "kickbacks," and witnesses have referred to "kickbacks." "Kickback" is an informal term, not a legal term. Mr. Davis has been charged with conspiring to give bribes. You should not assume that a "kickback," as that term has been used during this trial, is or is not the same thing as a bribe. You should simply put the term out of your minds and focus on the law of bribery, as to which I will instruct you.

To prove that Mr. Davis conspired to bribe a public official as alleged in the indictment, the government must prove the following three essential elements beyond a reasonable doubt:

*One*, that Mr. Davis agreed to give, offer, or promise something of value as described in the indictment to a public official, or agreed to offer or promise a public official to give something of value as described in the indictment to any other person or entity;

*Two*, that Raymond Asselin, Sr. and Arthur Sotirion were, at that time, officials of the United States or were acting on behalf of the United States; and

*Three*, that Mr. Davis agreed to give, offer, or promise corruptly with the intent to influence an official act.[1]

---

[1]    Adapted from 2 O'Malley, *et al.*, Federal Jury Practice and Instructions § 27.03.

The term "public official" means an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, in any official function, under or by authority of any such department, agency, or branch of government.[2] To be considered a public official, it is not necessary that the person be an employee of the United States Government. An employee of state or local government, or even a person employed in the private sector, may qualify as a public official if that person possesses some degree of official responsibility for carrying out a federal policy or program.[3]

The term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such public official's official capacity, or in such official's place of trust or profit.[4]

To prove that Mr. Davis agreed to commit bribery, the government must prove that the alleged gift, offer, or promise of a thing of value was to be given with the intent to effect "a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." A thing of value given, offered, or promised merely for or because of an official's ability to favor the donor in executing the functions of his office public, to buy favor or generalized goodwill, or to thank or reward a public official is not a bribe. Rather, to be a bribe, the thing of value must be offered, promised, or given with the intent to influence a particular official act—in other words, to receive something specific (in the form of a particular official act) in exchange for the gift. The government

---

[2]    18 U.S.C. § 201(a)(1) (relevant excerpt).

[3]    1 L. Sand, *et al.*, Modern Federal Jury Instructions—Criminal, Instruction 16-5.

[4]    18 U.S.C. § 201(a)(3).

must identify and prove the particular official act the thing of value was intended to influence.[5]

"Bribery is entirely future-oriented.... In other words, ... bribery involves the present giving, promise, or demand of something in return for some action in the future...."[6] Nevertheless, the timing of a gift or payment does not alone determine whether that gift or payment is a bribe because the government may prove that a gift or payment made after the performance of an official act was made pursuant to a pre-existing offer or promise—that is, an offer or promise that preceded the official act.[7] The question for you to decide is whether the gift or payment was intended to influence that official act. Thus, if you find that Mr. Davis agreed to give, offer, or promise something of value to a public official as "merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken," this is insufficient to find the requisite intent to commit bribery.[8]

---

[5]   *United States v. Sun Diamond Growers of Cal.*, 526 U.S. 398, 404-406 (1999).

[6]   *United States v. Schaffer*, 183 F.3d 833, 841-42 (D.C. Cir. 1999); *accord United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir. 1993).

[7]   *See United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998); *United States v. Griffin*, 154 F.3d 762, 764 (8th Cir. 1998); *United States v. Campbell*, 684 F.2d 141, 148 (D.C. Cir. 1982).

[8]   *Sun-Diamond*, 526 U.S. at 404.

THIS PAGE INTENTIONALLY LEFT BLANK



**Federal Jury Practice And Instructions**
**Criminal**
**Current through the 2006 Update**

Kevin F. O'Malley[FNa0], Jay E. Grenig[FNa1], Hon. William C. Lee
[FNa2]

**Part III. Instructions for Particular Federal Criminal Cases**
**Chapter 27. Bribery of Public Officials and Witnesses**
**(18 U.S.C.A. § 201)**
**A. Giving, Offering, or Promising A Bribe to A Public Official**
**(18 U.S.C.A. § 201(b)(1)(A))**

**§ 27.03.** The essential elements of the offense charged

In order to sustain its burden of proof for the crime of giving, offering, or promising a bribe to a public official as charged in Count ___ of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt:

*One*: Defendant _____ gave, offered, or promised something of value as described in the indictment to _____ *[the official alleged in the indictment]*;

*Two*: _____ *[the official alleged in the indictment]* was, at that time, an official of the United States or was acting on behalf of the United States; and

*Three*: Defendant _____ made the gift, offer, or promise corruptly with the intent to influence an official act.

**NOTES**

*In General*

The offer itself, with the requisite intent, is sufficient to complete the offense. It is not necessary to show that the public official accepted the bribe or that the public official was actually corrupted by the offer. United States v. Johnson, 621 F.2d 1073, 1076 (10th Cir.1980). Even if the bribe is offered to the wrong official--one without the authority to accomplish the desired act--the briber may be liable under Section 201. United States v. Gjieli, 717 F.2d 968, 971 (6th Cir.1983), cert. denied, 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

See United States v. Strand, 574 F.2d 993 (9th Cir.1978).

*First Circuit*

In Kemler v. United States, 133 F.2d 235, 238 (1st Cir.1942), the defendant draftee offered a bribe to the government doctor performing his draft physical examination and was convicted of violating 18 U.S.C.A. § 91 (a predecessor to Section 201). The court affirmed his conviction holding that "The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided that the acceptor or the offeree of the bribe is a person of the sort described in the statute."

*Second Circuit*

In United States v. Gallo, 863 F.2d 185, 189 (2d Cir.1988), cert. denied, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989), the Second Circuit wrote, "Whether or not there was a federal official to whom bribes were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FED-JI § 27.03                                                                Page 2
2 Fed. Jury Prac. & Instr. § 27.03 (5th ed.)

actually paid is not determinative of the issue of intent. As we have stated, 18 U.S.C.A. § 201(b) makes attempted bribery a crime, and so long as a bribe is offered or promised with the requisite intent to influence any official act the crime is committed." (Emphasis in original. Citations omitted).

In a prosecution under Section 201(c) the Second Circuit has held that the intent of the bribe taker to keep the promises made in return for the bribe is immaterial. United States v. Myers, 692 F.2d 823, 842 (2d Cir.1982). "If Myers (the defendant Congressman) was 'playacting' and giving false promises of assistance to people he believed were offering him money to influence his official actions, he violated the bribery statute." [footnote omitted]

Actively encouraging an official to accept a bribe may subject a defendant to Section 201 liability even if that individual is not the actual briber, but only an intermediary. United States v. Silvestri, 719 F.2d 577, 582 (2d Cir.1983) ("... actively encouraging the Congressman, to accept Amoroso's corrupt proposal, [is] conduct sufficient to make Silvestri liable as one who directly or indirectly, corruptly ... offers ... anything of value to any public official.")

Knowledge by the defendant that the recipient of the bribe is a federal official acting in his capacity as such is not an essential element of the offense. United States v. Jennings, 471 F.2d 1310, 1311 (2d Cir.), cert. denied, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973).

The court upheld a conviction against a challenge to the sufficiency of the evidence despite the fact that the customs agent neither identified himself as a customs agent or wore a uniform. United States v. Soto, 47 F.3d 546, 549 (2d Cir. 1995).

In United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971), the Second Circuit found that "the crime is consummated irrespective of whether an offer of an amount of money to influence an official's behavior is accepted by the official."

See United States v. Barash, 412 F.2d 26, 29-30 (2d Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969). ("[T]he intent to influence official action ... is an essential element of the offense under old Section 201 and present Section 201(b).")

Though the Constitution requires a jury to make a finding as to every element of a charged crime, the failure of the district court to instruct the jury to do so as to the federal nexus element of the federal bribery statute was harmless error where no reasonable juror could have concluded that a federal nexus remained not proven beyond a reasonable doubt. United States v. Brunshtein, 344 F.3d 91, 100-101 (2d Cir. 2003), cert. denied, ___ U.S. ___, 125 S.Ct. 35, 160 L.Ed.2d 34 (2004).

See United States v. Alfisi, 308 F.3d 144, 150 (2d Cir. 2002).

*Fourth Circuit*

In United States v. Head, 641 F.2d 174, 180 (4th Cir.1981), appeal after remand, 697 F.2d 1200 (4th Cir.1982), the court held that the distinction between lawful "goodwill expenditures" and unlawful bribes is that the latter are made with "criminal intent that the benefit be received by the official as a quid pro quo for some official act, pattern of acts, or agreement to act favorably to the donor when necessary."

*Fifth Circuit*

See Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Criminal Cases, Instruction No. 2.12 (2001).

The gravamen of an illegal gratuity under Section 201(b)(5) is not the intent to be corrupted or influenced, but the acceptance of unauthorized compensation. United States v. Evans, 572 F.2d 455, 480-481 (5th Cir.), rehearing denied, 576 F.2d 931 (5th Cir.1978). "Thus, Section 201(g) (now § 201(c)(1)(B)) makes it criminal for a public official to accept a thing of value to which he is not lawfully entitled, regardless of the intent of the donor or donee."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FED-JI § 27.03                                                                            Page 3
2 Fed. Jury Prac. & Instr. § 27.03 (5th ed.)

No offense is committed without an offer to transfer something of value or the actual giving of something of value. United States v. Hernandez, 731 F.2d 1147, 1149 (5th Cir.1984).

*Sixth Circuit*

"Three statutory elements must be satisfied to establish a Section 201(b)(3) violation. First, the bribed individual must be a 'public official' *(or other person named in the statute)*. Second, the briber must directly or indirectly, corruptly give, offer or promise something of value to a public official. Third, in doing so, the briber must have the intent to induce the public official to act in violation of his lawful duty." United States v. Gjieli, 717 F.2d 968, 971 (6th Cir.1983).

See United States v. O'Donnell, 510 F.2d 1190, 1194 (6th Cir.), cert. denied, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).

*Seventh Circuit*

## BRIBERY OF PUBLIC OFFICIALS AND WITNESSES

### (Giving a Bribe--Elements)

To sustain the charge of giving a bribe, the government must prove the following propositions:
*First,* that the Defendant directly or indirectly [promised, gave, offered] a thing of value to a public official; and
*Second,* that the Defendant did so corruptly with intent to influence an official act.

### Committee Comment

For an instruction regarding a lesser included offense, see the instruction on § 201 Making an Illegal Payment.
Federal Criminal Jury Instructions of the Seventh Circuit, Instruction No. 201 pp. 141 to 148 (1999).

*See* United States v. Synowiec, 333 F.3d 786, 789 (7th Cir.2003) (no price agreed upon or discussed).

*Eighth Circuit*

See Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, Instruction No. 6.18.201A (2003).

*Ninth Circuit*

## BRIBERY OF PUBLIC OFFICIAL

The defendant is charged in [Count __ of] the indictment with bribing a public official in violation of Section 201(b)(1) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
First, the defendant *[gave] [offered] [promised]* something of value to *[public official]*; and
Second, the defendant acted corruptly, that is, with the intent to [influence and official act by the *[public official]*] [persuade the *[public official]* to omit to do and act in violation of *[public official]*'s lawful duty].

### Comment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*See* United States v. Strand, 574 F.2d 993, 996 (9th Cir.1978).

If there is any question in the case about the "official" character of the action sought by the defendant, insert a sentence following "duty" defining "official act:" "An official act is any decision or action on a question that may be brought before any public official in his official capacity." *See* 18 U.S.C.A. § 201(a)(3).

Actual power to do what defendant wants is not an element. United States v. Carson, 464 F.2d 424, 431 (2d Cir.), *cert. denied*, 409 U.S. 949 (1972). Nor does it matter whether the official actually accepted anything from defendant or was actually influenced.

There should be some connection between the offer and the official's duties. United States v. Seuss, 474 F.2d 385, 388 (1st Cir.), *cert. denied*, 412 U.S. 928 (1973).

Consult each statute that uses the term "corruptly" for the meaning of the term. "Corruptly" is capable of different meanings in different connections. *See* United States v. Cohen, 202 F.Supp. 587, 588 (D.Conn.1962). *See also* Instruction 3.16 (Corruptly--Defined).

Depending on the facts in evidence, it may be appropriate to amend this instruction with language requiring specific jury unanimity (*e.g.*, "with all of you agreeing as to what the defendant intended the public official to do in return for the bribe"). *See* Instruction 7.9 (Specific Issue Unanimity).
Manual of Model Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 8.8 (2000).

The crime of bribery requires that an individual corruptly give money to a public official to influence him or her in the performance of his or her duties. United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 822 (9th Cir.), cert. denied, 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985).

The defendant in United States v. Crutchfield, 547 F.2d 496, 500 (9th Cir.1977), was convicted of bribing the IRS agent who was auditing his personal and business tax returns. He appealed, contending that the district judge erred in refusing to instruct the jury on the lesser included offense of giving a gratuity to a public official. The court reversed the conviction holding that "the government concedes ... that Section 201(f) is a lesser offense included within Section 201(b)(1). 'The behavior prohibited by Section 201(f) embraces those cases in which all of the essential elements of the bribery offense (corrupt giving) stated in Section 201(b) are present except for the element of specific intent to influence an official act .... ' United States v. Irwin, 354 F.2d 192, 196 (2d Cir.1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966). 'Therefore the correct relationship between Section 201(b) and Section 201(f) is that Section 201(f) is a lesser included offense of Section 201(b).' United States v. Umans, 368 F.2d 725, 730 (2d Cir.1966), cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967)."

See United States v. Strand, 574 F.2d 993, 996 (9th Cir.1978).

*Tenth Circuit*

"A quid pro quid--the conscious exchange of value for official favoritism--is a necessary element of bribery-type crimes ... " United States v. Vap, 852 F.2d 1249, 1255 (10th Cir.1988).

"The ordinary person would ... understand that giving a $5,000 automobile to a government official, in exchange for that official's influence in expediting a loan application, constitutes corruptly giving of something of value to influence an official act." United States v. Pommerening, 500 F.2d 92, 97 (10th Cir.1974).

See also United States v. Johnson, 621 F.2d 1073, 1076 (10th Cir.1980).

See Pattern Jury Instructions for the Tenth Circuit, Criminal Instruction No. 2.11 (2005).

*District of Columbia Circuit*

It is bribery whether the public official accepts something of value for himself or for any other person or entity in return for his being influenced. United States v. Kelly, 748 F.2d 691, 699 (D.C.Cir.1984).

"The payment and the receipt of a bribe are not interdependent offenses, (footnote omitted) for obviously the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FED-JI § 27.03                                                        Page 5
 2 Fed. Jury Prac. & Instr. §  27.03 (5th ed.)

donor's intent may differ completely from the donee's. Thus, the donor may be convicted of giving a bribe despite
the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so."
United States v. Anderson, 509 F.2d 312, 332 (D.C.Cir.1974), cert. denied, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d
672 (1975).

[FNa0] The O'Malley Law Firm, Saint Louis, Missouri.

[FNa1] Professor of Law, Marquette University School of Law.

[FNa2] Chief Judge, United States District Court for the Northern District of Indiana.

© 2006 Thomson/West

 FED-JI § 27.03
 END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THIS PAGE INTENTIONALLY LEFT BLANK

● retrieve current, comprehensive history citing references to a case with KeyCite

For more information on using WESTLAW to supplement your research, see the WESTLAW Electronic Research Guide, which follows the Explanation

## § 201.  Bribery of public officials and witnesses

(a) For the purpose of this section—

(1) the term "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

(2) the term "person who has been selected to be a public official" means any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed; and

(3) the term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

(b) Whoever—

(1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—

(A) to influence any official act; or

(B) to influence such public official or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(C) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of the lawful duty of such official or person;

(2) being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives,

456

Ch. 11   BRIBERY, GRAFT, ETC.                    18 § 201

accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for:

(A) being influenced in the performance of any official act;

(B) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

(C) being induced to do or omit to do any act in violation of the official duty of such official or person;

(3) directly or indirectly, corruptly gives, offers, or promises anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or with intent to influence such person to absent himself therefrom;

(4) directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity in return for being influenced in testimony under oath or affirmation as a witness upon any such trial, hearing, or other proceeding, or in return for absenting himself therefrom;

shall be fined under this title or not more than three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

(c) Whoever—

(1) otherwise than as provided by law for the proper discharge of official duty—

(A) directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official; or

(B) being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to

457

**18 § 201**

receive or accept anything of value personally for or because of any official act performed or to be performed by such official or person;

**(2)** directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom;

**(3)** directly or indirectly, demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon any such trial, hearing, or other proceeding, or for or because of such person's absence therefrom;

shall be fined under this title or imprisoned for not more than two years, or both.

**(d)** Paragraphs (3) and (4) of subsection (b) and paragraphs (2) and (3) of subsection (c) shall not be construed to prohibit the payment or receipt of witness fees provided by law, or the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion, and in appearing and testifying.

**(e)** The offenses and penalties prescribed in this section are separate from and in addition to those prescribed in sections 1503, 1504, and 1505 of this title.

(Added Pub.L. 87–849, § 1(a), Oct. 23, 1962, 76 Stat. 1119, and amended Pub.L. 91–405, Title II, § 204(d) (1), Sept. 22, 1970, 84 Stat. 853; Pub.L. 99–646, § 46(a)–(*l*), Nov. 10, 1986, 100 Stat. 3601–3604; Pub.L. 103–322, Title XXXIII, §§ 330011(b), 330016(2)(D), Sept. 13, 1994, 108 Stat. 2144, 2148.)

**HISTORICAL AND STATUTORY NOTES**

**Revision Notes and Legislative Reports**
**1962 Acts.** Senate Report No. 2213, see 1962 U.S. Code Cong. and Adm. News, p. 3852.

**1970 Acts.** Senate Report No. 91–1122, see 1970 U.S. Code Cong. and Adm. News, p. 3833.

**1986 Acts.** House Report No. 99–797, see 1986 U.S. Code Cong. and Adm. News, p. 6138.

**1994 Acts.** House Report Nos. 103–324 and 103–489, and House Conference Report No. 103–711, see 1994 U.S. Code Cong. and Adm. News, p. 1801.

**Modifications**

Section 330016(2)(D) of Pub.L. 103–322, directing that this section be amended by inserting "under this title or" after "be fined" and by inserting "whichever is greater," before "or imprisoned", was executed to subsec. (b) of his section, rather than subsec. (c) of this section, as the probable intent of Congress.

A prior § 201, Act June 25, 1948, c. 645, 62 Stat. 691, which prescribed penalties for anyone who offered or gave anything of value to an officer or other person to influence his decisions, was eliminated in the general amendment of this chapter by Pub.L. 87–849, and is substantially covered by revised § 201.

**Amendments**

**1994 Amendments.** Subsec. (b). Pub.L. 103–322, § 330016(2)(D), directed that this section be amended by inserting "under this title or" after "be fined" and by inserting "whichever is greater," before "or imprisoned". Amendment was executed to subsec. (b) of this section, rather than subsec. (c) of this section, as the probable intent of Congress.

**1986 Amendments.** Text. Pub.L. 99–646, § 46(1), directed that the margins of each subsection, paragraph, and subparagraph of this section are to be flush, indented 2ems, and indented 4ems, respectively.

Subsec. (a). Pub.L. 99–646, § 46(a), substituted "section—" for "section:", designated provision defining "public official" as par. (1), and in par. (1) as so designated, inserted "the term" after "(1)" and substituted "Delegate" for "Delegate from the District of Columbia", "after such official has qualified" for "after he has qualified", and "juror;" for "juror; and", designated provision defining "person who has been selected to be a public official" as par. (2), and in par. (2) as so designated, inserted "the term" after "(2)" and substituted "such person" for "he", and designated provision defining "official act" as par. (3), and in par. (3) as so designated, inserted "the term" after "(3)" and substituted "in such official's official capacity, or in such official's" for "in his official capacity, or in his".

Subsec. (b). Pub.L. 99–646, § 46(b)(1), as amended Pub.L. 103–322, § 330011(b)(A), substituted "Whoever"

for "Whoever," and inserted par. (1) designation preceding "directly".

Subsec. (b)(1). Pub.L. 99–646, § 46(b), as amended Pub.L. 103–322, § 330011(b), substituted "(1) directly" for "directly", redesignated pars. (1) to (3) as subpars. (A) to (C) and adjusted the margins to a 6em indent, and in subpar. (C) as so redesignated, substituted "the lawful duty of such official or person;" for "his lawful duty, or".

Subsec. (b)(2). Pub.L. 99–646, § 46(c), redesignated former subsec. (c) as par. (2), and in par. (2) as so redesignated, struck out "Whoever," preceding "being", substituted "corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally" for "corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself", redesignated pars. (1) to (3) as subpars. (A) to (C) and adjusted the margins to a 6em indent, in subpar. (A) as so redesignated, substituted "the performance" for "his performance", and in subpar. (C) as so redesignated, substituted "the official duty of such official or person" for "his official duty; or".

Subsec. (b)(3). Pub.L. 99–646, § 46(d), redesignated former subsec. (d) as par. (3), and in par. (3) as so redesignated, substituted "directly" for "Whoever, directly" and "therefrom;" for "therefrom; or".

Subsec. (b)(4). Pub.L. 99–646, § 46(e), redesignated former subsec. (e) as par. (4), and in par. (4) as so redesignated, substituted "directly" for "Whoever, directly", "demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally" for "asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself", "in testimony" for "in his testimony", "therefrom;" for "therefrom—", "shall be fined not more than" for "Shall be fined not more than $20,000 or", and "thing of value," for "thing of value, whichever is greater,".

Subsec. (c)(1). Pub.L. 99–646, § 46(f), (g), redesignated former subsec. (f) as par. (1), and in par. (1) as so redesignated, substituted "(1) otherwise" for ", otherwise" and "(A) directly" for ", directly", redesignated former subsec. (g) as subpar. (B), and in subpar. (B) as so redesignated, substituted "being" for "Whoever, being", "indirectly demands,

## 18 § 201

seeks, receives, accepts, or agrees to receive or accept anything of value personally" for "indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself", and "by such official or person" for "by him; or". Former subsec. (c) redesignated as subsec. (b)(2).

Subsec. (c)(2). Pub.L. 99–646, § 46(h), redesignated former subsec. (h) as par. (2), and in par. (2) as so redesignated, substituted "directly" for "Whoever, directly" and "such person's absence therefrom;" for "his absence therefrom; or". Former subsec. (c) redesignated as subsec. (b)(2).

Subsec. (c)(3). Pub.L. 99–646, § 46(i), redesignated former subsec. (i) as par. (3), and in par. (3) as so redesignated, substituted "directly" for "Whoever, directly", "demands, seeks, receives, accepts, or agrees to accept" for "asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive or accept", "personally" for "for himself", "by such person" for "by him", "such person's absence therefrom;" for "his absence therefrom—", and "shall be fined under this title" for "Shall be fined not more than $10,000". Former subsec. (c) redesignated as subsec. (b)(2).

Subsec. (d). Pub.L. 99–646, § 46(j), redesignated former subsec. (j) as (d), and in subsec. (d) as so redesignated, substituted "Paragraphs (3) and (4) of subsection (b) and paragraphs (2) and (3) of subsection (c)" for "Subsections (d), (e), (h), and (i)" and struck out "involving a technical or professional opinion," after "expert witnesses,". Former subsec. (d) redesignated as subsec. (b)(3).

Subsec. (e). Pub.L. 99–646, § 46(k), redesignated former subsec. (k) as (e). Former subsec. (e) redesignated as subsec. (b)(4).

Subsec. (f). Pub.L. 99–646, § 46(f), redesignated subsec. (f) as (c)(1).

Subsec. (g). Pub.L. 99–646, § 46(g), redesignated subsec. (g) as subsec. (c)(1)(B).

Subsec. (h). Pub.L. 99–646, § 46(h), redesignated subsec. (h) as subsec. (c)(2).

Subsec. (i). Pub.L. 99–646, § 46(i), redesignated subsec. (i) as subsec. (c)(3).

Subsec. (j). Pub.L. 99–646, § 46(j), redesignated subsec. (j) as (d).

Subsec. (k). Pub.L. 99–646, § 46(k), redesignated subsec. (k) as (e).

**1970 Amendments.** Subsec. (a). Pub.L. 91–405 included Delegate from District of Columbia in definition of "public official".

### Effective and Applicability Provisions

**1994 Acts.** Section 330011(b) of Pub.L. 103–322 provided in part that the amendment made by such section, amending directory language of section 46(b) of Pub.L. 99–646 (which amended subsec. (b) of this section), was to take effect as of the date on which section 46(b) of Pub.L. 99–646 took effect; for such effective date, see section 46(m) of Pub.L. 99–646, set out as a note under this section.

**1986 Acts.** Section 46(m) of Pub.L. 99–646 provided that: "The amendments made by this section [to this section] shall take effect 30 days after the date of enactment of this Act [Nov. 10, 1986]."

**1970 Acts.** Amendment by Pub.L. 91–405 effective on Sept. 22, 1970, see section 206(b) of Pub.L. 91–405, summarized in a note set out under section 25a of Title 2, The Congress.

**1962 Acts.** Section 4 of Pub.L. 87–849 provided that: "This Act [adding sections 201 to 209, and 218 of this title, redesignating sections 214, 215, 217 to 222 as 210, 211, 212 to 217 of this title respectively, repealing sections 223, 281 to 284, 434, and 1914 of this title, and section 99 of Title 5, and enacting provisions set out as notes under sections 281 and 282 of this title] shall take effect ninety days after the date of its enactment [Oct. 23, 1962]."

### Prior Provisions

Provisions similar to those comprising this section were contained in former §§ 201 to 213 of this title, prior to the general amendment of this chapter by Pub.L. 87–849.

### Short Title

**1996 Amendments.** Pub.L. 104–177, § 1, Aug. 6, 1996, 110 Stat. 1563, provided that: "This Act [amending section 205 of this title] may be cited as the 'Federal Employee Representation Improvement Act of 1996'."

**1986 Amendments.** Pub.L. 99–370, § 1, Aug. 4, 1986, 100 Stat. 779, provided that: "This Act [amending section 215 of this title and enacting a provision set out as a note under section 215 of this title]

460

may be cited as the 'Bank Bribery Amendments Act of 1985'."

**Canal Zone**
Applicability of section to Canal Zone, see § 14 of this title.

## EXECUTIVE ORDERS

### EXECUTIVE ORDER NO. 11222

Ex. Ord. No. 11222, May 8, 1965, 30 F.R. 6469, as amended Ex. Ord. No. 11590, Apr. 23, 1971, 36 F.R. 7831; Ex. Ord. 12107, Dec. 28, 1978, 44 F.R. 1055; Ex. Ord. No. 12565, Sept. 25, 1986, 51 F.R. 34437, which related to standards of ethical conduct for government officers and employees, was revoked by Ex. Ord.

No. 12674, Apr. 12, 1989, 54 F.R. 15159, as amended set out as a note under section 7301 of Title 5, Government Organization and Employees. Ex. Ord. No. 12565, which amended Ex. Ord. No. 11222, was also revoked by Ex. Ord. No. 12674.

## MEMORANDUM OF ATTORNEY GENERAL REGARDING CONFLICT OF INTEREST PROVISIONS OF PUBLIC LAW 87–849

### Feb. 1, 1963, 28 F.R. 985

### January 28, 1963

Public Law 87–849, "To strengthen the criminal laws relating to bribery, graft, and conflicts of interest, and for other purposes," came into force January 21, 1963. A number of departments and agencies of the Government have suggested that the Department of Justice prepare and distribute a memorandum analyzing the conflict of interest provisions contained in the new act. I am therefore distributing the attached memorandum.

One of the main purposes of the new legislation merits specific mention. That purpose is to help the Government obtain the temporary or intermittent services of persons with special knowledge and skills whose principal employment is outside the Government. For the most part the conflict of interest statutes superseded by Public Law 87–849 imposed the same restraints on a person serving the Government temporarily or intermittently as on a full-time employee, and those statutes often had an unnecessarily severe impact on the former. As a result, they impeded the departments and agencies in the recruitment of experts for important work. Public Law 87–849 meets this difficulty by imposing a lesser array of prohibitions on temporary and intermittent employees than on regular employees. I believe that a widespread appreciation of this aspect of the new law will lead to a significant expansion of the poll of talent on which the departments and agencies can draw for their special needs.

ROBERT F. KENNEDY,

*Attorney General.*

**Memorandum re the Conflict of Interest Provisions of Public Law 87–849, 76 Stat. 1119, Approved October 23, 1962**

INTRODUCTION

Public Law 87–849, which came into force January 21, 1963, affected seven statutes which applied to officers and employees of the Government and were generally spoken of as the "conflict of interest" laws. These included six sections of the criminal code, 18 U.S.C. 216, 281, 283, 284, 434 and 1914 [§§ 216, 281, 283, 284, 434 and 1914 of this title], and a statute containing no penalties, § 190 of the Revised Statutes (5 U.S.C. 99) [former § 99 of Title 5, now covered by § 207 of this title]. Public Law 87–849 (sometimes referred to hereinafter as "the Act") repealed § 190 and one of the criminal statutes, 18 U.S.C. 216, without replacing them.[1] In addition it repealed and supplanted the other five criminal statutes. It is the purpose of this memorandum to summarize the new law and to describe the principal differences between it and the legislation it has replaced.

The Act accomplished its revisions by enacting new §§ 203, 205, 207, 208 and 209 of title 18 of the United States Code [§§ 203, 205, 207, 208 and 209 of this title] and providing that they supplant the above-mentioned §§ 281, 283, 284, 434 and 1914 of title 18 [§§ 281, 283, 284,

461

THIS PAGE INTENTIONALLY LEFT BLANK

## Instruction 16–5

### Second Element—Recipient Was a Public Official

The second element that the government must prove beyond a reasonable doubt is that at the time in question [name of official] was then a public official (*or* person who has been selected to be a public official) by virtue of his being a [specify official position].

"Public official" is defined in section 201 as a "Member of Congress . . . or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government or a juror."

(*If applicable:* A "person who has been selected to be a public official" means any person who has been nominated or appointed to be a public official, or has been officially informed that he will be so nominated or appointed.)

(*If applicable:* To be considered a public official, it is not necessary that the person be an employee of the United States Government. An employee of state or local government, or even a person employed in the private sector, may qualify as a public official if that person possesses some degree of official responsibility for carrying out a federal policy or program.)

The government does not have to prove that the defendant knew that [the official] was a federal official, as long as the defendant believed he was dealing with a government official.

---

### Authority

**United States Supreme Court:** Dixson v. United States, 465 U.S. 482, 104 S. Ct. 1172, 79 L. Ed. 2d 458 (1984).

**Seventh Circuit:** Seventh Circuit Pattern Criminal Jury Instructions to 18 U.S.C. § 201.

---

### Comment

The definitions of a public official and a person selected to be a public official are derived directly from section 201.[1] This definition is quite broad, covering

---

[1] 18 U.S.C. § 201(a).

**BRIBERY**

virtually any employee of the federal government.[2]

It is clear that state and local government employees and private sector employees who are administering federal programs qualify as public officials. In *United States v. Dixson*,[3] the Supreme Court suggested that the standard is whether the person possesses some degree of official responsibility for carrying out a federal policy or program.[4] Thus, the Court held that an officer of a private non–profit corporation which administered and expended funds for federal community development block grants qualified as a public official.[5] This logic has been extended to a number of state, local and private officials who had management responsibility for administering federal funds.[6] A limit on this, however, is that the defendant must believe that he is dealing with a government official,[7] although there is no requirement that the defendant know that the person is a federal official.[8]

It is not clear to what extent this element must be charged to the jury. There is some authority that the court may make the determination that a particular position qualifies an employee as a public official, and then submit to the jury the question whether the person in question held that position at the relevant time.[9] It is recommended, however, that if the issue is whether a state, local

---

[2] *See, e.g.,* United States v. Baymon, 312 F.3d 725, 728-29 (5th Cir. 2002) (cook at federal correctional facility); United States v. Gelb, 881 F.2d 1155 (2d Cir.), *cert. denied,* 493 U.S. 994 (1989) (postal employee); United States v. Kidd, 734 F.2d 409 (9th Cir. 1984) (Army private); Fulks v. United States, 283 F.2d 259 (9th Cir. 1960), *cert. denied,* 365 U.S. 842 (1961) (warehouseman employed by Air Force).

[3] 465 U.S. 482, 104 S. Ct. 1172, 79 L. Ed. 2d 458 (1984).

[4] *Id.* at 498–99.

[5] *Id.*

[6] *See, e.g.,* United States v. Thomas, 240 F.3d 445, 447-48 (5th Cir.), *cert. denied,* 532 U.S. 1073 (2001) (guard at private prison facility housing detainees under contract with INS); United States v. Kenney, 185 F.3d 1217, 1220-23 (11th Cir. 1999) (employee of government contractor responsible for overseeing performance by subcontractor); United States v. Hang, 75 F.3d 1275, 1280-81 (8th Cir. 1996) (eligibility coordinator for corporation administering federal housing funds); United States v. Strissel, 920 F.2d 1162 (4th Cir. 1990) (director of city housing authority); United States v. Velazquez, 847 F.2d 140 (4th Cir. 1986) (county sheriff who supervised jail which had contract with federal government to house federal prisoners); United States v. Hollingshead, 672 F.2d 751 (9th Cir. 1982) (private employee of federal reserve bank); United States v. Kirby, 587 F.2d 876 (7th Cir. 1978) (privately employed grain inspector licensed by Department of Agriculture). *But cf.* United States v. Evans, 344 F.3d 1131, 1135-36 (11th Cir. 2003) (director of private non-profit company that developed and managed housing for city did not satisfy *Dixson* test as a matter of law).

[7] *See* United States v. Soto, 47 F.3d 546, 549–50 (2d Cir. 1995); Comment to Eighth Circuit Criminal Pattern Instruction 6.18.201A.

[8] *See* United States v. Jennings, 471 F.2d 1310 (2d Cir.), *cert. denied,* 471 U.S. 935 (1973); Committee Comments to Eighth Circuit Model Criminal Jury Instruction 6.18.201A.

[9] *See* United States v. Madeoy, 912 F.2d 1486 (D. C. Cir. 1990), *cert. denied,* 498 U.S. 1105 (1991).

or private official meets the *Dixson* standard noted above, then the issue becomes one of fact which should be submitted to the jury. This is the same approach taken in the somewhat analogous situation of an assault on a federal officer.[10]

---

[10] *See* Instruction 14–3, *above*.

THIS PAGE INTENTIONALLY LEFT BLANK

Westlaw.

119 S.Ct. 1402                                                                                                                                     Page 1
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
**(Cite as: 526 U.S. 398, 119 S.Ct. 1402)**

▷
Briefs and Other Related Documents

Supreme Court of the United States
UNITED STATES, petitioner,
v.
SUN-DIAMOND GROWERS OF CALIFORNIA.
**No. 98-131.**

Argued March 2, 1999.
Decided April 27, 1999.

After its motion to dismiss was denied, 941 F.Supp. 1262, agricultural trade association was convicted in the United States District Court for the District of Columbia, Urbina, J., of violating gratuity statute, wire fraud, and making illegal campaign contributions. Following denial if its postverdict motion for acquittal, 964 F.Supp. 486, trade association appealed. The Court of Appeals for the District of Columbia Circuit, 138 F.3d 961, affirmed in part, reversed and vacated in part, and remanded. Certiorari was granted limited to issues arising under gratuity statute. The Supreme Court, Justice Scalia, held that: (1) to establish violation of federal gratuity statute, government must prove link between thing of value conferred upon public official and a specific "official act" for or because of which it was given, and (2) jury instruction, explaining statutory language by essentially substituting the term "official position" for "official act," was not harmless error.

Affirmed.

West Headnotes

**[1] Bribery 63 🔑1(1)**

63 Bribery
     63k1 Nature and Elements of Offenses
          63k1(1) k. In General. Most Cited Cases
To convict under federal bribery statute, there must be a quid pro quo, a specific intent to give or receive something of value in exchange for an official act, while illegal gratuity may constitute merely a reward for some future act that public official will take and may already have determined to take, or for a past act that he has already taken. 18 U.S.C.A. § 201(b)(1, 2), (c).

**[2] Bribery 63 🔑1(1)**

63 Bribery
     63k1 Nature and Elements of Offenses
          63k1(1) k. In General. Most Cited Cases
To establish violation of federal gratuity statute, government must prove link between thing of value conferred upon public official and a specific "official act" for or because of which it was given; reading gratuity statute to broadly prohibit gifts given by reason of donee's office, rather than linked to some specific official act, did not fit comfortably with statutory text and would produce peculiar results. 18 U.S.C.A. § 201(c)(1)(A).

**[3] Criminal Law 110 🔑1172.8**

110 Criminal Law
     110XXIV Review
          110XXIV(Q) Harmless and Reversible Error
               110k1172 Instructions
                    110k1172.8 k. Effect of Verdict or Determination. Most Cited Cases
Erroneous jury instruction given in prosecution under federal gratuity statute, which incorrectly explained meaning of statutory language by stating that government was required to prove only that defendant provided public official with unauthorized compensation simply because he held public office, with no need to prove a link to a specific or identifiable official act, was not harmless error, despite government's contention that jury's verdict rendered pursuant to such instructions necessarily included a finding that gratuities were given and received "for or because of" an official act or acts, as required by statute. 18 U.S.C.A. § 201(c)(1)(A).
**\*\*1403 Syllabus** [FN*]

     FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.   See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Respondent trade association was charged with violating, *inter alia*, 18 U.S.C. § 201(c)(1)(A), which prohibits giving "anything of value" to a present, past, or future public official "for or because of any official act performed or to be performed by such

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402                                                                                                    Page 2
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
**(Cite as: 526 U.S. 398, 119 S.Ct. 1402)**

public official." Count One of the indictment asserted that respondent gave illegal gratuities to former Secretary of Agriculture Michael Espy while two matters in which it had an interest in favorable treatment were pending before Espy. The indictment did not, however, allege a specific connection between either of those matters (or any other Espy action) and the gratuities conferred. In denying respondent's motion to dismiss Count One because of this omission, the District Court stated that, to sustain a § 201(c)(1)(A) charge, it is sufficient to allege that the defendant provided things of value to the official because of his position. At trial, the court instructed the jury along these same lines. The jury convicted respondent on Count One, and the court imposed a fine. The Court of Appeals reversed that conviction and remanded for a new trial, stating that, because § 201(c)(1)(A)'s "for or because of any official act" language means what it says, the instructions invited the jury to convict on materially less evidence than the statute demands-evidence of gifts driven simply by Espy's official position. In rejecting respondent's attack on the indictment, however, the court stated that the Government need not show that a gratuity was given "for or because of" any particular act or acts: That an official has relevant matters before him should not insulate him as long as the jury is required to find the requisite intent to reward past favorable acts or to make future ones more likely.

*Held:*

1. In order to establish a § 201(c)(1)(A) violation, the Government must prove a link between a thing of value conferred upon a federal official and a specific "official act" for or because of which it was given. The Government's contention that § 201(c)(1)(A) is satisfied merely by a showing that respondent gave Secretary Espy a gratuity because of his official position does not fit comfortably with the statutory text, the more natural meaning of which is "for or because of some particular   *399 official act of whatever identity." The statute's insistence upon an "official act," carefully defined (in § 201(a)(3)), seems pregnant with the requirement that some particular official act be identified and proved. The Government's alternative reading would produce peculiar results, criminalizing, *e.g.,* token gifts to the President based on his official position and not linked to any identifiable act-such as the replica jerseys given by championship sports teams each year during ceremonial White House visits. Although, under the more narrow interpretation, the jerseys could be regarded as having been conferred (perhaps

principally) "for or because of" the official act of receiving sports teams at the White House, such receipt-while assuredly an "official act" in some sense-is not an "action on [a] matter ... before any public official, in [his] official capacity, or in [his] place of trust or profit" within the meaning of the § 201(a)(3) definition. The Government's insistence that its interpretation is the only one that gives effect to § 201(c)(1)(A)'s forward-looking prohibition on gratuities to selectees for federal office is rejected because the section can readily be applied to such persons even under the more narrow interpretation. Pp. 1406-1408.

**1404 2. The Court's holding is supported by the fact that when Congress has wanted to adopt a broadly prophylactic criminal prohibition upon gift giving, it has done so in a more precise and more administrable fashion. See, *e.g.,* § 209(a). Finally, a narrow, rather than a sweeping, prohibition is more compatible with the fact that § 201(c)(1)(A) is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials. Because this is an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions, a statute that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter. Pp. 1408-1410.

3. The Court rejects the Government's contention that the District Court's mistaken instructions concerning § 201(c)(1)(A)'s scope-which essentially and incorrectly substituted the term "official position" for "official act"-constituted harmless error. The Government's argument that the jury's verdict rendered pursuant to the instructions necessarily included a finding that respondent's gratuities were given and received "for or because of" official acts is but a restatement of the same flawed premise that permeated the instructions themselves and that the Court has herein rejected. Pp. 1410-1411.

138 F.3d 961, affirmed.

SCALIA, J., delivered the opinion for a unanimous Court.

*400 Robert W. Ray, Brooklyn, NY, for petitioner. Eric W. Bloom, Washington, D.C., for respondent.For U.S. Supreme Court Briefs, see:1998

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402                                                                              Page 3
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
(Cite as: 526 U.S. 398, 119 S.Ct. 1402)

WL    886774    (Pet.Brief)1999    WL    21272
(Resp.Brief)1999 WL 83925 (Reply.Brief)
Justice SCALIA delivered the opinion of the Court.
Talmudic sages believed that judges who accepted
bribes would be punished by eventually losing all
knowledge of the divine law.    The Federal
Government, dealing with many public officials who
are not judges, and with at least some judges for
whom this sanction holds no terror, has constructed a
framework of human laws and regulations defining
various sorts of impermissible gifts, and punishing
those who give or receive them with administrative
sanctions, fines, and incarceration.    One element of
that framework is 18 U.S.C. § 201(c)(1)(A), the
"illegal gratuity statute," which prohibits giving
"anything of value" to a present, past, or future public
official "for or because of any official act performed
or to be performed by such public official."    In this
case, we consider whether conviction under the
illegal gratuity statute requires any showing beyond
the fact that a gratuity was given because of the
recipient's official position.


                              I

Respondent is a trade association that engaged in
marketing and lobbying activities on behalf of its
member cooperatives, which were owned by
approximately 5,000 individual *401 growers of
raisins, figs, walnuts, prunes, and hazelnuts.
Petitioner United States is represented by
Independent Counsel Donald Smaltz who, as a
consequence of his investigation of former Secretary
of Agriculture Michael Espy, charged respondent
with, *inter alia*, making illegal gifts to Espy in
violation of § 201(c)(1)(A).    That statute provides,
in relevant part, that anyone who
"otherwise than as provided by law for the proper
discharge of official duty ... directly or indirectly
gives, offers, or promises anything of value to any
public official, former public official, or person
selected to be a public official, for or because of any
official act performed or to be performed by such
public official, former public official, or person
selected to be a public official ... shall be fined under
this title or imprisoned for not more than two years,
or both."


**1405 Count One of the indictment charged Sun-
Diamond with giving Espy approximately $5,900 in
illegal gratuities:  tickets to the 1993 U.S. Open
Tennis Tournament (worth $2,295), luggage

($2,427), meals ($665), and a framed print and
crystal bowl ($524).    The indictment alluded to two
matters in which respondent had an interest in
favorable treatment from the Secretary at the time it
bestowed the gratuities.    First, respondent's member
cooperatives participated in the Market Promotion
Plan (MPP), a grant program administered by the
Department of Agriculture to promote the sale of
U.S. farm commodities in foreign countries.    The
cooperatives belonged to trade organizations, such as
the  California  Prune  Board  and  the  Raisin
Administrative Committee, which submitted overseas
marketing plans for their respective commodities.    If
their plans were approved by the Secretary of
Agriculture, the trade organizations received funds to
be used in defraying the foreign marketing expenses
of their constituents.    Each of respondent's member
cooperatives was the largest member*402  of its
respective trade organization, and each received
significant  MPP  funding.        Respondent  was
understandably concerned, then, when Congress in
1993  instructed  the  Secretary  to  promulgate
regulations giving small-sized entities preference in
obtaining  MPP  funds.        Omnibus  Budget
Reconciliation  Act  of  1993,  Pub.L.  103-66,  §
1302(b)(2)(A),  107 Stat. 330-331.    If the Secretary
did not deem respondent's member cooperatives to be
small-sized entities, there was a good chance they
would no longer receive MPP grants.        Thus,
respondent had an interest in persuading the
Secretary to adopt a regulatory definition of "small-
sized entity" that would include its member
cooperatives.

Second, respondent had an interest in the Federal
Government's regulation of methyl bromide, a low-
cost pesticide used by many individual growers in
respondent's member cooperatives.    In 1992, the
Environmental Protection Agency announced plans
to promulgate a rule to phase out the use of methyl
bromide in the United States.        The indictment
alleged that respondent sought the Department of
Agriculture's assistance in persuading the EPA to
abandon its proposed rule altogether, or at least to
mitigate its impact.    In the latter event, respondent
wanted the Department to fund research efforts to
develop reliable alternatives to methyl bromide.

Although describing these two matters before the
Secretary in which respondent had an interest, the
indictment did not allege a specific connection
between either of them-or between any other action
of the Secretary-and the gratuities conferred.    The
District Court denied respondent's motion to dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402                                                                                                    Page 4
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
(Cite as: 526 U.S. 398, 119 S.Ct. 1402)

Count One because of this omission. 941 F.Supp. 1262 (D.C.1996). The court stated:
"[T]o sustain a charge under the gratuity statute, it is not necessary for the indictment to allege a direct nexus between the value conferred to Secretary Espy by Sun-Diamond and an official act performed or to be performed by Secretary Espy. It is sufficient for the *403 indictment to allege that Sun-Diamond provided things of value to Secretary Espy because of his position." Id., at 1265.

At trial, the District Court instructed the jury along these same lines. It read § 201(c)(1)(A) to the jury twice (along with the definition of "official act" from § 201(a)(3)), but then placed an expansive gloss on that statutory language, saying, among other things, that "[i]t is sufficient if Sun-Diamond provided Espy with unauthorized compensation simply because he held public office," and that "[t]he government need not prove that the alleged gratuity was linked to a specific or identifiable official act or any act at all." App. to Pet. for Cert. 85a, 87a. The jury convicted respondent on, inter alia, Count One (the only subject of this appeal), and the District Court sentenced respondent on this count to pay a fine of $400,000.[FN*]

    FN* Respondent was also sentenced to serve five years' probation on this and the other counts of which it stood convicted. Insofar as that element of the sentence was concerned, the Court of Appeals remanded for resentencing because the probation included impermissible reporting requirements. 138 F.3d 961, 977 (C.A.D.C.1998). That issue is not before us.

**1406 The Court of Appeals reversed the conviction on Count One and remanded for a new trial, stating:
"Given that the 'for or because of any official act' language in § 201(c)(1)(A) means what it says, the jury instructions invited the jury to convict on materially less evidence than the statute demands-evidence of gifts driven simply by Espy's official position." 138 F.3d 961, 968 (C.A.D.C.1998).

In rejecting respondent's attack on the indictment, however, the court stated that the Government need not show that a gratuity was given "for or because of" any particular act or acts: "That an official has an abundance of relevant matters on his plate should not

insulate him or his benefactors from the gratuity statute-as long as the jury is required*404 to find the requisite intent to reward past favorable acts or to make future ones more likely." Id., at 969.

We granted certiorari. 525 U.S. 961, 119 S.Ct. 402, 142 L.Ed.2d 326 (1998).

                              II

Initially, it will be helpful to place § 201(c)(1)(A) within the context of the statutory scheme. Subsection (a) of § 201 sets forth definitions applicable to the section-including a definition of "official act," § 201(a)(3). Subsections (b) and (c) then set forth, respectively, two separate crimes-or two pairs of crimes, if one counts the giving and receiving of unlawful gifts as separate crimes-with two different sets of elements and authorized punishments. The first crime, described in § 201(b)(1) as to the giver, and § 201(b)(2) as to the recipient, is bribery, which requires a showing that something of value was corruptly given, offered, or promised to a public official (as to the giver) or corruptly demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient) with intent, inter alia, "to influence any official act" (giver) or in return for "being influenced in the performance of any official act" (recipient). The second crime, defined in § 201(c)(1)(A) as to the giver, and in § 201(c)(1)(B) as to the recipient, is illegal gratuity, which requires a showing that something of value was given, offered, or promised to a public official (as to the giver), or demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient), "for or because of any official act performed or to be performed by such public official."

[1] The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo-a specific intent to give or receive something of value in exchange for an official *405 act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. The punishments prescribed for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402                                                                                                Page 5
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
(Cite as: 526 U.S. 398, 119 S.Ct. 1402)

two offenses reflect their relative seriousness: Bribery may be punished by up to 15 years' imprisonment, a fine of $250,000 ($500,000 for organizations) or triple the value of the bribe, whichever is greater, and disqualification from holding government office.    See 18 U.S.C. § § 201(b) and 3571.    Violation of the illegal gratuity statute, on the other hand, may be punished by up to two years' imprisonment and a fine of $250,000 ($500,000 for organizations).    See § § 201(c) and 3571.

[2] The District Court's instructions in this case, in differentiating between a bribe and an illegal gratuity, correctly noted that only a bribe requires proof of a *quid pro quo*.   The point in controversy here is that the instructions went on to suggest that § 201(c)(1)(A), unlike the bribery statute, did not require any connection between respondent's intent and a specific official act.    It would be satisfied, according to the instructions, merely by a showing that respondent gave Secretary Espy a gratuity because of his official position-perhaps, for example, to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future.      The United States, represented by the Independent**1407 Counsel, and the Solicitor General as *amicus curiae*, contend that this instruction was correct.     The Independent Counsel asserts that "section 201(c)(1)(A) reaches any effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be *in a position to act* favorably to the giver's interests."    Brief for United States 22 (emphasis added).    The Solicitor General contends that § 201(c)(1)(A) requires only a showing that a "gift was motivated, at least in part, by the recipient's *capacity to exercise governmental power or influence* in the donor's favor" withoutnecessarily *406 showing that it was connected to a particular official act.    Brief for United States Dept. of Justice as *Amicus Curiae* 17 (emphasis added).

In our view, this interpretation does not fit comfortably with the statutory text, which prohibits only gratuities given or received "for or because of *any official act* performed or to be performed" (emphasis added).    It seems to us that this means "for or because of some particular official act of whatever identity"-just as the question "Do you like any composer?" normally means "Do you like some particular composer?"   It is linguistically possible, of course, for the phrase to mean "for or because of

official acts in general, without specification as to which one"-just as the question "Do you like any composer?" could mean "Do you like all composers, no matter what their names or music?"    But the former seems to us the more natural meaning, especially given the complex structure of the provision before us here.    Why go through the trouble of requiring that the gift be made "for or because of any official act performed or to be performed by such public official," and then defining "official act" (in § 201(a)(3)) to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity," when, if the Government's interpretation were correct, it would have sufficed to say "for or because of such official's ability to favor the donor in executing the functions of his office"?     The insistence upon an "official act," carefully defined, seems pregnant with the requirement that some particular official act be identified and proved.

Besides thinking that this is the more natural meaning of § 201(c)(1)(A), we are inclined to believe it correct because of the peculiar results that the Government's alternative reading would produce.    It would criminalize, for example, token gifts to the President based on his official position and not linked to any identifiable act-such as the replica *407 jerseys given by championship sports teams each year during ceremonial White House visits, see, *e.g.,* Gibson, Masters of the Game, Lexington Herald-Leader, Nov. 10, 1998, p. A1. Similarly, it would criminalize a high school principal's gift of a school baseball cap to the Secretary of Education, by reason of his office, on the occasion of the latter's visit to the school.    That these examples are not fanciful is demonstrated by the fact that counsel for the United States maintained at oral argument that a group of farmers would violate § 201(c)(1)(A) by providing a complimentary lunch for the Secretary of Agriculture in conjunction with his speech to the farmers concerning various matters of USDA policy-so long as the Secretary had before him, or had in prospect, matters affecting the farmers.    Tr. of Oral Arg. 26-27.    Of course the Secretary of Agriculture *always* has before him or in prospect matters that affect farmers, just as the President always has before him or in prospect matters that affect college and professional sports, and the Secretary of Education matters that affect high schools.

It might be said in reply to this that the more narrow

119 S.Ct. 1402                                                                                          Page 6
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
(Cite as: 526 U.S. 398, 119 S.Ct. 1402)

interpretation of the statute can also produce some peculiar results. In fact, in the above-given examples, the gifts could easily be regarded as having been conferred, not only because of the official's position as President or Secretary, but also (and perhaps principally) "for or because of" the official acts of receiving the sports teams at the White House, visiting the high school, and speaking to the farmers about USDA policy, respectively. The answer to this objection is that those actions-while they are assuredly "official acts" in some sense-are not "official **1408 acts" within the meaning of the statute, which, as we have noted, defines "official act" to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3). *408 Thus, when the violation is linked to a particular "official act," it is possible to eliminate the absurdities *through the definition of that term.* When, however, no particular "official act" need be identified, and the giving of gifts by reason of the recipient's mere tenure in office constitutes a violation, nothing but the Government's discretion prevents the foregoing examples from being prosecuted.

The Government insists that its interpretation is the only one that gives effect to all of the statutory language. Specifically, it claims that the "official position" construction is the only way to give effect to § 201(c)(1)(A)'s forward-looking prohibition on gratuities to persons who have been selected to be public officials but have not yet taken office. Because, it contends, such individuals would not know of specific matters that would come before them, the only way to give this provision effect is to interpret "official act" to mean "official position." But we have no trouble envisioning the application of § 201(c)(1)(A) to a selectee for federal office under the more narrow interpretation. If, for instance, a large computer company that has planned to merge with another large computer company makes a gift to a person who has been chosen to be Assistant Attorney General for the Antitrust Division of the Department of Justice and who has publicly indicated his approval of the merger, it would be quite possible for a jury to find that the gift was made "for or because of" the person's anticipated decision, once he is in office, not to challenge the merger. The uncertainty of future action seems to us, in principle, no more an impediment to prosecution of a selectee with respect to some future official act than it is to

prosecution of an officeholder with respect to some future official act.

Our refusal to read § 201(c)(1)(A) as a prohibition of gifts given by reason of the donee's office is supported by the fact that when Congress has wanted to adopt such a broadly prophylactic criminal prohibition upon gift giving, it has done so in a more precise and more administrable fashion. For *409 example, another provision of Chapter 11 of Title 18, the chapter entitled "Bribery, Graft, and Conflicts of Interest," criminalizes the giving or receiving of any "supplementation" of an Executive official's salary, without regard to the purpose of the payment. See 18 U.S.C. § 209(a). Other provisions of the same chapter make it a crime for a bank employee to give a bank examiner, and for a bank examiner to receive from a bank employee, "any loan or gratuity," again without regard to the purpose for which it is given. See § § 212-213. A provision of the Labor Management Relations Act makes it a felony for an employer to give to a union representative, and for a union representative to receive from an employer, anything of value. 29 U.S.C. § 186 (1994 ed. and Supp. III). With clearly framed and easily administrable provisions such as these on the books imposing gift-giving and gift-receiving prohibitions specifically based upon the holding of office, it seems to us most implausible that Congress intended the language of the gratuity statute-"for or because of any official act performed or to be performed"-to pertain to the office rather than (as the language more naturally suggests) to *particular* official acts.

Finally, a narrow, rather than a sweeping, prohibition is more compatible with the fact that § 201(c)(1)(A) is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials. For example, the provisions following § 201 in Chapter 11 of Title 18 make it a crime to give any compensation to a federal employee, or for the employee to receive compensation, in consideration of his representational assistance to anyone involved in a proceeding in which the United States has a direct and substantial interest, § 203; for a federal employee to act as "agent or attorney" for anyone prosecuting a claim against the United States, § 205(a)(1); for a federal employee to act as "agent or **1409 attorney" for anyone appearing before virtually any Government tribunal in connection with a matter in *410 which the United States has a direct and substantial interest, § 205(a)(2); for various

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402                                                                                      Page 7
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
**(Cite as: 526 U.S. 398, 119 S.Ct. 1402)**

types of federal employees to engage in various activities after completion of their federal service, § 207; for an Executive employee to participate in any decision or proceeding relating to a matter in which he has a financial interest, § 208; for an employee of the Executive Branch or an independent agency to receive "any contribution to or supplementation of salary ... from any source other than the Government of the United States," § 209; and for a federal employee to accept a gift in connection with the "compromise, adjustment, or cancellation of any farm indebtedness," § 217. A provision of the Internal Revenue Code makes it criminal for a federal employee to accept a gift for the "compromise, adjustment, or settlement of any charge or complaint" for violation of the revenue laws. 26 U.S.C. § 7214(a)(9).

And the criminal statutes are merely the tip of the regulatory iceberg. In 5 U.S.C. § 7353, which announces broadly that no "employee of the executive, legislative, or judicial branch shall solicit or accept anything of value from a person ... whose interests may be substantially affected by the performance or nonperformance of the individual's official duties," § 7353(a)(2), Congress has authorized the promulgation of ethical rules for each branch of the Federal Government, § 7353(b)(1). Pursuant to that provision, each branch of Government regulates its employees' acceptance of gratuities in some fashion. See, e.g., 5 CFR § 2635.202 et seq. (1999) (Executive employees); Rule XXXV of the Standing Rules of the Senate, Senate Manual, S. Doc. No. 104-1 (rev. July 18, 1995) (Senators and Senate Employees); Rule XXVI of the Rules of the House of Representatives, 106th Cong. (rev.Jan. 7, 1999) (Representatives and House employees); 1 Research Papers of the National Commission on Judicial Discipline & Removal, Code of Conduct for U.S. Judges, Canon 5(C)(4), pp. 925-927 (1993) (federal judges).

***411** All of the regulations, and some of the statutes, described above contain exceptions for various kinds of gratuities given by various donors for various purposes. Many of those exceptions would be snares for the unwary, given that there are no exceptions to the broad prohibition that the Government claims is imposed by § 201(c)(1). In this regard it is interesting to consider the provisions of 5 CFR § 2635.202 (1999), issued by the Office of Government Ethics (OGE) and binding on all employees of the Executive Branch and independent agencies. The first subsection of that provision, entitled "General

prohibitions," makes unlawful approximately (if not precisely) what the Government asserts § 201(c)(1)(B) makes unlawful: acceptance of a gift "[f]rom a prohibited source" (defined to include any person who "[h]as interests that may be substantially affected by performance or nonperformance of the employee's official duties," 5 CFR § 2635.203(d)(4) (1999)) or "[g]iven because of the employee's official position," § 2635.202(a)(2). The second subsection, entitled "Relationship to illegal gratuities statute," then provides:
"Unless accepted in violation of paragraph (c)(1) of this section [banning acceptance of a gift 'in return for being influenced in the performance of an official act'], a gift accepted under the standards set forth in this subpart *shall not constitute an illegal gratuity otherwise prohibited by 18 U.S.C. § 201(c)(1)(B).*" § 2635.202(b) (emphasis added).

We are unaware of any law empowering OGE to decriminalize acts prohibited by Title 18 of the United States Code. Yet it is clear that many gifts "accepted under the standards set forth in [the relevant] subpart" *will* violate 18 U.S.C. § 201(c)(1)(B) if the interpretation that the Government urges upon us is accepted. The subpart includes, for example-as § 201(c)(1)(B) does not-exceptions for gifts of $20 or less, aggregating no more than $50 from a single ***412** source in a calendar year, see 5 CFR § 2635.204(a) (1999), and for certain public-service or achievement awards and honorary degrees, see § 2635.204(d). We are frankly not sure that even our more narrow interpretation of 18 U.S.C. § 201(c)(1)(B) will cause OGE's assurance of nonviolation if the regulation is complied****1410** with to be entirely accurate; but the misdirection, if any, will be infinitely less.

More important for present purposes, however, this regulation, and the numerous other regulations and statutes littering this field, demonstrate that this is an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions. Given that reality, a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter. Absent a text that clearly requires it, we ought not expand this one piece of the regulatory puzzle so dramatically as to make many other pieces misfits. As discussed earlier, not only does the text here not require that result; its more natural reading forbids it.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402                                                                                               Page 8
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
**(Cite as: 526 U.S. 398, 119 S.Ct. 1402)**

                                      III

[3] As an alternative means of preserving the jury's
verdict on Count One, the Government contends that
the District Court's mistaken instruction concerning
the scope of § 201(c)(1)(A) constituted harmless
error.  As described earlier, the District Court twice
read the text of §§ 201(c)(1)(A) and 201(a)(3), but it
then incorrectly explained the meaning of that
statutory language by essentially substituting the term
"official position" for "official act."        More
specifically, the court instructed the jury as follows:
"The essence of the crime is the official's position
[as] the receiver of the payment not whether the
official agrees to do anything in particular, that is, not
whether the official agrees to do any particular
official act in return.   Therefore ... to prove that a
gratuity offense *413 has been committed, it is not
necessary to show that the payment is intended for a
particular matter then pending before the official.   It
is sufficient if the motivating factor for the payment
is just to keep the official happy or to create a better
relationship in general with the official.

.    .    .    .    .

"It is sufficient if Sun-Diamond provided Espy with
unauthorized compensation simply because he held
public office.

.    .    .    .    .

"In order for you to convict Sun-Diamond of
violating the gratuity statute, you must find beyond a
reasonable doubt that Sun-Diamond gave the gifts to
Mr. Espy for or because of Mr. Espy's official
government position and not solely for reasons of
friendship or social purpose.

.    .    .    .    .

"With respect to official acts, the government has to
prove that Sun-Diamond Growers of California gave
knowingly and willingly Secretary Espy things of
value while it had issues before the United States
Department of Agriculture.

.    .    .    .    .

"Now, the government must prove that the gratuity
was knowingly and willingly given for or because of
an official act performed or to be performed by the
Secretary of Agriculture, Michael Espy. That means
that the government must prove that Sun-Diamond

Growers of California ... knowingly and willingly
gave the gratuities, at least in part, because of the
Secretary's position in appreciation of Sun-Diamond
Growers of California's relationship with him as a
public official or in anticipation of the continuation
of its relationship with him as a public official.  The
government need not prove that the alleged gratuity
was linked to a specific or identifiable *414 official
act or any act at all."  App. to Pet. for Cert. 84a-86a,
87a-88a.


The Government contends that the jury's verdict
rendered pursuant to these instructions necessarily
included a finding that respondent's gratuities were
given and received "for or because of" an official act
or acts.   Upon closer examination, however, this
argument is revealed to be nothing more than a
restatement of the same flawed premise that
permeated the instructions themselves and that we
have just rejected: "By returning a guilty verdict, the
jury necessarily rejected respondent's theory of
defense and found beyond a reasonable doubt that
**1411 the gifts were motivated by the fact that the
Secretary of Agriculture exercised regulatory
authority over respondent's business."  Brief for
United States 44.   The Court of Appeals tersely
rejected this claim of harmless error, 138 F.3d, at
968, and we do the same.


                                    * * *

We hold that, in order to establish a violation of 18
U.S.C. § 201(c)(1)(A), the Government must prove a
link between a thing of value conferred upon a public
official and a specific "official act" for or because of
which it was given.  We affirm the judgment of the
Court of Appeals, which remanded the case to the
District Court for a new trial on Count One. Our
decision today casts doubt upon the lower courts'
resolution of respondent's challenge to the sufficiency
of the indictment on Count One-an issue on which
certiorari was neither sought nor granted.  We leave
it to the District Court to determine whether that issue
should be reopened on remand.

*It is so ordered.*

U.S.Dist.Col.,1999.
U.S. v. Sun-Diamond Growers of California
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999
Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal.
Daily Op. Serv. 2983, 1999 CJ C.A.R. 2314

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 S.Ct. 1402
526 U.S. 398, 119 S.Ct. 1402, 67 USLW 4265, 1999 Daily Journal D.A.R. 3868, 143 L.Ed.2d 576, 99 Cal. Daily
Op. Serv. 2983, 1999 CJ C.A.R. 2314
**(Cite as: 526 U.S. 398, 119 S.Ct. 1402)**

Page 9

Briefs and Other Related Documents (Back to top)

• 1999 WL 135163, 67 USLW 3583 (Oral Argument)
Oral Argument (Mar. 02, 1999)
• 1999 WL 83925 (Appellate Brief) REPLY BRIEF
OF THE UNITED STATES (Feb. 18, 1999)
• 1999 WL 21272 (Appellate Brief) BRIEF OF
RESPONDENT (Jan. 19, 1999)
• 1999 WL 23649 (Appellate Brief) BRIEF OF THE
NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS AS AMICUS CURIAE IN
SUPPORT OF RESPONDENT (Jan. 19, 1999)
• 1999 WL 23650 (Appellate Brief) BRIEF OF
AMERICAN LEAGUE OF LOBBYISTS AS
AMICUS CURIAE IN SUPPORT OF
RESPONDENT (Jan. 19, 1999)
• 1998 WL 886774 (Appellate Brief) BRIEF OF THE
UNITED STATES (Dec. 17, 1998)
• 1998 WL 898906 (Appellate Brief) BRIEF FOR
THE UNITED STATES DEPARTMENT OF
JUSTICE AS AMICUS CURIAE (Dec. 17, 1998)
• 1998 WL 34080899 (Appellate Petition, Motion
and Filing) Reply of the United States (Sep. 22,
1998) Original Image of this Document (PDF)
• 1998 WL 34081115 (Appellate Petition, Motion
and Filing) Respondent's Brief in Opposition (Aug.
28, 1998) Original Image of this Document with
Appendix (PDF)
• 1998 WL 34080898 (Appellate Petition, Motion
and Filing) Petition for Writ of Certiorari (Jul. 21,
1998) Original Image of this Document with
Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.