# INSTRUCTION NO. 3.6

*Intent to Commit Bribery - Part IV*



154 F.3d 762                                                                                      Page 1
154 F.3d 762
(Cite as: 154 F.3d 762)

**H**

United States Court of Appeals, Eighth Circuit.
UNITED STATES of America, Appellee,
v.
Bob F. GRIFFIN, Appellant.
No. 97-4321.

Submitted June 9, 1998.
Decided Aug. 17, 1998.
As Amended Sept. 8, 1998.
Rehearing and Suggestion for Rehearing En Banc
Denied Oct. 1, 1998.

Defendant, a former speaker of a state house of representatives, was convicted in the United States District Court for the Western District of Missouri, Dean Whipple, J., of bribery and mail fraud. Defendant appealed. The Court of Appeals, Richard S. Arnold, Circuit Judge, held that: (1) Sentencing Guideline governing bribes, rather than Guideline governing illegal gratuities, applied to conviction for bribery, and (2) defendant was not entitled to reduction for acceptance of responsibility.

Affirmed.

West Headnotes

[1] Sentencing and Punishment 350H €═653(4)

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk653 What Guideline Applies; Choice of Guideline
                350Hk653(4) k. Public Officials. Most Cited Cases
                    (Formerly 110k1237)
Sentencing Guideline governing bribes, rather than Guideline governing illegal gratuities, applied to conviction of speaker of state house of representatives for bribery, notwithstanding that he received illegal payments after he had performed acts for which he was paid, i.e., recommending lobbyist to construction interests; speaker admitted that he made recommendation with understanding that he would be paid for his efforts. 18 U.S.C.A. § 666(a)(1)(B); U.S.S.G. §§ 2C1.1, 2C1.2, 18 U.S.C.A.

[2] Sentencing and Punishment 350H €═653(4)

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk653 What Guideline Applies; Choice of Guideline
                350Hk653(4) k. Public Officials. Most Cited Cases
                    (Formerly 110k1237)
The distinction between a "bribe" and a "gratuity," for purposes of determining whether conviction for bribery is subject to enhancement under Sentencing Guideline governing bribes, rather than Guideline governing illegal gratuities, is the corrupt intent of the person giving the bribe to receive a quid pro quo, something that the recipient would not otherwise have done. 18 U.S.C.A. § 666(a)(1)(B); U.S.S.G. §§ 2C1.1, 2C1.2, 18 U.S.C.A.

[3] Sentencing and Punishment 350H €═653(4)

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk653 What Guideline Applies; Choice of Guideline
                350Hk653(4) k. Public Officials. Most Cited Cases
                    (Formerly 110k1237)
The core difference between a "bribe" and a "gratuity," for purposes of determining whether conviction for bribery is subject to enhancement under Sentencing Guideline governing bribes, rather than Guideline governing illegal gratuities, is not the time the illegal payment is made, but the quid pro quo, or the agreement to exchange cash for official action. 18 U.S.C.A. § 666(a)(1)(B); U.S.S.G. §§ 2C1.1, 2C1.2, 18 U.S.C.A.

[4] Sentencing and Punishment 350H €═765

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(C) Adjustments
            350HIV(C)3 Factors Decreasing Offense Level
                350Hk765 k. Acceptance of Responsibility. Most Cited Cases
                    (Formerly 110k1252)
Former speaker of state house of representatives convicted of bribery and mail fraud was not entitled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

154 F.3d 762
154 F.3d 762
(Cite as: 154 F.3d 762)

Page 2

to two-level reduction under Sentencing Guidelines for acceptance of responsibility; although former speaker acted commendably in avoiding a second trial by pleading guilty to two charges, voluntarily surrendering his license to practice law, and publicly apologizing to his constituents, he did not admit his wrongdoing until after his first trial. 18 U.S.C.A. §§ 666(a)(1)(B), 1341; U.S.S.G. § 3E1.1, 18 U.S.C.A.

[5] Criminal Law 110 ⚷ 1158(1)

110 Criminal Law
   110XXIV Review
      110XXIV(O) Questions of Fact and Findings
         110k1158 In General
            110k1158(1) k. In General. Most Cited Cases
District court's decision not to grant two-level reduction under Sentencing Guideline for acceptance of responsibility will not be reversed unless the ruling is so clearly erroneous as to be without foundation. U.S.S.G. § 3E1.1, 18 U.S.C.A.

*763 Bruce E. Clark, Asst. U.S. Atty., U.S. Attorney's Office, Kansas City, MO, for Appellee.
James Ralph Hobbs, Wyrsch & Hobb, Kansas City, MO, for Apellant.
Bob F. Griffin, Cameron, MO, pro se.

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit Judges, and PANNER,[FN1] District Judge.

> FN1. The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

RICHARD S. ARNOLD, Circuit Judge.
On October 31, 1996, a grand jury returned a twenty-six-count indictment against Bob F. Griffin and three other defendants, in which Griffin was charged with six bribery violations under 18 U.S.C. § 666(a)(1)(B) (1994), two mail fraud violations under 18 U.S.C. § 1341 (1994), and one violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 (1994). At the time, Griffin was Speaker of the Missouri House of Representatives. After several weeks of trial in May and June 1997, a jury acquitted Griffin of three of the counts in the indictment, but was unable to reach a decision on the other six counts against him, including the RICO count.

The government was prepared to try Griffin again, and Cathryn Simmons and Michael Fisher, two defendants convicted in the first trial, agreed to testify against him. On the day the second trial was scheduled to begin, Griffin pleaded guilty to counts two and six of the indictment-a bribery violation under 18 U.S.C. § 666(a)(1)(B), and a mail fraud violation under 18 U.S.C. § 1341. These two counts were related to a scheme in which Griffin recommended to members of the construction industry that they hire Cathryn Simmons to lobby on their behalf for a Motor Fuel Tax Bill being considered by the Missouri House of Representatives in January 1992. The indictment alleged that in return for this recommendation, Simmons gave Griffin two checks for $5,000 each. The District Court [FN2] sentenced Griffin to 48 months in prison, a $7,500 fine, and a $100 special penalty assessment. His sentence was based on a total offense level of 22 and a criminal history category of II, which carries a range of punishment of 46 to 57 months. The District Court calculated Griffin's base offense level using U.S.S.G. § 2C1.1 (1997), which governs the giving, soliciting, or receiving of bribes.

> FN2. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Griffin advances two arguments on appeal, both of which involve sentencing issues. He first argues that the District Court erred in applying U.S.S.G. § 2C1.1, and instead should have applied § 2C1.2, which governs the giving and receiving of illegal gratuities.[FN3] Griffin claims that he accepted gratuities from Simmons, and not bribes, because he received the illegal payments from Simmons after the acts for which he was paid-recommending her as a lobbyist to construction interests-had already been performed.

> FN3. If the district judge had applied U.S.S.G. § 2C1.2, Griffin's base offense level would have been 7, and the resulting Guidelines range would have been 33 to 41 months. Because the Court applied § 2C1.1, Griffin's base offense level was 10, and his Guidelines range was 46 to 57 months.

[1][2] The statutory index of the Sentencing Guidelines, which specifies which Guidelines apply to various criminal statutes, lists both U.S.S.G. §

2C1.1 (bribes) and § 2C1.2 (gratuities) as applicable to violations of 18 U.S.C. § 666(a)(1)(B), the statute Griffin has admitted violating. See U.S.S.G. App. A, at 421. In this case, we agree with the District Court that § 2C1.1 was the applicable Guideline. The distinction between a bribe and an illegal gratuity is the corrupt intent of the person giving the bribe to receive a *quid pro quo*, something that the recipient would not otherwise have done. See *United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir.1993); *United States v. Muldoon*, 931 F.2d 282, 287 (4th Cir.1991). We agree with the District Court that the evidence established the necessary *quid pro quo*, or payment of money by Simmons in exchange for Griffin's official actions on her behalf. In his capacity as *764 Speaker of the House, Griffin met with members of the construction industry and recommended that they employ Simmons as their lobbyist for the 1992 Motor Fuel Tax Bill. Trial Tr. at 189-91, 624-25. Griffin now admits that he made this recommendation with the understanding that Simmons would pay him for his efforts. Griffin Br. at 15; App. at 66. According to the Sentencing Guidelines' background notes, § 2C1.1 applies "to a person who offers or gives a bribe for a corrupt purpose, such as inducing a public official to participate in a fraud or to influence his official actions, or to a public official who solicits or accepts such a bribe." U.S.S.G. § 2C1.1 application notes (background). The evidence of an agreement to exchange Simmons's money for Griffin's actions is sufficient to affirm the District Court's application of U.S.S.G. § 2C1.1. Griffin was not merely paid after the fact for something he had already done, and would have done anyway.

[3] We reject Griffin's argument that his illegal conduct involved a gratuity and not a bribe because he was not paid money before he made the recommendation that Simmons be hired as a lobbyist. The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the *quid pro quo*, or the agreement to exchange cash for official action. To support his argument of a temporal distinction between bribery and gratuity, Griffin relies on *United States v. Crozier*, 987 F.2d 893 (2d Cir.), cert. denied, 510 U.S. 880, 114 S.Ct. 222, 126 L.Ed.2d 177 (1993). We do not read that case as requiring that, to sustain a conviction for bribery, the government must prove that the bribe-taker be paid before he performs the illegal service. In *Crozier*, the Court noted that 18 U.S.C. § 666(c) (1988), an earlier version of the statute Griffin has admitted violating, applied to anyone who "offers, gives, or agrees to give an agent of ... a State or local government agency ... anything of value for or because of the recipient's conduct...." The Court concluded that the "for or because of" language in the older version of the statute could support "both past acts supporting a gratuity theory and future acts necessary for a bribery theory." *Crozier*, 987 F.2d at 899. And because the illegal conduct in *Crozier* involved an improper loan made to a government official, but without an intent to influence the official's present or future conduct, the Court noted that "the facts lean[ed] more toward a gratuity theory." *Id.* at 899. In Griffin's case, the facts are clear: Griffin and Simmons agreed that he would be paid by Simmons for using his influence as Speaker of the House to steer business her way. Nowhere in *Crozier* did the Court suggest that, in a case involving an agreement to exchange cash for official action, the illegal conduct amounts to a gratuity rather than a bribe when the wrongdoer receives the money after he performs the action, rather than before. The Court merely held that the older version of 18 U.S.C. § 666 and the specific facts of *Crozier* supported the defendant's conviction under a gratuity theory.

[4][5] Griffin next argues that the District Court erred in not granting him a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. This Court will not reverse a district court's decision not to apply U.S.S.G. § 3E1.1 unless the ruling "is so clearly erroneous as to be without foundation." *United States v. Ngo*, 132 F.3d 1231, 1233 (8th Cir.1997). We commend Griffin for avoiding a second trial by pleading guilty to two charges, for voluntarily surrendering his license to practice law, and for publicly apologizing to his constituents. See App. at 65-66. However, we cannot ignore the fact that Griffin did not admit his wrongdoing until after his first trial, and that at the first trial, he strongly denied accepting any payments from Simmons in exchange for referring her to the construction interests. Trial Tr. at 2188. Given these facts, we cannot say that the denial of a reduction for acceptance of responsibility was clearly erroneous.

Affirmed.

C.A.8 (Mo.),1998.
U.S. v. Griffin
154 F.3d 762

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

THIS PAGE INTENTIONALLY LEFT BLANK

Westlaw.

684 F.2d 141 Page 1
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

United States Court of Appeals, District of Columbia Circuit.
UNITED STATES of America
v.
Robert H. CAMPBELL, Appellant.
UNITED STATES of America
v.
EXCAVATION CONSTRUCTION, INC., Appellant.
Nos. 81-1762, 81-1765.

Argued April 15, 1982.
Decided Aug. 3, 1982.

In cases in which jury found corporation guilty of giving illegal gratuity and found judge guilty of receiving illegal gratuity, appeals were taken from the United States District Court for the District of Columbia, Thomas A. Flannery, J. The Court of Appeals, Mikva, Circuit Judge, held that: (1) in view of failure to make contemporaneous objection, reversal of convictions was not required because of jury instructions or because of rulings upon evidence; (2) jury's behavior in its deliberations did not justify overturning verdict; and (3) evidence sustained the convictions.

Affirmed.

West Headnotes

[1] Bribery 63 ⚷11

63 Bribery
    63k8 Evidence
        63k11 k. Weight and Sufficiency. Most Cited Cases
In prosecution wherein corporation was found guilty of giving illegal gratuity and judge was found guilty of receiving gratuity, evidence permitted jury to find that $60 offered by judge to movers was intended as tip rather than as payment for value of services given and that judge knew movers' assistance was gratuity rendered for or because of his official acts. 18 U.S.C.A. § 201(f, g).

[2] Criminal Law 110 ⚷435

110 Criminal Law

110XVII Evidence
    110XVII(P) Documentary Evidence
        110k431 Private Writings and Publications
            110k435 k. Memoranda; Past Recollection Recorded. Most Cited Cases

Criminal Law 110 ⚷1169.1(10)

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1169 Admission of Evidence
                110k1169.1 In General
                    110k1169.1(10) k. Documentary and Demonstrative Evidence. Most Cited Cases
In view of testimony of prosecution witness that he no longer remembered certain details of transaction and in view of trial judge's characterization of such witness as a "reluctant" witness from whom prosecutor literally had to pull every statement and as one of the most uncooperating witnesses he had ever seen, and as a "stone wall," there was no error in showing to witness notes made by prosecutor during interview and, on witness' recollection being not refreshed, in introducing substance of notes as such witness' past recollection recorded and, in any event, any erroneous ruling as to admissibility of evidence concerning exact year that gratuitous payments to judge began could hardly have been prejudicial. 18 U.S.C.A. § 201(f, g); Fed.Rules Evid. Rules 801(d)(1), 803(5), 28 U.S.C.A.

[3] Criminal Law 110 ⚷1036.1(5)

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1036 Evidence
                    110k1036.1 In General
                        110k1036.1(3) Particular Evidence
                            110k1036.1(5) k. Confessions, Declarations, and Admissions. Most Cited Cases
Although statements made by coconspirators after termination of conspiracy generally may not be admitted against coconspirators who were not privy to those conversations as substantive evidence of their association with conspiracy, any evidentiary error in questioning concerning meeting which took place after first grand jury appearance between

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP   Document 318-13   Filed 10/11/2006   Page 7 of 20

684 F.2d 141                                                                                                    Page 2
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

another defendant and a witness granted immunity was not plain error, considering narrow purpose for which evidence was introduced.

**[4] Criminal Law 110 ⚷1038.1(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1038 Instructions
                    110k1038.1 Objections in General
                        110k1038.1(1) k. In General. Most Cited Cases

Rule providing that no party may assign as error any portion of charge or omission therefrom unless he objects before jury retires to consider verdict is not merely precatory, but requires that alleged errors in jury instruction be brought to attention of trial judge in order to provide opportunity for immediate correction. Fed.Rules Cr.Proc. Rule 30, 18 U.S.C.A.

**[5] Indictment and Information 210 ⚷191(.5)**

210 Indictment and Information
    210XIII Included Offenses
        210k191 Different Offense Included in Offense Charged
            210k191(.5) k. In General. Most Cited Cases
            (Formerly 210k191)

Illegal gratuity need not always be a lesser included offense of bribery. 18 U.S.C.A. § 201(f, g).

**[6] Bribery 63 ⚷1(1)**

63 Bribery
    63k1 Nature and Elements of Offenses
        63k1(1) k. In General. Most Cited Cases

Payments to public official for acts that would have been performed in any event, whether before or after those acts have occurred, are probably illegal gratuities rather than bribes, depending upon controlling nature of defendant's intent, but all bribes need not inevitably be paid prior to official act in question, and in certain situations bribe will not actually be conveyed until act is done. 18 U.S.C.A. § 201(f, g).

**[7] Bribery 63 ⚷1(1)**

63 Bribery
    63k1 Nature and Elements of Offenses
        63k1(1) k. In General. Most Cited Cases

**Criminal Law 110 ⚷1038.1(4)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1038 Instructions
                    110k1038.1 Objections in General
                        110k1038.1(3) Particular Instructions
                        110k1038.1(4) k. Elements of Offense and Defenses. Most Cited Cases

Since bribe may be conveyed after official act has been performed, fact that indictment charged that first payment was made to judge in 1973 did not immunize defendants' actions prior to that date, and where possible distinction between bribery and illegal gratuities apparently did not strike defense counsel as anything significant at time instructions were requested, it was not plain error for trial court, in context of trial as a whole, to share such view. 18 U.S.C.A. § 201(f, g).

**[8] Bribery 63 ⚷14**

63 Bribery
    63k12 Trial
        63k14 k. Instructions. Most Cited Cases

It was more than sufficient, in case wherein there was no problem of distinguishing illegal gratuities from legitimate campaign contributions to elected officials, for trial court to require that alleged gratuities be given and received knowingly and willfully and for or because of official acts, and, in context of trial and in light of failure of defense counsel to seek more specific instruction, jury had clear understanding of distinctions among bribery, illegal gratuities and innocence. 18 U.S.C.A. § 201(f, g).

**[9] Criminal Law 110 ⚷957(3)**

110 Criminal Law
    110XXI Motions for New Trial
        110k948 Application for New Trial
            110k957 Statements, Affidavits, and Testimony of Jurors
                110k957(3) k. Misconduct of Jurors, in General. Most Cited Cases

Ordinarily, verdict will not be upset on basis of juror's posttrial reports of what happens in course of deliberations, and single exception concerns

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

684 F.2d 141 Page 3
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
**(Cite as: 684 F.2d 141)**

"extraneous influences" that might have improperly influenced verdict. Fed.Rules Evid. Rule 606(b), 28 U.S.C.A.; U.S.Dist.Court Rules D.C., Rule 1-28(c).

**[10] Criminal Law 110 ⚖ 868**

110 Criminal Law
　　110XX Trial
　　　　110XX(J) Issues Relating to Jury Trial
　　　　　　110k868 k. Objections and Disposition Thereof. Most Cited Cases
When confronted with allegations of irregularity in jury's proceedings, trial judge has broad discretion to determine what manner of hearing, if any, is warranted. Fed.Rules Evid. Rule 606(b), 28 U.S.C.A.; U.S.Dist.Court Rules D.C., Rule 1-28(c).

**[11] Criminal Law 110 ⚖ 857(1)**

110 Criminal Law
　　110XX Trial
　　　　110XX(J) Issues Relating to Jury Trial
　　　　　　110k857 Deliberations in General
　　　　　　　　110k857(1) k. In General. Most Cited Cases
Compromise verdicts and verdicts granted out of compassion are not unacceptable. Fed.Rules Evid. Rule 606(b), 28 U.S.C.A.; U.S.Dist.Court Rules D.C., Rule 1-28(c).

**[12] Criminal Law 110 ⚖ 868**

110 Criminal Law
　　110XX Trial
　　　　110XX(J) Issues Relating to Jury Trial
　　　　　　110k868 k. Objections and Disposition Thereof. Most Cited Cases
That juror told court, after return of verdict, that juror had indicated to other jurors that if vote of jury was otherwise unanimous she would vote to go along did not require trial court to make further inquiry or to reject verdict. Fed.Rules Evid. Rule 606(b), 28 U.S.C.A.; U.S.Dist.Court Rules D.C., Rule 1-28(c).

**[13] Sentencing and Punishment 350H ⚖ 328**

350H Sentencing and Punishment
　　350HII Sentencing Proceedings in General
　　　　350HII(G) Hearing
　　　　　　350Hk328 k. Scope of Inquiry. Most Cited Cases
　　　　　　　　(Formerly 110k986.2(1))
On one hand, judge may appropriately conduct inquiry broad in scope, largely unlimited either as to kind of information he may consider in sentencing, or source from which it may come, but, on other hand, some limitation on range of permissible sentencing considerations is required by constitutional guarantee of due process. U.S.C.A.Const.Amends. 5, 14; 18 U.S.C.A. § 3577.

**[14] Sentencing and Punishment 350H ⚖ 370**

350H Sentencing and Punishment
　　350HII Sentencing Proceedings in General
　　　　350HII(G) Hearing
　　　　　　350Hk369 Findings and Statement of Reasons
　　　　　　　　350Hk370 k. In General. Most Cited Cases
　　　　　　　　(Formerly 110k986(3))
An unrealistic view of sentencing process, which could only deter trial judges from articulating their reasons fully, should not be adopted, and judges should not be reprimanded for acknowledging impact of evidence presented during trial unless weighing of such evidence confounds just result. 18 U.S.C.A. § 3577.

**[15] Criminal Law 110 ⚖ 1134(1)**

110 Criminal Law
　　110XXIV Review
　　　　110XXIV(L) Scope of Review in General
　　　　　　110k1134 Scope and Extent in General
　　　　　　　　110k1134(1) k. In General. Most Cited Cases
Standard of review of information considered by trial court in sentencing is to review record to insure that there is persuasive basis for conclusions reached by sentencing court. 18 U.S.C.A. § 3577.

**[16] Sentencing and Punishment 350H ⚖ 98**

350H Sentencing and Punishment
　　350HI Punishment in General
　　　　350HI(E) Factors Related to Offender
　　　　　　350Hk93 Other Offenses, Charges, Misconduct
　　　　　　　　350Hk98 k. Arrests, Charges, or Unadjudicated Misconduct. Most Cited Cases
　　　　　　　　(Formerly 110k986.2(4.1), 110k986.2(4))
Sentence was not to be set aside because of consideration of certain allegations eliminated from third count of indictment by Government, where elimination took place only because transaction fell outside statute of limitations for bribery. 18 U.S.C.A. § 3577.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP   Document 318-13   Filed 10/11/2006   Page 9 of 20

684 F.2d 141                                                                                           Page 4
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

**[17] Sentencing and Punishment 350H ⟶113**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(E) Factors Related to Offender
            350Hk113 k. Perjury or Other Untruthfulness. Most Cited Cases
            (Formerly 110k986.2(1))
Sentence was not to be set aside because of trial court's judgment that witness lied during some of his testimony in order to protect particular defendant, though assessing witness' credibility is task primarily within province of jury. 18 U.S.C.A. § 3577.

*143 **369 Appeals from the United States District Court for the District of Columbia (Criminal No. 80-0389).

R. Kenneth Mundy, Washington, D. C., for Robert Campbell, appellant in No. 81-1762.

Jacob A. Stein, Washington, D. C., with whom Robert F. Muse, Washington, D. C., was on brief, for Excavation Const., Inc., appellant in No. 81-1765.

E. Anne McKinsey, Asst. U. S. Atty., Washington, D. C., with whom John A. Terry, John P. Hume, Carol E. Bruce, William J. Birney, Asst. U. S. Attys., and Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, were on brief, for the U. S., appellee in Nos. 81-1762 and 81-1765.

Before TAMM, MIKVA and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge MIKVA.
**370 *144 MIKVA, Circuit Judge:
The two cases consolidated here involve appeals from practically every facet of a criminal trial in the district court.[FN1] In March 1981, after six weeks of trial and four days of deliberation, the jury found Excavation Construction, Inc. (ECI) guilty of giving an illegal gratuity in violation of 18 U.S.C. s 201(f). The jury also found Judge Robert Campbell guilty of receiving an illegal gratuity in violation of 18 U.S.C. s 201(g). The trial court denied the defendants' post-verdict motions for judgments of acquittal, and imposed sentence. Despite the range and importance of the questions raised by appellants, we affirm.

> FN1. On July 16, 1982, we vacated an earlier order consolidating these cases with United States v. Larry Campbell, No. 81-1757, an appeal taken by the government from an order of the trial court in this trial entering judgment of acquittal for a third defendant (not related to Judge Campbell) notwithstanding the jury's verdict.

I. Background

ECI was formed to engage in trucking and construction work. In 1974, when the company obtained three contracts for construction of Metro subway stations, ECI maintained a fleet of 80-85 dumptrucks to conduct dirt-hauling operations. These trucks were subject to the vehicle weight restrictions of the District of Columbia. They could carry a maximum load of 44,000 pounds unless they displayed special use permits, costing $680 apiece, that raised the limit to 65,900 pounds.

ECI purchased 112 special use permits for the year ending June 1974. It purchased only 60 permits for the year ending June 1975, and no permits at all for the next two years. As a result, ECI received hundreds of traffic tickets charging weight violations. These tickets were handled erratically by the Superior Court.[FN2] A number of judges (including some who later testified for the defense) dismissed the tickets or imposed only token fines. One of these judges was Robert Campbell, who had been appointed to the Superior Court bench in 1972. In over 90 percent of the 1,138 tickets involving ECI that were considered by Judge Campbell, the judge suspended sentence.[FN3]

> FN2. A defense analysis of Superior Court dispositions of overweight tickets showed that Judge Campbell was not alone in imposing token fines or suspended sentences. Tr. 5326-30. On some occasions, the local government declined to prosecute these violations altogether. Tr. 4994-5020, 5252-54. The defense also suggested that the District of Columbia "was not speaking with one voice" on the desirability of weight laws. See Tr. 5000 (Corporation Counsel's staff suspected police were not enforcing weight laws fairly); Tr. 4592-93 (judge testified that he always suspended sentence because the laws were unevenly enforced and because their purpose was unclear). A witness from the Department of Transportation produced records suggesting that most of the large trucking companies in the District of Columbia had stopped buying the special

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP    Document 318-13    Filed 10/11/2006    Page 10 of 20

684 F.2d 141                                                                                                    Page 5
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

use permits or had sharply reduced their purchases by 1975. Tr. 269-87.

FN3. Tr. 3262-3343. The government's evidence also showed that ECI frequently arranged to have its tickets brought before Judge Campbell and that on at least one occasion Judge Campbell reviewed and dismissed a bloc of 95 ECI tickets even though he was not assigned to traffic court that day. Tr. 3317-18, 4042. The evidence also suggested that Judge Campbell had been in serious financial trouble for many years. Tr. 2572-2602, 3069-89.

ECI's assistant general manager, Robert Jenkins, had responsibility for supervision of the ECI truck fleet. Jenkins was called before a grand jury in 1978, and at that time testified that he had never delivered anything of value to Judge Campbell. In July 1978, Jenkins discussed his testimony with another ECI employee, Walter "Junior" Jones, and Jones gave similar testimony at his own grand jury appearance. In August 1978, however, the Washington Post reported that ECI employees had assisted in the move of Judge Campbell's household furnishings under the direction of Jones and Jenkins. Jones was then offered immunity in exchange for testimony against Jenkins, and Jenkins was ultimately indicted and convicted of perjury. We affirmed that conviction in United States v. Jenkins, No. 79-2559 (D.C.Cir. Sept. 19, 1980).

In August 1980, the grand jury charged ECI and Judge Campbell in a four-count indictment, alleging conspiracies in violation*145 **371 of 18 U.S.C. s 1962(d) (RICO) and 18 U.S.C. s 371, and the giving and receiving of bribes in violation of 18 U.S.C. s 201(b) and (c). The indictment charged 16 separate instances of bribery. Twelve of these were payments of cash, starting as early as 1966 when Campbell was an Assistant Corporation Counsel. The other four instances were gifts to Judge Campbell of three loads of topsoil, a garden cultivator, several cases of liquor, and the move of his household belongings.

Problems beset the prosecution almost immediately; even after a superseding indictment was filed, the government acted repeatedly to narrow the charges. [FN4] By the time the case went to the jury, the bribery scheme alleged in Count III of the indictment was confined to the move of household goods in August 1975 and five payments of cash between January 1976 and February 1977. At the conclusion of testimony, however, the trial court also agreed to instruct the jury of the lesser included offenses of giving and receiving an illegal gratuity in the third and fourth counts of the indictment.[FN5]

FN4. The superseding indictment, which was returned in September 1980, amended the third count by deleting a year from the alleged duration of the bribery scheme and by withdrawing the allegations as to the cases of liquor. In a bill of particulars filed in November 1980, the government abandoned the charges as to the topsoil and garden cultivator, and listed only nine instances of cash payments. After the jury had been selected, the government discovered documents questioning whether three of these payments could have gone to Judge Campbell, and withdrew these allegations. The trial court denied the prosecution's request that the withdrawal of these charges be kept from the jury, Tr. 76, observing that the government had been "negligent" at best in meeting its "responsibility to return indictments which accurately charge people with offenses." Tr. 59. Midway through the government's case, when uncontroverted evidence showed that yet another alleged payment could not have been made to Judge Campbell, the trial court with the prosecution's acquiescence dismissed that count as well. Tr. 1837.

FN5. The trial court was first apprised that the government would submit proposed instructions on the lesser included offense on March 10, 1982, after the close of testimony. Counsel for the defendants agreed that the instructions were warranted for Counts III and IV, but contended that the jury could not use gratuities rather than bribes as the basis for a conviction of conspiracy under Counts I and II. The trial court adopted the defense position on March 12. Tr. 6205. During this same discussion, counsel for Judge Campbell stated that he had studied the proposed instructions overnight and had no objection to them. Tr. 6199-200.

The jury found the defendants not guilty of conspiracy on Counts I and II. By way of a special verdict form, the jury also acquitted the defendants of bribery and found that there was no illegal gratuity given or received in connection with any of the five

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP    Document 318-13    Filed 10/11/2006    Page 11 of 20

684 F.2d 141                                                                                                          Page 6
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

cash payments alleged. The jury did find each defendant guilty in connection with the 1975 move of the household goods-ECI for having given an illegal gratuity in the form of that move, and Judge Campbell for having received that gratuity. In June 1981, the trial court fined ECI $10,000, the maximum penalty authorized under the statute, and sentenced Judge Campbell to serve a term of imprisonment of three months to two years.

II. Issues Raised on Appeal

The defendants challenge the sufficiency of the evidence to support their convictions, the admission of hearsay evidence, the trial court's instructions to the jury, the alleged misconduct of the jury in reaching a verdict, and the sentencing decision of the trial court. We discuss each of these arguments separately.

A. Sufficiency of the Evidence

[1] The standards for evaluating the sufficiency of the evidence supporting a guilty conviction are well established. We must view the evidence in the light most favorable to the government and draw all justifiable factual inferences from it. The verdict will be overturned only if a reasonable jury could not accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. See, e.g., United States v. Staten, 581 F.2d 878, 882 (D.C.Cir.1978); Curley v. United States, 160 F.2d 229 (D.C.Cir.), cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

*146 **372 Judge Campbell's defense sought to negate the existence of criminal intent. It emphasized that Judge Campbell gave $60 to the three ECI employees who assisted during the five-hour move, and that Judge Campbell sought to pay their supervisor, Jones, as well. When Jones refused to take any money for his own time or to let Judge Campbell pay for a truck that Jones had already rented, Judge Campbell "was confronted, not of his own volition or choice, with a gratuity ... of such a nature that he could not give it back." Brief for Appellant Campbell at 12.

Although this version of events could be believed, there was clearly sufficient evidence from which the jury could conclude beyond a reasonable doubt that it was not so. There was credible evidence to suggest that Jenkins arranged the move pursuant to a meeting with Judge Campbell, that the $60 was intended as a tip rather than as payment for the value of the services given, and that Judge Campbell knew the movers' assistance was a gratuity rendered for or because of his official acts.[FN6] It was for the jury to resolve the question of Judge Campbell's intent based on this evidence, and we find no occasion to disturb its verdict.

FN6. See note 3 supra. ECI, through Jenkins, had paid $48 to rent the truck used during the move, and paid Jones and the three other employees their regular salaries for the day. A prosecution witness who operated a moving service in the evenings after his employment as a D.C. policeman estimated the value of the move at between $136 and $300, based on the exteriors of the houses involved. Finally, although Jenkins could not remember whether Judge Campbell had asked him for help during the move, Tr. 1501, Jenkins testified that the subject came up while Jenkins was at Judge Campbell's house, Tr. 934, and that it was not unusual for Judge Campbell to telephone when he needed cash or other services. Tr. 1055-63, 1064-71, 1081-83.

B. Evidentiary Issues

[2] Jenkins was the government's principal witness at the trial. He had been convicted of three counts of making a false declaration before a grand jury in November 1979, and sentenced the following month to three years probation and a fine of $5,000. Jenkins was then given immunity from further prosecution other than for perjury, and was ordered to testify before the grand jury. In conversations with government prosecutors in February and April, 1980, Jenkins stated that he made numerous cash payments to Judge Campbell between 1973 and 1977. He also discussed other favors that had been given to the judge, including assistance during the household move.

During the trial a year later, however, Jenkins testified that he no longer remembered certain details of these transactions. He was not formally declared a hostile witness, but the trial judge characterized Jenkins as a "reluctant" witness from whom "the prosecutor literally has to pull every statement," Tr. 1020-21, "one of the most uncooperative witnesses I have ever seen," Tr. 1137, and a "stone wall." Tr. 1102. In particular, Jenkins testified that his first

Case 3:04-cr-30033-MAP   Document 318-13   Filed 10/11/2006   Page 12 of 20

684 F.2d 141                                                                                                    Page 7
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

payment to Judge Campbell occurred after Campbell became a judge, but stated that he could not recall the year in which payment was made. In an effort to refresh Jenkin's memory, he was shown notes made by a prosecutor during an interview in February 1980. Jenkins' recollection was not refreshed, however, and the prosecution then sought to introduce the substance of the notes as Jenkins' past recollection recorded. Defense objections were overruled, and appellants now urge that this evidence was inadmissible as hearsay.

Although the use of prior statements of witnesses as substantive evidence raises one of the thornier issues in the law of evidence,[FN7] we cannot say that any error here *147 **373 was prejudicial. Jenkins testified at trial from his present recollection concerning roughly a dozen cash payments to Judge Campbell and the provision of other favors, and the defense was not deprived of effective cross-examination as to these events. Jenkins was on the stand for six days of the trial, and any erroneous ruling as to the admissibility of evidence concerning the exact year these payments began could hardly have been prejudicial.[FN8] See Lutwak v. United States, 344 U.S. 604, 619-20, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953).

> FN7. If a witness testifies that he no longer remembers the facts but does remember making a statement about those facts, the defense is deprived of effective cross-examination if such an out-of-court statement is offered to prove the truth of the matter asserted therein. Accordingly, the use of such statements are tightly circumscribed by the Federal Rules of Evidence. Rule 801(d)(1) provides that an out-of-court statement of the witness is not hearsay (and therefore is admissible) only if it was inconsistent with the witness's present testimony and if it was made at an earlier proceeding under oath and subject to a penalty for perjury. Jenkin's comments during his interview with the prosecutors did not meet several of these requirements. See California v. Green, 399 U.S. 149, 165, 90 S.Ct. 1930, 1938, 26 L.Ed.2d 489 (1970). Rule 803(5) allows admission of such statements as past recollection recorded only if the writing was made or approved while "fresh" in a witness's memory. The notes were made in 1980 about events that Jenkins said occurred between 1973 and 1977.

> FN8. The appellants cite two other instances of allegedly improper interrogation of Jenkins from prosecution notes of earlier interviews. In one, Jenkins was simply asked to explain how he had selected certain ECI check request forms that he identified to prosecutors as corresponding to cash payments he made to Judge Campbell. Tr. 1105-06. He testified about making those payments from his present recollection, however. The second instance was intended by the prosecution to highlight omissions in Jenkins' initial interview with the prosecutors that Jenkins filled in a week later, thus allegedly demonstrating the connection of a third ECI employee to the scheme. Tr. 929-45; see Brief for Appellee United States (Government Brief) at 44. This examination did not relate to Judge Campbell or ECI.

[3] Appellants also object to the government's introduction of evidence concerning the conversation between Jenkins and Jones that took place after Jenkins' first grand jury appearance. Although it is well settled that statements made by co-conspirators after the termination of the conspiracy generally may not be admitted against co-conspirators who were not privy to those conversations as substantive evidence of their association with the conspiracy, Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), appellants' objection misapprehends the only purpose for which this evidence was introduced.[FN9] We must also note that the defendants made no objection at trial to the questions put to Jenkins and Jones about their meeting, and that any evidentiary error here could hardly be considered plain. See United States v. McCray, 433 F.2d 1173, 1175 n.1 (D.C.Cir.1970).

> FN9. Nothing in Jenkins' conversation with Jones implicated Judge Campbell. The government contends that it was "in the unenviable position of sponsoring the compelled testimony of two persons who had previously lied under oath," Government Brief at 51, and that this was a permissible attempt to anticipate and blunt defense efforts at impeachment. See United States v. Halbert, 640 F.2d 1000, 1004-05 (9th Cir. 1981); United States v. Edwards, 631 F.2d 1049, 1051-52 (2d Cir. 1980). Counsel for Judge Campbell cross-examined

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP   Document 318-13   Filed 10/11/2006   Page 13 of 20

684 F.2d 141                                                                                                    Page 8
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

both Jenkins and Jones about their meeting and subsequent perjury, establishing that neither defendant had instructed them to lie to the grand jury. Tr. 1179-81, 1534-35, 3784-85.

### C. Jury Instructions

The district court instructed the jury that the offense of giving a bribe charged in Count III of the indictment "necessarily includes the lesser offense of giving an illegal gratuity." The court then stated five elements of that offense, of which the final two were "that the defendant gave the money for or because of an official act," and "that the defendant acted knowingly and willfully." Tr. 6287-88. The elements of the offense of receiving an illegal gratuity were substantially the same, including that the defendant "received the money for or because of an official act performed or to be performed by him," and that the defendant acted "knowingly and willfully." Tr. 6293. [FN10]

> FN10. The first three elements of these offenses required the jury to find (a) that the defendants gave (or received) money or the move; (b) that Robert Campbell was a public official at the time; and (c) that the defendants acted "otherwise than as provided by law in the proper discharge of official acts." Tr. 6286-92.

Appellants urge that these instructions were erroneous on two grounds. First, relying on *148**374United States v. Brewster, 506 F.2d 62 (D.C.Cir.1974), they contend that it is not enough to support a gratuity conviction that a defendant acted "knowingly and willfully." Instead, they suggest that the defendant must have specific knowledge of a definite official action for which the gratuity is given, knowledge that they argue has not been shown in this case. Second, appellants observe that in some situations the giving of a gratuity is not necessarily included in the greater offense of bribery. See United States v. Brewster, 506 F.2d at 68. They urge that the verdict be overturned because the jury was not instructed of relevant differences between bribery and illegal gratuities, and thus may have convicted the defendants for an offense that was not charged in the indictment.

[4] As noted above, however, see note 4 supra, appellants failed to object to the proposed gratuity instructions at trial. Fed.R.Crim.P. 30 states:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

This language is not merely precatory. The rule requires that alleged errors in jury instructions be brought to the attention of the trial judge in order to provide an opportunity for their immediate correction; belated complaints are strongly disfavored. See, e.g., United States v. Wiggins, 530 F.2d 1018, 1020 (D.C.Cir.1976); Moore v. United States, 262 F.2d 216, 218 (D.C.Cir.1958), cert. denied, 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed.2d 767 (1959). We therefore consider only whether the jury instructions were plainly erroneous within the meaning of Fed.R.Crim.P. 52(b). We discuss appellants' claims in reverse order.

### 1. Notice

[5][6] It is true that an illegal gratuity need not always be a lesser included offense of bribery. As we explained in Brewster:
The bribery section makes necessary an explicit quid pro quo which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act, but the official act for which the gratuity is given might have been done without the gratuity, although the gratuity was produced because of the official act.

506 F.2d at 72. One obvious resulting distinction is temporal. "The gratuity section ..., unlike the bribery section ..., applies to past official acts as well as future ones." Id. at 68. Payments to a public official for acts that would have been performed in any event-whether before or after those acts have occurred-are probably illegal gratuities rather than bribes. [FN11] This does not mean, however, that all bribes must inevitably be paid prior to the official act in question. The statute proscribes offers and promises of bribes as well as the giving of bribes, and it is only logical that in certain situations the bribe will not actually be conveyed until the act is done.[FN12]

> FN11. The word "probably" reflects the controlling nature of the defendant's intent, and the fact that the donor's intent may differ from the donee's. See United States v. Anderson, 509 F.2d 312, 332

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP    Document 318-13    Filed 10/11/2006    Page 14 of 20

684 F.2d 141                                                                                                Page 9
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

(D.C.Cir.1974), cert. denied, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975) ("Thus the donor may be convicted of giving a bribe despite the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so.").

FN12. Should the donor pay part of the bribe before and the rest of the bribe after the official act, however, each payment may be the basis of a separate count in the indictment and subject to sentences that run consecutively and cumulatively. E.g., United States v. Anderson, 509 F.2d at 332-33 (rejecting claim that each payment was an "installment of the same transaction").

The appellants' argument is highly conjectural: the indictment alleged only bribery, which contemplates future action; the trial court did not differentiate between gratuities given for past or future actions; ECI had received favorable treatment from Robert Campbell prior to the move of household goods in August 1975;[FN13] the jury *149 **375 may have wrongfully convicted the defendants because of a gratuity for past official acts; and the defendants may therefore have been convicted of offenses that were not charged in the indictment, and on which they did not have notice.

FN13. The cash payments to Robert Campbell allegedly began as early as October 1966, when he was an Assistant Corporation Counsel with the District of Columbia and was said to be sympathetic to trucking interests. Tr. 894; see note 2 supra.

[7] The argument fails. A bribe may be conveyed after the official act has been performed, and thus the fact that the indictment charged that the first payment was made to Judge Campbell in 1973 does not immunize defendants' actions prior to that date. The defendants had notice that they were on trial for an on-going scheme that covered an extensive period of time, and in fact the case for the defense did not limit itself to events later than 1973. [FN14] As a result, the possible distinction between bribery and illegal gratuities apparently did not strike defense counsel as anything significant at the time the instructions were requested. In the context of the trial as a whole, it was not plain error for the trial court to share this view.

FN14. See, e.g., Tr. 4223-28 (cross-examination of Jerry Wayne Gray, a former ECI employee who claimed to have given cash to Robert Campbell in 1966). The indictment alleged as overt acts of Judge Campbell in connection with the conspiracy counts only official judicial acts between 1975 and 1977, and the jury was instructed that the substantive bribery counts (within which the gratuity offenses were "necessarily included") charged acts during the same period. It is not even clear which "acts" of Robert Campbell could have been the basis for ECI gratuities prior to 1973, because "sympathy to trucking interests" does not constitute an official act.

2. Intent

It is no easy task to articulate the requisite intent necessary to constitute accepting or giving an illegal gratuity. The statute requires that a bribe be given or received "corruptly," whereas the intent required by the gratuity section of the statute is expressed by the language "otherwise than as provided by law for the proper discharge of official duty." See Brewster, 506 F.2d at 76. In Brewster, we remanded for a new trial because the jury instructions did not define the distinction between these requisite intents "with indisputable clarity." Id. at 67. Based on that case, appellants here urge that the trial court erred in not requiring the jury to find that the gratuity was conferred with "specific knowledge" of "a definite official action for which compensation was intended." They make the somewhat startling claim that "if Robert Jenkins provided a move of household belongings to Judge Robert Campbell because he felt that Judge Campbell had been (or would be) generally lenient with respect to (ECI) overweight citations, this would not be sufficient for culpable intent." Brief for Appellant ECI at 17-18 (emphasis added).

Appellants' argument reveals a fundamental misconception of the gratuity statute and an overreading of Brewster, which concerned the conviction of a former United States Senator who had received a substantial sum of money from a mail-order company that had an interest in defeating enactment of pending legislation to increase postal rates. The hard question in Brewster involved distinguishing illegal gratuities from innocent campaign contributions, and the court concluded that the trial judge had not made the distinction

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP   Document 318-13   Filed 10/11/2006   Page 15 of 20

684 F.2d 141                                                                                                        Page 10
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

intelligible to the jury: [FN15]

> FN15. The gratuity instruction in Brewster merely required the jury to find that the defendant acted "willfully and knowingly rather than by mistake or accident. There need not be proof, however, that there was any corrupt intent on the part of defendant Brewster to be influenced in the performance of an official act." 506 F.2d at 80.

(S)ince "willfully and knowingly" could mean that defendant Brewster knew when he accepted the money that he was receiving the contribution because of his record of performance in this field of postal legislation, and that if he continued such legislative actions in the future (particularly the near future) he would likely receive further contributions, how does this instruction distinguish the contribution found to be illegal here from a perfectly legitimate contribution? No *150 **376 politician who knows the identity and business interests of his campaign contributors is ever completely devoid of knowledge as to the inspiration behind the donation. There must be more specific knowledge of a definite official act for which the contributor intends to compensate before an official's action crosses the line between guilt and innocence.
506 F.2d at 81.

[8] We must therefore conclude that appellants have taken Brewster entirely out of context in suggesting that it was insufficient for ECI merely to seek or reward "lenient treatment" from Judge Campbell. However difficult it may appear for juries to distinguish illegal gratuities from legitimate campaign contributions to elected officials, no similar problems attend deciding whether a judge has accepted gifts "with knowledge that the donor was paying him compensation for an official act." United States v. Brewster, 408 U.S. 501, 527, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972).[FN16] It was more than sufficient in this case for the trial court to require that the alleged gratuities be given and received "knowingly and willingly," and "for or because of an official act." In the context of the trial, and in light of the failure of defense counsel to seek a more specific instruction, we have no doubt that the jury had a clear understanding of the distinctions among bribery, illegal gratuities, and innocence. This was everything that Brewster requires. [FN17]

> FN16. In a lengthy footnote, Brewster reviewed several gratuity precedents and implied that the requisite intent must be more clearly shown when the case involves a campaign contribution to "an elected public official" than "when the recipient is an Internal Revenue agent or other appointed official." 506 F.2d at 73 n.26; see id. at 77 n.40 ("whether a statute provides fair warning of the conduct it seeks to prohibit depends in part on the persons to whom and the setting in which the statute is applicable"). The discussion reflects the thin but necessary line that must be drawn between campaign contributions and improper gratuities.

> FN17. Judge Campbell, in a two-sentence argument, suggests that the gratuity statute is unconstitutionally vague and overbroad if it can be construed to cover his conduct discussed here. Brief for Appellant Campbell at 11. The gratuity sections of the statute have withstood constitutional challenges in a variety of contexts, e.g., United States v. Brewster, 506 F.2d at 76-78; United States v. Alessio, 528 F.2d 1079, 1083 (9th Cir.), cert. denied, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). We find the constitutional argument without merit.

D. Jury Misconduct

Following the return of the jury's verdict, one of the jurors contacted the trial court's chambers and asked to speak with him concerning her jury service. A transcript of their meeting was subsequently made available to all counsel; pertinent portions are set out in the margin.[FN18] The parties draw *151 **377 different conclusions from these remarks. The government views the "major concern" of this juror as whether "her intransigence had swayed other jurors, who apparently had initially voted to convict on some or all of the counts, to abandon their convictions and yield to her." Government Brief at 98 n.48. The defendants conclude that the jury's verdict was not unanimous, because this juror voted contrary to her own beliefs in order to facilitate a unanimous verdict. They urge that the verdict be set aside, or at least that the case be remanded for specific inquiry with counsel present pursuant to District Court Local Rule 1-28(c).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP    Document 318-13    Filed 10/11/2006    Page 16 of 20

684 F.2d 141                                                                Page 11
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

FN18. The juror began by explaining that after the first three days of deliberation, "(t)he jurors were very unhappy about being sequestered and they were voting so that they could go home to their husbands and wives and families .... Everyone's nerves were shot." Tr. 2-3. She then criticized the way the jurors discussed parts of the evidence, and the trial court began to ask questions.
The court: Well, did there come a time when you felt that the judge and the other defendants were either guilty or not guilty on all counts?
Juror: On the move. That's what I told them, that I could buy into that. There was a whole lot of gray, but I told them that I could buy into that, for a unanimous vote.... But I did it on a roundabout way. I asked them-because I was still voting not guilty-
The court: On all counts.
Juror: On the most specific. That was the last thing that we were dealing with-because I wasn't positive that they were guilty. And so I told them if we could take a consensus and everybody votes yes, that they would take a consensus-you found one guilty, you could find all guilty by a second guilty or not guilty vote. So we got a unanimous yes on the consensus, which meant that whichever way they went, my vote had to go that way if I was in the minority. And I explained this to them several times. And that's how they came up with the verdict-that's when they did because I did this. I lost it....
The court: Now you have some reservations about whether your vote was a proper vote; is that your-?
Juror: No, I don't have any reservations about it. I gave that to them and that's the way it came out. And in this society I can easily accept it. But it was just that-the way I did it....
The court: So what specifically is your present complaint? Did you just want to talk to me?
Juror: I just wanted to let you know that I had this uneasiness about-I felt that I had swayed eleven people maybe in the wrong direction because they should have been able to deliberate more and more and more, and come up with-but they didn't seem to want to do that. They wanted to go home.
The court: You suggested there be a consensus taken.
Juror: Yes.
The court: If the consensus would be guilty or not guilty, you would go along with it.
Juror: I did. The vote was going eleven to one, and I was the one.
The court: You were the one holding out for not guilty.
Juror: Yes.
The court: Well, that's the way the jury system works.
Juror: It's shocking.
The court: It's the best system that's been devised yet. And based on what you have told me, there was nothing improper in the way the verdict was returned.
Tr. 2-10. We agree with the trial court that the jury's performance of its functions was not unlawful. The group dynamics of a jury at work may not be a model for high school civics books, but the jury remains the best system yet devised for deciding disputed issues of fact in our system of law.

[9][10][11][12] Only in extraordinary circumstances do courts inquire into the deliberative process of juries, and this is not such a case. Ordinarily, a verdict will not be upset on the basis of a juror's post-trial report of what occurred in the course of deliberations. See, e.g., McDonald v. Pless, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915); Fed.R.Evid. 606(b); cf. Jorgensen v. York Ice Machinery Corp., 160 F.2d 432 (2d Cir. 1947). The single exception concerns "extraneous influences" that may have improperly influenced the verdict.
"Extraneous influence" has been construed to cover publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of defendant and his counsel. By contrast, evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent to impeach a verdict.

United States v. Wilson, 534 F.2d 375, 378-79 (D.C.Cir.1976) (quoting Government of the Virgin Islands v. Gereau, 523 F.2d 140, 149-50 (3d Cir. 1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976)). When confronted with allegations of irregularity in the jury's proceedings, the trial judge has broad discretion "to determine what manner of hearing, if any, is warranted."

Case 3:04-cr-30033-MAP    Document 318-13    Filed 10/11/2006    Page 17 of 20

684 F.2d 141                                                                                                    Page 12
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
**(Cite as: 684 F.2d 141)**

United States v. Wilson, 534 F.2d at 379; see United States v. Parker, 549 F.2d 998, 1000 (5th Cir. 1977).

The reasons for the distinction between "extraneous" and "intra-jury" influences on the verdict are self-evident. Outside pressures may distort the jury's deliberation to the point that its verdict results in injustice. In contrast, the give-and-take within this microcosm of the community leads to a verdict that is often the only way our legal system can define what it means by "justice." Inevitably, compromise verdicts and verdicts rendered out of compassion may result. See, e.g., Standefer v. United States, 447 U.S. 10, 22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980); Hamling v. United States, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974); Dunn v. United States, 284 U.S. 390, 393-94, 52 S.Ct. 189, 190-91, 76 L.Ed. 356 (1932). But these are not unacceptable, and the jury system itself *152 **378 would be undermined if losing parties could so easily destroy the finality of the verdict. We have no doubt that the jury misconduct alleged in this case concerned only the discussion among the jurors and the way the jurors elected to make their decision. The trial court correctly determined that no further inquiry was required and the judge did not abuse his discretion in responding to these allegations as he did.

### E. Sentencing

The trial judge was explicit in stating his reasons for imposing the sentences.
This is not a simple case of a judge merely receiving help from a friend in moving household furnishings from one location to another. The evidence that the court heard revealed that this was just one incident in a pattern of corruption which had been going on for a number of years. Now, although the jury has acquitted the defendant on the other counts of the indictment, nevertheless in imposing sentence I may properly refer to the evidence introduced with respect to crimes of which the defendant was acquitted, and for the record I rely principally on the case of United States v. Sweig (454 F.2d 181) in making that statement....
In this case, there is evidence that ECI received favorable treatment in court from the defendant in the handling of overweight tickets in return for gifts. It was unrefuted evidence on one occasion, for instance, that defendant received over nine hundred dollars worth of free liquor from Jenkins. After considering the evidence in this case during this lengthy trial, I'm convinced that Jenkins lied during some of his testimony in order to protect this defendant. And that the defendant was very fortunate to escape conviction on some of the more serious charges.

Sent. Tr. 37, 39. Appellants contend that the trial judge hereby failed to give proper effect to the jury's acquittals, and thus offended the constitutional guarantees against double jeopardy, deprivation of due process, and deprivation of trial by jury.

[13] This is the first occasion for this court to consider the interplay between a jury's fact-finding function and the judge's sentencing discretion, although the problem has arisen in other circuits.[FN19] We find the issue difficult because two fundamental propositions are at war. On one hand, it is a "fundamental sentencing principle" that " 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' " United States v. Grayson, 438 U.S. 41, 50, 98 S.Ct. 2610, 2615, 57 L.Ed.2d 582 (1978) (quoting United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)). See 18 U.S.C. s 3577 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"). Courts have held that a sentencing judge may consider evidence of crimes for which a defendant has been indicted but neither tried nor convicted, e.g., United States v. Bowdach, 561 F.2d 1160, 1175 (5th Cir. 1977); evidence of counts in an indictment that has been dismissed by the government, e.g., United States v. Marines, 535 F.2d 552, 554 (10th Cir. 1976); hearsay evidence, e.g., *153 **379 Williams v. Oklahoma, 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959); evidence obtained in violation of the Fourth Amendment, e.g., United States v. Lee, 540 F.2d 1205, 1210-11 (4th Cir.), cert. denied, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); and the defendant's refusal to cooperate with the government in an investigation of the conspiracy in which he was a confessed participant, e.g., Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980).

FN19. The question usually concerns whether the sentencing judge may consider a defendant's acquittal in a prior trial, rather than the evidence introduced in the same trial going to counts on which the defendant is acquitted. See, e.g., Drayton v. New

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:04-cr-30033-MAP    Document 318-13    Filed 10/11/2006    Page 18 of 20

684 F.2d 141                                                                                                  Page 13
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
(Cite as: 684 F.2d 141)

York, 556 F.2d 644, 646 (2d Cir.), cert. denied, 434 U.S. 958, 98 S.Ct. 488, 54 L.Ed.2d 317 (1977); United States v. Marines, 535 F.2d 552, 554 (10th Cir. 1976); United States v. Bowdach, 561 F.2d 1160, 1175 (5th Cir. 1977); United States v. Haygood, 502 F.2d 166, 171-72 (7th Cir. 1974), cert. denied, 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975); United States v. Atkins, 480 F.2d 1223, 1224 (9th Cir. 1973). The cases uniformly allow consideration of prior acquittals, although the effect of this consideration is not always clear. See, e.g., United States v. Morgan, 595 F.2d 1134, 1137 (9th Cir. 1979) ("it is just as reasonable to assume that (the trial court's) consideration of the acquittal resulted in his imposing the relatively light sentence of two years, as it is to assume ... that his sentence was 'enhanced' because of the prior acquittal").

On the other hand, it is also fundamental that some limitation on the range of permissible sentencing considerations is required by the constitutional guarantee of due process. It is well established, for example, that a sentence is invalid if it is based upon "improper or inaccurate information." Dorszynski v. United States, 418 U.S. 424, 431 n.7, 94 S.Ct. 3042, 3047 n.7, 41 L.Ed.2d 855 (1974). See, e.g., Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (prohibiting consideration of false information); United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (sentence may not be based upon prior convictions obtained in violation of the principles found in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); United States v. Weston, 448 F.2d 626, 634 (9th Cir. 1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972) (trial court may not rely on information contained in pre-sentence report "unless it is amplified by information such as to be persuasive of the validity of the charges there made"). Appellants contend that a judicial finding of guilt on charges on which the jury returns a verdict of not guilty "is as effective a denial of the right to a jury trial as if the judge had refused to empanel one in the first place." Brief for Appellant Campbell at 25.

In United States v. Sweig, 454 F.2d 181 (2d Cir. 1972), the Second Circuit held that it was proper for the trial court to consider evidence bearing on charges of which the defendant had been acquitted. Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant. For all that appears in the record of the present case, the jury may have believed all such evidence to be true, but have found that some essential element of the charge was not proved.

Id. at 184. Although this proposition is obvious, its strength has been undercut in recent years by the reaffirmation of the collateral estoppel principles that are mandated by the Double Jeopardy Clause. Almost a century ago, the Supreme Court ruled that after a defendant had been acquitted of evading taxes on distilled liquor, the government could not begin new proceedings to obtain the forfeiture of his distilling equipment.It is urged as a reason for not allowing such effect to the judgment, that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States, in the suit in rem. Nevertheless, the fact or act has been put in issue and determined against the United States ....

Coffey v. United States, 116 U.S. 436, 443, 6 S.Ct. 437, 440, 29 L.Ed. 684 (1886). See Standlee v. Rhay, 403 F.Supp. 1247 (E.D.Wash.1975) (parole revocation barred by parolee's acquittal of criminal charges based on same offense said to require revocation, despite lower standard of proof in revocation proceedings). More recently, the Supreme Court held in Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), that the Double Jeopardy Clause prohibits a second criminal prosecution for a greater as well as a lesser offense. See generally Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). As a result, we have explicitly held that evidence that has been the subject of a count of which defendants have been acquitted in an earlier trial is inadmissible in a second trial under the doctrine of collateral estoppel. Green v. United States, 426 F.2d 661 (D.C.Cir.1970); United States v. Day, 591 F.2d 861 (D.C.Cir.1978).*154 **380 The jury's acquittal is a final and binding determination that Sheffey was not guilty of those charges. Hence, in a second trial the Government cannot introduce evidence with the aim of contradicting any ultimate fact concluded by that judgment. We are convinced that the ultimate facts upon which the Government relies to support its claim that Sheffey is guilty of the offenses charged in the second trial are the same ultimate facts that the jury in the first trial found did not exist. Hence, to the extent that the Government seeks to use evidence introduced at the first trial to support a claim against

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Sheffey contrary to the facts essential to the judgment in that case, it is collaterally estopped from doing so.

Id. at 869.

We therefore decline to pursue Sweig to its ultimate reading, because a judgment of acquittal is a more final and binding determination of facts than the requisite standard of proof might at first seem to allow. At the same time, Sweig is doubtless correct in recognizing that the trial judge can hardly avoid exposure to all the evidence that is presented during the course of a trial.
In fact the kind of evidence here objected to may often be more reliable than the hearsay evidence to which the sentencing judge is clearly permitted to turn, since unlike hearsay, the evidence involved here was given under oath and was subject to cross-examination and the judge had the opportunity for personal observation of the witnesses.

454 F.2d at 184. In this case, the government argues that "the trial court should not be required to sift from the totality of the evidence only those isolated facts bearing directly on the counts as to which the verdict of guilty was returned." Government Brief at 103.

[14][15] Perhaps no single duty of a trial judge is more onerous and more unpleasant than sentencing. After years of study, it is still not possible to identify precisely the factors that go into this decision. [FN20] Indeed, as the dissenting opinion noted in United States v. Grayson, problems of this sort are subject to appellate review

> FN20. See generally A. Campbell, Law of Sentencing (1978); M. Frankel, Criminal Sentences: Law Without Order (1973).

only because of the trial judge's laudable explication of his reasons for imposing the sentence in this case. In many cases it would be impossible to discern whether a sentencing judge had been influenced by his belief (about the evidence), since there is no requirement that reasons be given.
438 U.S. at 55 n.1, 98 S.Ct. at 2618 n.1 (Stewart, J., dissenting). We should not adopt an unrealistic view of the sentencing process that can only deter trial judges from articulating their reasons fully, because those reasons allow correction when the facts relied upon are indeed "inaccurate." Judges ought not be reprimanded for acknowledging the impact of the evidence presented during the trial unless the weighing in of such evidence confounds a just result.

Accordingly, when cases of this nature are heard on appeal, we should review the record to ensure that there is a persuasive basis for the conclusions reached by the sentencing court.

[16][17] Applying this standard, we perceive no basis for disturbing the court's sentence. The allegations concerning the liquor were eliminated from the third count of the indictment by the government, but only because this transaction fell outside the statute of limitations for bribery. Tr. 4-5. These charges remained in the conspiracy counts, and were the basis of "unrefuted evidence." See Tr. 764-66, 934-36, 994-1005. Ordinarily, we would be less certain in assessing the trial court's judgment that "Jenkins lied during some of his testimony in order to protect this defendant," Sent. Tr. 39, because assessing witness credibility is a task that is primarily within the province of the jury and for which courts of appeal, relying only on the sterile record, *155 **381 are particularly ill-suited. In Grayson, however, the Supreme Court specifically held that a sentencing judge could consider the defendant's false testimony observed by the court during the trial. 438 U.S. at 50-54, 98 S.Ct. at 2615-17. "No rule of law, even one garbed in constitutional terms, can prevent improper use of firsthand observations of perjury. The integrity of the judges, and their fidelity to their oaths of office, necessarily provide the only, and in our view adequate, assurance against that." Id. at 54, 98 S.Ct. at 2617. Accordingly, we must affirm the trial court's approach to the arduous sentencing task in this case.

## Conclusion

We have discussed the appellants' arguments at some length because these arguments were all far from frivolous and because they stem from a lengthy and difficult trial challenging the capacity of the judicial system to judge a judge and his criminal co-conspirator fairly. The distinction between bribery and illegal gratuities can be subtle, and we emphasize again the importance of clearly drawing this distinction in jury instructions. See Brewster, 506 F.2d at 68. Allegations of jury misconduct and improper sentencing must be considered grave, because either activity undermines the integrity of the criminal justice system. While we need not agree with the broad statements in Sweig, we find nothing improper in the trial court's sentencing here, and the jury's behavior in this case was not the sort that justifies overturning a verdict. It is always possible after a lengthy trial to allege that certain evidence

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

684 F.2d 141 Page 15
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367
**(Cite as: 684 F.2d 141)**

was improperly admitted and that certain jury instructions were erroneous, but these claims lose a great deal of their force when counsel was not moved to object at the relevant time. "It is a commonplace in the administration of criminal justice that the actualities of a long trial are too often given a meretricious appearance on appeal; the perspective of the living trial is lost in the search for error in a dead record." Glasser v. United States, 315 U.S. 60, 88, 62 S.Ct. 457, 473, 86 L.Ed. 680 (1942) (Frankfurter, J., concurring). Finally, we agree with the trial court that there was sufficient evidence from which the jury could return its verdict of guilt.

We believe that justice has served Judge Campbell better than he served it. He and his co-conspirator have no legal cause for complaint.

Affirmed.

C.A.D.C., 1982.
U.S. v. Campbell
684 F.2d 141, 11 Fed. R. Evid. Serv. 939, 221 U.S.App.D.C. 367

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.