UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

## DEFENDANT PETER DAVIS'S MOTION *IN LIMINE* NO. 12 RE: EVIDENCE OF CERTAIN ALLEGED CO-CONSPIRATOR STATEMENTS

Defendant Peter Davis hereby moves *in limine* to preclude the government from introducing evidence of certain alleged statements by Raymond Asselin, Mr. Davis's alleged co-conspirator.

The defense expects that Joseph Asselin, the son of Raymond Asselin, Sr., will testify that Raymond Asselin, Sr. made the following statements to Joseph Asselin:

1. "Before the Indictments, Ray Sr. told [Joe] Asselin that Davis had been subpoenaed and Davis sent the subpoena to his son. After the son appeared in [the] grand jury, Ray, Sr. told Asselin that the son could not answer any questions about what had happened in the 1980s." Joseph Asselin FD-302, dated 7/28/06, at 9 (attached as Tab A).

2. Sometime after 2000/2001, "[Joe] Asselin asked Ray Sr. about Davis and if he was worried about being investigated. Ray Sr. said Davis was 'sitting okay' because the IRS only goes back so far to audit taxes and the time for auditing 1997 and the bills paid for Asselin's house had passed." *Id.* at 7.

While these statements have not yet been offered by the government, it is expected that these statements will be offered through the testimony of Joseph Asselin as alleged "co-conspirator" statements. *See* Fed. R. Evid. 801(d)(2)(E). But both statements should be excluded for two reasons. First, neither statement is in furtherance of any conspiracy charged in the Indictment, and is thus not admissible under Rule 801(d)(2)(E). While Joseph Asselin may have been

involved in any conspiracy to receive gratuities, there is no evidence that he was a fellow co-conspirator in a conspiracy to bribe Raymond Asselin, Sr. and Arthur Sotirion. And, notably, Joseph Asselin was not charged with (and has not plead guilty to) a conspiracy to commit a violation of 18 U.S.C. § 1962 (racketeering). Second, even if such statements were admissible under Rule 801(d)(2)(E), the probative value of both statements is minimal, while the potential for unfair prejudice is significant, and thus the statements should be excluded pursuant to Fed. R. Evid. 403.

    1.    *Statement Concerning Mr. Davis's Son's Grand Jury Testimony.*

Because the government is offering this hearsay statement under Fed. R. Evid. 801(d)(2)(E), the burden is on the government to demonstrate by a preponderance of the evidence that (1) a conspiracy exists, and (2) that the statements are in furtherance of the conspiracy. *United States v. Petroziello*, 548 F.2d 20, 23 (1st Cir. 1977). Raymond Asselin, Sr.'s statement concerning the allegation that Mr. Davis sent his son to the grand jury "because [his] son could not answer any questions about what happened in the 1980s" simply cannot be considered "in furtherance of the conspiracy" as required by 801(d)(2)(E). First, as a threshold matter, it must be noted that there is nothing improper about Demetrious Davis (Mr. Davis's son) testifying as the keeper of the records of P.J. Richfield. The subpoena served upon Mr. Davis was directed to the custodian of records of P.J. Richfield, and the undisputed testimony of Agent Morehead and others at this trial demonstrates that, as of April 2003 (when the subpoena was served), Demetrious Davis was the current president of P.J. Richfield, and that Peter Davis had long since retired from the company. Second, under *United States v. Twitty*, 72 F.3d 228 (1st Cir. 1995), any actions taken to conceal a crime can only be deemed in furtherance of the conspiracy "if the proof shows 'an express original agreement among the conspirators to continue to act in

concert in order to cover up' their crime." *Id.* at 233 (citation omitted). Here, as the defense has noted in the past, there has been no evidence that any conspiracy Mr. Davis is alleged to have joined included an express agreement to conceal any allegedly unlawful conduct; accordingly, any alleged statement by Raymond Asselin suggesting Mr. Davis attempted to conceal or mask his role in the conspiracy is inadmissible under Rule 802(d)(2)(E). Third, as noted above, this alleged statement by Raymond Asselin, Sr. to Joseph Asselin clearly did not, in any way, advance the objectives of the either the alleged bribery or RICO conspiracies; Joseph Asselin was in no way involved in any alleged bribery conspiracy, and is not charged with a conspiracy to commit racketeering. Accordingly, as this statement in no way advanced the objectives of either of the charged conspiracies, the statement should not be admitted.

Moreover, even if such evidence is admissible as a co-conspirator statement, the probative value of such evidence is far outweighed by the unfair prejudice that would result to Mr. Davis. Introducing the proffered evidence – which is marginally relevant at best – would undoubtedly cause a "mini-trial" on the issue of whether Mr. Davis's son, Demetrious Davis, legitimately testified before the grand jury in this matter as the custodian of the records for P.J. Richfield, Inc. In order to rebut such allegations, Mr. Davis would be required to introduce evidence that (1) in 2003, Demetrious Davis was the sole employee and owner of P.J. Richfield, and (2) as the sole employee and owner, Demetrious Davis was uniquely positioned, and the only qualified witness, to testify as the keeper of the records for P.J. Richfield. Moreover, any strategic decisions concerning designating Demetrious Davis as the custodian of the records for purposes of responding to the grand jury subpoena served on P.J. Richfield would necessarily implicate discussions Demetrious Davis had with his counsel at the time; thus, Mr. Davis would be forced to call as a witness Demetrious Davis's prior counsel, F. Dennis Saylor IV (who

3

represented him at the time of his grand jury appearance), to explain the decision to designate Demetrious Davis as the keeper of the records. In sum, allowing such evidence in would result in significant wasted time and undue delay litigating this issue. Given the minimal probative value of such evidence, it should be excluded.

### 2. *Statement Concerning Mr. Davis's Concerns Regarding the Audit*

Raymond Asselin's alleged statement (sometime after 2000 or 2001) that Mr. Davis was "'sitting okay' because the IRS only goes back so far to audit taxes and the time for auditing 1997 and the bills paid for Asselin's house had passed" raises similar issues. This statement, like the statement mentioned above, can no way be construed to further the objectives of either the racketeering or bribery conspiracies alleged in the Indictment. In addition, admission of this statement – suggesting that Mr. Davis was attempting to defraud the IRS – would significantly prejudice Mr. Davis, and confuse the jury by injecting an element of tax evasion into an already complex case involving a RICO and bribery conspiracies. Given the minimal probative value of such evidence coupled with the potential for unfair prejudice, this statement should be excluded.

### CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant its Motion *in Limine* No. 12 to Exclude Certain Allege Co-Conspirator Statements.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such argument to the Court.

5

        Respectfully submitted,

        PETER DAVIS

        By his attorneys,

        **/s/ James C. Rehnquist**
        James C. Rehnquist (BBO # 552602)
        Kathleen Luz (BBO # 643278)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109-2881
        (617) 570-1000

Dated:  October 11, 2006

Case 3:04-cr-30033-MAP    Document 320    Filed 10/11/2006    Page 6 of 6

6

**CERTIFICATE OF SERVICE**

  I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on October 11, 2006.

                 **/s/ James C. Rehnquist**
                 James C. Rehnquist

LIBA/1737327.1