UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**PETER DAVIS'S APPLICATION FOR COSTS AND ATTORNEYS FEES
PURSUANT TO THE HYDE AMENDMENT**

Peter Davis hereby moves, pursuant to the Hyde Amendment, Pub. L. No. 105-110, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A (statutory note), for an award of costs and attorney's fees incurred in defending himself against the charges brought in this case.

To be clear, Mr. Davis does not claim that the position of the United States was in any way vexatious or in bad faith.  As the Court noted, the prosecution team responsible for this Indictment successfully prosecuted over a dozen persons, and provided a real service to the City of Springfield in so doing.  Those successes and contributions, however, cannot obscure the infirmity of the government's case against Mr. Davis.  For over two years, Mr. Davis was forced to endure a prosecution that had no chance of prevailing given the utter lack of evidence that he had any involvement with the Springfield Housing Authority (or any other culpable involvement) within the five-year limitations period.  Accordingly, Mr. Davis contends that the position of the United States in prosecuting him was "frivolous" within the meaning of the Hyde Amendment, and that he is thus entitled to an award of costs and attorney's fees.

The Hyde Amendment, in pertinent part, states:

> [T]he court, in any criminal case . . . may award to a prevailing
> party, other than the United States, a reasonable attorney's fee and
> other litigation expenses, where the court finds that the position of

> the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

*Id.* The only First Circuit case discussing the standards to be applied to awards under the Hyde Amendment is *United States v. Knott*, 256 F.3d 20 (1st Cir. 2001). *Knott* involved the review of the district court's award of attorney's fees to a defendant company that had been prosecuted for an alleged violation of the Clean Water Act. *Id.* at 23-25. After the district court granted a pre-trial motion suppressing evidence of certain water samples that were improperly obtained by federal agents, the government sought leave of court to dismiss the indictment, as it had doubts about whether it could make its case absent the suppressed evidence. *Id.* at 24-25. Following the dismissal of the indictment, the defendant moved for an award of costs and attorney's fees under the Hyde Amendment. *Id.* at 25. The district court granted the motion, finding that while the prosecution was neither "frivolous" nor "in bad faith," it was "vexatious" within the meaning of the statute. *Id.* The district court based its finding that the prosecution was "vexatious" solely on its determination that the government lacked "any credible evidence" to support the accusations in the indictment. *Id.* The district court did not find that the prosecutors acted maliciously or with any motive to "vex" the defendants. *Id.*

The First Circuit reversed, holding that demonstrating that a prosecution is "vexatious . . . requires both a showing that the criminal case was objectively deficient, in that it lacked either legal merit or factual foundation, and a showing that the government's conduct, when viewed objectively, manifests maliciousness or an intent to harass or annoy." *Id.* at 29. Because the district court did not find any maliciousness or intent to harass or annoy, the Court found that the prosecution was not "vexatious" within the meaning of the Hyde Amendment. *Id.* In doing so, the First Circuit also shed some light on the meaning of the term "frivolous" within the statute,

specifically contrasting it with the "maliciousness" requirement for a finding of vexatiousness. The Court wrote:

> It may be that if the government pursued a position so obviously wrong that no reasonable prosecutor could have supported it, the defendant would be entitled to a fee award under the Hyde Amendment. Without a finding of bad faith or improper motive, however, <u>if the government pursues a prosecution without any foundation or basis for belief that it might prevail, such a prosecution would more appropriately be deemed "frivolous"</u> than "vexatious." Reading "vexatious" to encompass such a case would render it synonymous with "frivolous," thus improperly rendering the term mere surplusage.

*Id.* at 29-30 (emphasis added). Thus, the *Knott* Court at least implicitly holds that a prosecution may be frivolous within the meaning of the Hyde Amendment if it was undertaken "without any foundation or basis for belief that it might prevail." Furthermore, the *Knott* Court relied heavily upon the interpretation of the Hyde Amendment by the Eleventh Circuit in *United States v. Gilbert*, 198 F.3d 1293 (11th Cir. 1999), which held that "[a] defendant seeking Hyde Amendment fees and costs on the basis of a legal position the government took in prosecuting him must establish that the position was foreclosed by binding precedent or so obviously wrong as to be frivolous." *Id.* at 1304.

Here, the government pursued the prosecution of Mr. Davis without any objective foundation or basis for believing it could prevail. There was not a shred of evidence that Mr. Davis engaged in any criminal conduct within the statute of limitations period. One need look no further than this Court's order granting Mr. Davis's Rule 29 motion for judgment of acquittal to see that the prosecution lacked any basis in fact or law. As this Court held, given the date the indictment was returned, June 9, 2004, and the five-year statute of limitations period, in order for the prosecution of Mr. Davis to have any chance of prevailing the government would be required

3

to demonstrate that Mr. Davis "engaged in the unlawful agreement to commit bribery and/or to participate in that affairs of a racketeering enterprise sometime after July 9, 1999." Memorandum and Order Regarding Defendants' Motion for Judgment of Acquittal at 2 (hereinafter "Order").  The only evidence even offered by the government relating to Mr. Davis after July 9, 1999, were statements he made to an FBI agent who was investigating the Springfield Housing Authority ("SHA") that the government alleged were false and served to conceal Mr. Davis's involvement in the conspiracy.  *Id.* at 2-3.  But as longstanding Supreme Court and First Circuit precedent make clear, "even egregious and organized acts of concealment" (as opposed to the isolated, innocuous evidence offered against Mr. Davis) cannot serve to extend the life of that conspiracy unless the government proves an "express, original agreement" to conceal the conspiracy.  *United States v. Twitty*, 72 F.3d 228, 233 (1st Cir. 1995) (citing *Grunewald v. United States*, 353 U.S. 391, 404 (1957)) (emphasis added); see also Order at 3.  And as this Court wrote, "[n]o evidence of any express, original agreement was offered." Order at 3.  Given that the only evidence the government had to support its erroneous position that Mr. Davis committed the charged crimes within the limitations period were his arguably concealing statements to the FBI agents, and the fact that this position was so clearly foreclosed by binding legal precedent, the government's prosecution was frivolous within the meaning of the Hyde Amendment.

That the government's prosecution of Mr. Davis was objectively baseless is evident by this Court's summation of the fatal flaw in the government's case:

> In sum, the government presented <u>absolutely no evidence</u>, let alone sufficient evidence to convince a reasonable juror beyond a reasonable doubt, that Defendant's "agreement with the core group continued into the period not barred by the statute of limitations." *United States v. Juodakis*, 834 F.2d 1099, 1103-04 (1st Cir. 1987)

4

> (per curiam). . . . <u>The evidence showing activity extending into the limitations period on the part of Defendant Davis was not only insufficient, but was nonexistent.</u>

*Id.* at 4 (emphasis added). If the "frivolous" prong of the Hyde Amendment standard is to mean anything, then choosing to prosecute an individual with "no evidence" that he committed the charged crimes within the statute of limitations period must be sufficient to render the prosecution frivolous.[1]

The frivolous nature of the prosecution is bolstered by the fact that the evidentiary hole in the government's case was established through the <u>government's own witnesses</u>. The undisputed testimony from those witnesses, including the government's cooperating witnesses, demonstrated that Mr. Davis withdrew from any alleged conspiracy as a matter of law. Mr. Davis called <u>no</u> witnesses. As the Court's Order makes clear, it was undisputed that Mr. Davis's last involvement in any manner with the SHA occurred in June 1998, more than a year before the relevant statute of limitations date. It is further undisputed that sometime soon after this, "he moved 100 miles to the east and retired completely from the contracting business." Order at 4-5. Finally, the undisputed testimony from the government's own cooperating witnesses, some of whom were charged co-conspirators, is that Mr. Davis communicated his abandonment of the enterprise to the alleged co-conspirators. *Id.* at 5. In short, the government's own witnesses established the factual predicate that, under plainly applicable first Circuit precedent, *see United States v. Juodakis*, 834 F.2d 1099, 1102 (1st Cir. 1987), Mr. Davis withdrew from the conspiracy

---

[1] Mr. Davis notes that the initial inclusion of the obstruction of justice and substantive RICO charges against Mr. Davis that were dismissed pre-trial do not change this analysis, for two reasons. First, by dismissing the obstruction of justice charge, this Court found that, given the clear Supreme Court and First Circuit case law to the contrary, there was simply no basis in fact or law for charging Mr. Davis with obstruction of justice. Second, for the same reasons discussed above, the facts underlying the obstruction of justice charge—the alleged false statements to the FBI agent—could not have served to extend the life of the charged conspiracies (or amount to a substantive RICO violation) in light of *Twitty* and *Grunewald*.

5

before—indeed, well before—the limitations date. And the government presented no evidence to the contrary. As this Court noted, "the evidence to satisfy this burden was not merely insufficient, <u>but was entirely nonexistent</u>." Order at 5-6 (emphasis added).

Again, Mr. Davis does not contend that the government's prosecution was vexatious or in bad faith. But when the government has at its disposal the powerful weaponry of conspiracy (particularly RICO conspiracy)—with the concomitant ability to cast such a wide net and charge large numbers of people with illegal activity—it must be held responsible for its actions. It must be accountable for subjecting to indictment and trial individuals like Mr. Davis whose prosecution is so clearly barred by the facts and law. As this Court noted, "the insufficiency of the evidence to support the charges against Defendant Davis, in light of the statute of limitations, <u>was glaring</u>." Order at 7 (emphasis added).

The costs to a defendant of enduring criminal prosecution are always extreme. As detailed in the accompanying Declaration of James C. Rehnquist, Mr. Davis's legal team spent a total of 4735.10 hours in defending this litigation. Even assuming a rate of $125 per hour, as permitted by statute, *see* 28 U.S.C. § 2412—which is well below the rates actually charged by Mr. Davis's counsel—Mr. Davis's legal fees, were, at a minimum, $591,887.50. Rehnquist Decl., at ¶ 3. Coupled with the disbursements in this case, which totaled almost $58,000, the total cost of the litigation was $649,368.61.[2] Rehnquist Decl., at ¶¶ 4-5. For an individual with net assets of less than $2,000,000, *see* Rehnquist Decl., at ¶ 6, the monetary costs of this litigation imposed a significant burden.

---

[2] As noted in the Rehnquist Declaration, Mr. Davis's attorneys' billing rates were much higher than $125 per hour, and thus the monetary costs of defending this criminal prosecution were higher. However, for purposes of this motion, Mr. Davis calculated his legal fees using the $125 per hour rate mandated by 28 U.S.C. § 2412, which is incorporated by reference in the Hyde Amendment, 18 U.S.C. § 3006A.

More troubling, however, are the emotional costs to Mr. Davis of enduring, for over two years, the frivolous charges brought by the government against Mr. Davis. Mr. Davis is forced to ask, as former Secretary of Labor Raymond Donovan once famously did, "where do I go to get my good name back?" Despite being subjected to a prosecution with no chance of succeeding, Mr. Davis was forced to endure dozens of articles linking him with criminal activity, both in Springfield, the city in which he spent his professional life and raised his family, and in Newburyport, where he currently resides along with his wife, children, and grandchildren. Although no one subjected to such a prosecution can ever "be made whole" by a fee award, it was to provide some small measure of redress that Congress passed the Hyde Amendment. While the Hyde Amendment provides remedy only for the extreme case, this is such a case.

In sum, given the clear case law and undisputed facts from the government's own evidence, it is clear that the prosecution of Mr. Davis occurred "without any foundation or basis for belief that it might prevail," and therefore was "frivolous" within the meaning of the Hyde Amendment. *Knott*, 256 F.3d at 29-30. Accordingly, pursuant to the Hyde Amendment, Mr. Davis is entitled to reimbursement for his legal fees and costs, for a total of $649,368.61.

## **CONCLUSION**

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Application for Costs and Attorneys' Fees Pursuant to the Hyde Amendment

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such argument to the Court.

Respectfully submitted,

PETER DAVIS

By his attorneys,

 /s/ James C. Rehnquist
James C. Rehnquist (BBO # 552602)
Kathleen Luz (BBO # 643278)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: November 16, 2006

## LOCAL RULES CERTIFICATION

I, James C. Rehnquist, hereby certify that, pursuant to Local Rules 7.1 and 116.3, counsel for defendant Peter Davis conferred with counsel for the United States in a good-faith attempt to resolve or narrow the issues presented by this motion.

 /s/ James C. Rehnquist
James C. Rehnquist

## CERTIFICATE OF SERVICE

I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on November 16, 2006.

 /s/ James C. Rehnquist
James C. Rehnquist

LIBA/1741972.2