UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND ASSELIN, SR., et al.<br><br>Defendants. | Criminal No. 04-30033-MAP |

**PETER DAVIS'S MOTION TO OBTAIN LIMITED DISCOVERY RELATING TO HIS APPLICATION FOR FEES AND COSTS PURSUANT TO THE HYDE AMENDMENT**

Peter Davis hereby moves this Court to order the government to produce limited discovery relating to his claim for costs and attorneys fees pursuant to the Hyde Amendment, Pub. L. No. 105-110, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A (statutory note). Specifically, for the reasons set forth below, Mr. Davis requests that the Court order the government to produce the prosecution memorandum and any similar documentation setting forth the facts and law the Assistant U.S. Attorneys relied upon in obtaining authority from their superiors in the Department of Justice to commence this prosecution.

## BACKGROUND

After having two of the four counts against him dismissed by this Court pretrial, and being acquitted of the remaining two counts by this Court's grant of Mr. his Rule 29 motion after the close of evidence, on November 16, 2006, Mr. Davis moved, pursuant to the Hyde Amendment, for an award of costs an attorneys fees based on his claim that the government's prosecution of him, so clearly fatally flawed, was frivolous. *See* Peter Davis's Application for Costs and Attorney's Fees Pursuant to the Hyde Amendment, (hereinafter "Application"). The gist of Mr. Davis's argument is that the position of the government in prosecuting him was so clearly contrary to binding First Circuit and Supreme Court case law as to be frivolous. As to the

decision to charge him with obstruction of justice and substantive RICO based on his alleged false statements to an FBI agent, Mr. Davis argues that such a position was frivolous as it was foreclosed by the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), and subsequent First Circuit law, as this Court determined in dismissing these charges pre-trial. As to the decision to charge Mr. Davis with RICO and bribery conspiracy, such a position was frivolous because any conspiratorial activity by Mr. Davis occurred far outside the statute of limitations period, as this Court found in granting Mr. Davis's Rule 29 motion.

On January 5, 2007, the government filed its opposition to the Application. *See* Government's Opposition to Defendant Peter Davis's Application for Costs and Attorney's Fees Pursuant to the Hyde Amendment, (hereinafter "Gov. Opp."). Despite the length of the Government's Opposition, and its recitation of facts largely irrelevant to Mr. Davis's claim that his prosecution was frivolous, its defense against Mr. Davis's Application is actually quite narrow. In essence, the government argues in its brief that its prosecution of Mr. Davis was not "frivolous" because it relied on certain evidence and legal theories in making its decision to charge Mr. Davis in July 2004. Specifically, the government contends it relied upon the following evidence and legal theories:

- First, the government claims that it relied on dicta in three Seventh Circuit cases concerning the "arm of the grand jury" interpretation of *United States v. Aguilar*, 515 U.S. 593 (1995), as part of its decision to charge Mr. Davis with obstruction of justice and, consequently, with substantive RICO. Gov. Opp. at 22-25.

- Second, in making it decision to charge Mr. Davis with the RICO and bribery conspiracies, the government claims it relied upon certain "substantial" evidence, which was ultimately suppressed by the Court, which would have demonstrated Mr. Davis's "continuing criminal involvement" in the RICO and bribery conspiracies. Gov. Opp. at 29. Specifically, the government claims that it relied upon (1) the suppressed testimony of Lisa Sanford concerning an alleged attempt by Raymond Asselin, Sr. to contact Mr. Davis by telephone, and (2) Mr. Davis's

2

      statements to an FBI agent in 2003 in which he denied making payments for any improvements on the homes of the Asselin children.

- Third, with respect to the RICO conspiracy and bribery conspiracy charges, despite the obvious statute of limitations problem, the government claims that it expected the Court to find, as required by *United States v. Twitty*, 72 F.3d 228 (1st Cir. 1995), that Mr. Davis had an express, original agreement to conceal the conspiracy after the fact. Gov. Opp. at 31-33.

- Fourth, in making its decision to prosecute Mr. Davis, the government contends that it relied upon the "exacting standard" that Mr. Davis was required to meet in order to demonstrate withdrawal. Gov. Opp. at 29.

Although counsel for Mr. Davis has requested such limited discovery from the government (including the prosecution memorandum), to date, the government has not responded to this request. *See* Letter from James. C. Rehnquist to Steven H. Breslow, dated January 9, 2007 (attached as Exhibit A).

## ARGUMENT

Even assuming the government's assertions to be true, Mr. Davis believes that the government's alleged reliance on these legal theories and/or evidence was sufficiently unreasonable as to meet the frivolous standard under the Hyde Amendment. In any event, however, for the Court to adequately assess the merits of Mr. Davis's Application, limited discovery into the facts and circumstances surrounding the position of the government in prosecuting Mr. Davis is necessary. Indeed, limited discovery concerning the assertions made by the government will allow both the Court and Mr. Davis to adequately assess whether, in fact, the government did or did not act "frivolously." At a minimum, the prosecution memorandum (or any similar documentation) that was presumably prepared by the government in seeking internal and Main Justice approval for the prosecution of Mr. Davis would shed light as to what evidence and legal theories the government relied upon in making its charging decision.

This Court has the authority to order discovery in this situation. First, the only court to squarely adjudicate the question of whether discovery is permitted under the Hyde Amendment determined that it was within the district court's power to order such discovery, and in fact did order exactly the sort of discovery sought here. *See United States v. Gardner*, 23 F. Supp. 2d 1283 (N.D. Okla. 1998); *cf. United States v. Lindberg*, 220 F.3d 1120 (9th Cir. 2000) (holding that district court did not abuse its discretion in denying applicant's request for discovery on ground that insufficient prima facie demonstration of merits of applicant's claim). Further, courts have held that it is appropriate for the district court to accept and consider additional evidence in adjudicating claims for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), whose provisions are expressly incorporated into the Hyde Amendment. *See, e.g.*, *Kuhns v. Bd. of Governors of the Fed. Reserve Syst.*, 930 F.2d 39, 42-43 (D.D.C. 1991); 18 U.S.C. § 3006A (statutory note). Finally, numerous courts have recognized the district courts' inherent authority to order discovery in appropriate instances, above and beyond what may be expressly provided for in the Rules of Criminal Procedure or elsewhere. *See*, *e.g.*, *United States v. Catalan Roman*, 376 F. Supp. 2d 108, 115 (D.P.R. 2005) (collecting cases and citing inherent power of district court to craft appropriate disclosure in absence of statutory mandate in death penalty sentencing phase); *United States v. Kloepper*, 725 F. Supp. 638, 640 (D. Mass. 1989) ("The Federal Rules of Criminal Procedure were not designed to and do not entirely supplant this fundamental authority and residual power of the Court. It has long been held that the Federal Courts possess the inherent power to order discovery and inspection." (citation omitted)).

*Gardner*, which contains the most extensive discussion of the scope of discovery in a Hyde Amendment case, is illustrative. *See* 23 F. Supp. 2d 1283. In that case, the district court examined the text of the Amendment, as well as the incorporated provisions of the EAJA, and determined that in order to decide whether the "position of the United States" was "vexatious, frivolous, or in bad faith," "the scope of the record in any Hyde Amendment case must be determined by a review of all the facts and circumstances." *Id.* at 1295. The court, having found the applicant to have made a prima facie case for recovery under the Amendment, granted a limited version of the applicant's discovery request, ordering the government to produce certain internal documents concerning the investigation and decision to prosecute. *Id.* at 1296-97. Mr. Davis has clearly demonstrated a prima facie case under the Hyde Amendment, and the government has made specific allegations of reliance that can only be assessed through similar limited discovery.

Mr. Davis acknowledges that some courts in dicta have expressed skepticism over whether a party seeking fees and costs under the Hyde Amendment is entitled to discovery as a matter of right, *see United States v. Schneider*, 395 F.3d 78, 91 (2d Cir. 2005); *United States v. Truesdale*, 211 F.3d 898, 907 (5th Cir. 2000), and that the Hyde Amendment itself (unlike certain provisions of the Rules of Criminal Procedure) does not affirmatively provide the an applicant with a right to discovery. But there is nothing in the Hyde Amendment that curtails the district court's authority to order limited, reasonable discovery in order to determine the merits of the claim. As the *Gardner* Court found, given the heightened standard of review of Hyde

Amendment claims,[1] it will often be necessary to review all of the circumstances surrounding the position of the government in going forward with the challenged prosecution, "including the activities that shaped [the] litigating position." *Gardner*, 23 F. Supp. 2d at 1295. This is especially so in this particular case, where the government has made numerous unsupported assertions of reliance on particular facts and legal positions at the time of its decision to indict. This Court cannot adequately determine the merits of Mr. Davis's claim without some inquiry into the facts and circumstances surrounding this decision.

Although the government may argue that it has concerns about producing materials that may be classified or that may be relevant to ongoing criminal investigations, such concerns can adequately be addressed by the Court. Indeed, for this reason, the Hyde Amendment contains a provision to protect the government from having to disclose such materials publicly:

> To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal.

18 U.S.C. § 3006A (statutory note). To the extent the government demonstrates that any of the requested materials fall within this category, Mr. Davis does not oppose the Court receiving such

---

[1] In fact, the need for such discovery in Hyde Amendment cases is far more pressing than would exist in an EAJA fee application, in which the standard of review is simply whether the position of the United States was "substantially justified." As the Supreme Court has held, the "substantially justified" standard under the EAJA simply requires the Court to determine whether the position of the United States was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Such an "objective" test can frequently be adjudicated by simply referring to the record of the case. However the heightened standard under the Hyde Amendment, requiring a showing that the government's position was "vexatious, frivolous, or in bad faith," by necessity requires more than simply a determination of the objective reasonableness of the government's case. This will often require an understanding of facts and circumstances beyond those in the record, necessitating some form of discovery.

materials in camera in order to assess the merits of his application,[2] and Mr. Davis will consent to any protective order the Court may decide to issue in order to protect the government's interests.

## CONCLUSION

For the foregoing reasons, Mr. Davis respectfully requests that the Court grant his Motion to Compel Limited Discovery from the government.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Mr. Davis submits that the Court's ruling on this Motion will be aided with oral argument, and accordingly requests an opportunity to present such argument to the Court.

> Respectfully submitted,
>
> PETER DAVIS
>
> By his attorneys,
>
>  /s/ James C. Rehnquist
> James C. Rehnquist (BBO # 552602)
> Kathleen Luz (BBO # 643278)
> GOODWIN PROCTER LLP
> Exchange Place
> Boston, MA 02109-2881
> (617) 570-1000

Dated:  January 12, 2007

---

[2] The *Gardner* Court, in granting a limited version of the applicant's motion for discovery, elected to receive the discovery in camera and ex parte in order to adjudicate the claim. *Gardner*, 23 F. Supp. 2d at 1296-97.

7

## LOCAL RULES CERTIFICATION

I, James C. Rehnquist, hereby certify that, pursuant to Local Rules 7.1 and 116.3, counsel for defendant Peter Davis conferred with counsel for the United States in a good-faith attempt to resolve or narrow the issues presented by this motion.

 /s/ James C. Rehnquist
James C. Rehnquist

## CERTIFICATE OF SERVICE

I, James C. Rehnquist, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on January 12, 2007.

 /s/ James C. Rehnquist
James C. Rehnquist

LIBA/1756990.2